

Slip Copy

Page 1

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

**c**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.
SYNCSORT INCORPORATED, Plaintiff,
v.
INNOVATIVE ROUTINES INTERNATIONAL,
INC., Defendant.
**No. Civ. 04-3623(WHW).**

May 6, 2005.

Ronald Abramson, Jersey City, NJ, for Plaintiff.
Sherry D. Williams, Newark, NJ, for Defendant.

OPINION

WALLS, J.
**\*1** Plaintiff moves to dismiss Counts I, IV, V and
VI of defendant's Counterclaim. This motion is
decided without oral argument pursuant to
Fed.R.Civ.P. 78.

FACTS AND PROCEDURAL BACKGROUND

This matter involves a dispute between two
competitors, Syncsort Inc. and Innovative Routines
International, Inc. Both parties develop and sell
sorting software for computers that operate the
UNIX operating system. Plaintiff produces and
licenses a sorting software product called "SyncSort
UNIX." Defendant markets a directly competing
sorting product called "CoSORT."

On July 29, 2004, plaintiff filed a Complaint against
defendant alleging claims for misappropriation of
plaintiff's trade secrets, copyright infringement,
breach of licensing agreement, false advertising,
trademark infringement and dilution, and unfair
competition. On August 27, 2004, defendant filed
its Answer and Counterclaim of six counts. Count I
alleges a violation of Section 2 of the Sherman Act.

More specifically, defendant alleges that plaintiff is
attempting to monopolize the sort software market
for UNIX operating systems by engaging in
predatory pricing, leveraging its monopoly position
in the mainframe sort software market, and by
instituting this lawsuit. Count II alleges that plaintiff
has engaged in false advertising through its
publication of statements that represent that
plaintiff's product is the fastest and the only sort
product designed for high performance. Count III
alleges that plaintiff has infringed on defendant's
copyright in its CoSORT software and related
documentary materials. Count IV states a claim for
tortious interference with prospective economic
advantage. Count V states a claim for tortious
interference with contract. Count VI alleges unfair
competition.

On September 20, 2004, plaintiff moved to dismiss
Counts I, IV, V and VI of the Counterclaim.

STANDARD

*Standard for a Rule 12(b)(6) Motion to Dismiss*

On a motion to dismiss pursuant to Fed.R.Civ.P.
12(b)(6), the court is required to accept as true all
allegations in the pleading and all reasonable
inferences that can be drawn therefrom, and to view
them in the light most favorable to the non-moving
party. FN1 *Pinker v. Roche Holdings Ltd.,* 292 F.3d
361, 374 n. 7 (3d Cir.2002). The question is
whether the claimant can prove any set of facts
consistent with his or her allegations that will entitle
him or her to relief, not whether that person will
ultimately prevail. *Hishon v. King & Spalding,* 467
U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

> FN1. "Rule 12 standards are not altered
> when a movant seeks dismissal of a
> counterclaim-all    allegations    of    the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

counterclaim are also accepted as true and are accorded the benefit of all reasonable inferences." *Syncsort Inc. v. Sequential Software, Inc.,* 50 F.Supp.2d 318, 322 n. 3 (D.N.J.1999).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. Fed.R.Civ.P. 8(a)(2) ; *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court may consider the allegations of the pleading, as well as documents attached to or specifically referenced in the pleading, and matters of public record. *Sentinel Trust Co. v. Universal Bonding Ins. Co.,* 316 F.3d 213, 216 (3d Cir.2003); *see also* 5B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 at 299 (3d ed.1998).

**\*2** "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment." ' *Mele v. Federal Reserve Bank of N.Y.,* 359 F.3d 251, 255 n. 5 (3d Cir.2004) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997)). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Id.*

The Supreme Court has expressly stated that motions to dismiss under Rule 12(b)(6) should be granted "very sparingly" in antitrust cases. In *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746-47, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) the Court held: "[I]n antitrust cases, where the 'proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." (citing *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)).

## DISCUSSION

### I. Count I

Count I of defendant's Counterclaim states a cause of action for a violation of Section 2 of the Sherman Act. More specifically, defendant alleges an attempted monopolization claim. The Third Circuit has said that "to prevail on attempted monopolization claim under § 2 of the Sherman Act, 'a plaintiff must prove that the defendant (1) engaged in predatory or anticompetitive conduct with (2) specific intent to monopolize and with (3) a dangerous probability of achieving monopoly power." ' *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 442 (3d Cir.1997) (quoting *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 890, 122 L.Ed.2d 247 (1993)). " In determining whether there exists a viable claim of monopolization or attempted monopolization, an inquiry 'into the relevant product and geographic market' is required." *Syncsort Inc. v. Sequential Software, Inc.,* 50 F.Supp.2d 318, 327 (D.N.J.1999) (quoting *Spectrum Sports,* 506 U.S. at 459, 113 S.Ct. 884, 122 L.Ed.2d 247)). Thus, in addition to pleading facts that would support the elements enumerated above, a claimant also "must plead facts sufficient to demonstrate a viable relevant market." *Sequential Software,* 50 F.Supp.2d at 327 (citing *Queen City Pizza,* 124 F.3d at 436; *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.,* 113 F.3d 405, 415 (3d Cir.1997); *Brader v. Allegheny General Hospital,* 64 F.3d 869, 877 (3d Cir.1995)).

