## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

SYNOPSYS, INC.,
a Delaware Corporation,

        Plaintiff and
        Counter-Defendant,

    v.                        Case No. 05-701-GMS

MAGMA DESIGN AUTOMATION, INC., a
Delaware Corporation

        Defendant and
        Counterclaimant.

---

### DEFENDANT MAGMA DESIGN AUTOMATION, INC.'S ANSWERING BRIEF
### ON SYNOPSYS, INC.'S MOTION TO DISMISS COUNTERCLAIMS 1 - 6

                            William J. Wade (#704)
                            wade@rlf.com
                            Richards, Layton & Finger, P.A.
                            One Rodney Square
                            920 North King Street
                            Wilmington, DE  19801
                            (302) 651-7700
                            Attorneys for Defendant and
                            Counterclaimant
                            Magma Automation, Inc.

OF COUNSEL:
James Pooley
L. Scott Oliver
Marc D. Peters
Anupam Sharma
Milbank Tweed Hadley & McCloy LLP
Five Palo Alto Square, 7th Floor
3000 El Camino Real
Palo Alto, CA  94306-2109
650-739-7000

Dated:  December 7, 2005

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ................................................................................................. 1

II.  NATURE AND STAGE OF PROCEEDING ..................................................... 1

III. SUMMARY OF ARGUMENT ........................................................................... 1

IV.  STATEMENT OF FACTS .................................................................................. 2

V.   ARGUMENT ...................................................................................................... 3

   A.   The Counterclaims Provide Notice Of The Nature and Substance Of
        Magma's Claims ....................................................................................... 3

   B.   Magma Has Pled Antitrust Injury Arising From Synopsys's
        Anticompetitive Conduct .......................................................................... 4

        1.   Synopsys's Anticompetitive Conduct Will Adversely Affect
             Competition By Excluding Magma From The Relevant Markets ........... 5

        2.   In The Scan Chain and The Logic Synthesis Markets, Elimination
             Of Even One Participant Will Inhibit Competition ................................ 7

        3.   Synopsys's Anticompetitive Conduct Will Lead To Higher
             Consumer Prices And Reduced Innovation In The SCAN Market
             and The Logic Synthesis Market ............................................................ 8

        4.   Synopsys's Assertion Of Invalid Patents Injures The Public And
             The Markets .......................................................................................... 10

        5.   Magma Can Prove Antitrust Injury ...................................................... 10

   C.   Magma Has Properly Pled All The Elements Of A Lanham Act Claim ............ 11

        1.   The Third Circuit Requires Magma To Plead Five Elements ............... 11

        2.   Rule 9 Applies Only To Fraud And Mistake, Not To Violations Of
             the Lanham Act ..................................................................................... 12

   D.   The Court Has Subject Matter Jurisdiction Over Magma's State Law
        Claims ..................................................................................................... 14

   E.   In The Alternative, Magma Requests Leave To Amend Its Counterclaims ....... 14

VI.  CONCLUSION ................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Brotech Corp. v. White Eagle Int'l Techs. Group, Inc.,*
No. CIV.A.03-232, 2004 WL 1427136 (E.D. Pa.June 21, 2004) .................................... 5, 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977) .................................................................................................... 4

*City of Pittsburgh v. West Penn. Power Co.,*
147 F.3d 256 (3d Cir. 1998) ........................................................................................ 11

*Conley v. Gibson,*
355 U.S. 41 (1957) .................................................................................................. 4, 10

*Daniel v. American Bd. of Emergency Med.,*
428 F.3d 408 (2d Cir. 2005) ........................................................................................ 11

*Dial A Car, Inc. v. Transportation, Inc.,*
82 F.3d 484 (D.C. Cir. 1996) ........................................................................................ 9

*DM Research, Inc. v. College of Am. Pathologists,*
170 F.3d 53 (1st Cir. 1999) .......................................................................................... 11

*Enzo Life Sciences, Inc. v. Digene Corp.,*
295 F.Supp.2d 424 (D.Del. 2003) ......................................................................... 4, 11, 12

*France Telecom S.A. v. Novell, Inc.,*
No. 102-437-GMS, 2002 WL 31355255 (D.Del. Oct. 17, 2002) ...................................... 14

*Fuentes v. South Hills Cardiology,*
946 F.2d 196 (3d Cir. 1991) ....................................................................................... 5, 7

*Gill v. Delaware Park, LLC,*
294 F.Supp.2d 638 (D.Del. 2003) ................................................................................. 5

*Gillette Co. v. Philips Oral Healthcare, Inc.,*
2001 U.S. Dist. LEXIS 18624 (S.D.N.Y. 2001) ............................................................. 13

*H.H. Fluorescent Parts, Inc. v. D.M. Tech & Energy, Inc.,*
CIV. A. No. 04-CV-1997, 2005 U.S. Dist. LEXIS 26699 (E.D.Pa. 2005) .......................... 13

*Handgards, Inc. v. Ethicon, Inc.,*
601 F.2d 986 (9th Cir. 1979) ......................................................................................... 6

