IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYNOPSYS, INC., a Delaware Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 05-701 (GMS) |
| MAGMA DESIGN AUTOMATION, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF SYNOPSYS, INC.'S OPENING BRIEF IN SUPPORT OF
ITS MOTION TO BIFURCATE AND STAY ANTITRUST
CLAIMS, AND TO BIFURCATE AND STAY ALL
CLAIMS AFFECTED BY LIKELY PTO REEXAMINATIONS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
(302) 658-9200
Attorneys for Plaintiff Synopsys, Inc.

OF COUNSEL:
Michael Edelman
Valerie M. Wagner
DECHERT LLP
117 California Ave.
Palo Alto, CA 94304
(650) 813-4848

George G. Gordon
DECHERT LLP
2929 Arch St.
Philadelphia, PA 19104-2808
(215) 261-2382

Rebecca Dick
DECHERT LLP
1775 Eye St., N.W.
Washington, DC 20006
(202) 261-3432

January 23, 2006

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDING.......................................................... 3

SUMMARY OF ARGUMENT ..................................................................................... 4

STATEMENT OF FACTS ............................................................................................ 5

ARGUMENT ............................................................................................................... 6

I.    THE COURT SHOULD BIFURCATE AND STAY MAGMA'S
      ANTITRUST CLAIMS FROM THE PARTIES' INFRINGEMENT
      CLAIMS. ........................................................................................................... 6

      A.    Courts Routinely Bifurcate Antitrust Claims from Patent
            Infringement Claims, and Stay Related Discovery.................................... 6

      B.    Bifurcation of Infringement and Antitrust Claims Would Lessen
            Juror Confusion and Promote Efficiency.................................................. 7

            1.    Bifurcation is Needed to Prevent Jury Confusion.......................... 7

            2.    Bifurcation Would Serve the Interest of Efficiency. ..................... 8

      C.    In Addition to Bifurcation of the Antitrust Claims, Discovery
            Relating to These Claims Should be Stayed. ............................................ 9

            1.    A Stay of Discovery is Appropriate When Antitrust
                  Discovery is at the Preliminary Stages. ........................................ 9

            2.    A Stay of Discovery Is Appropriate Where Antitrust
                  Claims Involve Substantial Additional Issues. ........................... 11

            3.    A Stay is Favored When Resolution of Infringement
                  Claims Could Resolve or Narrow the Antitrust Claims.............. 12

II.   SYNOPSYS' INFRINGEMENT CLAIMS REGARDING THE '733
      AND '501 PATENTS, AS WELL AS MAGMA'S ANTITRUST
      CLAIMS, SHOULD BE STAYED PENDING REEXAMINATION OF
      THESE PATENTS........................................................................................... 13

      A.    Because Reexamination Proceedings Can Substantially Affect
            Related Litigation, the Court Should Stay Discovery of the Claims
            Relating to These Proceedings................................................................ 13

## TABLE OF AUTHORITIES

**Page**

B.    The Factors Governing a Stay Pending Reexamination Echo Those
Relevant to a Stay of Antitrust Discovery Pending Litigation of
Related Patent Issues.................................................................................. 15

C.    To Increase the Benefit of PTO Reexamination, the Court Should
Further Order that Magma Come Forward with Any Additional
Alleged Prior Art...................................................................................... 17

III.    BIFURCATION AND A PARTIAL STAY OF DISCOVERY WOULD
NOT PREJUDICE MAGMA. ............................................................................ 18

CONCLUSION............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

3M Innovative Properties Co. v. DuPont Dow Elastomers LLC,
    No. 03-3364-MJD/AJB, 2005 WL 2216317 (D. Minn. Sept. 8, 2005) ......................19, 20

Akzona v. E.I. du Pont de Nemours & Co.,
    607 F. Supp. 227 (D. Del. 1984).........................................................................7, 9, 10, 13

Applied Biosystems, Inc. v. Cruachem, Inc.,
    Civ. No. 89-579-JRR, 1990 WL 495458  (D. Del. Aug. 3, 1990)...................................10

Arthocare Corp. v. Smith & Nephew Corp.,
    315 F. Supp. 2d 615 (D. Del. 2004)...............................................................................10

ASCII Corp. v. STD Entm't USA, Inc.,
    844 F. Supp. 1378 (N.D. Cal. 1994) ..............................................................................16

Augustine Medical, Inc. v. Mallinckrodt, Inc.,
    No. C.A. 01-387-SCR, 2003 WL 1873836 (D. Del. April 9, 2003)................................19

Brandt, Inc. v. Crane,
    97 F.R.D. 707 (N.D. Ill. 1983)........................................................................................6

CMI, Inc. v. Verax Sys., Inc.,
    5 U.S.P.Q.2d 1676 (W.D.N.Y. 1987) ...........................................................................10

Dentsply Int'l v. New Tech. Co.,
    C.A. No. 96-272, 1996 U.S. Dist. LEXIS 19846 (D. Del. Dec. 19, 1996) ........................9

Fischer & Porter Co. v. Sheffield Corp.,
    31 F.R.D. 534 (D. Del. 1962) ........................................................................................10

Gladish v. Tyco Toys Inc.,
    29 U.S.P.Q.2d 1718 (E.D. Cal. 1993)............................................................................18

Gould v. Control Laser Corp.,
    705 F.2d 1340 (Fed. Cir. 1983)................................................................................16, 17

Hydranautics v. FilmTec Corp.,
    70 F.3d 533 (9th Cir. 1995) ............................................................................................7

# TABLE OF AUTHORITIES

**Page**

In re Innotron Diagnostics,
    800 F.2d 1077 (Fed. Cir. 1986)..................................................................6, 7, 13

