Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 1873836 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
AUGUSTINE MEDICAL, INC. Plaintiff,
v.
MALLINCKRODT, INC. f/k/a Mallinckrodt Medical, Inc., Nellcor Puritan Bennett, Inc. Tyco Healthcare Group, L.P., Gaymar Industries, Inc., Medisearch P R, Inc., Respiratory Support Products, Inc., and Sims Level 1, Inc. Defendants.
No. Civ.A. 01-387-SLR.

April 9, 2003.

Philip A. Rovner, of Potter, Anderson & Corroon, LLP, Wilmington, Delaware, Jake M. Holdreith, K. Craig Wildfang, Michael A. Hellwich, and Kari Thoe Crone, of Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, Minnesota; J. Randall Benham, of Augustine Medical, Inc. , Eden Prairie, Minnesota, for Plaintiff, of counsel.
Steven J. Balick, and John G. Day, of Ashby & Geddes, Wilmington, Delaware, Raymond A. Kurz, Celine Jimenez Crowson, and H. Keeto Sabharwal, of Hogan & Hartson, LLP, Washington, D.C., for Defendants, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiff Augustine Medical, Inc. ("Augustine Medical") filed suit against multiple defendants in June 2001, claiming that defendants infringed United States Patent No. 6,210,428 ("the '428 patent"). Based on information obtained through the discovery process in the instant litigation, in February 2002 Augustine Medical petitioned the United States Patent and Trademark Office (the "PTO") for a reexamination of the '428 patent. The court denied a stay of this case pending reexamination. In April 2002, unable to end the litigation by agreement with defendants, Augustine Medical provided each defendant with a statement of no liability and a covenant not to sue with regard to the '428 patent. On July 31, 2002, the court granted Augustine Medical's motion to dismiss the patent infringement claims as well as defendants' declaratory judgment counterclaims. The only claims remaining are the common law fraud and Sherman Act counterclaims filed by defendants Mallinckrodt, Inc./Nellcor Puritan Bennett, Inc./Tyco Healthcare Group, L.P. (collectively "Mallinckrodt"). [FN1]

FN1. Augustine Medical filed suit against Mallinckrodt; Gaymar Industries, Inc./Medisearch P.R., Inc. (collectively "Gaymar"); and Respiratory Support Products, Inc./Sims Level 1, Inc. (collectively "RSP"). Gaymar and RSP have settled their disputes with Augustine Medical, leaving only the Mallinckrodt defendants to pursue their counterclaims.

Pending before the court are various motions. This court has jurisdiction over these matters pursuant to 28 U.S.C. § 1338. For the reasons that follow, Augustine Medical's motion for summary judgment on each of the remaining counterclaims is granted and the remaining motions are denied as moot.

II. FACTS

In 1986, Dr. Scott Augustine invented the convective warming blanket, a product used to protect surgical patients from becoming hypothermic during anesthesia by enclosing the patient in a microenvironment of circulating warm air. That same year, Dr. Augustine obtained his first patent on his airflow cover for controlling body temperature, United States Patent No. 4,572,188 ("the '188 patent"). Augustine Medical, Inc. was founded in 1987 and, thereafter, applied for (and later received) FDA approval for Dr. Augustine's convective warming units. By 1994, Augustine Medical held an additional four patents: United States Patent Nos. 5,300,102 ("the '102 patent"), 5,324,320 ("the '320 patent"), 5,405,371 ("the '371 patent"), and 5,350,417 ("the '417 patent").

In 1990, Dr. Augustine, as "President & Medical Director" of Augustine Medical, wrote a letter to Mallinckrodt's licensor in which he stated:
My sources have informed me that [you] are working to develop a patient and/or blood and fluid warming device using a warm air technology. Naturally you

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00701-GMS    Document 32-4    Filed 01/23/2006    Page 2 of 8

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2003 WL 1873836 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

are aware that we developed this technology and have been issued United States Patent Number 4,572,188 to confirm this. I should inform you that the U.S. Patent and Trademark Office has conf[erred] "Pioneering Patent" status to this patent, and as you may know, this status means that the courts will in all likelihood interpret the claims more liberally even than they are written. I will also inform you that Augustine Medical has three additional patents pending on convective warming and the use of warm air for the warming of patients, blood and fluids.

