LEXSEE 1996 US DIST LEXIS 19846

**DENTSPLY INTERNATIONAL, INC., AND TULSA DENTAL PRODUCTS, INC., Plaintiffs, v. NEW TECHNOLOGY COMPANY (aka NT COMPANY), TYCOM CORPORATION, and TYCOM DENTAL CORPORATION, Defendants.**

Civil Action No. 96–272 MMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1996 U.S. Dist. LEXIS 19846

November 26, 1996, Argued
December 19, 1996, Decided

**NOTICE:** [*1] FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Plaintiffs' motion to bifurcate the patent and trade secret trial for the antitrust trial granted. Plaintiffs' motion to stay antitrust discovery denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Trials > Separate Trials*
[HN1] Fed. R. Civ. P. 42(b) provides that a district court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim or counterclaim. The decision on whether to order separate trials under rule 42(b) is a matter of informed discretion by the district court.

*Legal Ethics > Professional Conduct > Frivolous Claims*
[HN2] The United States Supreme Court established a two–part test to identify such "sham" litigation. First, a lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits, and second, the litigant's subjective motivation must have been to interfere directly with the business relationships of a competitor. Further, only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.

*Legal Ethics > Professional Conduct > Frivolous Claims*
[HN3] Litigation will not be considered a "sham" so long as at least one claim in the lawsuit has objective merit.

*Patent Law > Infringement Actions > General Overview*
*Patent Law > Ownership > Conveyances > General Overview*
[HN4] A patent gives a patent owner the right to exclude others from the marketplace for a statutory number of years. Accordingly, a patent confers upon its owner the ability to bring monopolistic characteristics to the marketplace, the very antithesis of a prime purpose of antitrust legislation. Where a patent has been lawfully acquired, subsequent conduct permissible under the patent laws cannot trigger any liability under the antitrust laws.

*Civil Procedure > Trials > Separate Trials*
[HN5] Separate trials may be warranted so long as some of the issues in a second trial would be simplified. All of the issues in a second trial need not be implicated in the first.

*Patent Law > Infringement Actions > Defenses > Misuse*
*Patent Law > Remedies > Bad Faith Enforcement*
[HN6] Patent misuse is an affirmative defense that must be pleaded and proved.

*Civil Procedure > Trials > Separate Trials*
*Patent Law > Infringement Actions > General Overview*
[HN7] Courts have been bifurcating antitrust claims and patent infringement claims on a frequent and long-standing basis.

**COUNSEL:** Edward B. Maxwell, 2nd, Esq., and Josy W. Ingersoll, Esq., of Young Conaway Stargatt & Taylor, Wilmington, Delaware; Of Counsel: Dale M. Heist, Esq., Albert J. Marcellino, Esq., and Lynn A. Malinoski, Esq., of Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, Pennsylvania; attorneys for plaintiffs.

Jack B. Blumenfeld, Esq., and Julia Heaney, Esq., of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware; Of Counsel: Don W. Martens, Esq., Craig S. Summers, Esq., and Stephen M. Lobbin, Esq., of Knobbe, Martens, Olson & Bear, Newport Beach, California; George L. Graff, Esq., and Davis S. Benyacar, Esq., of Paul, Hastings, Janofsky & Walker LLP, New York, New

York; attorneys for defendants.

