## Westlaw.

Not Reported in F.Supp.2d
Page 1
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
PEGASUS DEVELOPMENT CORPORATION and
Personalized Media Communications, L.L.C.,
Plaintiffs
v.
DIRECTV, INC., Hughes Electronics Corporation,
Thompson Consumer Electronics, Inc., and Philips
Electronics North America Corporation, Defendants.
**No. Civ.A. 00-1020-GMS.**

May 14, 2003.

MEMORANDUM AND ORDER

SLEET, J.
*1 AND RELATED COUNTERCLAIMS

I. INTRODUCTION

On December 4, 2000, Pegasus Development
Corporation ("Pegasus") and Personalized Media
Communications, L.L.C. ("PMC") filed a complaint
against several defendants, alleging infringement of
six patents, including U.S. Patent Nos. 4,965,825
("the '825 patent") and 5,335,277 ("the '277 patent").
Since that time, the original scheduling order has
been revised several times. Currently, fact discovery
is scheduled to close on August 22, 2003, and a trial
is scheduled for February of 2004.

On February 4, 2003 and March 14, 2003,
respectively, the defendant Thomson Consumer
Electronics, Inc. ("Thomson") filed with the Patent
and Trademark Office ("PTO") a request for *ex parte*
reexaminations of the '825 and '277 patents. The
request for reexamination of the '825 patent was
granted on April 10, 2003. [FN1] Presently before the
court is a joint motion by the defendants to stay the
litigation pending the completion of the patent
reexaminations (D.I.459). After careful consideration
of the parties' submissions, and for the reasons
detailed below, the court will grant the motion.

> FN1. The court is not yet aware of a
> decision by the PTO regarding

reexamination of the '277 patent.

II. DISCUSSION

The decision to stay a case is firmly within the
discretion of the court. *Cost Bros., Inc. v. Travelers
Indem. Co., 760 F.2d 58, 60 (3d Cir.1985)*. This
authority applies equally to patent cases in which a
reexamination by the PTO has been requested.
*Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27
(Fed.Cir.1988)* ("Courts have inherent power to
manage their dockets and stay proceedings, including
the authority to order a stay pending conclusion of a
PTO reexamination.") (internal citation omitted); *see
also Emhart Indus. v. Sankyo Seiki Mfg., 3
U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987)* ("[I]n passing
the legislation establishing the reexamination
proceeding, Congress stated its approval of district
courts liberally granting stays within their
discretion."); *Gould v. Control Laser Corp., 705 F.2d
1340, 1342 (Fed.Cir.1983)* (citing legislative history
of reexamination statute). In determining whether a
stay is appropriate, the court is guided by the
following factors: "(1) whether a stay would unduly
prejudice or present a clear tactical disadvantage to
the non-moving party; (2) whether a stay will
simplify the issues in question and trial of the case;
and (3) whether discovery is complete and whether a
trial date has been set." *Xerox Corp v. 3 Comm
Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y.1999)*
(citing cases); *cf. United Sweetner USA, Inc. v.
Nutrasweet Co., 766 F.Supp. 212, 217 (D.Del.1991)*
(stating a similar test).

In this case, there are two plaintiffs, four defendants,
and several counter claimants, as well as six patents
comprising dozens of claims. In addition, the written
submissions in this case have been particularly
voluminous; the briefing on claim construction alone,
for example, constitutes 576 pages. *See* Report and
Recommendation of Special Master Regarding Claim
Construction at 2 (citing "copious briefing"). In these
ways, the present suit is quite complex, although,
perhaps, not extraordinarily so. The greater context of
this suit is extraordinary, however: the plaintiffs have
filed more than 300 related patent applications based
upon an original patent application filed in 1981 and
supplemented in 1987. Together, these applications
contain an estimated 10,000 claims. Furthermore, as
observed by the Special Master appointed in this
case, the 1987 application alone constitutes over 300

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

columns of patent text and "is, by any measure, an extremely complex document." *Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21. Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

**\*2** The reexamination process will serve this purpose. For example, the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech, Inc., 1997 WL 94237, at *9 (D.Kan.1997); Hamilton Indus., Inc. v. Midwest Folding Products Mfg., 1990 WL 37642, at *1-2 (N.D.Ill.1990).* Other potential efficiencies resulting from the reexamination process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainsley, 213 U.S.P.Q. 290, 290 (W.D.Okla.1982)* ("Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc., 2000 WL 1134471, at *3 (S.D.N.Y.2000)* ("[T]he grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid

claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the reexamination process will proceed "with special dispatch," 35 U.S.C. 305, the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, the court reminds the plaintiffs that they affirmatively invoked the rights of the patent statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the reexamination mechanism, and the PTO has determined that reexamination is warranted. There is nothing facially untoward in that. Moreover, the court notes that if, after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc., 807 F.2d 955, 961 (Fed.Cir.1986)* (holding that upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1139 (Fed.Cir.1985)*). In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is undue.

**\*3** Objecting to a stay, the plaintiffs also have complained of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint Motion to Stay (D.I.488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of Motion to Stay (D.I.460) at 4 ("Many of the Harvey patents had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("[I]t appears that PMC sought to 'overwhelm' the PTO and the Courts.").

As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for reexamination of the '825 patent comprised 2,610 pages; its request regarding the '277 patent totaled

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　　　　　　Page 3
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's reexamination requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the reexamination procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the patents-in-suit, the implications of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found "substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the '825 patent necessitate a reexamination. *See* PTO's Decision Granting Reexamination, Supp. Appendix to Defs.' Joint Brief in Support of Motion to Stay (D.I.467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a stay outweigh the costs.

### III. CONCLUSION

Because the PTO's reexamination of one or more of the patents-in-suit may materially affect the issues in this case, the court will grant the defendants' motion to stay. The case is stayed pending a disposition of the PTO's reexamination of patent '825, and will be stayed pending reexamination of the '277 patent, if applicable. All pending motions will be denied without prejudice; the parties may refile them following the stay and upon the entry of a new scheduling order, if applicable.

Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendants' Motion to Stay Pending Reexamination by the U.S. Patent and Trademark Office (D.I.459) is GRANTED. The proceedings are stayed from the date of this order until further notice.
2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '825 patent, and any other decision of the PTO regarding reexamination of any of the other patents-in-suit.
*4 3. The plaintiffs' Motion for Leave to Assert Claim 15 of U.S. Patent 4,965,825 (D.I.399) is DENIED without prejudice.
4. Thomson's Motion to Dismiss or in the Alternative for Summary Judgment (D.I.376) is DENIED without prejudice.
5. Phillips' Motion to Dismiss for Lack of Standing (D.I.396) is DENIED without prejudice.

D.Del.,2003.
Pegasus Development Corp. v. Directv, Inc.
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00cv01020 (Docket) (Dec. 04, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.