IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROHM AND HAAS COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 90-109-SLR |
| ) | |
| BROTECH CORPORATION, ) | |
| ) | |
| Defendant. ) | |

---

Rudolf E. Hutz, Esquire, N. Richard Powers, Esquire, and Jeffrey B. Bove, Esquire, of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware, counsel for plaintiff. Of Counsel: William E. Lambert, III, Esquire of Rohm and Haas Company, Philadelphia, Pennsylvania.

Robert K. Payson, Esquire, of Potter Anderson & Corroon, Wilmington, Delaware, counsel for defendant. Of Counsel: Raphael V. Lupo, Esquire, Jack Q. Lever, Jr., Esquire, Donna M. Tanguay, Esquire, of Willian Brinks Olds Hofer Gilson & Lione, Washington, D.C.; Herbert B. Keil, Esquire, of Keil & Weinkauf, Washington, D.C.; Paul R. Rosen, Esquire, and Niels Korup, Esquire, of Spector Gadon & Rosen, P.C., Philadelphia, Pennsylvania.

---

**MEMORANDUM OPINION**

Dated: March 11, 1992

Wilmington, Delaware

ROBINSON, U.S. District Judge

This patent infringement action was brought in March 199 by plaintiff Rohm and Haas Company ("Rohm and Haas") chargin defendant Brotech Corporation ("Brotech") with infringement of U.S Patent Nos. 4,224,415 ("'415"), 4,256,840 ("'840"), 4,382,12 ("'124") and 4,818,773 ("'773"), all owned by Rohm and Haas (Docket item, "D.I.", 1, 306) Patents '415, '840 and '124 "relat to the processes for the preparation of macroreticular cross-linke copolymer beads and adsorbents or [ion exchange resins] mad therefrom." (D.I. 88 at 11) The fourth patent, '773, "is directe to alkylamin ophosphonic chelating resins made in a specified way the process of making such [ion exchanges resins], and the variou methods of using the resins." (D.I. 88 at 13) Since June of 1990 the parties have engaged in protracted and often argumentativ discovery. The Court ordered discovery to conclude on April 15 1992 with a three week bench trial scheduled to commence on Octobe 13, 1992. (D.I. 248) On September 13, 1991, an anonymous thir party requested the Patent & Trademark Office ("PTO") to reexamine Patent '415. (D.I. 286, Ex. A) The PTO granted the request fo reexamination on the grounds that it raised a substantial nev question of patentability affecting claims 1-2, 4-12 of Patent '415. (D.I. 287, Ex. A) In view of the PTO's action, Brotech nov moves for a stay of the entire proceedings pending completion of the reexamination process. (D.I. 287)

Reexamination of patentability is permissible under 35 U.S.C. §301 et seq. A request may be made at any time to the PTC

2

and "must be based upon prior art patents or publications which raise 'a substantial new question of patentability'". <u>Emhart Industries, Inc. v. Sankyo Seiki Mfg.</u>, 3 USPQ2d 1889, 1890 (N.D.Ill. 1987). Within three months, the Commissioner of Patents determines whether the request raises a substantial new question of patentability, 35 U.S.C. §303, and if so, orders a reexamination, which occurs with only the PTO and the patent owner participating. 35 U.S.C. §306. The "ultimate result of a reexamination procedure is an order either canceling the patent as unpatentable, confirming the patent or amending the patent. Orders of confirmation or amendment carry the usual presumption of validity accruing to patents and patent reissues." <u>Grayling Industries, Inc. v. GPAC</u>, 19 USPQ2d 1872 (N.D.Ga. 1991). A "patentee whose claims are twice rejected . . . may appeal to the Board of Patent Appeals and Interferences" and, if still unsatisfied, "may appeal to either United States Court of Appeals for the Federal Circuit or the United States District Court for the District of Colombia." <u>United Sweetener USA, Inc. v. Nutrasweet Co.</u>, 766 F.Supp. 212, 215 n.5 (D.Del. 1991) (citations omitted).