Plaintiff contends that defendant has insufficiently pled some of the necessary elements of an attempted monopolization claim. Plaintiff first charges that defendant's allegations concerning the relevant market are deficient. Next, plaintiff argues that defendant's allegations regarding anti-competitive conduct are insufficient. Third, plaintiff contends that defendant has failed to plead an antitrust injury. The Court will address these arguments in turn.

### A. Relevant Market

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 3

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

*3 The Third Circuit has provided the following guidance in terms of defining the relevant product market:
The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it. Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

*Queen City Pizza,* 124 F.3d at 436 (citations omitted). Expanding on the meaning of " interchangeability," the Third Circuit said " [i]nterchangeability implies that one product is roughly equivalent to another for the use to which it is put; while there may be some degree of preference for the one over the other, either would work effectively." *Id.* at 437. "When assessing reasonable interchangeability, '[f]actors to be considered include price, use, and qualities.' ' *Id.* (quoting *Tunis Brothers Co., Inc. v. Ford Motor Co.,* 952 F.2d 715, 722 (3d Cir.1992)). The *Queen City Pizza* court also noted that cross-elasticity of demand between the product itself and the substitutes for it is an indicator of interchangeability. *Id.* Furthermore, "[a] market definition must look at all relevant sources of supply, either actual rivals or eager potential entrants to the market." *Syncsort I,* 50 F.Supp.2d at 331 n. 11 (quoting *SmithKline Corp. v. Eli Lilly & Co.,* 575 F.2d 1056, 1063 (3d Cir.), cert. denied, 439 U.S. 838, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978)).

Defendant alleges the following definition of the relevant product market: "The relevant product market is sort software for the UNIX operating systems. While there are sort programs available for other operating systems, they are not interchangeable with sort programs for the UNIX operating system. This is because consumer databases and related applications cannot be readily moved to non-UNIX platforms simply to leverage

another sort product." (Countercl. at ¶ 8(a).) Plaintiff first argues that defendant's product definition fails to describe the products at issue, the nature of the market, or terms such as price, use and quality that would help the Court determine if there is any interchangeability. Plaintiff does not however, advance any legal support for the proposition that defendant must plead facts regarding the nature of the market and the products at issue to satisfy the requirements for pleading a relevant market definition. As for defendant's failure to plead facts about price, use and quality, the Court agrees with defendant that neither the Third Circuit nor the *Syncsort I* court intended that alleging these factors is the only way to adequately refer to interchangeability. Nothing in the rationales of *Queen City Pizza* or *Syncsort I* support that reading.

*4 Plaintiff also contends that defendant failed to address how there could be market barriers for new entrants. In the allegations preceding the market definition, defendant alleged "[o]n information and belief, there are no persons or business entities that will at any time in the foreseeable future enter the relevant market described in Paragraph 8 below." (Countercl. at ¶ 7(f).) While the *Syncsort I* court chastised the defendant for failing to mention any potential market entrants, the court did not hold that a pleading party must not only state whether there were potential entrant, but also plead facts supporting that statement. *See Syncsort I,* 50 F.Supp.2d at 332. Even under the pleading standard of *Syncsort I,* that facts must be pleaded with reasonable particularity to state a federal antitrust claims, the Court does not think that a pleading party should have to plead the facts of supporting allegations such as this one with such particularity as plaintiff argues it should. *See id.* at 328.

In *Syncsort I,* the defendant made the following allegation with regard to the relevant market: "Both PdqSort and SyncSort/UNIX compete in the national market for computer sorting software for UNIX operating systems (the 'UNIX sorting market ').... [The UNIX sorting market] consists of primarily three competitors: Syncsort, Innovative Routines International, Inc. and IBM." 50 F.Supp.2d at 331. In finding this allegation