*Hewlett-Packard Co. v. Arch Assoc. Corp.,*
908 F.Supp. 265 (E.D.Pa. 1995) .................................................................................... 7

*Hospital Bldg. Co. v. Trustees of the Rex Hosp.,*
425 U.S. 738 (1976) .................................................................................................... 4

*In re K-Dur Antitrust Litig.,*
338 F.Supp.2d 517 (D.N.J. 2004) .................................................................................. 8

*In re Tower Air, Inc.,*
416 F.3d 229 (3d Cir. 2005) ........................................................................................ 13

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer
Pharms., Inc.,*
19 F.3d 125 (3d Cir. 1994) .......................................................................................... 12

*Kalmanovitz v. Heileman Brewing Co*,
  595 F.Supp. 1385 (D.Del. 1984) ............................................................................. 11

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
  507 U.S. 163 (1993) ...................................................................................... 12, 13

*Leeward Petroleum Ltd , v. Mene Grande Oil Co* ,
  415 F.Supp. 158 (D.Del. 1976) ..................................................................... 3, 4, 10

*Les Shockley Racing, Inc , v. National Hot Rod Assoc* ,
  884 F.2d 504 (9th Cir. 1989) ................................................................................... 7

*Lum v. Bank of Am* ,
  361 F.3d 217 (3d Cir. 2004) .................................................................................... 4

*Lyon v. Whisman*,
  45 F.3d 758 (3d Cir. 1995) .................................................................................... 14

*Mathews v. Lancaster Gen. Hosp.*,
  87 F.3d 624 (3d Cir. 1996) ................................................................................. 5, 8

*Max Daetwyler Corp. v. Input Graphics, Inc.*,
  608 F.Supp. 1549 (E.D. Pa. 1985)......................................................................... 13

*Medtronic, Inc. v. Boston Scientific Corp.*,
  No. CIV.A.98-478-SLR, 2001 WL 652016 (D.Del. March 30, 2001)................................. 10

*Menkowitz v. Pottstown Mem'l Med. Ctr.*,
  154 F.3d 113 (3d Cir. 1998) ................................................................................... 4

*Nami v. Fauver*,
  82 F.3d 63 (3d Cir. 1996) ...................................................................................... 4

*Neitzke v. Williams*,
  490 U.S. 319 (1989) ............................................................................................. 4

*Nobelpharma AB v. Implant Innovations, Inc.*,
  141 F.3d 1059 (Fed.Cir. 1998) .............................................................................. 10

*Norton v. Curtiss*,
  433 F.2d 779 (C.C.P.A.1970).................................................................................. 10

*Oltz v. St. Peter's Cmty. Hosp* ,
  861 F.2d 1440 (9th Cir. 1988) ................................................................................. 8

*Piecknick v. Commonwealth of Pa.*,
  36 F.3d 1250 (3d Cir. 1994) ................................................................................... 4

*Podiatrist Ass'n Inc. v. La Cruz Azul de Puerto Rico, Inc.*,
  32 F.3d 6 (1st Cir. 2003).................................................................................... 13

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*,
  324 U.S. 806 (1945)........................................................................................... 10

*Rolite, Inc. v. Wheelabrator Envir. Sys., Inc.*,
  958 F. Supp. 992 (E.D.Pa. 1997)........................................................................... 11

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ................................................................................ 13

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) .......................................................................................... 4, 5

*Summit Health, Ltd. v. Pinhas*,
  500 U.S. 322 (1991) ............................................................................................. 7

*Syncsort Inc. v. Innovative Routines Int'l, Inc.*,
    No. CIV.04-3623(WHW), 2005 WL 1076043 (D.N.J. May 6, 2005) .............................. 5, 8

*Syrxx, Inc. v. Oculus Pharm., Inc.*,
    No. CIV.A.02-321-JJF, 2002 WL 1840917 (D.Del. Aug. 09, 2002) ..................................... 4

*U.S. v. Teeven*,
    CIV.A.No.92-418-LON, 1992 WL 683682 (D.Del. Oct. 27, 1992) ................................... 14

*United Magazine Co. v. Murdoch Magazines Distribution, Inc.*,
    No. 00 CIV.3367 (AGS) 2001 WL 1607039 (S.D.N.Y. Dec. 17, 2001).............................. 13

*United States Gypsum Co., v. Indiana Gas Co., Inc.*,
    350 F.3d 623 (7th Cir. 2003) ........................................................................................ 9

*Villano v. CBS, Inc.*,
    176 F.R.D. 130 (S.D.N.Y. 1997)................................................................................. 12

*Volunteer Fireman's Ins. Servs., Inc. v. McNeil & Co.*,
    221 F.R.D. 388 (W.D.N.Y. 2004) ............................................................................. 13

*Walker Process Equip., Inc. v. Food Mach. and Chem. Corp.*,
    382 U.S. 172 (1965) ..................................................................................................... 6

## STATUTES

28 U.S.C. § 1367 ................................................................................................................ 14

## RULES

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 2, 3, 5, 8, 10

Fed. R. Civ. P. 15(a) .............................................................................................................. 14

Fed. R. Civ. P. 8.................................................................................................................... 12

Fed. R. Civ. P. 9(b) ................................................................................................. 1, 2, 12, 13

Magma Design Automation, Inc. (Magma) hereby respectfully opposes Synopsys, Inc.'s (Synopsys) motion to dismiss Count 1-6 of its counterclaims.