In re Laughlin Products, Inc.,
    265 F. Supp. 2d 525 (E.D. Pa. 2003) ...............................................14, 15, 17, 18

Lis v. Robert Packer Hosp.,
    579 F.2d 819 (3d Cir. 1978)................................................................................6

Lofland Bros. Co. v. Mid-Western Energy Corp.,
    225 U.S.P.Q. 886 (W.D. Okla. 1985) ...............................................................16

Lucas Aerospace, Ltd. v. Unison Indus., L.P.,
    Civ. No. 93-525 JJF (D. Del. Nov. 10, 1994) ...................................................11

Metal Film Co. v. Metlon Corp.,
    272 F. Supp. 64 (S.D.N.Y. 1967) ...................................................................6, 7

NeoMagic Corp. v. Trident Microsystems, Inc.,
    C.A. No. 98-699-RRM, 2001 WL 1064812 (D. Del. Sept. 7, 2001) ...........10, 18

Nobelpharma AB v. Implant Innovations, Inc.,
    141 F.3d 1059 (Fed. Cir. 1998)..........................................................................7

Pegasus Dev. Corp v. DIRECTV, Inc.
    No. C.A. 00-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) .....................14

Perfect 10 Inc. v. CCBill LLC,
    71 U.S.P.Q. 2d 1568 (C.D. Cal. 2004)..............................................................10

Pharmacia, AB v. Hybritech, Inc.,
    224 U.S.P.Q. 975 (S.D. Cal. 1986) ....................................................................9

Prof'l Real Estate Investors v. Columbia Pictures Indus.,
    508 U.S. 49 (1993)............................................................................................13

Purolite  Int'l Ltd. v. Rohm and Haas Co.,
    24 U.S.P.Q.2d 1857 (E.D. Pa. 1992) ...........................................................15, 18

Rohm & Haas Co. v. Brotech Corp.,
    Slip op. (D. Del. March 11, 1992) ....................................................................19

# TABLE OF AUTHORITIES

**Page**

Snap-On Inc. v. SPX Corp.,
    No. C 96-20221-JW, 1996 WL 288429 (N.D. Cal. May 23, 1996) ................................15

Softview Comp. Prods. Corp. v. Haworth Inc.,
    56 U.S.P.Q.2d 1633 (S.D.N.Y. 2000)........................................................................16, 17

Stratos Lightwave, Inc., v. E20 Communs, Inc.,
    Civ. No. 01-309-JJF (D. Del. March 31, 2004) ...............................................10

United Sweetener USA, Inc. v. Nutrasweet Co.,
    766 F. Supp. 212 (D. Del. 1991)...................................................................15

Vitronics Corp. v. Conceptronic, Inc.,
    36 F.Supp.2d 440 (D.N.H. 1997).................................................................16

Walker, Inc. v. Food Machinery,
    382 U.S. 172 (1965).....................................................................................13

Warner Lambert Co. v. Purepac Pharm. Co.,
    No. C.A. 98-02749 (JCL), 2000 WL 34213890 (D.N.J., Dec. 22, 2000)...........................9

Wayne Automation Corp. v. R. A. Pearson Co.,
    20 U.S.P.Q.2d 1718 (E.D. Wash. 1991) ......................................................19

## FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(12)...............................................................................................3

Fed. R. Civ. P. 12(b)(6)..................................................................................................3

Fed. R. Civ. P. 42(b) .....................................................................................................6

## INTRODUCTION

To streamline this litigation and conserve judicial resources, Synopsys, Inc. ("Synopsys") brings this motion to sequence the discovery and litigation of certain claims so that the Court and parties can address them after other potentially determinative or influential proceedings have concluded. Synopsys seeks bifurcation and stay of discovery on two separate, but wholly consistent grounds. First, Synopsys seeks to have Counterclaims Nos. 1 through 6, the competition-based or "antitrust" claims, of Defendant Magma Design Automation, Inc. ("Magma") bifurcated for trial, and discovery stayed on those claims until issues concerning the infringement and validity of the Synopsys' patents at the center of the antitrust claims are resolved. Second, Synopsys seeks to bifurcate and stay **both** the antitrust claims **and** the infringement and validity claims on these two Synopsys patents in light of Synopsys' recent request to the U.S. Patent and Trademark Office ("PTO") for reexamination of these patents. The principles supporting these requests for relief are wholly consistent – it would confuse the jury and potentially waste judicial resources for the litigation of antitrust and infringement issues to proceed simultaneously when resolution of issues pertaining to the one may resolve the other, or at least aid in its resolution.

Synopsys has brought a motion to dismiss Magma's antitrust claims on several grounds, which motion has been fully briefed and is presently pending before the Court. (D.I. 9, 10). In the event that the Court grants the motion to dismiss, this motion will be partially mooted as it relates to Magma's antitrust claims. Synopsys' motion to dismiss highlights the problems with Magma's competition-related claims, as well as the futility of further attempts to replead. Synopsys raises the antitrust claims in this motion in the event the Court does not dismiss them in their entirety.

The Court should bifurcate and stay discovery on the antitrust claims because, depending on the validity determination by this Court or the jury (or by the PTO, for that matter), some or all of the antitrust claims may not need to be litigated at all.  Accordingly, bifurcating the antitrust claims and staying discovery would avoid costly and possibly unnecessary discovery, motions and trial.  Courts routinely bifurcate patent infringement and associated antitrust claims to prevent a case from becoming too complex for a jury to understand.  Further, discovery of antitrust claims is frequently stayed in order to promote judicial economy in any of the following circumstances, all of which are present here:

(1)     discovery on the antitrust issues is at a very early stage;

(2)     the antitrust claims raise a number of issues, such as market definition and market power, that are not posed by the infringement claims and are likely to involve extensive, expensive discovery that would require active management by the Court; and

(3)     resolution of the infringement case could as a legal matter dispose of the antitrust claims.