*2 If is turns out that you are infringing on any of these patents, I assure you that we will pursue the matter legally. The avenues open to us include seeking an injunction to prohibit manufacture or sale of your device, seeking a "cease and desist" injunction, suing for triple monetary damages, and possibly even suing the officers of your company for personal liability.

Finally, be aware that as a start-up company, raising capital is difficult under the best of circumstances, but I can assure you that neither private nor venture capital will be interested in future investing if you have a patent infringement suit pending against you. In summary, we have been advised that we have excellent patent protection on this product and we will defend the patent to the maximum extent of the law.

If my sources are in error and you are not working on this technology, please accept my apologies for this rather blunt communication. If on the other hand my sources are not in error and you are working on a warm air technology, consider this letter to be formal notification that we believe that you are willfully infringing on our patent.

(D.I.220, Ex. 2) Despite this letter, in December 1991, Mallinckrodt's licensor licensed its convective warming system technology to Mallinckrodt. (D.I.221, Ex. 54) Mallinckrodt entered the market in June 1992 using the brand name "WarmTouch."

In October 1994, Augustine Medical filed separate lawsuits against many of the same defendants as were originally sued at bar, alleging infringement of various patents relating to convective warming units. In the fall of 1995, Dr. Augustine, as "Chief Executive Officer & Chairman of the Board" of Augustine Medical, wrote letters to various of the defendants in order to discuss Augustine Medical's "patent position and settlement of" the litigation. In his letters, Dr. Augustine explained that suit had been filed because defendants' "aggressive price cutting is irreversibly destroying this market while infringing our patents." (D.I.220, Ex. 7) Dr. Augustine went on to assess defendants' chances of success at trial and concluded:

In summary, it seems that [you] are taking an awfully big risk [with your shareholders' money], considering the long odds. I'm betting that we will win on at least one claim and we will present to the jury the many reasons that [defendant] should be liable for a good portion of $7.5 billion in damages and penalties. The odds are very good that we will get to the damages portion of the trial. You're betting that you can beat us on every single claim so that damages won't even be an issue. Not likely. Juries may be unpredictable, but even before the Hilton Davis decision, they usually ruled in favor of the patent holder. How much risk are you willing to take at this point in your career? If this case goes to a jury, there is a good chance that we will end up owning more than just [defendant]. Betting your whole retirement nest-egg at your age is truly gutsy. I am impressed!

*3 Considering the size of the potential award and the strength of our position, it should be clear that we will not be "bluffed" into folding. Your present trend in pricing appears to be a "scorched earth" strategy, presumably aimed at destroying this market before you get out of the business. You underestimate us. You can be assured that we will stay in the game until the last penalty is collected.

I am communicating with you today to let you know that I am willing to sit down and discuss settlement. I have a responsibility to our shareholders to aggressively pursue this matter until we have been fairly compensated for the damages that you and your company have caused. Therefore, a settlement won't be cheap. On the other hand, a settlement will be much less than a jury award. You probably recognize by now that we're looking forward to telling our story to a jury. The closer we get to trial, the less willing to negotiate we will be.

I believe that beginning a dialog is in everyone's best interest. I would be happy [to] meet with you to discuss these matters in more detail or to explore settlement alternatives.

(D.I. 220, Ex. 7; *see also* Ex. 8)

On September 2, 1997, the jury returned a verdict finding no literal infringement of the '102, '320 and '371 patents. The jury did find infringement of those patents under the doctrine of equivalents. On September 3, 1997, Augustine Medical issued a press release prepared by its retained public relations firm. It reads in its entirety as follows:

A federal court jury in Minneapolis determined Friday that Mallinckrodt Medical, Inc. and Gaymar Industries, Inc. have infringed three patents covering

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00701-GMS    Document 32-4    Filed 01/23/2006    Page 3 of 8

Not Reported in F.Supp.2d                                                                                                         Page 3
Not Reported in F.Supp.2d, 2003 WL 1873836 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

the Bair Hugger® brand convective warming blankets manufactured by Augustine Medical, Inc. The jury found that all of the blankets accused in the lawsuits against Mallinckrodt and Gaymar did infringe Augustine Medical's patents.