**JUDGES:** Murray M. Schwartz, Senior District Judge

**OPINIONBY:** Murray M. Schwartz

**OPINION:**

**MEMORANDUM OPINION**

Argued: November 26, 1996
Dated: December 19, 1996

**Murray M. Schwartz, Senior District Judge**

### I. INTRODUCTION

Plaintiff corporations Dentsply International, Inc. ("Dentsply") [*2] and Tulsa Dental Products, Inc. ("Tulsa") (collectively, "plaintiffs"), have brought three claims against defendant corporations New Technology Co. ("New Technology"), NT Acquisition Corp. ("NT Acquisition"), and Tycom Dental Corp. ("Tycom Dental") (collectively, "defendants"). Docket Item Number ("D.I.") 7. The claims arise from the alleged infringement of two Dentsply patents—U.S. Patent Number ("No.") *4,934,934* entitled "Dental File/Reamer Instrument" and U.S. Patent No. *5,464,362* entitled "Endodontic Instrument." D.I. 7 at Exhibits ("Exh.") 1, 2. In Count I of the Amended Complaint, plaintiffs allege patent infringement. D.I. 7 at 3. In Count II, plaintiffs allege trade secret misappropriation, D.I. 7 at 4, and in Count III, plaintiffs allege breach of contract, D.I. 7 at 8. Plaintiffs invoke this Court's jurisdiction under *28 U.S.C. §§ 1338* and 1367.

Defendants answered and brought a four-count counterclaim. D.I. 12. Their first count seeks a declaration of noninfringement and invalidity of Dentsply's two patents. D.I. 12 at 6. Their second count alleges violations of the Sherman Antitrust Act, *15 U.S.C. § 2*. D.I. 12 at 7. Counts III and IV allege violations of Delaware law; [*3] specifically, Count III alleges tortious interference with business relations, and Count IV asserts plaintiffs engaged in unfair competition. D.I. 12 at 8, 9. After oral argument, defendants dropped Counts III and IV of their counterclaim. D.I. 67.

Plaintiffs have moved to: (1) bifurcate the antitrust counterclaim pursuant to *Rule 42(b) of the Federal Rules of Civil Procedure*; and (2) stay all discovery on the antitrust counterclaim until trial on the patent infringement issues has concluded. D.I. 23. n1 For the reasons below, the Court will grant the motion to bifurcate, but the motion to stay will be denied.

   n1 Plaintiffs also moved to dismiss the state law counterclaims for an alleged failure to plead sufficient information to outline the elements of the claims and an alleged failure to plead with specificity pursuant to *Rule 9(b) of the Federal Rules of Civil Procedure.* D.I. 23. This aspect of plaintiffs' motion was mooted when defendants agreed to the voluntary dismissal of the state law counterclaims without prejudice. D.I. 67.

[*4]

### II. DISCUSSION

#### A. Motion to Bifurcate

[HN1] *Rule 42(b) of the Federal Rules of Civil Procedure* provides that a district court, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim [or]...counterclaim." The decision on whether to order separate trials under Rule 42(b) is a matter of "informed discretion" by the district court. *Lis v. Robert Packer Hosp., 579 F.2d 819, 824* (3d Cir.) (citations omitted), cert. denied, *439 U.S. 955, 58 L. Ed. 2d 346, 99 S. Ct. 354 (1978).* n2

   n2 Defendants argue that the Court should only grant the motion to bifurcate upon a showing of substantial prejudice by the plaintiffs. D.I. 33 at 11 (quoting 5 MOORE'S FEDERAL PRACTICE P42.03, at 43-46). This request is belied by the plain text of the bifurcation Rule itself. The Rule clearly provides bifurcation may be ordered "in furtherance of convenience *or* to avoid prejudice, *or* when separate trials will be conducive to expedition and economy...." *FED. R. Civ. P. 43(b)* (emphasis added).

[*5]

Plaintiffs offer four justifications as to why bifurcation is warranted in this case. First, they assert that bifurcation will remove patent and trade secret issues from the counterclaim, thus simplifying or even eliminating the antitrust count of the counterclaim. Second, they contend there will be little or no overlap in evidence on the patent and antitrust claims. Third, they state that bifurcation, given the complex nature of this case, will reduce confusion of the jury. Finally, they submit, an order of separate trials will streamline the resolution of the entire controversy. According to plaintiffs, these four factors—all subserving the ideal of thorough and efficient justice—militate toward an order of bifurcation under Rule 42(b). See *In re Innotron Diagnostics, 800 F.2d 1077, 1085 (Fed. Cir. 1986)* (considering substantially similar factors).