The decision to stay proceedings pending the outcome of reexamination rests within the discretion of the Court. <u>United Sweetener USA, Inc. v. Nutrasweet Co.</u>, 766 F.Supp. at 215; <u>Ingro v. Tyco Industries, Inc.</u>, 227 USPQ 69, 70 (N.D.Ill. 1985). A stay shifts to the PTO the essential issue of whether a patent in suit is actually valid; it does not terminate the case. <u>Emhart Industries, Inc. v. Sankyo Seiki Mfg.</u>, 3 USPQ2d at 1890. Although

3

not expressly mandated by statute, the legislative history suggests the reexamination procedure was created to "provide the federal courts with the expertise of the PTO." Grayling Industries, Inc. v. GPAC, 19 USPQ2d at 1872; Patlex Corp. v. Mossinghoff, 758 F.2d 594, 601-603 (Fed.Cir. 1985) (outlining three main benefits behind reexamination statute), modified on other grounds 771 F.2d 480 (1985); Emhart Industries, Inc. v. Sankyo Seiki Mfg., supra (noting seven benefits of PTO examination). In determining "whether to grant a stay, 'a district court must evaluate the possible damage, hardship and inequities to the parties to the lawsuit in the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case'". United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. at 217.

According to Brotech, the PTO may ultimately invalidate Patent '415, thereby resolving or mooting some of the issues in controversy. To promote judicial economy, and since neither party will be prejudiced, defendant urges the Court to await the benefit of a decision by the PTO. Furthermore, since Rohm and Haas has acknowledged that Patents '124 and '840 are related to '415 (D.I. 88) and, therefore, may be implicated by the decision as to Patent '415, Brotech advises that the proceedings as to all three patents should be stayed. With regard to the fourth patent, '717, Brotech is willing to proceed, although warning that it would be more efficient to stay the entire action.

Rohm and Haas objects to a stay of the proceedings on three grounds. First, plaintiff contends reexamination will not moot any of the issues in controversy because it is unlikely that the '415 will be invalidated or even narrowed in scope, nor will Patents '124 or '840 be affected. Relying on raw statistics from the PTO (D.I. 306, Ex. 9), Rohm and Haas argues that the PTO's grant of reexamination in this case is insignificant as such review is generally automatic. And even where reexamination has occurred, the results are uncompelling: 24% of all claims were confirmed, 64% of all patents were changed somewhat and 12% of all claims were canceled. (D.I. 306, Ex. 9 at p.8) Rohm and Haas further avers that the PTO's reexamination is inconsequential since Brotech was aware of the prior art relied on by the anonymous requestor, yet has not indicated an intention to develop its defense accordingly.

In response, Brotech turns the statistics to demonstrate that the procedure may affect the patent in issue since in 76% of all the cases reexamined, a change or invalidation of one or more of the patent claims occurred. Any change in the '415 will also affect the scope of the '124 and '840, Brotech contends, because Rohm and Haas has admitted a relationship between the three patents. (D.I. 88) Brotech further denies that its knowledge of the prior art asserted by the anonymous requestor is irrelevant to the PTO's reexamination and to the appropriateness of the stay; rather, the Court should focus on whether a stay would simplify the issues and advance judicial economy. <u>United Sweetener USA, Inc. v. Nutrasweet Co.</u>, 766 F.Supp. at 217.

5

While the statistics presented by Rohm and Haas are illuminating, we find its first argument against a stay unpersuasive. As recognized by Judge Roth, a stay pending reexamination can simplify the issues, present technical expertise from the PTO in relevant issues and assist in preparation for trial. <u>United Sweetener USA, Inc. v. Nutrasweet Co.</u>, supra; <u>Loffland Bros. Co. v. Mid-Western Energy Corp.</u>, 225 USPQ 886, 887 (W.D.Okla. 1985). The statistics presented demonstrate the reexamination process has the potential to invalidate, transform or even strengthen Patent '415. Pondering about the likelihood or probability of the outcome, however, is unimportant as we find the technical expertise to be gained by a PTO decision which may clarify the issues with regard to discovery and ultimately for trial weighs toward deferring to the reexamination procedure. <u>Loffland Brothers Co. v. Mid-Western Energy Corp.</u>, 225 USPQ at 887; <u>Emhart Industries, Inc. v. Sankyo Seiki Mfg.</u>, 3 USPQ2d at 1892; <u>Parker Hannifin Corp. v. Davco Mfg. Corp.</u>, 13 USPQ2d 1412 (N.D.Ohio 1989). Brotech's alleged knowledge of the prior art in issue is inconsequential since the reexamination request was brought by an anonymous third party.