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

deficient, the court stated several reasons for this finding. First, the court took note that the defendant had limited the market to the products of three competitors and made no mention of potential entrants into the market. *Id.* at 332. Second, the court highlighted that the defendant "failed to mention other products available from other suppliers which are comparable to or substitutable for the product of Syncsort, from the point of view of consumers." *Id.* Third, the court found it significant that the defendant "did not state in its pleadings the sorting product of Syncsort is unique and cannot be interchanged with other sorting products." *Id.* Unlike the defendant in *Syncsort I,* the Court finds that the present defendant has sufficiently pleaded the relevant market definition. Defendant's allegations make specific reference to the rule of reasonable interchangeability and explains why the market is limited to sort software for the UNIX operating system. Furthermore, defendant alleges that it is not aware of any potential entrants into this market. Defendant did not limit the market to only three specific companies like the *Syncsort I* defendant did, but rather alleged that there are "fewer than a half dozen companies left that sell sorting software for the UNIX operating system." (Countercl. at ¶ 7(a).) And, unlike the *Syncsort I* defendant, defendant here did not need to mention what the substitutable products were because it explained that sort software for the UNIX operating system is not interchangeable with sort software for other operating systems.

**\*5** Plaintiff's final argument is that the Court should consider additional documents that were originally attached to a letter referenced and attached to the Counterclaim. These documents appear to be printouts from defendant's website. Defendant did not attach these documents to its pleading, rather it just attached the letter. As noted earlier, "[a] 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.' " *Mele,* 359 F.3d at 255 n. 5. Plaintiff advances no legal authority that holds that a court must consider documents that a party did not attach to its pleading. While "[p]laintiffs cannot prevent a court from looking at the texts of the documents on

which its claim is based by failing to attach or explicitly cite them," *id.,* defendant did not explicitly rely on those printouts, and there is no indication that defendant's claims are based on those documents. In the context of a motion to dismiss, the Court is unwilling to refer to documents not attached to a pleading to inquire if statements made in those documents contradict allegations in the Counterclaim.

As to one statement in a document attached to the Counterclaim that plaintiff contends is contradictory, the Court fails to see how this statement detract from the allegations regarding the relevant product market. Plaintiff points to a July 29, 2004 letter from defendant to plaintiff that is attached to the Counterclaim as Tab C. In that letter, defendant refers to itself as the "open systems sort market pioneer and leader." Without more information about what the "open systems sort market" is referring to, an issue that could be explored in discovery, the Court fails to see how this statement renders defendant's pleading of the relevant product market defective.

The above analysis compels the conclusion that defendant has sufficiently pleaded a definition of the relevant product market.

### B. Anti-Competitive Conduct

Plaintiff's second argument is that defendant's allegations regarding anti-competitive conduct are insufficient. Plaintiff first attacks defendant's allegations concerning below cost sales and the licensing agreement. With respect to pricing, defendant alleged:
On information and belief, Syncsort has sold its UNIX software product below Syncsort's costs to produce the product in order to entice consumers to purchase the Syncsort UNIX software product.... Syncsort has induced consumers who were negotiating to purchase IRI's UNIX software product to reveal to Syncsort IRI's pricing and quotation information so that Syncsort could undersell IRI with that consumer. [O]n at least one occasion, in order to eliminate IRI as a competitor with respect to a particular customer that had made

Slip Copy                                                                                                    Page 5

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

a tentative agreement with IRI, Syncsort offered to provide to the customer a free copy of Syncsort's product and to pay off any debt the customer might have had to IRI with respect to the customer's tentative agreement with IRI.

**\*6** (Countercl. at ¶ 5(a)-(c).)

A defendant can violate the Sherman Act by engaging in predatory pricing. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " [P]redatory pricing means pricing below some appropriate measure of cost." *Advo, Inc. v. Philadelphia Newspapers, Inc.,* 51 F.3d 1191, 1198 (3d Cir.1995) (quoting *Matsushita,* 475 U.S. at 584 n. 8). The Third Circuit has recognized that no consensus has been reached about the proper definition of "cost" in the context of a predatory pricing claim. *Id.* The Supreme Court, however, has said that "only below-cost prices should suffice, and we have rejected elsewhere the notion that above-cost prices that are below general market levels or the costs of a firm's competitors inflict injury to competition cognizable under the antitrust laws." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 223, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). In *Advo,* the Third Circuit commented that marginal cost is the most important measure of cost in an economic sense, and "[a]s long as a firm's prices exceed its marginal cost, ... [s]uch pricing is presumably not predatory." 51 F.3d at 1198.

The Court concludes that defendant has sufficiently pled a predatory pricing claim. All of the allegations cited above state that plaintiff has priced its products below the cost of production. Plaintiff relies on *Stearns Airport Equip. Co. v. FMC Corp.,* 170 F.3d 518, 533 n. 15 (5th Cir.1999) for the proposition that a claim of predatory pricing cannot be sustained when a party alleges that only one part of project is unprofitable without alleging that the project as a whole was unprofitable. Plaintiff's reliance, however, ignores defendant's allegation in paragraph 5(a) that plaintiff has sold its UNIX software product, not just one piece of the product, below the cost of production. Furthermore, there are no facts alleged here that make this case analogous

to the facts in *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.,* 601 F.2d 48 (2d Cir.1979), where the court found that a newspaper giving away free weekend newspapers for five weeks was not predatory pricing.