## I.    INTRODUCTION

Synopsys advances three arguments against Magma's Sherman Act and Lanham Act claims. None withstands scrutiny:

- *First*, that Magma fails to allege Synopsys caused antitrust injury. Synopsys is incorrect. Magma alleges that Synopsys's anticompetitive conduct (1) has injured Magma, (2) will adversely affect the relevant markets by excluding Magma as a competitor, and (3) will harm consumers in these markets.

- *Second*, that Magma's Lanham Act claims do not meet the particularity requirements for pleading fraud. But Lanham Act claims need not be pled under Fed. R. Civ. P. 9(b), and Magma meets the Third Circuit standard for pleading a Lanham Act violation.

- *Third*, that this Court does not have jurisdiction over Magma's state law claims. Because Magma's state law claims arise from the same set of facts that support Magma's Sherman Act and Lanham Act claims, the Court has jurisdiction over the state law claims.

## II.    NATURE AND STAGE OF PROCEEDING

Synopsys filed this case alleging that Magma infringes three of its patents. Magma denied Synopsys's allegations of infringement, and alleged that Synopsys obtained two of the three asserted patents through inequitable conduct, rendering the patents invalid and unenforceable. Magma also filed counterclaims, alleging that Synopsys's assertion of two invalid patents, and other anticompetitive conduct, violates the Sherman Act, the Lanham Act, and state unfair competition law. Magma also counterclaimed for infringement of a Magma patent.

## III.    SUMMARY OF ARGUMENT

1.    Rule 8 requires only that Synopsys be given notice of the nature of Magma's claims and the substance of its allegations. This is not a motion for summary judgment—Magma need not now prove the detailed facts underlying each of its claims.

2.    Magma's complaint should not be dismissed under Rule 12(b)(6) because Synopsys has failed to demonstrate that Magma cannot prove *any* set of facts supporting relief. And because of the inherent factual complexity of antitrust issues, antitrust complaints are to be liberally construed.

4.    Magma has alleged antitrust injury arising out of Synopsys's illegal conduct. Antitrust injury is that which arises from anticompetitive behavior and harms competition or consumers in a relevant market.

5.    Synopsys's anticompetitive behavior is grounded in its assertion of wrongfully obtained patents, its conduct calculated to drive Magma out of business, and its efforts to monopolize the SCAN Market and the Logic Synthesis Market (two relevant segments of the overall Electronic Design Automation ("EDA") software market.)

6.    Magma has alleged sufficient facts which, if proven at trial, demonstrate that Synopsys's illegal conduct would exclude Magma from both relevant markets, would reduce competition in these two relevant markets, and would elevate prices in those markets—adversely affecting consumers.

8.    With respect to the Lanham Act claims, the Supreme Court has held that Rule 9 is limited to claims of fraud and mistake, and that Lanham Act claims do not fall within its ambit.

9.    Magma's state law claims in Counts 4-6 arise from the same set of facts as its Sherman Act and Lanham Act claims. Therefore, the Court has supplemental jurisdiction over the state law claims.

## IV.    STATEMENT OF FACTS

On September 17, 2004, Synopsys sued Magma in the Northern District of California for infringement of three patents, U.S. Patent Nos. 6,378,114 ("the '114 Patent"), 6,453,446 ("the '446 Patent"), and 6,725,438 ("the '438 Patent"). Although the last two of these patents had been assigned to Magma, Synopsys alleges that a named inventor had previously assigned the relevant inventions to Synopsys when he worked there.

2

On January 28, 2005, Synopsys attempted to assign the '446 Patent, the '438 Patent and a pending continuation of the '438 Patent to itself. The USPTO refused Synopsys's request and warned that further attempts would be regarded as "correspondence filed for an improper purpose." On April 18, 2005, Synopsys filed an action in Germany seeking to obtain ownership of the European application corresponding to the '446 Patent, and on July 29, 2005, Synopsys filed an action in Japan attempting to acquire ownership of the Japanese application corresponding to the '446 Patent.

On September 26, 2005, Synopsys filed yet another lawsuit, this time in California state court, alleging that that Magma had engaged in unfair competition by denying that Magma infringes the '446 and '438 Patents and by asserting that the patents are invalid. On the same day, Synopsys filed this action, claiming infringement of three new patents, U.S. Patent No. 6,434,733 ("the '733 Patent"), U.S. Patent No. 6,766,501 ("the '501 Patent"), and U.S. Patent No. 6,192,508 ("the '508 Patent").