In addition, the Court should bifurcate and stay discovery on the parties' infringement and validity claims relating to the two Synopsys patents that are the subject of the requested PTO reexamination.  Courts frequently stay all or part of discovery pending the completion of related PTO proceedings where, as here, the PTO proceedings are likely to have significant consequences for the litigation.  Regardless of the ultimate outcome of PTO reexamination, the issues before the Court concerning validity of the patents will likely be narrowed significantly.  The outcome of the PTO proceedings could, in turn, profoundly affect the litigation of the antitrust claims relating to the two patents.  As a result, the antitrust claims should not be addressed until the PTO outcome is known.

Discovery, litigation and trial relating to the remaining claims – Synopsys' third patent claim and Magma's patent counterclaim – can proceed.  This approach will ensure that

time, effort, and expense are not expended unnecessarily, while fostering rapid resolution of all claims once they are framed for litigation.[1]

The bifurcation and stay that Synopsys proposes – whether only of the antitrust claims or also of two of Synopsys' patent infringement claims – is fair to both parties. Neither party has expended significant resources on discovery at this stage of the litigation, and each party would still have one patent unaffected by the bifurcation and stay. The remaining Synopsys patent and Magma's own patent are not at issue in the antitrust claims or subject to requested PTO reexamination. Moreover, these patent infringement claims would be resolved more efficiently and with less potential for jury confusion.

## NATURE AND STAGE OF THE PROCEEDING

In this patent infringement case, plaintiff Synopsys alleges that defendant Magma knowingly and willfully infringed, and continues to infringe, three of Synopsys' patents. Magma's Amended Answer asserts that two of Synopsys' patents-in-suit are invalid based on prior art. (D.I. 7.) Magma's Amended Answer also alleges counterclaims under on the Sherman Act, the Lanham Act, and state unfair competition law, as well as for infringement by Synopsys of one of Magma's own patents. (*Id.*) On November 22, 2005, Synopsys moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) all of Magma's antitrust claims

---

[1]       To ensure that the reexamination proceedings resolve or narrow as many issues as possible that are currently before this Court, Synopsys also seeks an Order requiring Magma to disclose any additional prior art that it contends could be material to the patentability of the inventions in the two Synopsys patents.

because of significant deficiencies in the pleadings, and in light of evidence that Magma would not be able to plead the most important of the missing allegations.[2]

On December 1, 2005, and January 4, 2006, Magma served its first and second discovery demands on Synopsys seeking voluminous documents, interrogatory answers, and admissions.  (D.I. 12, 27.)  Compliance would be extremely burdensome, and there are likely to be challenges to the scope of the requests.  Magma has adopted a dragnet approach to discovery that, if allowed to envelope the antitrust issues as well, will impose substantial costs on Synopsys and potentially burden the Court with discovery disputes.  The matter currently stands, however, at a very early stage.

Magma claims that two prior art references anticipate or render obvious all of the claims in two of Synopsys patents, Nos. 6,434,733 and 6,766,501 (the "'733 Patent" and the "'501 Patent," respectively).   In light of this prior art, of which Synopsys was previously unaware, Synopsys sought re-examination of '733 and '501 Patents on January 9, 2006.  *See* Declaration of Karen Jacobs Louden ("Louden Decl."), Exhs. A and B.  Synopsys believes that it is likely that the PTO will grant the Synopsys reexamination requests because they are based on information about prior art not previously considered by the PTO allegedly affecting all claims in the '733 and '501 Patents.

## SUMMARY OF ARGUMENT

1.     Magma's antitrust claims (Nos. 1 through 6) should be bifurcated for trial, as is now commonplace, to avoid jury confusion and preserve judicial resources.

---

[2]     As set forth in Synopsys' Motion to Dismiss (D.I. 9 and 10), the most glaring omission in Magma's antitrust counterclaims are allegations that Synopsys has caused any competitive harm.

2.    Discovery regarding Magma's antitrust claims should be stayed pending resolution of Synopsys' infringement claims regarding the '733 and '501 Patents because the competition-related discovery is at a preliminary stage, such discovery would raise complex factual issues unrelated to the infringement claims, and the resolution of the '733 and '501 Patent infringement and validity claims may ultimately foreclose the antitrust claims.

3.    In addition or in the alternative, the Court should bifurcate and stay discovery on the parties' infringement and validity claims regarding the '733 and '501 Patents, as well as Magma's antitrust claims that rest in large part on arguments concerning the validity of these patents, pending the outcome of the requested PTO reexamination.

4.    The Court should order that Magma identify any additional prior art that it contends is relevant to the patentability of the inventions in the '733 or '501 Patents so that the Court and parties can gain maximum benefit from PTO reexamination.

5.    Magma would not be significantly prejudiced by the requested stay as Magma's own patent infringement counterclaim would likely move more expeditiously if the case is not complicated by potentially unnecessary discovery on issues that may be otherwise resolved. Furthermore, Magma's antitrust claims are likely themselves to be resolved more efficiently and at less expense if they await resolution of threshold issues concerning infringement and validity of the '733 and '501 Patents.