The jury simultaneously ruled that two patents asserted by Mallinckrodt against Augustine Medical were invalid and that these patents were unenforceable. In addition, the jury rejected counterclaims made by defendants Mallinckrodt and Gaymar against Augustine Medical involving charges of unfair competition and violation of anti-trust laws.

"We're pleased that the jury recognized the strength of our patents, and these ruling validate Augustine Medical's position in the marketplace," said Dr. Scott Augustine, chairman and founder of Augustine Medical. "As the leader in forced-air temperature management, we must protect our technological advantages, and we will continue to do so."

The damages phase of the litigation is scheduled to begin on Sept. 15. Patent law specifies that products found to be infringing-like those of Mallinckrodt and Gaymar-must not be manufactured, used or sold. Augustine Medical has stated that it will work closely with hospitals and other health care providers to ensure convective warming blankets are available to patients who need them.

*4 Augustine Medical has asserted the same three patents against other competitors, including Cincinnati Sub-Zero, Inc., Seabrook and Smiths Industries Medical Systems (SIMS). All three cases are expected to go to trial relatively soon.

Forced air warming, pioneered by Augustine Medical and used in the company's Bair Hugger brand blankets, is the most effective means of maintaining a patient's normal body temperature during surgery. Recent research has shown that maintaining normal body temperature improves surgical outcomes-including reduced post-operative complications such as cardiac problems and infections-shortens hospital stays and lowers health care costs.

Augustine Medical, the world leader in the medical application of heat transfer across the skin, was founded in 1987. It now has grown to 175 employees and has revenues in excess of $33 million. The company has contracts with eight of the 10 largest national health care group purchasing organizations, including Premier and VHA.

(D.I.221, Ex. 46)

The jury ultimately awarded Augustine Medical $18 million in damages. The district court issued an injunction on September 26, 1997. These events were described in a press release issued by Augustine Medical on September 29, 1997. (D.I.221, Ex. 46) By October 1, 1997, the injunction was stayed on an emergency basis by the Federal Circuit. (D.I.221, Ex. 45) By Mallinckrodt's own admission, "there was never an interruption in Mallinckrodt's supplying blankets to hospitals in view of the stay of the injunction on October 1, 1997." (D.I. 219 at 8) In June 1999, the Federal Circuit reversed the findings of infringement under the doctrine of equilavents. *See generally, Augustine Med. Indus. v. Gaymar Indus., Inc.,* 181 F.3d 1291 (Fed.Cir.1999).

According to Mallinckrodt, Augustine Medical has filed numerous lawsuits and "has continually issued press release after press release touting the filing of its unsupportable lawsuits, misleadingly implying to consumers that all competitors were (or soon would be) off the market, mischaracterizing interim court rulings and otherwise attempting to monopolize the market and to interfere with the businesses of all manufacturers of convective warming systems, including, in particular, Mallinckrodt." (D.I. 219 at 11) (emphasis added). To support this wide-ranging claim, Mallinckrodt cites to four documents: 1) An April 1998 press release announcing a lawsuit filed by Augustine Medical against ten defendants; 2) the 1997 press release discussed above; 3) a press release announcing the instant litigation; and 4) a press release announcing the Federal Circuit reversal, with Dr. Augustine quoted as follows: "[T]his was one round in a long fight. We have other patents that are not affected by this decision. We will enforce them ." (D.I. 220, Exs. 6, 12-13 and 15)

On June 16, 1999, Augustine Medical filed the application which resulted in the '428 patent. (D.I. 220, Ex. 1; D.I. 209, Ex. 19) During prosecution, the examiner initially rejected all claims based on the doctrine of obviousness-type double patenting. (D.I.209, Ex. 20) After an October 30, 2000 interview between the examiner and the patentee, the examiner reversed her decision and concluded that the " 'predetermined temperature' in '188 is not specified and thus the instant invention is not anticipated by '188. However, the double patenting rejection is upheld." (D.I.209, Ex. 20) On November 9, 2000, Augustine Medical filed a Terminal Disclaimer to its application. (D.I.209, Ex. 20) On November 20, 2000, Augustine Medical filed an Information Disclosure Statement that included the Federal Circuit opinion in *Augustine Medical, Inc. v. Gaymar Industries, Inc.,* 50 U.S.P.Q.2d 1900 (Fed.Cir.1999). (D.I.209, Ex. 20) The Notice of Allowance was issued December 15, 2000. (D.I.209, Ex. 20) Augustine Medical asserts that, "[d]uring the

interview and later in submissions to the examiner, Augustine Medical directly and unambiguously stated that the claims in this application were intended not to be limited by the term 'self-erecting' as stated in the Federal Circuit's opinion in the Minnesota patent litigation." (D.I. 208 at 12)