Defendants, on the other hand, weigh these four factors much differently. They argue that the Court, after deliberating on all of the factors in this case, should refrain from ordering separate trials. The Court turns now to the contentions of each side.

### 1. Will Bifurcation Simplify or Eliminate the Antitrust Counterclaim? [*6]

In their antitrust counterclaim, defendants allege plaintiffs acted in three ways to monopolize the market for endodontic files n3 in violation of the antitrust laws; by:

> (a) Instituting this litigation in bad faith and without good grounds to believe, founded upon reasonable inquiry that defendants have infringed one or more of the patents-in-suit, have misappropriated any valid trade secrets or breached any contract, for the express purpose of hindering and preventing defendants from engaging in lawful competition.
>
> (b) Acquiring competitors and potential competitors with the purpose and effect of eliminating lawful competition.
>
> (c) Using their monopoly power in an effort to compel customers to enter into long-term supply contracts in order to foreclose entry into the market of lawful competition.

D.I. 12 at 7, P15.

> n3 Endodontic files are flexible dental instruments, used in dental surgery, including root canal surgery. The files at issue in this lawsuit are configured to follow a curved tooth root canal. D.I. 7 at Exh. 1.

[*7]

In the first count of its counterclaim, defendants allege plaintiffs violated the antitrust laws by engaging in "sham" litigation—using spurious claims as a thug tactic of intimidation and harassment. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993)*, [HN2] the Supreme Court established a two-part test to identify such "sham" litigation. First, a lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and second, the litigant's "subjective motivation" must have been "to interfere *directly* with the business relationships of a competitor." *508 U.S. at 60-61* (quoting *Eastern R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 144, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961))*. Further, "only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." Id

Thus, plaintiffs are correct in their assertion that if they can convince a jury that defendants have infringed their patent, an important aspect of the defendants' antitrust counterclaim—their allegations [*8] of "sham" litigation—will be mooted. A winning lawsuit cannot be considered a "sham," despite a subjective, anti-competitive motive by the litigant. *Professional Real Estate Investors, 508 U.S. at 60 n.5* ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."); *U.S. Philips Corp. v. Sears Roebuck & Co., 55 F.3d 592, 597* (Fed. Cir.) ("The charge that Philips' patent infringement suit in Florida was sham can not be deemed to have substance, for Philips prevailed in Florida on that issue."), cert. denied, *133 L. Ed. 2d 492, 116 S. Ct. 567 (1995); Columbia Pictures Indus., Inc. v. Redd Horne Inc., 749 F.2d 154, 161 (3d Cir. 1984)* (holding that success on the merits of an infringement action demonstrates clearly that it would be impossible to prove bad faith necessary for antitrust claim of "sham" litigation); *Levine v. McLeskey, 881 F. Supp. 1030, 1042 (E.D. Va. 1995)*. Further, although defendants contend plaintiffs must prevail in a first trial on both the patent and trade secret counts of their claim for an accusation of "sham" to be dismissed, they have not supported this contention with law. In fact, courts [*9] have indicated that [HN3] litigation will not be considered a "sham" so long as at least one claim in the lawsuit has objective merit. See *Professional Real Estate Investors, 508 U.S. at 60* (specifying *"lawsuit* must be objectively baseless") (emphasis added); *Eden Hannon & Co. v. Sumitomo Trust & Banking Co., 914 F.2d 556, 565 (4th Cir. 1990)* (holding since plaintiff succeeded on one of four claims, suit was "hardly a sham."), cert. denied, *499 U.S. 947, 113 L. Ed. 2d 467, 111 S. Ct. 1414 (1991)*. Therefore, if plaintiffs prevail on one of their counts, the sham aspect of the antitrust counterclaim must fail.

But as defendants point out, the "sham" allegation is just one aspect of their antitrust counterclaim. Defendants also allege two other instances of unlawful behavior by plaintiffs: the unlawful acquisition of competitors and the use of monopoly power to coerce customers into long-term supply contracts. See D.I. 12 at 7, P15. Even if plaintiffs prevail in a first trial, defendants argue, these two bases for an antitrust claim would still be viable and ripe for determination.