Rohm and Haas next asserts the reexamination proceeding could take an inordinate amount of time and a stay would, therefore, delay the case indefinitely. Since this case is in the advanced stages of litigation with less than two months remaining in discovery and a trial scheduled, Rohm and Haas urges the Court to keep the case on track. In reply, Brotech disputes that a stay

at this stage of the proceedings is precluded. <u>Grayling Industries, Inc. v. GPAC, Inc.</u>, 19 USPQ2d at 1872. In an attempt to alleviate Rohm and Haas' concern over the indefinite stay, Brotech notes that a stay may be lifted at any time when the Court finds it is no longer appropriate. <u>Gould v. Control Laser Corp.</u>, 705 F.2d 1340, 1342 (Fed.Cir.), <u>cert</u>. <u>denied</u> 464 U.S. 935 (1983).

Although this action has been pending on the Court's docket for over a year, the proceedings have not advanced too far to preclude a stay, especially considering that trial is scheduled to commence in over seven months, no pretrial order is in place, nor has the Court decided any dispositive motions on the merits. (D.I. 248, ¶3; D.I. 308)

Moreover, Rohm and Haas' invocation of two prior decisions of this Court for denials of stays at certain stages in litigation is uncompelling. <u>General Tire & Rubber Company v. Watson-Bowman Associates, Inc.</u>, 193 USPQ 479 (D.Del. 1977); <u>E.I. DuPont de Nemours v. Phillips Petroleum Co.</u>, 711 F.Supp. 1205 (D.Del. 1989). First, in <u>General Tire & Rubber Company</u>, the case progressed through "years of extensive discovery and a number of rulings" before plaintiff moved to stay the proceedings before the reexamination process was even initiated. Extensive discovery had occurred over a few years and the trial was postponed once before plaintiff moved to stay. The Court denied the motion and ordered the trial to proceed in order to prevent additional delay. In so doing, the Court recognized the benefits of the "PTO's input", but declined the stay because the case was nearly five years old and

7

the "public interest in the prompt and final resolution of disputes, especially in patent matters, militates in favor of refusing to postpone this trial once again." 193 USPQ at 483.

Similarly, in <u>Phillips Petroleum</u>, the case had progressed through trial, appeal and remand before the plaintiff argued for the stay. With specific issues to resolve in remand, the Court discounted the parties' maneuvering and refused to order the stay where there was a demonstrated tactical advantage to be gained by one party. 711 F.2d at 1209 n.9.

The case at bar has neither progressed to the advanced and protracted stages of litigation, nor fermented on the docket for an inordinate period to justify application of <u>General Tire</u> or <u>Phillips Petroleum</u>. Rather, the more pertinent reasoning rests with a more recent decision, <u>United Sweetener</u>, where the Court granted the stay of all proceedings pending Nutrasweet Co.'s appeal of the adverse reexamination proceeding to the Board of Patent Appeals and Interferences. 766 F.Supp. at 213. The litigation had proceeded through limited discovery on the two claims in issue before the PTO and the Court had considered only pretrial motions. See <u>United Sweetener USA, Inc. v. Nutrasweet Co.</u>, 760 F.Supp. 400 (D.Del. 1991). The Court concluded the benefits of a PTO decision and a respect for the resources already expended thereto outweighed proceeding with the litigation and, thereby, prevented a race between the Court and the PTO to determine patent validity. 766 F.Supp. at 217. We further read <u>United Sweetener</u> as consistent with <u>Grayling Industries v. GPAC</u>, 19 USPQ2d at 1872. There on

facts slightly more similar to those at bar the court granted a stay pending reexamination even though the action had been pending for over two years and a pretrial order was accepted and signed by the court. Observing that, the "interest underlying the reexamination procedure doubtlessly would have been served better by an earlier filing of the petition for reexamination" by plaintiff, the court nonetheless concluded that the benefits of a PTO review outweighed the delinquency. 19 USPQ2d at 1873. While the facts herein have not advanced as far as Grayling, we find the benefits delineated therein, as well as in United Sweetener, outweigh Rohm and Haas' second argument against a stay.