With regard to the licensing agreement, plaintiff appears to take issue with the truth of defendant's allegations. Defendant alleged:
On information and belief, Syncsort has sold its UNIX software product below Syncsort's costs to produce the product in order to entice consumers to purchase the Syncsort UNIX software product and thereby enter into multi-year licensing agreements that would preclude those consumers from then switching to the UNIX software product of one of Syncsort's competitors, most particularly IRI.

(Countercl. at ¶ 5(a).) Plaintiff's arguments about how the term defendant uses in licensing its products and that consumers are not prevented from switching products are misplaced in the context of a motion to dismiss. How consumers are prevented from switching under term licenses is a matter more appropriately argued in a motion for summary judgment rather than a motion to dismiss. Plaintiff also argues that this allegation states nothing more than a tactic used in basic business competition. Keeping in mind the Supreme Court's advice to be " careful to avoid constructions of § 2 [of the Sherman Act] which might chill competition, rather than foster it," *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 458, 113 S.Ct. 884, 122 L.Ed.2d 247 (1984), the Court is nonetheless satisfied that defendant has sufficiently stated a claim for predatory pricing. Defendant's allegations plead " something more than an intent to compete vigorously." *Id.* at 459.

**\*7** Plaintiff next argues that defendant's sham litigation claim is barred by the *Noerr-Pennington* doctrine. "Those who petition government for redress are generally immune from antitrust liability. " *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 56, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 144, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the Supreme Court "

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 6

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

withheld immunity from 'sham' activities because ' application of the Sherman Act would be justified' when petitioning activity, 'ostensibly directed toward influencing governmental action, is a mere sham to cover ... an attempt to interfere directly with the business relationships of a competitor." ' *Professional Real Estate Investors,* 508 U.S. at 56 (quoting *Noerr,* 365 U.S. at 144). In *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) , the Supreme Court extended the *Noerr-Pennington* doctrine to petitions to the courts for redress. The Supreme Court has further defined the sham litigation exception to the *Noerr-Pennington* doctrine:

We now outline a two-part definition of 'sham' litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr,* and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor,' through the 'use [of] the governmental process-as opposed to the outcome of that process-as an anticompetitive weapon.'

*Professional Real Estate Investors,* 508 U.S. at 60-61 (citations omitted). "The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation." *Id.* at 62. Probable cause means "no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Id.* at 62-63.

Plaintiff argues that defendant has failed to allege that each of plaintiff's claims is a sham. Plaintiff also charges that because defendant admits that it made the statements that form the basis of plaintiff's false advertising claim and that it used the word " Syncsort" as a metatag on its web site, defendant cannot argue that this litigation is a sham. That

defendant admits to these things, however, does not translate into probable cause for plaintiff to bring this action.

Defendant makes numerous allegations supporting its claim that this litigation is a sham: plaintiff's claims are objectively baseless; plaintiff had no good faith reason to believe that defendant reverse engineered plaintiff's product to figure out how it operates, that defendant used SyncSort's software programming interface and internal operation information to develop its own product, or that defendant executed and reproduced plaintiff's product without a license; plaintiff could not have investigated the truth of its allegations before asserting them; plaintiff initiated this lawsuit for the purpose of directly interfering with the business relationships of a defendant and forcing it from the market; in lieu of waiting for a response from defendant to a letter sent by plaintiff to defendant regarding plaintiff's allegations, plaintiff filed this lawsuit; plaintiff's real motive in bringing this suit is to prevent defendant from offering a competing product while the litigation is pending so that plaintiff can charge consumers higher prices than they would be able to if there was a competitive market. (Countercl. at ¶ 5(e).) The Court finds that defendant has sufficiently pled that this litigation is a sham according to the definition in *Professional Real Estate Investors,* 508 U.S. at 60-61. While plaintiff would have the Court determine that it had probable cause to file suit based on the letters attached to defendant's Counterclaim, the Court finds that at this time, the record is not developed enough to properly make that determination. *See Brotech Corp. v. White Eagle Int'l Technologies Group, Inc.,* 2003 WL 22797730 *4 (E.D.Pa. Nov.18, 2003).