In its answer and counterclaim, Magma has alleged that two of the three patents-in-suit—the '733 Patent and the '501 Patent—were improperly obtained, D.I. 7 at ¶¶32-36, 39-42, 67-102, and that Synopsys is unlawfully asserting them to exclude Magma from the EDA markets, specifically from the SCAN Market and the Logic Synthesis Market. D.I. 7 at ¶¶103-113. Magma alleged that Synopsys's unlawful assertion has increased the barriers to entry in these markets, that Synopsys's domination of these markets is stifling competition, and that Synopsys will injure consumers by elevating prices and dampening product innovation in these markets. D.I. 7 at ¶103, 111-113, and 117. Nevertheless, Synopsys now seeks to dismiss Magma's Sherman Act and Lanham Act claims, as well as the dependent state law claims.

## V.     ARGUMENT

### A.     The Counterclaims Provide Notice Of The Nature and Substance Of Magma's Claims

The standard by which a court determines the sufficiency of a complaint under a Rule 12(b)(6) motion is well known. *Leeward Petroleum Ltd., v. Mene Grande Oil Co.*, 415 F.Supp. 158, 162 (D.Del. 1976). A court must accept as true all allegations in the pleading and

must draw all reasonable factual inferences in the light most favorable to the non-moving party. *Syrxx, Inc. v. Oculus Pharm., Inc.*, No. CIV.A.02-321-JJF, 2002 WL 1840917, *1 (D.Del. Aug. 09, 2002) (citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)); *Piecknick v. Commonwealth of Pa.*, 36 F.3d 1250, 1255 (3d Cir. 1994). "Additionally, a plaintiff need not allege the existence of every element of his or her claim as long as the allegations plead facts sufficient to provide the defendant with 'fair notice of the transaction.'" *Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F.Supp.2d 424, 427 (D.Del. 2003) (citing *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998)). In considering such a motion, the Court should not decide whether the non-moving party will ultimately prevail on the claim at issue, but only whether the party is "entitled to offer evidence in support" of the claim. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Because of the inherently fact-dependent nature of antitrust claims, courts are "extremely liberal in construing antitrust complaints." *Lum v. Bank of Am.*, 361 F.3d 217, 228 (3d Cir. 2004); *see also Leeward Petroleum*, 415 F.Supp. at 167 ("Anti-trust complaints must be leniently read, with deference to proof of complex factual situations.") In antitrust cases, "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of the Rex Hosp.*, 425 U.S. 738, 746 (1976).

### B.    Magma Has Pled Antitrust Injury Arising From Synopsys's Anticompetitive Conduct

An antitrust plaintiff must allege an antitrust injury that was caused by the defendant's anticompetitive conduct.[1] Antitrust injury is damage to competition "of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993). Thus antitrust

---

[1] Synopsys does not dispute that Magma has properly pled all the remaining elements required under Section 2 of the Sherman Act—it argues only that Magma has not alleged antitrust injury.

4

injury must adversely affect either (1) competition in a relevant market or (2) consumers in that market.

In the Third Circuit, injury to competition can be shown through a defendant's unfair exclusion of the plaintiff from participation in a market, a reduction in competition in that market, or harm to consumers by raising prices or reducing innovation. *Gill v. Delaware Park, LLC*, 294 F.Supp.2d 638 (D.Del. 2003); *Brotech Corp. v. White Eagle Int'l Techs. Group, Inc.*, No. CIV.A.03-232, 2004 WL 1427136, at *4 (E.D. Pa.June 21, 2004) (citing *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996)).

### 1. Synopsys's Anticompetitive Conduct Will Adversely Affect Competition By Excluding Magma From The Relevant Markets

The Sherman Act is directed "against conduct which unfairly tends to destroy competition itself." *Spectrum Sports*, 506 U.S. at 458. The Third Circuit holds the antitrust injury requirement satisfied where plaintiff alleges that it was "excluded from participation in a particular market, and the result was a decrease in competition in that market." *Gill*, 294 F.Supp.2d at 644 (denying defendant's Rule 12(b)(6) motion to dismiss alleging that the plaintiff had failed to plead antitrust injury); *see also Fuentes v. South Hills Cardiology*, 946 F.2d 196 (3d Cir. 1991); *Syncsort Inc. v. Innovative Routines Int'l, Inc.*, No. CIV.04-3623(WHW), 2005 WL 1076043, at *10 (D.N.J. May 6, 2005) (holding that the defendant's allegations sufficiently alleged "antitrust injury in the form of reduced competition rather than an injury to a competitor" and denying plaintiff's Rule 12(b)(6) motion to dismiss).

Magma's counterclaim alleges that:

- Synopsys obtained two of the patents-in-suit through fraud at the USPTO, and as a result those patents are invalid. D.I. 7 at ¶¶67-101.

- Synopsys is asserting those invalid patents against Magma even though it knows that the patents are invalid. *Id.*; D.I. 1.

Synopsys's assertion of invalid patents is *per se* anticompetitive conduct under *Walker Process Equip., Inc. v. Food Mach. and Chem. Corp.*, 382 U.S. 172 (1965); *see also Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 992 at n.10 (9th Cir. 1979).