<u>**STATEMENT OF FACTS**</u>

In its Complaint, Synopsys alleges that Magma knowingly and willfully makes, uses, sells, distributes, advertises, markets, and creates source code for products that infringe three Synopsys patents relating to software used in the design and testing of integrated circuits, the '733 Patent and the '501 Patent, as well as Patent No. 6,192,508 (the "'508 Patent"). (D.I. 1.)

Magma's amended counterclaims allege that Synopsys procured the '733 and '501 Patents fraudulently by failing to identify prior art that purportedly renders all of claims relating to these patents invalid.  (D.I. 7 at ¶ 67 and *passim*).  Magma further alleges that Synopsys' prosecution of infringement claims against Magma based on those patents is sham.  (*Id.* at ¶ 114.)  Magma also alleges that Synopsys has disparaged Magma in the marketplace in violation of the Lanham Act and various state statutory and common law prohibitions against unfair competition and tortious interference with business relations based on the assertion of these patents.  (*Id.* at ¶¶ 115, 116.)  With respect to the resulting impact on competition, Magma alleges in two brief, unsupported, and vague sentences that Synopsys' conduct has harmed competition.  (*Id.* at ¶ 117).  Finally, Magma alleges that Synopsys has infringed one of Magma's patents, Patent No. 6,505,328 (the "'328 Patent").  (*Id.* at ¶¶ 127-33.)

## ARGUMENT

## I.    THE COURT SHOULD BIFURCATE AND STAY MAGMA'S ANTITRUST CLAIMS FROM THE PARTIES' INFRINGEMENT CLAIMS.

### A.    Courts Routinely Bifurcate Antitrust Claims from Patent Infringement Claims, and Stay Related Discovery.

Under Federal Rule of Civil Procedure 42(b), a court may order separate trial of claims, counterclaims or issues "in furtherance of convenience or to avoid prejudice, or when separate trial will be conducive to expedition and economy."  Whether to grant separate trials is within the discretion of the trial court.  *See Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978).  The Federal Circuit has gone as far as stating that it is "standard practice" for courts to separate patent and antitrust issues and to try the patent issues first.  *See In re Innotron Diagnostics*, 800 F.2d 1077, 1085 (Fed. Cir. 1986); *see also Brandt, Inc. v. Crane*, 97 F.R.D. 707, 708 (N.D. Ill. 1983) ("[a]s a general rule, separate trials of patent and antitrust claims further the interests of convenience, expediency and economy"); *Metal Film Co. v. Metlon*

*Corp.*, 272 F. Supp. 64, 65 (S.D.N.Y. 1967) ("It is likely that a joint trial of the patent issues with the antitrust . . . issues would be inconvenient and probably prejudicial to the presentation and determination of the patent issues").

Courts regularly bifurcate or sever antitrust claims because the resolution of the underlying patent issues may completely dispose of an antitrust counterclaim. *See Innotron*, 800 F.2d at 1085; *Akzona v. E.I. du Pont de Nemours & Co.*, 607 F. Supp. 227, 234 (D. Del. 1984) ("if [the patentee] prevails on the issue of patent validity, [plaintiff's] antitrust claim based on fraud on the United States Patent Office would have to be dismissed."); *see also Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995) ("If the plaintiff wins the patent infringement suit, then the antitrust counterclaim may ordinarily be disposed of expeditiously on motion, instead of by a time consuming and expensive trial."). This is the situation squarely presented in the present case as determinations regarding the '733 and '501 Patent infringement claims may resolve Magma's antitrust claims without the need for costly discovery, motion practice and trial.

**B.    Bifurcation of Infringement and Antitrust Claims Would Lessen Juror Confusion and Promote Efficiency.**

**1.    Bifurcation is Needed to Prevent Jury Confusion.**

While patent infringement and antitrust claims often arise in the same case, they are each complex in their own right and usually overlap factually only in part. Courts bifurcate infringement and antitrust claims for trial so that the jury can better understand the proceedings. The first jury hears only the complex evidence necessary for it to determine the facts relating to patent infringement and validity. A second jury subsequently hears the largely different and complex evidence relating to the competition claims. *See, e.g.*, *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1063 (Fed. Cir. 1998) (patent claims tried separately from antitrust and unfair competition claims).

If not otherwise dismissed by the Court, Magma's various antitrust claims would bring into the scope of this litigation a number of issues irrelevant to the infringement disputes between the parties. For example, Magma's monopolization and attempted monopolization claims, Counts 1 and 2, assert that Synopsys holds monopoly power in alleged relevant markets for logic synthesis software products and for scan-chain insertion software products. (D.I. 7 at ¶¶ 106, 108, 111, and 112.) These are factually complex questions on which expert testimony will likely be required. They concern in part how the parties' products can be used, and the extent to which other products can be used for the same purposes. These competition issues have no relevance to infringement. The infringement issues, in contrast, will focus not on what the parties' products do in comparison to other products, but on whether Magma's products practice the claims of Synopsys' patents, and vice versa.

Magma's Lanham Act claim, Count 3, alleges that Synopsys misled customers about the parties' respective patent status. This raises less complex, but nevertheless numerous, factual questions about what representations Synopsys personnel made about the parties' positions, when, and to whom. (D.I. 7 at ¶ 146.) Magma's statutory and common law claims for unfair and deceptive practices, Counts 4 and 5, rest in part on many of the same factual issues about alleged conversations. (*Id.* at ¶¶ 149, 152.) Magma also rests its tortious interference claim, Count 6, in part on the same generic allegations, but also adds vague allegations about Synopsys' intent. (*Id.* at ¶ 156.) None of these factual issues are relevant to either party's infringement claims.