*5 The '428 patent issued on April 3, 2001. Dr. Augustine followed with a letter to Mallinckrodt announcing the new patent, arguing that the "extreme price-cutting" in Mallinckrodt's "bundle discounts" was a business strategy doomed to failure, and suggesting that Augustine Medical had an interest in discussing acquisition of Mallinckrodt's "patient warming" business. (D.I.220, Ex. 16) A letter from counsel for Augustine Medical was sent in June 2001 announcing the initiation of the instant lawsuit. (D.I.220, Ex. 17) In a responsive letter, counsel for Mallinckrodt advised counsel for Augustine Medical that the "assertion of the '428 patent against Mallinckrodt [is] irresponsible" and, "in addition to vigorously defending this matter, [Mallinckrodt] intend[s] to pursue all claims which arise from your client's vexatious type of litigation behavior...." (D.I.220, Ex. 18)

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### IV. ANALYSIS

In its antitrust counterclaims, Mallinckrodt asserts that the '428 patent was procured by fraud and, therefore, the filing of the instant patent infringement litigation was a sham and anticompetitive. Mallinckrodt goes on to argue that Augustine Medical has engaged in a pattern of anticompetitive acts directed to monopolizing or attempting to monopolize the market. According to Mallinckrodt, Augustine Medical has monopoly power in the relevant market, i.e., it has the power to control market prices or to exclude competitors from the market. Finally, Mallinckrodt contends that Augustine Medical's anticompetitive conduct has caused antitrust injury to Mallinckrodt and has harmed competition generally. (D.I.219)

*6 It is axiomatic that a patent is an exception to the general rule against monopolies and to the right to access to a free and open market. The far-reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope.

Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp., 382 U.S. 172, 177 (1965) (citing Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 816 (1945)). The Federal Circuit has recognized "alternative legal grounds on which a patentee may be stripped of its immunity from the antitrust laws; both legal theories may be applied to the same conduct." NobelPharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1071 (Fed.Cir.1998).Walker Process antitrust liability is based on the knowing assertion of a patent procured by fraud on the PTO,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00701-GMS    Document 32-4    Filed 01/23/2006    Page 5 of 8

Not Reported in F.Supp.2d                                                                      Page 5
Not Reported in F.Supp.2d, 2003 WL 1873836 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

very specific conduct that is clearly reprehensible. On the other hand, irrespective of the patent applicant's conduct before the PTO, an antitrust claim can also be based on a *PRE* [FN2] allegation that a suit is baseless; in order to prove that a suit [is] within [the] "sham" exception to immunity, an antitrust plaintiff must prove that the suit was both objectively baseless and subjectively motivated by a desire to impose collateral, anticompetitive injury rather than to obtain a justifiable legal remedy.

> FN2. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49 (1993).

*Id.*

Even if Mallinckrodt is successful in proving either *Walker Process* fraud before the PTO or that the instant litigation should be characterized as *PRE* sham litigation, [FN3] thus stripping Augustine Medical of its antitrust immunity, Mallinckrodt "must still prove a substantive antitrust violation." *PRE,* 508 U.S. at 60-61. In other words,

> FN3. The court is aware of no other case such as this, where the allegedly "sham" litigation has been dismissed by the plaintiff but the defendant continues to press its antitrust counterclaims based in part on the dismissed litigation.

[t]o establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would then be necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for the product involved.
*Id.* Therefore, Mallinckrodt is required to further establish the elements of a monopolization claim under the Sherman Act: "(1) possession of monopoly power in the relevant market; (2) the willful acquisition or maintenance of that power, as distinguished from the growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.,* 384 U.S. 563, 570-71 (1966). The elements of an attempted monopolization claim include demonstrating "(1) that the [patentee] has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."

*Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993).

### A. *Walker Process* Fraud

*7 Mallinckrodt has asserted that Augustine Medical fraudulently obtained the '428 patent "by withholding its 1987 prior public use and demonstration activities (including the 1987 Bair Hugger Device) from the examiner during the prosecution of the '428 patent." (D.I. 219 at 14-17) In support of this assertion, Mallinckrodt cites to record evidence that a market study was conducted in 1987 to analyze the "receptivity of the market to the BAIR HUGGER, to identify decision makers in the buying process, and to evaluate marketing mix alternatives." (D.I.209, Ex. 13) In the course of this study, the Bair Hugger device was demonstrated in at least four hospitals, to a potential investor, and to several marketing specialists. (D.I. 209, Ex. 13; *see also* D.I. 209, Exs. 23, 24; D.I. 221, Exs. 36, 38) Mallinckrodt also asserts that Augustine Medical has perpetuated this fraud during the course of the reexamination proceedings and through the filing of a new application (the '285 application) as a continuation of the '428 patent. (D.I. 219 at 16-18)

The court concludes that there are genuine issues of material fact regarding the prosecution and reexamination of the '428 patent. [FN4] However, for purposes of these proceedings, even if the court were to assume that Augustine Medical should be stripped of its antitrust immunity by reason of *Walker Process* fraud, the court nevertheless finds Mallinckrodt's proof under the Sherman Act to be so wanting as to justify the entry of a summary judgment in favor of Augustine Medical.

> FN4. Consequently, there likewise are genuine issues of material fact with respect to the question of whether the instant litigation was objectively baseless and subjectively motivated by anitcompetitve desires.

### B. Sherman Act Claims

In evaluating the evidence of record put forward by Mallinckrodt in support of its monopolization claims, the court must necessarily evaluate the expert opinion proferred by Dr. Hoffman. In his expert report, Dr. Hoffman concludes as follows:
(1) The relevant product market is defined as forced

Case 1:05-cv-00701-GMS    Document 32-4    Filed 01/23/2006    Page 6 of 8

Not Reported in F.Supp.2d                                                                                                          Page 6
Not Reported in F.Supp.2d, 2003 WL 1873836 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

air warming ("FAW") OR [operating room] products used to warm surgical patients at risk of hypothermia;
(2) The relevant geographical market is the United States;
(3) The evidence demonstrates that when Mallinckrodt's (and others') ability to compete is hampered by the perception by customers of the risks related to patent infringement liability, then Augustine has the ability to exert market power in the U.S. market for FAW OR products used to warm surgical patients at risk of hypothermia;
(4) Augustine's pattern of anticompetitive conduct creates a dangerous probability that Augustine will monopolize the U.S. market for FAW OR products used to warm surgical patients at risk of hypothermia;
(5) Mallinckrodt has suffered damages from lost profits on lost sales estimated through June 30, 2003 of $3,311,231 as a result of Augustine's conduct and is continuing to suffer damages from lost profits on lost sales....
(6) Mallinckrodt has suffered additional damages caused by unnecessary patent litigation costs of $3,021,808 through July 2002 as a result of Augustine's anticompetitive conduct....

*8 (D.I. 212, Ex. 1 at 4-5) (emphasis added).

Although the parties have each taken somewhat inconsistent positions over the years regarding the relevant markets, for purposes of these proceedings the court accepts the narrow product and geographic market definitions offered by Dr. Hoffman. With respect to Dr. Hoffman's analysis of Augustine Medical's allegedly anticompetitive conduct, however, the court declines to accept the linchpin of Dr. Hoffman's opinion, to wit:

Many of the previously mentioned patent litigation-related actions taken by Augustine occurred during the period between the September 1997 jury decision in the first patent litigation against Mallinckrodt and the June 1999 appellate decision of the Federal Circuit. During this period, Mallinckrodt's (and likely Gaymar's as well as others') ability to compete had been limited by the incorrect interim finding of patent infringement against Mallinckrodt. In particular, from my discussions with Lori Thompson, I understand that Mallinckrodt's ability to compete for the large GPO contracts was hindered by the market's perception of Mallinckrodt's patent liability problem. In general existing or potential customers are less likely to purchase from a supplier subject to an injunction. If a customer perceives that a supplier may suddenly stop selling product, a customer will be less likely to buy from the supplier because, in the customer's mind, the risk of a supply cut off is equivalent to a price increase. Similarly, if customers believe they may be buying products that have been or may be found to infringe, they may choose to switch suppliers for fear of getting sued themselves.