Defendants' vision of the antitrust claims surviving an adverse patent ruling is somewhat clouded. [*10] There is a possibility that all aspects of the antitrust counterclaim—including the two non-"sham" allegations—could

be resolved by a first trial on patent infringement. [HN4] A patent gives a patent owner the right to exclude others from the marketplace for a statutory number of years. Accordingly, a patent confers upon its owner the ability to bring monopolistic characteristics to the marketplace—the very antithesis of a prime purpose of antitrust legislation. "Where a patent has been lawfully acquired, subsequent conduct permissible under the patent laws cannot trigger any liability under the antitrust laws." *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1206 (2d Cir. 1981), cert. denied, 455 U.S. 1016, 72 L. Ed. 2d 132, 102 S. Ct. 1708 (1982); *Crucible, Inc. v. Stora Kopparbergs Bergslags AB*, 701 F. Supp. 1157, 1160 (W.D. Pa. 1988) (quoting Xerox). Thus, if the validity of the patents at issue is sustained, and a jury determines defendants have produced infringing products, defendants' allegations about illegal acquisition of competitors may be irrelevant. See *Axis, S.P.A. v. Micafil, Inc.*, 870 F.2d 1105, 1107 (6th Cir.) (dismissing antitrust allegation of illegal acquisition [*11] of competitors because patents were "impenetrable barrier" to plaintiff company's entry into market), cert. denied, 493 U.S. 823, 107 L. Ed. 2d 49, 110 S. Ct. 83 (1989); *Valley Products. Inc. v. Landmark*, 877 F. Supp. 1087, 1091-93 (W.D. Tenn. 1994) (following reasoning of Axis, above); *United States v. L.D. Caulk Co.*, 126 F. Supp. 693, 705 (D. Del. 1954) (reasoning that "a holder of a valid patent monopoly and without any unlawful combination or conspiracy with others is not limited to any percentage of control of that article which is covered by the patent. Such I think is the very purpose of the patent laws . . . ."). Further, plaintiffs have asserted they have not entered into long-term contracts that extend beyond the applicable terms of its patents; a portion of the antitrust counterclaim alleges such long-term contracts exist. Like the allegations of illegal acquisition of competitors, this could be the subject of a summary judgment motion in a later proceeding. n4

> n4 There is also a distinct possibility defendants lack standing to press the counterclaims based on illegal acquisition of competitors and long-term contracts. At oral argument, counsel for defendants fleshed out its antitrust argument; by acting in violation of the antitrust laws, plaintiffs had kept the price for endodontic instruments artificially high, thereby allowing defendants to adopt a favorable pricing structure. Accordingly, there is reason to question whether defendants have suffered an antitrust injury, a prerequisite to a justiciable antitrust claim. See *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 582-83, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) ("Respondents [cannot] recover damages for any conspiracy by petitioners to charge higher than competitive prices in the . . . market. Such conduct would indeed violate the Sherman Act, but it could not injure respondents: as petitioners' competitors, respondents stand to gain from any conspiracy to raise the market price.") (internal citations omitted).

[*12]

Defendants also warn the merits of the patent, trade secret and contract claims brought by plaintiffs will have to be completely relitigated to a second antitrust jury. The Federal Circuit Court of Appeals does not share this concern. In *In re Innotron Diagnostics*, 800 F.2d 1077 (Fed. Cir. 1986), the court ordered a separation of patent and antitrust trials and explained why such concerns are misplaced. "Economy is served," the court wrote, "because in the trial of the patent issues the validity of the patent . . . will be determined and become law of the case and thus removed from trial on the original antitrust issues." *Id. at 1085.* Thus, if defendants' prevail at a first trial and demonstrate the invalidity of plaintiffs' patents, they need not again prove the same issues at a second trial. Id.