Finally, Rohm and Haas contends Brotech will gain an unfair tactical advantage by a cease of activity since a related case, Purolite International Ltd. v. Rohm and Haas, C.A. No. 91-CV-2740 ("the Pennsylvania action") filed by Brotech in the Eastern District of Pennsylvania, will proceed to final adjudication more quickly than this action. Essentially, the Pennsylvania action was brought by Brotech and its subsidiary Purolite against Rohm and Haas and others for claims based on civil RICO, antitrust and common law fraud. Brotech was forced to sever involvement in the Pennsylvania case by order of the Court. (D.I. 159) Rohm and Haas traces with great detail the history of both cases and surmises, based on the conduct of counsel for Brotech, that the urgency to stay is yet another attempt to derail this case so Rohm and Haas will be forced to wrongfully defend the validity of its patents in Philadelphia even though it moved first in this Court for relief.

Rohm and Haas asserts that such a result will greatly prejudice it. (D.I. 308) <u>E.I. DuPont de Nemours v. Phillips Petroleum</u>, 711 F.Supp. at 1208; <u>Freeman v. Minnesota Mining & Mfg. Co.</u>, 661 F.Supp. 886, 888 (D.Del. 1987). In response, Brotech denies Rohm and Haas' characterizations and advises that even if the stay is granted, the Pennsylvania action is proceeding so slowly that the case at bar will go to trial first.

Rohm and Haas' hypothesis of tactical advantage and improper motive is unsubstantiated. Since Brotech neither requested nor can participate in the PTO proceedings, the assertion that the reexamination and stay were instituted for a tactical advantage is nonsensical. The record reflects the opportunity for a stay flowed unconditionally to Brotech and not as part of a devious scheme directed against Rohm and Haas. Even if a tactical advantage flows to Brotech, a stay is still appropriate as the case is not in the advanced stages of litigation. <u>United Sweetener USA, Inc. v. Nutrasweet Co.</u>, 766 F.Supp. at 218. Moreover, the proceedings and conduct of the parties as well as the court in the Pennsylvania action are irrelevant to the issue of whether a stay is appropriate. While Rohm and Haas has provided a specific historical observation of Brotech's alleged inadequacies, we decline to deny a stay which we have found to be legally warranted merely as a means of punishing a party for past conduct or for allegedly suspect motives.

Having found a stay is warranted, we turn to consider the scope of this relief. First, in light of Rohm and Haas'

acknowledgement of relatedness among Patents '415, '840 and '124 (D.I. 88), the issue becomes whether Patent '773 should likewise be stayed. Although Brotech is willing to concede to Rohm and Haas and allow the case to proceed as to the one patent, we are unconvinced that this approach would be the most efficient, least complex and best expenditure of judicial resources. Rather, the stay should cover all four patents in suit. To further promote efficiency, a stay of all discovery is appropriate. Given the parties' demonstrated difficulties with discovery as well as potential ramifications of the PTO decision as outlined above, our conclusion as to the appropriateness of the stay likewise applies to all discovery.

While plaintiff may perceive our decision as stagnating this action indefinitely, we are mindful that the Federal Circuit has warned that stays will be vacated when they work to place the parties "effectively out of court." Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir. 1983). To prevent this foreclosure and to promote the Court's involvement, Rohm and Haas will advise the Court regularly as to the status of the reexamination proceedings. If at any time the PTO proceeding runs counter to the benefits of deference as outlined above, the stay will be lifted.

An Order consistent with this Memorandum Opinion shall issue.