**\*8** Plaintiff's final attack on defendant's allegations of anti-competitive conduct is that defendant's leveraging claim is deficient. Within the context of Sherman Act section 2 claims, "the Supreme Court has recognized the impropriety of monopoly leveraging, i.e., the use of monopoly power in one market to strengthen a monopoly share in another market." *Virgin Atlantic Airways Ltd. v. British Airways PLC,* 257 F.3d 256, 272 (2d Cir.2001) (citing *Eastman Kodak Co. v. Image Technical*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                     Page 7

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

*Servs., Inc.,* 504 U.S. 451, 483, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *United States v. Griffith,* 334 U.S. 100, 107, 68 S.Ct. 941, 92 L.Ed. 1236 (1948), *disapproved of on other grounds; Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)). The Third Circuit has held that to state a monopoly leveraging claim, a party must show that (1) the accused party has a monopoly in one market, and (2) the accused party has a "threatened or actual monopoly in the leveraged market." *Fineman v. Armstrong World Industries, Inc.,* 980 F.2d 171, 206 (3d Cir.1992). Plaintiff argues that defendant's allegations are deficient with respect to both elements. Defendant alleged:

Syncsort seeks to leverage its position as a virtual monopolist in the mainframe sort market to obtain a similar monopoly in the UNIX sort market. On information and belief, and based on its own representations, Syncsort holds a monopoly position with respect to sales of sort software for the mainframe platform throughout the United States and the world.... On information and belief, in at least two circumstances (and likely significantly more), Syncsort has leveraged its monopoly role with respect to mainframe sort software in an attempt to eliminate competition (including, but not limited to IRI) from the UNIX sort software market. On information and belief, Syncsort has done this by means of manipulating the price it charges customers in the mainframe sort software market to for or entice those customers to then buy Syncsort's UNIX sort software (and be locked into Syncsort's multi-year license agreement).

(Countercl. at ¶ 5(d).)

Plaintiff first argues that defendant's failure to allege any facts that would support a finding of monopoly power in the mainframe sort software market renders the leveraging claim deficient. The Third Circuit has recognized the Supreme Court's definition of monopoly power: "Monopoly power has been defined as 'the power to control prices or exclude competition and may ordinarily be inferred from a predominant share of the relevant market.' " *Fineman v. Armstrong World Industries, Inc.,* 980 F.2d 171, 201 (3d Cir.1992) (quoting *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377,

391, 76 S.Ct. 994, 100 L.Ed. 1264 (1956)). "A predominant share of the market, or a lesser market share combined with other relevant factors, may suffice to demonstrate monopoly power." *Id.* Plaintiff charges that defendant has failed to allege plaintiff's market share in the mainframe sort software market or any other fact that would support a finding that plaintiff has the power to control prices or exclude competition in that market. Defendant counters that its allegations are sufficient to state a leveraging claim under *Fineman* and that it need not plead this claim with specificity.

**\*9** The parties disagree over whether there is a heightened pleading standard when alleging antitrust claims. In one of the most recent Third Circuit opinions to address the pleading requirements for antitrust claims, the circuit said that "antitrust complaints are not subject to especially stringent pleadings" and that courts should be "extremely liberal in construing antitrust complaints." *Lum v. Bank of America,* 361 F.3d 217, 228 (3d Cir.2004). The *Lum* court required the plaintiffs to plead with particularity because their antitrust claim was based on fraud. *Id.* Other circuits have also held that antitrust claims need not be pled with particularity. *See Covad Communications Co. v. Bell Atlantic Corp.,* 398 F.3d 666, 672 (D.C.Cir.2005) ( "whether a particular allegation states a claim under the Sherman Act depends entirely upon the competitive significance of the conduct alleged, and not at all upon the number or detail of the allegations recited in the complaint."); *Spanish Broadcasting System of Fla., Inc. v. Clear Channel Communications, Inc.,* 376 F.3d 1065, 1070 (11th Cir.2004) ("The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low, and Rule 12(b)(6) dismissals are particularly disfavored in fact-intensive antitrust cases."); *Midwest Gas Services, Inc. v. Indiana Gas Co., Inc.,* 317 F.3d 703, 710 (7th Cir.2003) ("Though the ' short and plain statement' of an antitrust claim must demonstrate 'antitrust injury' and 'antitrust standing,' antitrust plaintiffs need not plead to a heightened level of particularity."); *Todd v. Exxon Corp.,* 275 F.3d 191, 198 (2d Cir.2001) ("No heightened pleading requirements apply in antitrust cases."); *Knevelbaard Dairies v. Kraft Foods, Inc.,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 8

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

232 F.3d 979, 984 (9th Cir.2000) ("Antitrust cases are not to be judged by a higher or different pleading standard than other cases."). While at least one court in this district has said that "[f]acts must be pleaded with some particularity ... in order to permit an inference that a Federal antitrust claim is cognizable," *Syncsort I*, 50 F.Supp.2d at 328, over the years "many federal courts have rejected the demand for more elaborate pleadings in antitrust cases and have repudiated earlier decisions to the contrary." 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, 3d § 1228. The Court finds that in light of the normal pleading requirements, defendant has sufficiently alleged that plaintiff possesses monopoly power in the mainframe software market.