Second, Magma alleges that Synopsys's conduct excludes Magma from the SCAN Market and the Logic Synthesis Market (relevant markets within the overall EDA industry) with a concomitant reduction in competition in those markets.

Synopsys has charged Magma with infringement of the '733 and '501 Patents, D.I. 1 at ¶¶14 and 17, which relate to scan-chain partitioning. D.I. 7 at ¶¶63-66. In doing so, Synopsys acknowledges that Magma sells products that incorporate scan-chain partitioning technology. D.I. 7 at ¶¶14 and 17. In its counterclaim Magma alleges:

- A relevant market is the market for scan-chain insertion software (the "SCAN Market"). D.I. 7 at ¶108.

- To be competitive in this market, Magma's software product must perform scan-chain partitioning. D.I. 7 at ¶109.

- The products sold in the SCAN Market are not interchangeable with products outside the market. D.I. 7 at ¶109.

- A second relevant market is the Logic Synthesis Market. D.I. 7 at ¶106.

- To be competitive in this market, Magma's software product must perform scan-chain partitioning. D.I. 7 at ¶107.

- Therefore, using the exclusionary power of the invalid Synopsys patents, Synopsys seeks to prevent Magma from selling its products in the Scan Market and the Logic Synthesis Market, and that exclusion will naturally reduce competition in both relevant markets. D.I. 7 at ¶¶ 113, 117, 136, and 140.[2]

Magma's factual allegations, which must be accepted as true and interpreted favorably for Magma, show that Synopsys has sought to unfairly exclude Magma from the two

---

[2] In addition to illegal assertion of invalid patents, Magma alleges that Synopsys has been trying to eliminate Magma as a competitor through other improper means. For instance, Magma alleges that Synopsys has attempted to create exclusive-dealing arrangements with Magma's customers, in a further effort to stifle competition. D.I. 7 at ¶116.

relevant markets and has reduced competition in those markets. This is more than enough to defeat a motion to dismiss. *See Hewlett-Packard Co. v. Arch Assoc. Corp.*, 908 F.Supp. 265 (E.D.Pa. 1995) (holding that allegation of anticompetitive acts which led to "restrictions of consumer choice" and "eliminated price competition" were sufficient to plead antitrust injury in the marketplace.)

### 2.    In The Scan Chain and The Logic Synthesis Markets, Elimination Of Even One Participant Will Inhibit Competition

Markets with limited competition warrant heightened antitrust concern. In such markets, elimination of even one participant can adversely affect the entire market by discouraging other participants from competing in that market. "[C]onvergence of injury to a market competitor and injury to competition is possible when the relevant market is both narrow and discrete and the market participants are few." *Les Shockley Racing, Inc., v. National Hot Rod Assoc.*, 884 F.2d 504, 508-9 (9th Cir. 1989). Therefore, the "competitive significance of the plaintiff's exclusion from the market must be measured . . . by a general evaluation of the impact of the restraint on other participants and potential participants in the market from which he has been excluded." *Fuentes*, 946 F.2d at 200 (emphasis added) (quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991)).

Elimination of Magma from the SCAN Market and the Logic Synthesis Market would destroy the competitive dynamic of those markets. Magma alleges that:

- The Scan Market and the Logic Synthesis Market both experience limited competition because they are defined by specific types of EDA software employed to design highly complex integrated circuits. D.I. 7 at ¶¶ 106 and 108.
- They are essentially three and two-player markets respectively. D.I. 7 at ¶¶111 and 112.
- Both markets are dominated by Synopsys with a 91% share. *Id.*
- The closest competitor to Synopsys in either market has only a 7% share. *Id.*
- Products in these markets are interchangeable with other products in the same respective market. D.I. 7 at ¶¶107 and 109.

7

• Synopsys's anticompetitive practices have increased the already high barriers to entry in these markets, D.I. 7 at ¶113.

Synopsys's success in excluding Magma will adversely impact competition in these markets because other players will not be able to challenge Synopsys's hegemony, and potential competitors will avoid entry. Either scenario would effectively destroy competition in these markets—precisely the result the antitrust laws are designed to prevent.

In such "narrow and discrete" markets, courts have held that allegations like Magma's are more than sufficient to overcome a motion to dismiss. For example, in *SyncSort*, the relevant market comprised only six participants who sold sorting software running on UNIX-based computers. The possible elimination of just one competitor from that market could be "antitrust injury in form of reduced competition" and was sufficient to deny a Rule 12(b)(6) motion to dismiss. *Syncsort*, 2005 WL 1076043, at *10; *see also Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440 (9th Cir. 1988) (exclusion of a single nurse anesthetist was a reduction in competition when the exclusion reduced the number of competing anesthesia service providers from five to four, and the defendant controlled 83% of the relevant market).