## 2. Bifurcation Would Serve the Interest of Efficiency.

Bifurcation is particularly appropriate in this case because resolution of the infringement and validity claims may, as a legal matter, resolve Magma's antitrust claims. The

extensive and possibly contentious discovery that the antitrust issues would entail could then be avoided altogether.  Even if the outcome on the infringement claims does not entirely resolve the antitrust claims, the resolution of patent-related issues will at a minimum focus the factual and legal scope of the surviving antitrust claims and likely hasten the ultimate resolution of the case, to the benefit of both parties and the Court.  *See Warner Lambert Co. v. Purepac Pharm. Co.,* No. C.A. 98-02749 (JCL), 2000 WL 34213890, *12 (D.N.J. Dec. 22, 2000) (all unreported cases are attached alphabetically to this brief) (presence of some overlapping issues favors bifurcation since outcome of first case can either "support or eliminate" the alternative claim, becoming the law of the case and shortening the second proceeding, if any); *Dentsply Int'l v. New Tech. Co.,* C.A. No. 96-272 MMS, 1996 U.S. Dist. LEXIS 19846, *17-18 (D. Del. Dec. 19, 1996) (bifurcation appropriate where there are few overlapping issues); *Akzona*, 607 F. Supp. at 236 ("bifurcation [of invalidity and fraud on PTO claims] is likely to result in considerable simplification of the issues at the second trial based on the results of the first trial").

    **C.**    **In Addition to Bifurcation of the Antitrust Claims, Discovery Relating to These Claims Should be Stayed.**

        **1.**    **A Stay of Discovery is Appropriate When Antitrust Discovery is at the Preliminary Stages.**

In addition to bifurcation, Courts also frequently stay discovery on the antitrust claims pending resolution of the patent case.  *See, e.g., Pharmacia, AB v. Hybritech, Inc.*, 224 U.S.P.Q. 975, 976 (S.D. Cal. 1986) (bifurcating and staying antitrust counterclaims to avoid "protracted discovery inherent in trial of the antitrust issues" and to allow parties to get to patent trial more quickly).  As one court explained:

> Pursuant to Rule 42(b) the Court[s] have frequently found it to be in the interest of economy and convenience, both to the Court and to the parties, and in furtherance of the most expeditious disposition of complex litigation of this kind, to sever the antitrust and misuse issues from the issues of validity and infringement, and

> to stay discovery and any trial of the antitrust and misuse issues
> until after trial of the issues of validity and infringement.

*CMI, Inc. v. Verax Sys., Inc.*, 5 U.S.P.Q.2d 1676, 1677 (W.D.N.Y. 1987); *Akzona*, 607 F. Supp.

at 235-36 (bifurcating *Walker Process* claim and staying antitrust discovery pending resolution

of "potentially dispositive" infringement claims); *Fischer & Porter Co. v. Sheffield Corp.*, 31

F.R.D. 534, 539-40 (D. Del. 1962).

      A partial stay restricting antitrust discovery can focus the attention of the parties

and the Court on the patent infringement claims at issue. *See NeoMagic Corp. v. Trident

Microsystems, Inc.*, C.A. No. 98-699-RRM, 2001 WL 1064812, *1-2 (D. Del. Sept. 7, 2001)

("[t]he principal purpose of the stay was to avoid the delay of discovery and trial on the primary

claims of patent infringement"). Where, as here, antitrust discovery is only just beginning, this

focus can be achieved without putting to waste any significant discovery that has already been

completed.

      Courts in this District have found that a leading determinant in whether the court should

stay discovery of antitrust claims pending resolution of related infringement claims is how much

of the antitrust discovery has already been completed when the request for a stay is made.

Where, as here, antitrust discovery is just beginning, courts have frequently granted stays of

discovery, particularly in the more recent cases. *See, e.g., Stratos Lightwave, Inc., v. E20

Communs, Inc.*, Civ. No. 01-309-JJF (D. Del. March 31, 2004); *Arthocare Corp. v. Smith &

Nephew Corp.*, 315 F. Supp. 2d 615, 617 (D. Del. 2004) (describing earlier issuance of a stay

when antitrust counterclaims were added to an infringement case); *Perfect 10 Inc. v. CCBill

LLC*, 71 U.S.P.Q. 2d 1568, at *1574-75 (C.D. Cal. 2004) (discovery proceeded initially only on

certain statutory defenses, while discovery on antitrust and other claims was stayed); *but see

Applied Biosystems, Inc. v. Cruachem, Inc.*, Civ. No. 89-579-JRR, slip op. at 3, 1990 WL 495458

(D. Del. Aug. 3, 1990) (stay of discovery denied where sought after deadline for completion of discovery and discovery obligations had not been met).

> **2.     A Stay of Discovery Is Appropriate Where Antitrust Claims Involve Substantial Additional Issues.**

Another important factor in determining whether a partial stay of discovery would be efficient is whether one set of claims involves the same or different factual issues as the second.  *Lucas Aerospace, Ltd. v. Unison Indus., L.P.*, slip op. at 3, Civ. No. 93-525-JJF (D. Del. November 10, 1994) (denying stay where two sets of claims "will require exploration during the discovery period of much of the same evidence").  Otherwise, an already massive discovery process can become even more unwieldy as the parties pursue two sets of different and complex issues.  The same differences in the relevant facts of the infringement and antitrust claims in this case that call for bifurcation also warrant a partial stay of discovery so that these claims can be addressed in orderly sequence.  The factual issues raised by the antitrust and other competition claims are not only largely irrelevant to the infringement issues, they are also likely to involve extensive additional discovery.