(D.I. 212, Ex. 1 at 19-20) (emphasis added). Dr. Hoffman completes his analysis with a discussion of the "pattern typical for a new product" which, in this case, was "interrupted" between 1997 Q3 and 1999 Q2, "the period when many customers likely believed that Mallinckrodt and others may have been infringing Augustine patents. This interruption in the typical pattern demonstrates that Augustine had the ability to raise prices when Mallinckrodt and possibly others were hampered in their ability to compete by virtue of Augustine's alleged pattern of conduct." (D.I. 212, Ex. 1 at 20-21) (emphasis added).

At the outset, the court rejects the characterization of a jury verdict as an "interim finding of patent infringement" and, further, is not persuaded that Augustine Medical's conduct between 1997 and 1999 (the only conduct relied on by Dr. Hoffman and not related to the '428 patent) was anticompetitive in nature or effect. The fact that Augustine Medical filed suit against Mallinckrodt once before and issued press releases regarding the same [FN5] could be characterized as aggressive, arguably even abusive, but not anticompetitive. It is within the rights of a patent holder to sue alleged infringers of valid patents; it is within the power of the various courts to sanction the patent holder if its allegations of infringement are baseless or if its patents are found to be unenforceable. The record, however, is devoid of any such findings made in connection with the prior litigation and it is inappropriate (in this court's view) to essentially retry the prior litigation to determine whether such findings should have been made.

> FN5. Also included in the record are several letters written by Dr. Augustine. Such letters appear to be written by Dr. Augustine himself without the aid of counsel and, obviously, were ineffective in stopping his competitors from entering the market.

*9 Most significantly, although Dr. Hoffman relies on his discussions with Lori Thompson for the critical proposition that Mallinckrodt was injured by Augustine Medical's conduct, it is evident from Ms. Thompson's deposition that she could not identify even one actual lost sale; [FN6] indeed, there is no evidence of record of any actual lost sales. Instead of facts, Dr. Hoffman stacks assumption upon

assumption to come to his conclusion. The first assumption is that there was a perception by customers of the risks related to Mallinckrodt's patent infringement liability. There is no evidence, however, that any actual customer had that perception during the critical time period of 1997-1999. The second assumption is that Mallinckrodt's ability to compete was hampered by this perception. There is no evidence of record of any actual lost sales or other specific obstacles to Mallinckrodt's ability to compete related to Augustine Medical's alleged anticompetitive activities. Mallinckrodt continued to compete in the market during the period 1997 to 1999. Finally, there is no evidence that Augustine had the ability to exert market power (generally described in terms of market price) during this period. Indeed, the objective market data of record indicates otherwise: (1) the average price in the FAW OR market steadily declined over the period 1991 Q1 through 2002 Q2; (2) the market steadily grew during this same period; (3) since 1994 Q3, Mallinckrodt's average selling price was higher than that of Augustine Medical; (4) although Mallinckrodt's market share dropped in 1997, it has remained at the same level since that time while other competitors' shares have increased. (D.I. 212, Ex. 1 at exs. A, D, E, F) Although Mallinckrodt points out that there are a limited number of competitors in this market, Dr. Hoffman made no effort to segregate the effects of legitimate activities (e.g., the need for FDA approval) from whatever effects there might be in the market from the alleged anticompetitive activities.

FN6. (D.I.220, Ex. 20)

In sum, even if the court found that Dr. Hoffman's expert opinion passed muster under *Daubert v. Merrell Dow Pharms., Inc,* 509 U.S. 579 (1993), [FN7] the court concludes that Mallinckrodt has failed to adduce sufficient evidence to withstand summary judgment. [FN8]

FN7. The court finds that Dr. Hoffman failed to gather facts and data sufficient to form a reliable opinion and, therefore, his testimony would be excluded under Fed.R.Evid. 702 and *Daubert.*

FN8. Given the above decision, the court finds that Mallinckrodt's common law fraud counterclaim likewise is deficient. Under *Zenith Laboratories, Inc. v. Carter-Wallace, Inc.,* 530 F.2d 508 (3d Cir.1976), Mallinckrodt would have the burden of proving at trial that its efforts to develop and market its WarmTouch product have been thwarted by the inequitable advantage that Augustine Medical gained from its "fraudulently obtained patent." *Id.* at 515. Mallinckrodt has offered neither empirical evidence of the advantages allegedly gained by Augustine Medical nor evidence of Mallinckrodt's efforts to market its product. Under this record, the entry of summary judgment is appropriately entered in favor of Augustine Medical.