Defendants stress these situations are mere possibilities and all of the antitrust issues may not be resolved in a first trial. This argument, however, misapprehends the goal of bifurcation. [HN5] Separate trials may be warranted so long as some of the issues in a second trial would be simplified, *Akzona, Inc. v. E.I. Du Pont de Nemours & Co.*, 607 F. Supp. 227, 232 (D. Del 1984); [*13] all of the issues in a second trial need not be implicated in the first. See *Baxter Travenol Lab. v. LeMay*, 536 F. Supp. 247, 252 (S.D. Ohio 1982) (explaining "while Defendant's antitrust counterclaim is not based entirely on the allegedly 'sham' litigation, the Court deems it appropriate... to permit Plaintiffs' complaint to go to trial first, in order to aid in the determination of whether said complaint is baseless.").

### 2. Is There An Overlap of Proofs?

Plaintiffs argue that bifurcation is further warranted because there is no overlap in proofs between the allegations in the complaint and the antitrust counterclaim. To prove the allegations in the complaint, plaintiffs anticipate introducing evidence regarding the patents, defendants' products, and the manner in which the defendants' products were developed and made. By contrast, plaintiffs assert evidence of a very different sort will be needed for the antitrust claim; proofs will focus on plaintiffs' actions in initiating this lawsuit, on the companies acquired by plaintiffs, on plaintiffs' business practices with its own customers, and proofs that endodontic instruments comprise a relevant product market in which plaintiffs [*14] exercised a monopoly. Thus, plaintiffs forcefully argue, the minuscule overlap in proof does not warrant a single

trial.

Defendants concede there is not much overlap in proofs when the elements of the antitrust claims are compared with the elements of plaintiffs' claims. Defendants do expect a significant overlap of proofs, however, if and when the plaintiffs try to establish damages. According to defendants, plaintiffs will try to establish damages by calculating their loss in profits caused by the alleged infringement of their patents. But these profits should be reduced, defendants posit, because plaintiffs have "augmented their profitability by virtue of their unlawfully acquired market power[.]" D.I. 33 at 9. Defendants attach an affirmation by an economist to demonstrate that the determination of damages in claims such as plaintiffs' generally depends upon what proportion of the alleged infringer's sales would have been recouped by plaintiff. See D.I. 33 at Exh. A. Thus, defendants argue, they are entitled to present evidence that plaintiffs engaged in anticompetitive activities as a defense to plaintiffs' damage claims; even if bifurcation is ordered, the parties would have [*15] to present the same issues twice, to two juries.

Plaintiffs respond by pointing out that no damage theories have been determined, and no damage proofs have been collected. But even if lost profits are pursued, plaintiffs argue, defendants have not pled any affirmative defenses based on antitrust or patent misuse allegations. n5 Finally, plaintiffs state they are willing to sever and stay any damage proceedings so that damages could be adjudicated either in a separate trial, or in conjunction with any antitrust claims that may remain viable for a second trial. See *Smith v. Alyeska Pipeline Serv. Co., 538 F. Supp. 977, 982-86 (D. Del. 1982)* (ordering separate trials for liability and damages in patent case because issue of damages was complex), aff'd mem., *758 F.2d 668 (Fed. Cir. 1984)*, cert. denied, *471 U.S. 1066, 85 L. Ed. 2d 499, 105 S. Ct. 2142 (1985)*.

> n5 [HN6] Patent misuse is "an affirmative defense that must be pleaded and proved." *Bio-Rad Lab., Inc. v. Nicolet Instrument Corp., 739 F.2d 604, 617 (Fed. Cir.)*, cert. denied, *469 U.S. 1038, 83 L. Ed. 2d 405, 105 S. Ct. 516 (1984)*. Further, plaintiffs have cited authority which indicates if such an affirmative defense were proved, it would be a complete bar to the enforceability of a patent; there would not be any damages. *United States Gypsum Co. v. National Gypsum Co., 352 U.S. 457, 465, 1 L. Ed. 2d 465, 77 S. Ct. 490 (1957)* (holding "courts will not aid a patent owner who has misused his patents to recover *any* of their emoluments accruing during a period of misuse or thereafter until the effects of such misuse have been dissipated . . .") (emphasis added).