Plaintiff also argues that defendant has failed to allege a threatened or actual monopoly in the leveraged market. Plaintiff relies on *Rolite, Inc. v. Wheelabrator Environmental Systems, Inc.*, 958 F.Supp. 992, 1003 (E.D.Pa.1997), where the court held that the plaintiff failed to state a monopoly leveraging claim:
The only pleading Rolite makes with regard to a threatened or actual monopolization of the Disposal Market is that Defendants 'have been able to fix and maintain prices in each of the relevant markets,' (Paragraph 237) and that 'defendants actions have suppressed or reduced competition and threaten to continue to suppress or reduce competition in each of the relevant markets.' (Paragraph 247). These seem to me to be the type of conclusory allegations without any alleged facts to support them that are insufficient even at the pleading stage.

*10 *Id.* (citation omitted). Defendant argues that the *Rolite* court erred in holding the plaintiff to a heightened pleading standard. The Court agrees that a heightened pleading standard is not applicable. While plaintiff would have defendant include allegations to explain how manipulating prices in the mainframe sort market can force or entice consumers to buy its products, the Court does not require such specificity at the pleading stage. The Court finds that defendant's allegations are sufficient to plead a threatened or actual monopoly in the leveraged market.

C. Antitrust Injury

Plaintiff's third and final argument against the antitrust counterclaim is that defendant has failed to plead an antitrust injury. An antitrust plaintiff must also allege an injury "of the type the antitrust laws were intended to prevent." *Bristol-Meyers Squibb Co. v. Ben Venue Labs.*, 90 F.Supp.2d 540, 543 (D.N.J.2000). Antitrust laws were enacted for "the protection of the *competition, not competitors."* *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 42 U.S. 477, 488 (1977).

As to antitrust injury, defendant alleged:
If Syncsort is permitted to continue the improper and unlawful conduct described in this counterclaim, the result would be to lessen or eliminate IRI as its primary (and only seriously viable) competitor, just as Syncsort has sought to accomplish in litigation with other potential competitors that Syncsort has now driven from the marketplace. If Syncsort were able, through the improper and unlawful conduct described in this counterclaim, to lessen competition against its product in the relevant market ..., Syncsort would then have essentially no meaningful and viable competitors in that market, and consumers would be deprived of any real choice among UNIX sort software products.

(Countercl. at ¶ 7(g)-(h).) Defendant also alleges that "by filing this sham lawsuit, Syncsort is causing to IRI the damages described below but, perhaps more important, Syncsort threatens improperly to destroy the robust competition in the relevant markets...." (*Id.* at ¶ 10.) With regard to competition, defendant alleges that there are less than six companies operating in the market and that sales of UNIX sort software by plaintiff and defendant "comprise the vast majority of sales in the relevant market...." (*Id.* at ¶ 7(a) & (e).) The Court is satisfied that these allegations, read together, sufficiently allege antitrust injury in the form of reduced competition rather than just an injury to a competitor.

The Court finds no merit to any of the arguments plaintiff has offered as grounds for dismissal. Plaintiff's motion to dismiss Count I of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 9

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

Counterclaim is denied.

### II. Counts IV and V

With regard to Counts IV and V, plaintiff charges that defendant has failed to plead the necessary elements to state claims for tortious interference with prospective economic advantage and tortious interference with contract.

### A. Tortious Interference with Prospective Economic Advantage

**\*11** To state a claim for tortious interference with prospective economic advantage, "the plaintiff must demonstrate some reasonable expectation of economic advantage, that the defendant's actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse, a reasonable probability that the plaintiff would have obtained the anticipated economic benefit and that the injury caused the plaintiff damage." *Weil v. Express Container Corp.,* 360 N.J.Super. 599, 613-14, 824 A.2d 174 (N.J.Super.A.D.2003) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.,* 116 N.J. 739, 751-52, 563 A.2d 31 (1989)). To support its tortious interference with prospective economic advantage claim, defendant first incorporates by reference all the preceding paragraphs of its Answer and Countercl. (Countercl. at ¶ 30.) Next, defendant alleges:

By engaging in the conduct described in this counterclaim, Syncsort intentionally interfered with the prospect of, or reasonable expectation of, economic advantage to IRI arising from sales of IRI's product, CoSORT UNIX. There is a reasonable probability that, but for Syncsort's conduct, IRI would have realized economic advantage in the form of additional sales of IRI's product, CoSORT UNIX. In engaging in the conduct described above, Syncsort acted for the purpose of damaging IRI and, in doing so, acted outrageously, maliciously and with ill will.