### 3. Synopsys's Anticompetitive Conduct Will Lead To Higher Consumer Prices And Reduced Innovation In The SCAN Market and The Logic Synthesis Market

Antitrust injury can also be shown if a defendant's illegal behavior harms consumers. "The Third Circuit has recognized that, because the purpose of the antitrust laws is to protect competition, the court must examine the antitrust injury question from the viewpoint of the consumer." *Brotech Corp.*, 2004 WL 1427136, at *4 (citation omitted). "An antitrust plaintiff must prove that challenged conduct affected the prices, quantity or quality of goods or services, not just his own welfare." *Id.* (quoting *Mathews*, 87 F.3d at 641). *See also In re K-Dur Antitrust Litig.*, 338 F.Supp.2d 517, 535 (D.N.J. 2004) (allegation that defendant's anticompetitive conduct led to higher prices was sufficient to survive defendant's motion to dismiss based on Rule 12(b)(6)).[3]

---

[3] Other circuits have also recognized potential antitrust injury flowing from increased prices. Judge Easterbrook, a noted antitrust jurist, ruled that "the potential to establish injury through elevation of price

Magma has alleged that Synopsys's conduct will cause injury to the market by
increasing prices in these market.[4] D.I. 7 at ¶117. Synopsys is already engaging in
anticompetitive behavior by asserting invalid patents. Synopsys dominates the relevant markets
and has raised barriers to entry in these markets. Synopsys's current monopoly, further
solidified, may not be readily reversed. D.I. 7 at ¶113. Given Synopsys's recent and continuing
anticompetitive behavior and its control over the relevant markets, it is reasonable to expect that
Synopsys will raise prices for consumers.

In its brief, Synopsys argues that its "disparaging remarks about Magma to
customers" would "force Magma to sell at lower, not higher, prices." D.I. 10 at p.11. That
misses the point. Magma's allegation is that Synopsys's monopolistic behavior will enable it to
raise prices and harm consumers. Speculation about what Magma may do in the interim does not
negate the allegation.

Magma has also alleged that Synopsys's dominance of the Logic Synthesis
Market is harming consumers by stifling product innovation. The October 2004 Gartner Report,
referenced in Magma's counter-claim, D.I. 7 at ¶¶111 and 112, found that complex integrated
circuit designs require better functionality than is offered by Synopsys's products. Nonetheless,
the Gartner Report concludes, Synopsys's dominance of the market enables it to continue to sell
its products. In short, consumers in the Logic Synthesis Market are being harmed by a lack of

---

in the affected market satisfies any distinct 'antitrust standing' requirement." *United States Gypsum Co.,
v. Indiana Gas Co., Inc.*, 350 F.3d 623, 627 (7th Cir. 2003). "A private plaintiff must show antitrust
injury . . . by reason of those things that make the practice unlawful, such as reduced output and higher
prices." *Id.* at 626-27.
[4] Synopsys does not dispute Magma's allegation that prices in the relevant market will rise because of its
anticompetitive conduct. Rather, Synopsys relies on *Dial A Car, Inc. v. Transportation, Inc*, 82 F.3d 484
(D.C. Cir. 1996) to argue that "a bald assertion that prices might rise . . . is insufficient as a matter of law
to support a antitrust claim." D.I. 9 at p.10. But Magma's allegations are not the "bald assertions" of *Dial
A Car*:
(1) The *Dial* plaintiff failed to allege the defendants' conduct was anticompetitive. Magma has alleged
that Synopsys is asserting fraudulently obtained patents. D.I. 6 at ¶¶67-104;
(2) The *Dial* plaintiff did not allege the defendants had market power. Magma has alleged that Synopsys
essentially controls both the relevant markets. D.I. 6 at ¶¶111 and 112; and
(3) The *Dial* plaintiff didn't allege the market could be monopolized. Magma does. D.I. 6 at ¶¶111 and
112.

cutting edge products. And Synopsys, with a monopoly in that market, is able to exclude innovative competitors such as Magma. This is archetypal antitrust injury to consumers.

### 4. Synopsys's Assertion Of Invalid Patents Injures The Public And The Markets

Public interests are intertwined with the patent system, and the public has "a paramount interest in seeing that patent monopolies spring from a background free from fraud and other inequitable conduct." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 816 (1945). "Where the fraud is committed, injury to the public through a weakening of the Patent System is manifest." *Norton v. Curtiss*, 433 F.2d 779, 796 (C.C.P.A.1970); *see also Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed.Cir. 1998).

Magma alleges that Synopsys obtained the patents-in-suit by committing fraud at the USPTO, and that Synopsys is knowingly asserting fraudulently obtained patents. D.I. 7 at ¶¶66-102. As a result, Magma, the USPTO and the public—including competition—have been injured by Synopsys's assertion of invalid patents.[5] D.I. 7 at ¶103.

### 5. Magma Can Prove Antitrust Injury

To prevail on a Rule 12(b)(6) motion, the movant must show beyond doubt that the claimant cannot prove any set of facts that would entitle it to relief. *Medtronic, Inc. v. Boston Scientific Corp.*, No. CIV.A.98-478-SLR, 2001 WL 652016 (D.Del. March 30, 2001) (citing *Conley*, 355 U.S. at 45-46). Synopsys thus bears the burden of showing that Magma cannot in *any circumstance* show antitrust injury based on Synopsys's illegal conduct.