Magma has recently begun to propound discovery that is voluminous in the extreme.  *See, e.g.*, Louden Decl., Exh. C (Magma's First Set of Requests for Production of Documents).   For instance, Magma has sought both broad-ranging documents concerning Synopsys' patents and business operations, as well as complex documentation directed more specifically to the antitrust claims:

- Request No. 16:  All documents relating to the Synopsys patents.

- Request No. 35:  A copy of Synopsys' entire source code database from the time of formation to the present.

- Request No. 36:  All source code created by anyone at Synopsys.

- Request No. 44:  All documents and tangible things relating to the financial condition of Synopsys.

- Request No. 60:  All documents relating to ***any Synopsys Product or the EDA Industry***, including any formal strategic plan, business plan or presentations to YOUR senior management, senior management committees, executive committee, or board of directors.  (Emphasis added.)

- Request No. 66:  All documents relating to any actual or potential customer request to lower a price, to match a price, to offer support, to increase a rebate or to change the terms of an agreement relating to the purchase or lease of a Synopsys Product.

- Request No. 64:  All documents that show the requirements for entry into the EDA Industry, including but not limited to the logic synthesis market and the scan market, including but not limited to the time for and costs of development, other entry costs, and other obstacles to entry.

It is clear that, given Magma's shotgun discovery methodology, these issues will involve significant and burdensome discovery efforts.  Embarking on discovery of the antitrust claims would significantly complicate discovery that is already potentially massive in scope, tying up resources of this Court and the parties themselves.

### 3.    A Stay is Favored When Resolution of Infringement Claims Could Resolve or Narrow the Antitrust Claims.

The core of Magma's antitrust claims is based on its allegation that Synopsys' '733 and '501 Patents are invalid based on prior art.  (*See, e.g.* D.I. 7 at ¶¶ 94-102.)  Magma claims that Synopsys committed fraud on the PTO by withholding prior art, and that it wrongly brought this action as a sham knowing that the resulting patents were invalid.  (*Id.* at ¶ 114.) Magma's Lanham Act and state law claims allege that Synopsys raised with customers unwarranted patent concerns arising from the Synopsys' patents that it allegedly obtained by fraud.  (*Id.* at ¶ 115.)

Should litigation of the parties' patent rights establish that Synopsys' patents are indeed valid, Magma's antitrust claims based on patent invalidity would necessarily fail.  ***See,***

*e.g., Akzona,* 607 F. Supp. at 234 ("[u]nder *Walker,* if DuPont prevails on the issue of patent validity, Plaintiffs' antitrust claim based on fraud on the United States Patent Office would have to be dismissed") (*citing Walker, Inc. v. Food Machinery,* 382 U.S. 172 (1965)); *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 60 n.5 (1993) (a "winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham"). Similarly, Magma's disparagement, unfair competition and tortious interference claims would also fail if the threshold allegation – that Synopsys misrepresented its patent position – is disproved. Where resolution of one claim may as a legal matter decide other claims, the interests of judicial economy dictate that discovery of the latter claims be stayed pending the disposition of the potentially determinative one. *Innotron*, 800 F.2d at 1085; *Akzona*, 607 F. Supp. at 234.

The scope of Magma's discovery requests heightens the need to postpone discovery that otherwise could turn out to have been an unnecessary detour. The detour is particularly unwarranted because Magma's competition claims are clearly secondary in this litigation. Magma did not include the antitrust claims in its initial answer (D.I. 5), but added them only in its Amended Answer (D.I. 7). Unlike its highly detailed patent allegations, Magma's antitrust allegations are vague and formalistic. These last-minute additions to Magma's legal strategy should not be permitted to consume substantial resources when they may be disposed of through resolution of the claims closer to the heart of the dispute.

## II.   SYNOPSYS' INFRINGEMENT CLAIMS REGARDING THE '733 AND '501 PATENTS, AS WELL AS MAGMA'S ANTITRUST CLAIMS, SHOULD BE STAYED PENDING REEXAMINATION OF THESE PATENTS.

### A.   Because Reexamination Proceedings Can Substantially Affect Related Litigation, The Court Should Stay Discovery of the Claims Relating to These Proceedings.

Synopsys has sought reexamination of the '733 and '501 Patents by the PTO based on prior art that Magma identified previously. Louden Decl., Exhs. A and B. Because

Synopsys' requests for reexamination were recently filed, the PTO has not yet had a chance to respond. Synopsys believes the requests will likely be granted because a patentee made the requests based on previously unknown prior art allegedly affecting all claims of the patents. The outcome of these reexamination proceedings will almost certainly directly affect litigation of the infringement, validity and antitrust claims related to those patents. Thus, the pendency of those proceedings counsels a stay of discovery relating to the infringement and validity claims based on those patents, and further supports the need for a stay of the antitrust claims relating to the patents.

A reexamination involves the "complete reexamination of the patent claims on the basis of prior art patents and printed publications." PTO comments on 37 C.F.R. 1.552, *available at* http://www.uspto.gov/web/offices/pac/mpep/documents/2200_2258.htm. Because of the possibility that reexamination will reduce the scope or even the need for trial, courts often stay discovery pending PTO proceedings. *See, e.g., Pegasus Dev. Corp. v. DIRECTV, Inc.,* No. C.A. 00-GMS, 2003 WL 21105073, at *2 (D. Del. May 14, 2003) (stay granted pending reexamination).