V. CONCLUSION

For the reasons states, Augustine Medical's motion for summary judgment is granted and the remaining motions are denied as moot. An appropriate order shall issue.

ORDER

At Wilmington, this 9th day of April, 2003, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Plaintiff's motion for summary judgment (D.I.207) is granted.

2. Plaintiff's motion to exclude the testimony of Dr. Abram E. Hoffman (D.I.210) is granted.

3. Defendants' motion in limine to preclude plaintiff from proffering at trial a definition of the relevant market (D.I.234) is denied as moot.

4. Defendants' motion in limine to preclude Dr. Gaier from testifying at trial on issues of patent damages (D.I.235) is denied as moot.

*10 5. Defendants' motion in limine to preclude plaintiff from contradicting statements made in its request for reexamination before the PTO (D.I.236) is denied as moot.

6. Defendants' motion in limine to prevent plaintiff from taking contradictory positions on the issue of the "Standard of Care" (D.I.237) is denied as moot.

7. Defendants' motion in limine to exclude evidence of U.S. Patent No. '332 and Application No.

Case 1:05-cv-00701-GMS   Document 32-4   Filed 01/23/2006   Page 8 of 8

Not Reported in F.Supp.2d                                                                                           Page 8
Not Reported in F.Supp.2d, 2003 WL 1873836 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

09/780,285 (D.I.238) is denied as moot.

8. Defendants' motion in limine to preclude plaintiff from introducing evidence regarding Tyco International and from referring to defendants as Tyco (D.I.239) is denied as moot.

9. Plaintiff's motion in limine to limit the testimony of defendants' expert Dr. Fred K. Forster (D.I.240) is denied as moot.

10. Plaintiff's motion in limine to limit the testimony of defendants' expert The Honorable Gerald J. Mossinghoff (D.I.242) is denied as moot.

11. Plaintiff's motion in limine to exclude evidence of the United States Patent and Trademark Office's grant of reexamination of U.S. Patent No. '428 (D.I.244) is denied as moot.

12. Plaintiff's motion in limine to exclude evidence of prejudgment interest (D.I.245) is denied as moot.

13. Plaintiff's motion in limine to exclude evidence of conduct occurring prior to August 1, 1997 (D.I.247) is denied as moot.

14. Plaintiff's motion in limine to exclude evidence and argument concerning defendants' claim that U.S. Patent '332 is invalid due to statutory double patenting (D.I.248) is denied as moot.

15. Plaintiff's motion in limine to exclude evidence of attorneys fees billed to defendant Tyco Healthcare Group, L.P. (D.I.249) is denied as moot.

16. Plaintiff's motion in limine to exclude admission of all documents requested, but not produced, before the close of fact discovery (D.I.250) is denied as moot.

17. Plaintiff's motion in limine to exclude evidence of its disclosure to ASTM International (D.I.252) is denied as moot.

18. Plaintiff's motion in limine to exclude the introduction of defendants' attorneys fees and costs that were requested but not produced during discovery as evidence of damages at trial (D.I.254) is denied as moot.

19. Plaintiff's motion in limine to exclude evidence of lawful conduct (D.I.256) is denied as moot.

20. Plaintiff's motion in limine to exclude hearsay evidence concerning 1987 demonstrations of early Bair Hugger Unit (D.I.257) is denied as moot.

21. The Clerk of Court is directed to enter judgment in favor of plaintiff against defendants.

D.Del.,2003.
Augustine Medical, Inc. v. Mallinckrodt, Inc.
Not Reported in F.Supp.2d, 2003 WL 1873836 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:01CV00387 (Docket) (Jun. 07, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.