[*16]

### 3. Will Bifurcation Avoid Jury Confusion and Expedite Trial?

This is the primary end to which any order of separate trials under Rule 42(b) is directed. All of the arguments advanced by both parties so far address, directly or indirectly, the issues of judicial economy and jury comprehension. In plaintiffs' view, if all of the diverse and complex evidence is presented in a single trial, the jury will be left numb and bewildered; application of Rule 42(b) will permit the jury to adroitly separate the antitrust chaff from the central patent and trade secret claims. Plaintiffs point out that, if both the complaint and counterclaims were presented in a single trial, a jury would not only have to determine whether the plaintiffs' patents were valid and infringed, but also whether its trade secrets were misappropriated—rigorous chores in and of themselves. If the antitrust counterclaims were tried at the same time, the jury would also have to consider, at a minimum, intricate factual and economic analyses regarding (1) the relevant market before and after plaintiffs' allegedly acquired competitors, (2) actual and potential shares in that market, (3) barriers to defendants' entry [*17] into the market, (4) long-term contracts plaintiffs' may or may not have had with customers, and whether those contracts violated the antitrust laws, (5) the issue of whether the claims of the complaint were, viewed both objectively and subjectively, baseless, (6) antitrust damages, and (7) all the remaining concomitant antitrust considerations.

Defendants have countered by arguing a jury cannot eliminate antitrust considerations from its deliberations on plaintiffs' claims without severely prejudicing its defense. But this ignores the fact that [HN7] courts have been bifurcating antitrust claims and patent infringement claims on a frequent and long-standing basis. Indeed, the Federal Circuit has endorsed the "now-standard practice of separating for trial patent issues and those raised in an antitrust counterclaim." *Innotron, 800 F.2d at 1084*. See also *Fischer & Porter Co. v. Sheffield Corp., 31 F.R.D. 534, 540 (D. Del. 1962)* (quoting recommendation from Report of the Attorney General's National Committee To Study the Antitrust Laws that antitrust and patent issues should be considered in separate trials); but see *Genentech Inc. v. The Wellcome Found, Ltd., 1990 U.S. Dist. LEXIS 3806,* [*18] *14 U.S.P.Q.2D (BNA) 1363, 1373 (D. Del. 1990)* (denying bifurcation because proof that plaintiffs knew of prior art but intentionally withheld information from patent office bears on both defense to patent infringement and antitrust counterclaim). In this case, the only real and significant overlap of evidence defendants can delineate pertains to damages. This is not enough.

Separate trials are warranted, and will be granted, pursuant to Rule 42(b).

### B. Motion to Stay Discovery on Antitrust Counterclaim

Although separate trials have been ordered, there remains a distinct and important issue: whether the Court should order a stay in discovery on the antitrust counterclaims. Replicating much of its argument in favor of bifurcation, plaintiffs argue that antitrust discovery should await a disposition of a first trial, since the first trial may remove some of antitrust claims. Plaintiffs also express their dread at engaging separate antitrust counsel for antitrust discovery; a stay in discovery would, no doubt, spare them considerable expense.

The Court is skeptical about plaintiffs' concern about expense; after all, they brought the suit and are asking for discovery in their own [*19] right. Moreover, they should have expected an antitrust counterclaim, now commonplace in patent litigation. More importantly, a stay of discovery on antitrust issues would most likely devolve into a series of time-consuming and expensive discovery disputes as to whether particular discovery is directed at the patent or antitrust claims. Efficiency dictates that discovery on all claims, including the antitrust counterclaims, continue apace.

An order will be entered granting plaintiffs' motion to bifurcate the patent and trade secret trial from the antitrust trial. Plaintiffs' motion to stay antitrust discovery, however, will be denied.