(*Id.* at ¶¶ 31-33, 563 A.2d 31.)

Plaintiff argues that the conduct defendant is alleging as interference is protected competition. *See E Z Sockets, Inc. v. Brighton-Best Socket Screw Mfg. Inc.,* 307 N.J.Super. 546, 558-60, 704 A.2d 1364 (N.J.Super.Ch.1996). In *E Z Sockets,* the court adopted a test for proper competition from the Restatement (Second) of Torts:

One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
(a) the relation concerns a matter involved in the competition between the actor and the other and
(b) the actor does not employ wrongful means and
(c) his action does not create or continue an unlawful restraint of trade and
(d) his purpose is at least in part to advance his interest in competing with the other.

*Id.* at 559, 704 A.2d 1364. Plaintiff appears to argue that because defendant has not stated an antitrust claim, plaintiff's conduct satisfies the elements of protected competition under *E Z Sockets.* Plaintiff's argument, however, is premised on this Court finding that defendant has failed to state an antitrust claim. As the Court finds just the opposite, the conduct alleged in defendant's antitrust claim could form the basis of defendant's tortious interference with prospective economic advantage claim. Furthermore, to the extent plaintiff argues that its purpose was to advance its own interest in competing with defendant, that argument is more properly the subject of a motion for summary judgment rather than a motion to dismiss.

**\*12** Plaintiff also argues that defendant's tortious interference claim must fail because defendant failed to identify a specific prospective customer or contract that plaintiff interfered with. In *Lucas Industries, Inc. v. Kendiesel, Inc.,* 1995 WL 350050, \*8-9 (D.N.J. June 9, 1995), the court dismissed a claim for tortious interference with prospective economic advantage because of the counterclaimant's failure to identify any customer or contract that it was likely to consummate, but failed to consummate, as a result of the plaintiff's actions. *See also Storis, Inc. v. GERS Retail Systems, Inc.,* 1995 WL 337100, \*5 (D.N.J. May 31, 1995).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 10

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

Plaintiff would have the Court read these cases to require a pleading party to name a specific prospective customer or contract with which another party interfered. The Court is not convinced, however, that such specificity in pleading is required under the notice pleading standard. Here, defendant alleged that plaintiff induced some prospective customers of defendant to breach non-disclosure agreements they had entered into with defendant for the purpose of learning pricing information so that plaintiff could sell its product to those consumers at a lower price. (Countercl. at ¶ 5(b).) Defendant also alleged that plaintiff interfered with a tentative agreement that one customer had entered into with defendant by offering to provide the customer with a free copy of plaintiff's product and to pay off any debt that customer owed to defendant. (Countercl. at ¶ 5(c).) The Court is satisfied that defendant has sufficiently alleged that plaintiff has interfered with prospective customers or contracts for purposes of stating a claim for tortious interference with prospective economic advantage.

The Court finds that defendant has sufficiently stated a claim for tortious interference with prospective economic advantage and that plaintiff's motion to dismiss Count IV of the Counterclaim is denied.

### B. Tortious Interference with Contract

To state a claim for tortious interference with a contract, a pleading party must prove: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *214 Corp. v. Casino Reinvestment Development Authority,* 280 N.J.Super. 624, 628, 656 A.2d 70 (N.J.Super.L.1994).

Defendant makes numerous allegations with respect to its tortious interference with a contract claim: Defendant had prospective customers sign non-disclosure agreements that prohibited customers from revealing information such as pricing; on at least one occasion or more, plaintiff

induced prospective customers to breach the non-disclosure agreements; plaintiff induced such breaches to learn about defendant's pricing so that it could undersell defendant; the non-disclosure agreements were contracts; plaintiff knew of the non-disclosure agreements and knew that the customers would have to breach such agreements to provide plaintiff with the information it desired; plaintiff purposely disrupted the contractual arrangement between defendant and its prospective customers; plaintiff acted with the purpose of improperly competing with defendant and; defendant has suffered damages as a result of plaintiff's conduct. (Countercl. at ¶¶ 34-43.)

**\*13** Plaintiff first argues that defendant's failure to identify a specific contract with which plaintiff interfered is lethal to its claim. Plaintiff relies on *Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT,* 1997 WL 576402, \*20 (D.N.J. Sept.12, 1997) where the court dismissed the plaintiffs' tortious interference with contract count "because the plaintiffs have failed to allege the existence of any contract that was the subject of intended interference." The Court agrees with defendant, however, that it has alleged more than the plaintiffs in *Automated Salvage* to withstand a motion to dismiss. Unlike the plaintiffs in *Automated Salvage,* defendant has alleged the existence of a contract with which plaintiff interfered-the non-disclosure agreements. And as the Court has already determined, defendant is not required to plead the facts of such contract with the particularity that plaintiff would require.