Synopsys tries to get there by referring to Magma's SEC filings. Thus, Synopsys argues that Magma's business continues to grow.[6] D.I. 10 at pp. 11 and 12. The argument fails

---

[5] Courts recognize injury to the public as injury under the antitrust laws, so long as the plaintiff has suffered injury as well. *See Leeward Petroleum*, 415 F.Supp. at 162.

[6] Synopsys's argument ignores the purpose of SEC 10-Q filings. The SEC does not require corporations to itemize damage flowing from the illegal acts of a competitor, but rather to summarize the company's financial condition. Whether Magma would have made more profits absent Synopsys's anticompetitive acts simply isn't something Magma is required to put in a 10-Q form. And in any event, Synopsys fails to note that Magma disclosed in detail the risks and injuries associated with its pending litigation matters—

for a simple reason—but for Synopsys's illegal conduct, Magma would have grown even more and would have *increased* competition in the relevant markets. That the overall market expands, or that companies in the market make profits, does not automatically foreclose antitrust injury.

Synopsys's case citations do not support its novel argument, but only reflect a number of inapposite situations in which the plaintiff could not possibly state a claim. *See Daniel v. American Bd of Emergency Med*, 428 F.3d 408, 440 (2d Cir. 2005) (plaintiff could not allege antitrust injury because it sought to *join* rather than end the exclusive arrangement); *City of Pittsburgh v. West Penn Power Co*, 147 F.3d 256 (3d Cir. 1998) (antitrust injury impossible because the two electric utilities in question could not compete under the existing regulatory scheme); *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55-56 (1st Cir. 1999) (plaintiff alleged a totally implausible conspiracy); *see also Kalmanovitz v. Heileman Brewing Co*, 595 F.Supp. 1385, 1402 (D.Del. 1984) (plaintiffs could not show antitrust injury "since the alleged violation [was]... [defendant's] weakness as a competitor and since such weakness would benefit, not hurt, its competitors such as [the plaintiff].").

Because of the fact-intensive nature of antitrust claims, the dismissal standard is higher than in other areas of the law. *Rolite, Inc. v. Wheelabrator Envir Sys, Inc*, 958 F. Supp. 992, 995 (E.D.Pa. 1997). Magma's antitrust allegations are clearly sufficient at this pleading stage, and it is respectfully submitted that Synopsys's motion should be denied.

## C. Magma Has Properly Pled All The Elements Of A Lanham Act Claim

### 1. The Third Circuit Requires Magma To Plead Five Elements

A Lanham Act plaintiff must allege that: (1) the defendant made false or misleading statements about its product or those of the plaintiff; (2) there was at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it was likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, or the like. *Enzo Life Sciences,* 295 F.Supp.2d at 427 (citing *Johnson & Johnson-*

---

including the various lawsuits with Synopsys. *See* D.I. 9, Exh. A at pp. 39, 40, and 56-59; and Exh. B at pp. 35, 36, and 51-53.

11

*Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)).

Magma has alleged, expressly or by clear implication, all five elements:

- First, that Synopsys made false and misleading statements to Magma's customers and the public by accusing Magma's products of infringing the patents-in-suit, when Synopsys knows that these patents are invalid and unenforceable. D.I. 7 at ¶¶ 115, 146, and 147.

- Second, Magma's customers, who have insufficient reason to investigate, will be deceived into believing that Magma's products do infringe the patents-in-suit.

- Third, allegations of patent infringement carry with them the specter of an injunction. A potential or a current customer of Magma will naturally be influenced by Synopsys's false representations in making a purchasing decision.

- Fourth, Magma is a provider of EDA software and related services and has business relationships with various customers in the United States and around the world. D.I. 7 at ¶156. Magma's products thus travel in interstate commerce.

- Fifth, Magma has been damaged Synopsys's actions in violation of the Lanham Act. D.I. 7 at ¶148.

Fed. R. Civ. P. 8 does not require the plaintiff to provide an exhaustive list of facts or to allege in detail the existence of every element of the claim. *Enzo Life*, 295 F.Supp.2d at 427. It simply requires the plaintiff to provide the defendant with fair notice of the claims. *Id.* Magma's Lanham Act claim meets this standard.

### 2.    Rule 9 Applies Only To Fraud And Mistake, Not To Violations Of the Lanham Act

Synopsys proposes a novel legal standard: all Lanham Act claims should meet the pleading requirements of Rule 9. But the U.S. Supreme Court disagrees.