Synopsys' claims that Magma has infringed the two patents will be disposed of if all of the claims of the two patents are found upon reexamination to be invalid. Similarly, if the PTO upholds the patents after reviewing that prior art, the PTO's review will be relevant to Magma's invalidity claim. If the PTO confirms Synopsys' patent claims in light of the same prior art at issue in this litigation, a district court "must recognize a rather formidable presumption of validity." *In re Laughlin Products, Inc.,* 265 F. Supp. 2d 525, 529 (E.D. Pa. 2003) (*quoting Pegasus,* 2003 WL 21105073, at *2) (if "'after reexamination, the plaintiffs' patents are again upheld, the plaintiff's rights will only be strengthened, as the challenger's

burden of proof becomes more difficult to sustain'"); *Purolite Int'l Ltd. v. Rohm and Haas Co.*, 24 U.S.P.Q.2d 1857, 1859 (E.D. Pa. 1992) ("[a]lthough not dispositive, the effect of the reexamination will be substantial").  Also, Magma's antitrust counterclaims are based on its contentions that Synopsys claimed patents to which it knew it was not entitled.  Those claims will be undercut if, as Synopsys expects, the PTO upholds the validity of the patents.

> **B.** **The Factors Governing a Stay Pending Reexamination Echo Those Relevant to a Stay of Antitrust Discovery Pending Litigation of Related Patent Issues.**

The factors courts evaluate in bifurcating and staying discovery relating to antitrust claims pending resolution of patent validity issues are markedly similar to the factors at issue here.  In determining whether to stay litigation pending reexamination by the PTO, courts consider the following: (1) the stage of the litigation; (2) whether a stay will simplify the issues in question at the trial of the case; and (3) the prejudicial effect, if any, on the non-moving party. *See United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F. Supp. 212, 217 (D. Del. 1991).  All of these factors weigh in favor of bifurcating and staying both the '733 and '501 Patent claims and the antitrust claims.

When discovery is in its early stages at the time reexamination is sought, a stay is often appropriate, for the same reason that antitrust discovery in its early stages is often stayed on request where few resources have been sunk into discovery on one set of issues.  Where there is no risk that already completed discovery work may become stale, it makes sense to await the outcome of possibly determinative issues before embarking on that discovery.  *See, e.g., Laughlin Prods.*, 265 F. Supp. 2d at 530-32, 538 (stay granted for reexamination where litigation in early stages and PTO action could lead to settlement); *Snap-On Inc. v. SPX Corp.*, No. C 96-20221-JW, 1996 WL 288429, at *3 (N.D. Cal., May 23, 1996) (stay granted during reexamination where some discovery in litigation had begun but no trial date was set, and "'the

USPTO's expertise may assist both the parties and the court in resolving this matter;'" *quoting ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994)). Courts have even granted stays pending reexamination in cases that have proceeded significantly farther into the litigation process than the present action. *See, e.g., Lofland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886 (W.D. Okla. 1985) (stay granted after significant discovery and pretrial conference).

In the present case, discovery has only just begun. All indications, however, are that Magma intends to pursue sweeping discovery aimed at virtually all of Synopsys' products and business operations. It simply does not make sense, particularly in light of the preliminary stage of these proceedings, for the parties and the Court to expend the resources necessary to litigate the two patent claims and antitrust claims if they may be disposed of or significantly narrowed by the PTO reexamination.

Likewise, the PTO's particular expertise in technology and patent law weighs in favor of bifurcating and staying these claims. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). The PTO is uniquely equipped and the examiners are specially trained to conduct reexaminations. Consideration by the PTO of the validity issues raised by Magma may narrow or eliminate issues at trial.

This is true whether the reexamination results in confirmation of the validity of the two Synopsys patents or establishes invalidity of some or all of the claims. Regardless of outcome, reexamination can more precisely define the scope of patent claims - an issue "central to the resolution of this case." *Vitronics Corp. v. Conceptronic, Inc.*, 36 F.Supp.2d 440, 442 (D.N.H. 1997) (granting stay). Likewise, the outcome of reexamination may encourage the parties to settle without further court intervention. *Softview Comp. Prods. Corp. v. Haworth Inc.*,

56 U.S.P.Q.2d 1633, 1636 (S.D.N.Y. 2000) (citing numerous reasons for granting stay). Indeed, the sponsors of the reexamination legislation favored liberal grants of stays by the district courts so that reexamination could serve as a way to settle disputes quickly and less expensively. *See Gould*, 705 F.2d at 1342. If the case does not settle, the reexamination record may be entered at trial and reduce the complexity and length of the litigation. *Softview Comp.*, 56 U.S.P.Q. at 1636.

Moreover, the same principles governing stays pending reexamination apply ***even when the patentee files the request for ex parte reexamination***. *See Laughlin Prods.,* 265 F. Supp. 2d at 528-33. The district court in *Laughlin* weighed the same factors, noting that the litigation "is still in its infancy," and concluded that "the advantages of staying this [case] pending reexamination . . . outweigh any potential disadvantages of such a stay." *Id.* at 532, 538. Indeed, the fact that it is Synopsys seeking reexamination – and not Magma or some other third party – gives additional credence to the motion as Synopsys would be putting its own affirmative infringement claims with respect to these patents on hold.

### C.    To Increase the Benefit of PTO Reexamination, the Court Should Further Order that Magma Come Forward with Any Additional Alleged Prior Art.

To ensure that all relevant information is before the PTO to conduct the reexamination proceedings on the '733 and '501 Patent, Synopsys also seeks an order requiring Magma to provide any additional prior art, which Magma contends may be material to the patentability of any of the claims of these patents. Synopsys will submit this information to the PTO after the reexaminations are granted so that the PTO can conduct as thorough a reexamination as possible.