Plaintiff also argues that defendant has failed to allege a coherent theory of damages that could flow from interference with the non-disclosure agreement. Plaintiff appears to argue that because defendant has no protectable interest in avoiding price competition, defendant's tortious interference with contract claim must fail. As the Court reads defendant's allegations, defendant alleges that it has lost sales, good will, growth opportunities, and suffered pecuniary harm because plaintiff induced defendant's prospective customers to breach non-disclosure agreements they had entered into with defendant by disclosing defendant's pricing information to plaintiff so plaintiff could undersell

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                       Page 11

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

defendant. That antitrust laws are designed to protect competition, not competitors, *Brunswick Corp.,* 42 U.S. at 488, does not mean that the damages alleged by defendant cannot flow from plaintiff's tortious interference with a contract. That the conduct which amounts to tortious interference also supports an antitrust claim is of no legal consequence. For these reasons, plaintiff's motion to dismiss Count V of the Counterclaim is denied.

### III. Count VI

Plaintiff's final challenge is to defendant's unfair competition claim. Defendant alleges that "[s]ome or all of the conduct of Syncsort alleged in the foregoing paragraphs of this counterclaim constitute common-law unfair competition," and that as a result, defendant has "lost sales, good will, normal growth opportunities, and suffered pecuniary injury. " (Countercl. at ¶¶ 45-46.)

While plaintiff would have the Court limit the cause of action of unfair competition to the passing off of one's goods or services as those of another and unprivileged imitation, *see SK & F, Co. v. Premo Pharm. Labs., Inc.,* 625 F.2d 1055, 1062 (3d Cir.1980), New Jersey courts have indicated that unfair competition should not be defined so narrowly. Recently, in *Ryan v. Carmona Bolen Home for Funerals,* 341 N.J.Super. 87, 92, 775 A.2d 92 (N.J.Super.A.D.2001), the Appellate Division repeated this perspective:
**\*14** [T]he essence of unfair competition is fair play. Thus, the purpose of the law regarding unfair competition is to promote higher ethical standards in the business world. Accordingly, the concept is deemed as flexible and elastic as the evolving standards of commercial morality demand. The judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair. The law must be sufficiently flexible to accommodate those goals.

*Id.* (citations and quotations omitted). Thus, the Court will not dismiss defendant's unfair competition claim because it does not involve the passing off of goods or unprivileged imitation. To the extent that defendant argues that the actions

giving rise to its copyright infringement claim amount to unprivileged imitation for purposes of an unfair competition claim, plaintiff argues that such claim is preempted by the Copyright Act. Section 301 of the Copyright Act reads:On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

11.U.S.C. § 301. In interpreting this statute, courts have "consistently held that unfair competition actions arising from an allegedly unauthorized copying or other acts which would violate the exclusive rights within the general scope of copyright are preempted by the Copyright Act." *Tannock v. Review Trading Corp., Inc.,* 1986 WL 15150, \*5 (D.N.J. May 2, 1986). To the extent defendant's unfair competition claim relies on the copyright infringement conduct alleged in Count III, defendant's unfair competition claim must fail.

For these reasons, plaintiff's motion to dismiss Count VI of the Counterclaim is denied in part and granted in part.

### CONCLUSION

Plaintiff's motion to dismiss Counts I, IV and V of the Counterclaim is DENIED and plaintiff's motion to dismiss Count VI of the Counterclaim is GRANTED in part and DENIED in part.

D.N.J.,2005.
Syncsort Inc. v. Innovative Routines Intern., Inc.
Slip Copy, 2005 WL 1076043 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2559485 (Trial Motion, Memorandum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 1076043 (D.N.J.)
**(Cite as: Slip Copy)**

and Affidavit) Defendant's Brief in Opposition to
Plaintiff's Motion to Dismiss Counts I, IV, V and VI
of Defendant's Counterclaim (Oct. 18, 2004)
• 2004 WL 2559465 (Trial Pleading) Answer,
Affirmative Defenses and Counterclaim (Aug. 26,
2004)
• 2004 WL 2559477 (Trial Motion, Memorandum
and Affidavit) Defendant's Brief in Opposition to
Plaintiff's Motion for A Preliminary Injunction
(Aug. 18, 2004)
• 2004 WL 2559472 (Trial Motion, Memorandum
and Affidavit) Memorandum of Law in Support of
Plaintiff's Order to Show cause for A Preliminary
Injunction (Aug. 13, 2004)
• 2004 WL 2559458 (Trial Pleading) Complaint
and Demand for Jury Trial (Jul. 29, 2004)
• 2:04cv03623 (Docket) (Jul. 29, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.