In a unanimous opinion, it held that Rule 9 is limited to ***averments of fraud or mistake***. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993); *see also Villano v. CBS, Inc.*, 176 F.R.D. 130 (S.D.N.Y. 1997) (noting that "nothing in the language or history of Rule 9(b) suggests that it is intended to apply, willy-nilly,

to every statutory tort that includes an element of false statement"; "*No matter how parsed, a claim of false advertising under the Lanham Act . . . is not identical to a claim of fraud*") (emphasis added). Consequently, a claim of false advertising need not be pled with particularity under Rule 9. *Id.*; *see also United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, No. 00 CIV.3367 (AGS) 2001 WL 1607039, at \*12 (S.D.N.Y. Dec. 17, 2001) ("False advertising claims are not fraud claims."); *Gillette Co. v. Philips Oral Healthcare, Inc.*, 2001 U.S. Dist. LEXIS 18624 (S.D.N.Y. 2001) (finding that "it would not make sense to apply Rule 9 strictly" to a claim of false advertising under the Lanham Act); *H.H. Fluorescent Parts, Inc. v. D.M. Tech. & Energy, Inc.*, CIV. A. No. 04-CV-1997, 2005 U.S. Dist LEXIS 26699 (E.D.Pa. Nov. 3, 2005) (refusing to apply Rule 9 requirements to claims under the Lanham Act).

      A handful of courts have applied Rule 9 to Lanham Act allegations, but only because they found that the plaintiff was essentially alleging fraud in the market. *See Volunteer Fireman's Ins. Servs., Inc. v. McNeil & Co.*, 221 F.R.D. 388, 393-94 (W.D.N.Y. 2004) (Rule 9 applicable "since the counterclaim is essentially a claim for fraud")[7]; *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (Rule 9 applies "when the claim sounds in fraud.").[8] None of the cases cited by Synopsys are Third Circuit decisions, and the few that even relate to the Lanham Act are characterized by unusual facts. Magma claims only that Synopsys has engaged in false advertising of the sort courts routinely hold requires no particularized allegations under Rule 9.

---

[7] In *Volunteer*, the court held Rule 9(b) applicable only because the defendant alleged "that plaintiff '*brazenly, willfully and wantonly*' misrepresented the nature of the parties' products in order to *defraud* potential customers." *Volunteer*, 221 F.R.D. at 393-94 (emphasis added).

[8] Synopsys' citation to *Podiatrist Ass'n Inc. v. La Cruz Azul de Puerto Rico, Inc.*, 332 F.3d 6 (1st Cir. 2003) is odd, for the case does *not* apply Rule 9(b), but rather finds the plaintiff failed to allege one of the requisite Lanham Act elements. And *In re Tower Air, Inc.*, 416 F.3d 229 (3d Cir. 2005) is not even a Lanham Act case. Finally, Synopsys's reliance on *Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F.Supp. 1549, 1556 (E.D. Pa. 1985) is misplaced for two reasons. First, *Max Daetwyler* states that if the Lanham Act count is not purely a fraud claim, it does *not need to satisfy the requirement of Rule 9*. *See H.H. Fluorescent*, 2005 U.S. Dist. LEXIS 26699, at \*13 (summarizing the *Max Daetwyler* holding). Second, if *Max Daetwyler* supported Synsopsys's argument, the Supreme Court's subsequent *Leatherman* opinion overruled it.

**D.    The Court Has Subject Matter Jurisdiction Over Magma's State Law
Claims**

The state law counterclaims are part of the same "case or controversy" as the

federal claims over which the Court has original jurisdiction. 28 U.S.C. § 1367. Indeed,

Synopsys admits that the state law claims arise from the same "common nucleus of operative

facts" as the federal claims *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995); it simply assumes

that the federal claims are fatally defective. Therefore, because the Court should deny

Synopsys's motion to dismiss the Sherman Act and Lanham Act claims, it should also deny as to

Magma's state law claims.

**E.    In The Alternative, Magma Requests Leave To Amend Its
Counterclaims**

If the Court finds that further factual allegations by Magma are needed to support

Counts 1-3 of the counterclaim, Magma requests it be granted leave to amend.

Rule 15(a) provides that a party may amend its complaint "by leave of court . . .

and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). And "[t]he

clearest cases for leave to amend are correction of an insufficient claim or defense and

amplification of previously alleged claims or defenses." *France Telecom S.A. v. Novell, Inc.*,

No. 102-437-GMS, 2002 WL 31355255, at *1 (D.Del. Oct. 17, 2002) (citing *U.S. v. Teeven*,

CIV.A.No.92-418-LON, 1992 WL 683682, at *7 (D.Del. Oct. 27, 1992). Although Magma

believes that its current allegations are sufficient, it is prepared to provide more details, if the

Court so orders.

## VI.    CONCLUSION

At this pleading stage, the sole question is whether Magma's allegations set forth the requisite elements and provide Synopsys with notice of the nature of the claims.  There is no legitimate dispute that they do.

Therefore, it is respectfully submitted that Synopsys's motion to dismiss should be denied.

William J. Wade (#704)
wade@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
(302) 651-7700
Attorneys for Defendant and
Counterclaimant
Magma Automation, Inc.

OF COUNSEL:
James Pooley
L. Scott Oliver
Marc D. Peters
Anupam Sharma
Milbank Tweed Hadley & McCloy LLP
Five Palo Alto Square, 7th Floor
3000 El Camino Real
Palo Alto, CA  94306-2109
650-739-7000

Dated:  December 7, 2005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 7, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and which has also been served as noted:

### BY HAND

Karen Jacobs Louden, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19899

William J. Wade  (#704)

DATED:    December 7, 2005