III.    **BIFURCATION AND A PARTIAL STAY OF DISCOVERY WOULD NOT PREJUDICE MAGMA.**

Synopsys' sequencing proposals are fair to Magma.  Magma may proceed immediately with its patent claim and Synopsys with one patent claim.  Once the patent issues are fully framed with respect to the '733 and '501 patents, discovery would proceed without delay.  The patent infringement issues will likely be resolved much more quickly if this focused approach is adopted.  There will be no detours for peripheral fact and expert discovery, and related motions practice, regarding the antitrust claims that may be substantially altered based on the infringement litigation or the PTO proceedings.  And the PTO proceedings also may resolve or narrow the issues relating to the two Synopsys patents.  The promise of swifter resolution of the leading claims in a case is itself a basis for staying discovery of other related but largely different claims, and offers benefits for both parties.  *NeoMagic,* 2001 WL 1064812 at *1-2.

Further, the savings of possibly unnecessary litigation costs would benefit both parties.  Discovery on the infringement and competition claims would flow in both directions and likely would involve extensive demands for documents, interrogatory answers and admissions, and numerous depositions.  Both sides would have to retain and prepare expert witnesses.  Avoidance or reduction of costs possibly unnecessary to the resolution of this case would benefit both sides.

Concern that a stay of discovery pending PTO reexamination would unreasonably delay the litigation usually arises only when, unlike here, discovery on all issues is nearly complete.  *See, e.g., Laughlin Prods.*, 265 F. Supp. 2d at 538; *Gladish v. Tyco Toys Inc*., 29 U.S.P.Q.2d 1718, 1719 (E.D. Cal. 1993) ("[c]ourts which have denied stays pending [patent] reexamination . . . have generally done so where the request for reexamination came late in the litigation proceedings, after extensive discovery or trial preparation"); *Purolite,* 24 U.S.P.Q 2d at

1858-59 (citing *Rohm & Haas Co. v. Brotech Corp.,* slip op. (D. Del. March 11, 1992), a related case); *Wayne Automation Corp. v. R. A. Pearson Co.*, 20 U.S.P.Q.2d 1718, 1720 (E.D. Wash. 1991) (defendant's extensive discovery complete, case set for trial, and stay would prejudice defendant). *Cf. Augustine Medical, Inc. v. Mallinckrodt, Inc.,* No. C.A. 01-387-SLR, 2003 WL 1873836 (D. Del. April 9, 2003) (noting without explanation that stay previously denied pending reexamination).

   Magma may contend that it is suffering diminished popularity in the marketplace as a result of this lawsuit and that a stay would therefore be prejudicial.  According to Magma's representations to the Securities and Exchange Commission, however, it has not lost sales as a result of this lawsuit.  Indeed, it has told the SEC that it is enjoying record success.  In its two most recent 10-Q SEC filings, when reporting the risks and potential problems facing the company, Magma did not mention anything about losing sales or customers because of its litigation with Synopsys.  Form 10-Q, Magma Design Automation, Inc. at 23 (For the quarterly period ended October 2, 2005), *available at* http://www.sec.gov/Archives/ edgar/data/1065034/ 000119312505224360/d10q.htm; Form 10-Q, Magma Design Automation, Inc. at 20 (For the quarterly period ended July 3, 2005), *available at* http://www.sec.gov/Archives/edgar/data/1065034/ 000119312505165624/d10q.htm.[3]  In these filings, the only risks Magma named relating to the litigation were the prospect of legal costs, which the motion for a partial stay promises to reduce.  (October filing at 39).  Likewise, the prospect of lost sales is not a strong argument for denying a stay, since any such lost sales can be addressed through damages awards.  *3M Innovative Properties Co. v. DuPont Dow Elastomers*

---

[3]   These documents are included in the papers supporting Synopsys' Motion to Dismiss (D.I. 10).

*LLC*, No. 03-3364 MJD/AJB, 2005 WL 2216317, at *1 (D. Minn., Sept. 8 2005) ("DuPont asserts that it loses business each month," but "should DuPont ultimately prevail . . . , its damages will be compensable at trial").

## CONCLUSION

Bifurcation of infringement and antitrust claims has become the norm in infringement cases with antitrust claims. Trying such a case in a single proceeding would be unreasonably complicated for a lay jury. A stay of discovery on Magma's antitrust claims until the infringement claims are resolved would save the Court and the parties substantial resources that may never have to be expended, while hastening resolution of the remaining disputes between the parties. These same arguments support bifurcation and stay of both the antitrust claims and the patent infringement claims implicated by the requested PTO reexamination proceedings until the PTO outcome is known.

In the interests both of efficiency and fairness, the Court should bifurcate trial of the '733 and '501 Patent infringement claims, as well as the antitrust claims, stay discovery of the antitrust claims pending resolution of the patent claims in this case, and, pending the outcome of the requested PTO reexamination of the two Synopsys patents, and stay discovery of the related patent claims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street, P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for plaintiff Synopsys, Inc.
klouden@mnat.com

20

OF COUNSEL:

Chris Scott Graham
Michael Edelman
Valerie M. Wagner
DECHERT LLP
1117 California Ave.
Palo Alto, CA  94304-
(650) 813-4848

George G. Gordon
DECHERT LLP
Cira Centre
2929 Arch St. 19104-2808
Philadelphia, PA
(215) 261-2382

Rebecca P. Dick
DECHERT LLP
1775 Eye St., N.W.
Washington, DC  20006-2401
(202) 261-3432

January 23, 2006
503085

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that on January 23, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to William J. Wade.

I further certify that I caused that copies of the foregoing be served on the following counsel in the manner indicated:

<u>By Hand</u>

William J. Wade
Richards Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19801


*/s/ Karen Jacobs Louden*
Karen Jacobs Louden
klouden@mnat.com

1