IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SYNOPSYS, INC.,
a Delaware Corporation,

Plaintiff and
Counter-Defendant,

v.

MAGMA DESIGN AUTOMATION, INC., a
Delaware Corporation

Defendant and
Counterclaimant.

C.A. No. 05-701 GMS

**ANSWERING BRIEF IN OPPOSITION TO**
**SYNOPSYS'S MOTION TO BIFURCATE AND STAY**

William J. Wade (#704)
wade@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendant and Counterclaimant,
Magma Design Automation, Inc.

OF COUNSEL:

James Pooley
L. Scott Oliver
Marc D. Peters
Pooley & Oliver LLP
Five Palo Alto Square, 7th Floor
Palo Alto, CA 94306-2121
(650) 739-7000

DATED: February 6, 2006

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..... iii

NATURE AND STAGE OF THE PROCEEDINGS ..... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ..... 2

STATEMENT OF FACTS ..... 3

ARGUMENT ..... 5

I. LEGAL STANDARD ..... 5

II. SYNOPSYS'S REEXAMINATION REQUEST IS CONTRIVED TO CAUSE DELAY ..... 5

A. Synopsys Made Material Misrepresentations To the PTO In Its Reexamination Request ..... 6

1. The Prior Art Had Been Cited To Synopsys By the PTO In April 2001 ..... 7

2. Synopsys's Employee-Inventors Have Been Aware Of the Prior Art At Least Since 1996 ..... 8

3. Synopsys Violated Its Duty of Candor By Repeatedly Failing To Inform the PTO Of the Barbagallo References ..... 9

B. Synopsys Concedes Materiality Of The Omitted Prior Art—The Only Remaining Issue Is Intent ..... 9

C. Magma's Inequitable Conduct And Antitrust Claims Cannot Be "Cured" Or Rendered Moot By the Reexamination Process ..... 11

D. Synopsys's Statements To the Patent Office Regarding Potential Litigation Benefits From the Reexamination Directly Contradict Its Arguments To the Court ..... 13

E. Synopsys's Novel Demand That Magma Produce All Prior Art Lacks Authority And Constitutes A Further Request for Delay ..... 14

III. A STAY WOULD PREJUDICE MAGMA ..... 15

A. Synopsys Mischaracterizes Magma's Antitrust Claims ..... 15

B. This Lawsuit Is Part Of a Pattern Of Anticompetitive Acts ..... 16

C. A Stay During Reexamination Would Unreasonably Delay Important Discovery ..... 17

D. Synopsys Has Not Met Its Burden Of Showing Hardship Absent a Stay ..... 18

IV. BIFURCATION OF DISCOVERY WOULD PROVIDE NO EFFICIENCIES AND WOULD INTERFERE WITH PROSPECTS FOR SETTLEMENT ..... 19

A. Bifurcation Of Discovery Would Be Inefficient ..... 19

1. Discovery Overlaps Between the Scan-Chain Patents and the Remaining Two Patents ..... 19

2. The Incremental Additional Discovery For Magma's Antitrust And Unfair Competition Claims Will Be Minimal ..... 20

B. Reexamination Would Not Simplify Any Issues Because At Least Some Claims Are Likely To Survive Reexamination ..... 21

C. Synopsys Admits That Discovery Regarding All Claims Can Be Completed On the Current Schedule ..... 22

D. A Stay of Discovery Would Eliminate the Court's Option To Call a Single Jury ..... 22

E. A Stay Of Discovery Would Make Settlement Virtually Impossible ..... 23

V. A DECISION ON BIFURCATION OF TRIAL AT THIS STAGE IS PREMATURE ..... 23

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

### CASES

*Agar Corp. v. Multi-Fluid Inc.*,
983 F. Supp. 1126 (S.D. Tex. 1997) ........ 19, 20

*Applied Biosystems, Inc. v. Cruachem, Inc.*,
Civ.A. No. 89-579-JRR, 1990 WL 495458 (D. Del. 1990) ........ 21

*Baxter Int'l, Inc. v. McGaw, Inc.*,
149 F.3d 1321 (Fed. Cir. 1998) ........ 11

*Centillion Data Sys., LLC v. Convergys Corp.*,
04-CV-0073-LJM-WTL, 2005 WL 2045786 (S.D. Ind. Aug. 24, 2005) ........ 5

*Cognex Corp. v. Nat'l Instruments Corp.*,
*C.A. 00-442-JJF*, 2001 WL 34368283 (D. Del. June 29, 2001) ........ 5, 6, 18

*In re Columbia Univ. Patent Lit.*,
330 F. Supp. 2d 12 (D. Mass. 2004) ........ 12, 17

*In re Continental General Tire, Inc.*,
81 F.3d 1089 (Fed. Cir. 1996) ........ 15

*Cost Bros. Inc. v. Travelers Indem. Co.*,
760 F.2d 58 (3d Cir. 1985) ........ 5

*Emerson Elec. Co. v. Dovoil, Inc.*,
88 F.3d 1051 (Fed. Cir. 1996) ........ 15

*Enprotech Corp. v. Autotech Corp.*,
15 U.S.P.Q. 2d 1319 (N.D. Ill. 1990) ........ 12, 13, 17

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed.Cir. 1988) ........ 5

*In re Etter*,
756 F.2d 852 (Fed. Cir. 1985) ........ 12

*Freeman v. Minnesota Mining & Mfg. Co.*,
661 F. Supp. 886 (D. Del. 1987) ........ 5

*Gladish v. Tyco Toys, Inc.*,
Civ. No. S-92-1666WBS/JFM, 1993 WL 625509 (E.D. Cal. Sept. 15, 1993) ........ 13, 18

*Howard v. Walker*,
406 F.3d 114 (2d Cir. 2005) ........ 17

*IMAX Corp. v. In-Three, Inc.*,
385 F. Supp. 2d 1030 (C.D. Cal. 2005) .......... 17, 18

*Jain v. Trimas Corp.*,
*No. Civ. S-04-0889*, 2005 WL 2397041 (E.D. Cal. Sept. 27, 2005) .......... 18

*In re Laughlin Prods.*,
265 F. Supp. 2d 525 (E.D.Pa. 2003) .......... 5

*Life Technologies, Inc. v. Clontech*,
224 F.3d 1320 (Fed. Cir. 2000) .......... 11

*Lussier v. Runyon*,
50 F.3d 1103 (1st Cir. 1995) .......... 18

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995) .......... 9, 11

*N.V. Akzo v. E.I. DuPont de Nemours*,
810 F.2d 1148 (Fed. Cir. 1987) .......... 11

*NeoMagic Corp. v. Trident Microsystems, Inc.*,
2001 WL 1064812 (D. Del. Sept. 7, 2001) .......... 11, 17

*Pegasus Dev. Corp. v. DIRECTV, Inc.*,
*No. C.A. 00-GMS*, 2003 WL 21105073 (D. Del. May 14, 2003) .......... 5

*Quad Envtl. Technologies Corp. v. Union Sanitary Dist.*,
946 F.2d 870 (Fed. Cir. 1991) .......... 12

*Remington Arms Co. v. Modern Muzzleloading, Inc.*,
No. 2:97 *CV00600* 1998 WL 1037920 (M.D.N.C. Dec. 17, 1998) .......... 6

*Rockwell Technologies, Inc. v. Spectra-Physics Lasers, Inc.*,
*No. C.A. 00-589 GMS*, 2002 WL 531555 (D. Del. Mar. 26, 2002) .......... 9

*Soverain Software, LLC v. Amazon.com, Inc.*,
356 F. Supp. 2d 660 (E.D. Tex. 2005) .......... 22

*Stewart Sys., Inc. v. Commissioner of Patents and Trademarks*,
1 U.S.P.Q. 2d 1879 (E.D.Va. 1986) .......... 12

*Xerox Corp. v. 3Com Corp.*,
69 F. Supp. 2d 404 (W.D.N.Y. 1999) .......... 6

**STATUTES**

37 C.F.R. § 1.510(b) .......... 10

## RULES

D. Del. Local Rule 7.1.3(c)(2) .......... 18

## NATURE AND STAGE OF THE PROCEEDINGS

Synopsys filed its Complaint herein on September 26, 2005. The Complaint alleges the infringement of three Synopsys, Inc. ("Synopsys") patents by Magma Design Automation, Inc. ("Magma").[1] Magma answered the Complaint on October 19, 2005 and asserted counterclaims alleging that two of the Synopsys patents are invalid, as having been fraudulently obtained and alleging violations of the Sherman Act, the Lanham Act and state and common law unfair competition claims. On October 25, 2005, Magma filed an Amended Answer and Counterclaims, which added to the original counterclaims an additional count asserting the infringement by Synopsys of Magma's '328 patent.[2]

On November 22, 2005, Synopsys moved to dismiss Magma's antitrust and unfair competition counterclaims. That motion has been fully briefed by the parties.

On December 19, 2005, the Court held a scheduling conference in this matter. Following the conference, the parties submitted and the Court entered the Scheduling Order governing the proceedings in this case.

On January 23, 2006, Synopsys – no longer content with the Scheduling Order – filed its Motion to Bifurcate and Stay Antitrust Counterclaims and To Bifurcate and Stay All Claims Affected by Likely PTO Reexaminations, along with its opening brief thereon. This is Magma's answering brief in opposition to the motion to bifurcate and stay.

---

[1] Synopsys is asserting following patents against Magma: U.S. Patent No. 6,434,733 ("the '733 Patent"), U.S. Patent No. 6,766,501 ("the '501 Patent"), and U.S. Patent No. 6,192,508 ("the '508 Patent").

[2] Magma alleges that Synopsys is infringing its U.S. Patent No. 6,505,328 ("the '328 Patent").

## INTRODUCTION AND SUMMARY OF ARGUMENT

Synopsys never confronts the compelling facts that make this case unique: its intentional suppression of critical information from the PTO and the assertion of its invalid and unenforceable patents against Magma, precisely timed to cause maximum competitive injury. Now that the injury has been inflicted, Synopsys wants the Court to set aside even any inquiry into its conduct. This bold request is based in part on its own application for *ex parte* patent reexamination, in which it has once again misled the PTO. Its other argument, that antitrust claims should be bifurcated, also ignores the special facts of this case and the confusion, inefficiency and prejudice that would result from bifurcation. This action should proceed on its present course, leaving open the possibility of bifurcation for trial, so that the Court's decision on how to conduct the trial can be informed by actual facts rather than abstract argument.

Synopsys's inventors and patent attorney knew about, but failed to disclose, extremely material prior art while prosecuting two of the patents in suit (the '733 and '501 Patents). The ***PTO itself*** cited one of those publications to the same inventors and lawyer on a related application, yet Synopsys hid this information from the examiner in the '733 and '501 cases. Armed with these invalid patents, and having already launched litigation against Magma in the Northern District of California a year before, Synopsys waited until three days before the end of Magma's quarter to open a second front in Delaware, clearly intending to cause maximum harm with the resulting publicity.[3]

Synopsys's recent reexamination request – while interesting for its implied admission confirming that the withheld art was material – cannot cure Synopsys's

---

[3] As Exhibits A and B to the Wade Declaration (filed contemporaneously herewith) demonstrate, Synopsys received the publicity it sought.

inequitable conduct or the antitrust injury it has inflicted. Halting this case while the PTO considers the withheld art, under a different standard and without the benefit of any advocacy, would accomplish nothing and lead to no change in the scope of this case. Instead, it would buy Synopsys another two or three years of delay, during which it will continue to spread fear, uncertainty and doubt in the market. Magma should have an opportunity to examine Synopsys's conduct and press its antitrust claims on the schedule agreed to by Synopsys and adopted by the Court.

Similarly, Synopsys's request to bifurcate discovery would save no time or effort. The discovery relevant to the antitrust claims goes only slightly beyond that which Synopsys concedes will be needed for standard patent damages. And, to split discovery now would make settlement impossible, and waste the Court's resources in disputes trying to split discovery between antitrust and patent issues. Finally, the Court should deny Synopsys's request to bifurcate issues for trial. Whether that approach will ultimately be necessary or even sensible is a matter best addressed on a full record at the completion of discovery. To decide the question now is premature at best, forcing the parties and the Court to guess about the scope and nature of the claims that will be tried.

## STATEMENT OF FACTS

In the interest of efficiency, Magma will not repeat Synopsys's recitation of the procedural background of this case. But because Synopsys ignores some of the critical facts affecting this motion, we will briefly summarize.

On September 26, 2005 Synopsys filed this action, alleging Magma infringed the '733, '501 and '508 patents. On October 19, 2005, Magma answered, raising antitrust counterclaims based on Synopsys's assertion of patents it knew to be invalid and tainted

by inequitable conduct.[4] On October 25, 2005, Magma amended its answer and counterclaims, adding a charge of infringement of Magma's '328 patent.

As discussed below, Synopsys' inequitable conduct claim is grounded in two published articles; there is no question that Synopsys and its patent attorney were aware of these references: in fact, the PTO cited one of the articles to Synopsys during the prosecution of a related application. There is also no question that the references were withheld from the PTO during the prosecution of the '733 and '501 patent applications.

The timing of Synopsys's filing of this action follows in the same vein: just days before the end of Magma's fiscal quarter—a time when Synopsys knew Magma's sales were particularly critical—Synopsys filed this case and promptly issued press releases ensuring that all Magma's customers and potential customers were aware of it.

On January 9, 2006, Synopsys filed a Request for Ex Parte Reexamination of its '733 and '501 Patents, representing that it had only recently become aware of these references—a claim that is false and another example of Synopsys's pattern of misconduct before the PTO.

To stay or bifurcate this action at this time is neither fair to Magma nor warranted under the applicable standards. The Scheduling Order entered by the Court should be adhered to so that Magma may clear the cloud that Synopsys has improperly cast over Magma's business.

[4] Synopsys's statement that Magma's antitrust counterclaims were added to the case in the amended answer (D.I. 7) is false. The amended pleading only added a claim of infringement of a Magma patent; the original answer and counterclaims (D.I. 5) detailed Synopsys's fraud at the PTO and the resulting antitrust injury.

## ARGUMENT

### I. LEGAL STANDARD

The Court has discretion to stay a case pending a reexamination by the PTO. *Cost Bros. Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed.Cir. 1988). In determining whether a stay is appropriate, the Court's discretion is to be guided by "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay would simplify issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Pegasus Dev. Corp. v. DIRECTV, Inc.*, No. C.A. 00-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) (citations omitted). The party requesting the stay must "make a showing of 'a clear case of hardship or inequity' before the Court can enter a stay order." *Cognex Corp. v. Nat'l Instruments Corp.*, C.A. 00-442-JJF, 2001 WL 34368283, at *2 (D. Del. June 29, 2001) (citations omitted).

All three factors militate against staying any part of this litigation.

### II. SYNOPSYS'S REEXAMINATION REQUEST IS CONTRIVED TO CAUSE DELAY

It is unusual for the patentee in litigation to seek reexamination and a stay. *In re Laughlin Prods.*, 265 F.Supp.2d 525, 527 (E.D.Pa. 2003). In such situations, the motives of the patentee merit special scrutiny. If the objective appears to be to delay the litigation or gain tactical advantage, the stay should be denied. *Centillion Data Sys., LLC v. Convergys Corp.*, 04-CV-0073-LJM-WTL, 2005 WL 2045786, at *1 (S.D. Ind. Aug. 24, 2005) (denying stay where timing of reexamination "indicates that this request for a stay may be more of a dilatory tactic than one of necessity"); *Freeman v. Minnesota Mining & Mfg. Co.*, 661 F.Supp. 886, 888 (D. Del. 1987) ("To allow [defendant] to now use the

reexamination process to get this case stayed would be to allow [it] to use the reexamination process as a mere dilatory tactic.")

Delays in seeking reexamination suggest that the movant's motive is improper, leading courts to deny a stay. *See Cognex Corp.*, 2001 WL 34368283, at *2 (denying stay where movant had some of the documents it later presented to PTO for lengthy period before requesting reexamination and stay); *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 407 (W.D.N.Y. 1999) (delay of several months before filing reexamination request was "evidence that the movant's request for a stay has at least some dilatory tactical motive behind it"); *Remington Arms Co. v. Modern Muzzleloading, Inc.*, No. 2:97 CV00600, 1998 WL 1037920, at *1, 3 (M.D.N.C. Dec. 17, 1998) (three months delay before requesting reexamination was "most compelling reason for denying stay").

This isn't a case of a few months delay; there is no legitimate debate that Synopsys has been aware of the references cited in its reexamination request for ***years***. And Synopsys filed the request only when faced with an antitrust counterclaim in this litigation. The timing of Synopsys's filing reveals an attempt to delay the discovery of facts underlying its improper and inequitable conduct.

### A. Synopsys Made Material Misrepresentations To the PTO In Its Reexamination Request

Synopsys's inequitable conduct is grounded in two published articles:

(1) On April 28, 1996, Barbagallo *et al.* presented a paper at the IEEE 14th Annual VLSI Test Symposium, entitled "Scan Insertion Criteria for Low Design Impact" ("the VTS Paper").

(2) On June 12, 1996, Barbagallo *et al.* presented a second paper at the IEEE European Test Workshop. The paper was entitled "Layout-Driven Scan Chain Partitioning and Reordering" ("the ETW Paper") and expanded upon the ideas presented at the earlier conference.

In its Opening Brief, Synopsys argues that it "made the request based on [this] ***previously unknown art*** allegedly affecting all claims of the patents." (D.I. 32, p.14) (emphasis added).

This statement is false. Synopsys has been aware of one of the references since April 2001, and at least one of its employee-inventors has been aware of both references since 1996. The knowing failure to cite the papers to the PTO is inequitable conduct because the papers invalidate one or more claims of Synopsys's patents.

**1. The Prior Art Had Been Cited To Synopsys By the PTO In April 2001**

On March 24, 1999, Synopsys filed a patent application that would later issue as the '733 Patent. One week later, on March 31, 1999, Synopsys filed a continuation-in-part of the '733 Application that would eventually issue as U.S. Patent No. 6,405,355 ("the '355 Patent"). Both applications listed the ***same three inventors***: Suryanarayana Duggirala, Rohit Kapur, and Thomas W. Williams. Both applications were filed by the ***same patent attorney***, but the applications were assigned to ***different patent examiners.*** Peters Declaration, ¶¶ 3(a) and 3(b) (filed contemporaneously herewith).

On March 26, 2001, the '733 examiner rejected all the pending claims of the '733 application. On April 19, 2001, the '355 examiner issued an office action rejecting all claims and citing the paper presented by Barbagallo *et al.* at the VLSI Test Symposium in

April 1996. Wade Decl., Exh C; Peters Decl., ¶ 3(c). The '733 application did not issue until August 13, 2002.

Thus, well before the '733 Patent was issued, Synopsys knew of the Barbagallo paper. Yet Synopsys's patent attorney did not cite the paper to the '733 patent examiner. Peters Decl., ¶ 3(d). Indeed, Synopsys had at least two opportunities to alert the '733 patent examiner to the paper's existence, but failed to do so. *Id.*

Synopsys had the same opportunity—and the same obligation—to cite Barbagallo's VTS Paper during its prosecution of the '501 patent. Synopsys filed the patent application that would become the '501 patent on August 12, 2002. It listed the ***same three inventors*** as the '733 and '355 Applications. It was filed by the ***same patent attorney*** who had prosecuted the '733 and '355 Applications. Peters Decl., ¶ 3(e). Synopsys again failed to inform the PTO of the Barbagallo paper; in fact, it cited ***no prior art***. *Id.*

**2. Synopsys's Employee-Inventors Have Been Aware Of the Prior Art At Least Since 1996**

Not only did Synopsys's patent attorneys know about the Barbagallo reference, but Synopsys's inventors did as well. In fact, two of the three inventors on the '733, '355 and '501 Patents, Thomas W. Williams and Rohit Kapur, attended and played a significant role at the VLSI Test Symposium where the VTS Paper was presented in April 1996. Williams was one of the members of the Program Committee, and both Williams and Kapur were Reviewers for the symposium. Wade Decl., Exh. D, pp. xx-xxi.

A few weeks later, on June 12, 1996, Barbagallo *et al.* presented a second paper, the ETW Paper, at an IEEE Workshop. This paper referenced and expanded upon the ideas presented at the earlier conference. The ***chairperson*** for the session at which the

invalidating paper was presented was named inventor (and a current Synopsys employee) Thomas W. Williams. Wade Decl., Exh. E at 2.

**3. Synopsys Violated Its Duty of Candor By Repeatedly Failing To Inform the PTO Of the Barbagallo References**

Synopsys never told the PTO of the existence of either of the Barbagallo references. Williams' declaration that he was the original, first and joint inventor was deliberately false and obviously made with the intent to deceive the PTO. The fraud doesn't end there, however. Despite having one of the Barbagallo papers cited to him by the '355 examiner, Synopsys's patent attorney never disclosed it to the '733 examiner. This constitutes a separate deception of the PTO. Moreover, these omissions were repeated when Synopsys filed the '501 patent application. Peters Decl., ¶¶ 3(e) and 3(f). Again, Williams falsely declared that he was the first inventor, and again Synopsys failed to cite the Barbagallo papers to the PTO.

**B. Synopsys Concedes Materiality Of The Omitted Prior Art—The Only Remaining Issue Is Intent**

To prove that Synopsys's patent is uneneforceable, Magma must show that:

(1) the omitted information was material;

(2) the applicant had knowledge of the existence and material nature of the information; and

(3) the applicant intended to deceive the PTO.

*Rockwell Technologies, Inc v. Spectra-Physics Lasers, Inc.*, No. C.A. 00-589 GMS, 2002 WL 531555, at *3 (D. Del. Mar. 26, 2002) (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995)).

By now submitting the Barbagallo papers to the PTO in its request for reexamination, Synopsys has conceded that the papers are material to patentability. The

Code of Federal Regulations requires that any request for reexamination must include a statement pointing out each substantial new question of patentability based on prior art patents and printed publications. 37 CFR § 1.510(b) ("Request for ex parte reexamination"); *see also* Manual of Patent Examining Procedure ("MPEP") § 2214 (8th ed., rev. 3 2005).

Synopsys identifies the Barbagallo references but tries to avoid the necessarily implied admission of materiality, arguing that it moved for reexamination solely because of Magma's assertion that the references are material. But that argument is undone by the plain language of the rules:

> **A requester may not, in a request for reexamination, argue that the submitted references do not raise a substantial new question of patentability . . .**

MPEP § 2214 (emphasis added).

By the act of requesting a reexamination of its patents in light of the Barbagallo papers, Synopsys has conceded that not only do the Barbagallo papers present a substantial question of patentability, but also that they present a ***new*** question, one that the PTO has never considered before. Synopsys is estopped from arguing otherwise. Thus there can be no question that the Barbagallo papers are material prior art references and that the first element of inequitable conduct is established.

As to knowledge, Synopsys cannot deny that at least as early as April of 2001—and almost certainly in 1996—it agents knew of the Barbagallo references. This establishes the second element.

That leaves only the question of intent in issue. Given the very significant materiality of these references, the required level of proof necessary to imply intent is

low.[5] The circumstantial evidence that will help demonstrate intent to deceive is available only through discovery – and that is exactly what Synopsys wants the Court to prevent through this motion. *See Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1329 (Fed. Cir. 1998) (direct evidence of intent to deceive is rarely available but may be inferred from the surrounding circumstances). Because that state-of-mind evidence comes largely from individual witnesses, it is easy to see why discovery must proceed as promptly as possible, before recollections fade even more during the years of a pending reexamination. *NeoMagic Corp. v. Trident Microsystems, Inc.*, 2001 WL 1064812, at *2 (D. Del. Sept. 7, 2001) (lifting a stay relating to antitrust counterclaims because of the likelihood that, as time went by, memories of the witnesses would fade and valuable evidence would be lost).

Of course a litigant accused of inequitable conduct would like to cut off inquiry into its conduct. But that isn't a valid basis for seeking a stay—indeed, it is sufficient reason to ***deny*** a stay.

**C. Magma's Inequitable Conduct And Antitrust Claims Cannot Be "Cured" Or Rendered Moot By the Reexamination Process**

Synopsys's assertion that its reexamination may fundamentally alter the nature of this case is flat wrong. Regardless of the outcome, Magma's charges of inequitable conduct and antitrust violations must ultimately be decided by this Court:

> The [Patent] Office is not the best forum in which to determine whether there was an "intent to mislead"; such intent is best determined when the trier of facts can observe demeanor of witnesses subjected to cross-examination. A

[5] *Molins PLC*, 48 F.3d at 1182 ("Failure to cite to the PTO a material reference cited elsewhere in the world justifies a strong inference that the withholding was intentional."); *N.V. Akzo v. E.I. DuPont de Nemours*, 810 F.2d 1148, 1153 (Fed. Cir. 1987) (a lesser intent must be proven when the information is material); *Life Technologies, Inc. v. Clontech*, 224 F.3d 1320, 1324 (Fed. Cir. 2000) (same).

> court, with subpoena power, is presently the best forum to consider duty of disclosure issues under the present evidentiary standard for finding an "intent to mislead."

MPEP § 2010.

Issues of "fraud," "inequitable conduct," or "violation of duty of disclosure" cannot and will not be considered in reexamination. MPEP §§ 2014 and 2080. Any such issues raised during a reexamination proceeding will merely be noted as unresolved questions under 37 CFR 1.552(c) and left for a court to decide. MPEP 2280; *see also Stewart Sys., Inc. v. Commissioner of Patents and Trademarks*, 1 U.S.P.Q.2d 1879, 1881 (E.D.Va. 1986) (breach of duty of candor "will not be considered in a reexamination proceeding," and PTO "does not conduct evidentiary hearings in connection with the proceedings, and would not be able to observe the demeanor of witnesses or hear testimony in determining whether fraud had occurred"); *In re Columbia Univ. Patent Lit.*, 330 F.Supp.2d 12, 15 (D. Mass. 2004) (denying a motion to stay because PTO cannot consider inequitable conduct); *Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d 1319, 1320 n.1 (N.D. Ill. 1990) (stay denied because reexamination would not resolve claims of inequitable conduct).

In addition, while a reexamination evaluates all the claims of a patent, the categories of evidence the PTO is permitted to consider are narrow: ***only prior publications and patents***. *In re Etter*, 756 F.2d 852, 856, 863 (Fed. Cir. 1985) ("Patent claims are reexamined only in light of patents or printed publications"); *Quad Envtl. Technologies Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 875 n.7 (Fed. Cir. 1991). Unless all claims of the '733 and '501 patents were cancelled as a result of reexamination, the validity of those patents would remain a contested issue in this action because not all of the evidence (including that of public use, prior conception, and on-sale

bar) relevant to validity would have been considered by the PTO.[6] This court is the only forum for a complete consideration of the evidence on invalidity.[7]

Thus a stay in favor of reexamination could not contribute usefully to this litigation, but would merely delay for years the resolution of all the issues the PTO is unable to consider.

**D. Synopsys's Statements To the Patent Office Regarding Potential Litigation Benefits From the Reexamination Directly Contradict Its Arguments To the Court**

In its Opening Brief, Synopsys extols the virtues of the reexamination process, trumpets the PTO's particular expertise in technology and patent law, and suggests ways the Court might benefit from the reexamination expertise of the PTO. (D.I. 32, at p.15-17). Specifically, it argues that "reexamination can more precisely define the ***scope of patent claims***—an issue 'central to the resolution of this case.'" (D.I. 32, at p.16) (emphasis added).

Yet Synopsys tells the Patent Office that this is not true. Synopsys, in its reexamination request, tries to avoid any possible effect of the reexamination on claim construction:

> Patent Owner does not admit that any aspect of any claim construction discussed in this request is necessarily applicable in any litigation or adopt any claim construction for purposes of litigation. ***This request is for purposes of reexamination only, and shall not be used in support of or***

[6] Although reexaminations are conducted with what the PTO terms "special dispatch," the average reexamination pendency is about 22 months—meaning that any reexamination in this case would not even conclude (leaving aside appeals from the PTO's decision) until long after the scheduled trial of June 11, 2007.

[7] *See Gladish v. Tyco Toys, Inc.*, Civ. No. S-92-1666WBS/JFM, 1993 WL 625509, at *3, n.1 (E.D. Cal. Sept. 15, 1993) (denying stay because "[a]fter reexamination, the parties would be right back in this court."); *Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q.2d 1319, 1320 n.1 (N.D. Ill. 1990) (stay denied where examination would not resolve all issues in the litigation).

> ***opposition to any claim construction by any party to any litigation.***

(D.I. 33, Exhs. A and B, Request For Ex Parte Reexamination, at p.6) (emphasis added).

Synopsys hopes to avoid confronting the inequitable conduct and antitrust claims for years while the patents are tied up in reexamination, and then to tie the case up further with a claim construction process that cannot be informed by the reexamination. Synopsys is not looking for efficiency, but for delay.

**E. Synopsys's Novel Demand That Magma Produce All Prior Art Lacks Authority And Constitutes A Further Request for Delay**

Synopsys argues–without citing any authority–that Magma should be ordered to identify every potential piece of prior art that might invalidate the patents, so that this information can be submitted to the PTO. Of course, it is Synopsys's job to prepare its own reexamination request, including performing a thorough search of the relevant art. But there are more profound reasons to reject this bizarre demand. First, it would cause even more delay, because Synopsys has already filed its reexamination request, and cannot simply augment the process by delivering more art to the PTO. *See* MPEP § 2254. Moreover, prior art submitted by a third party is not be considered until after the initial reexamination concludes. MPEP § 2204. Therefore, by trying to add more references, Synopsys will succeed in extending the process further, perhaps by years.

Second, the net effect of the Synopsys proposal is that Synopsys would have the exclusive ability to comment on the art submitted to the PTO, without the benefit of any input from a party like Magma who actually has an interest in demonstrating its relevance. We only have to refer to the existing reexamination petition to see what

Synopsys will do with any additional citations: it will pull its punches, continuing its behavior of misleading understatement or outright concealment and misrepresentation.[8]

Finally, what Synopsys requests conflicts with clear Federal Circuit authority: "a federal district court does not have the authority to order a patent owner to file papers prepared by a third party in addition to the patent owner's own submission in a patent reexamination proceeding." MPEP § 2254 (citing *Emerson Elec. Co. v. Dovoil, Inc.*, 88 F.3d 1051, 1054 (Fed. Cir. 1996)); *see also In re Continental General Tire, Inc.*, 81 F.3d 1089, 1091 (Fed. Cir. 1996) (vacating district court's order requiring a party to participate in reexamination proceeding).

## III. A STAY WOULD PREJUDICE MAGMA

### A. Synopsys Mischaracterizes Magma's Antitrust Claims

Synopsys argues that Magma would not be prejudiced by a stay, and grounds its argument on the "fact" that Magma asserted its antitrust counterclaims as an afterthought:

> Magma did not include the antitrust claims in its initial answer (D.I. 5), but ***added them only in its Amended Answer*** (D.I. 7). Unlike its highly detailed patent allegations, Magma's antitrust allegations are vague and formalistic. These ***last minute additions*** to Magma's legal strategy should not be permitted to consume substantial resources when they may be disposed of through resolution of the claims closer to the heart of the dispute.

(D.I. 32, at p.13) (emphasis added).

This representation to the Court is false. Magma's initial answer (D.I. 5) included its charge of fraud by Synopsys at the PTO and antitrust injury. Magma's amendment to

---

[8] By way of example, Synopsys supplied the PTO with only one paragraph (mis)characterizing the two Barbagallo papers discussed above, and added another 10 prior art references in an Information Disclosure Statement filed with each request for reexamination. Synopsys provided ***not a word*** about why the 10 additional references might be relevant, presumably hoping that they will be overlooked and arguably "blessed" by the PTO. (D.I. 33, Exhs. A and B).

the answer and counterclaims (D.I. 7) added only the counterclaim of infringement of the '328 patent by Synopsys.

### B. <u>This Lawsuit Is Part Of a Pattern Of Anticompetitive Acts</u>

A stay would hurt Magma, because it would allow Synopsys' groundless claims to remain unresolved for years. This lawsuit is simply the latest in a series of litigation and other aggressive acts designed by Synopsys to eliminate Magma as a competitor:

- In July of 2004, Magma contacted Synopsys to discuss concerns that Synopsys was infringing Magma patents 6,453,446 and 6,725,438. Synopsys responded by filing a complaint in the Northern District of California claiming ownership of both of these patents and asserting infringement by Magma. The filing was accompanied by a press release.

- On January 28, 2005, Synopsys tried to assign to itself the '446 Patent, the '438 Patent and a pending continuation of the '438 Patent. The PTO rejected Synopsys's attempt and indicated that further such attempts by Synopsys would be regarded as "correspondence filed for an improper purpose."

- On April 18, 2005, Synopsys filed an action against Magma in Germany seeking to obtain ownership of the European patent application corresponding to the '446 Patent. On July 29, 2005, Synopsys filed an action in Japan attempting to acquire ownership of the Japanese patent application corresponding to the '446 Patent.

- On September 26, 2005 (the same day that this action was commenced), Synopsys filed yet another lawsuit in California state court, making the bizarre claim that Magma's denial (in the Northern District case) that it infringes the '446 and '438 Patents was an act of unfair competition.

Synopsys clearly plans to use expensive and time-consuming litigation to weaken Magma and consolidate its monopolistic position in the market.[9] Magma's antitrust counterclaim is no "afterthought", but represents its only legal remedy against this kind of conduct. To delay Magma's case during the Synopsys reexamination would turn that remedy into an abstract hope and would ironically reinforce Synopsys's anticompetitive strategy.

---

[9] As alleged in the counterclaims, (D.I. 7, ¶¶ 105-113), Synopsys has a 93% share of the relevant markets.

**C. A Stay During Reexamination Would Unreasonably Delay Important Discovery**

There are times when a stay pending reexamination is good case management. This is not one of them. Here, a stay would deny critical inquiry into recent events, and risk loss of important testimony through the passage of time. Importantly, it would expose Magma to the risk of continuing harm due to the uncertainty that Synopsys seeks to spread through the market.

Synopsys timed its filing of this litigation to cause maximum damage to Magma, which was facing the end of its fiscal quarter and pushing to meet its sales goals. While Magma is working hard to contain the threat to its business caused by Synopsys's assertion of invalid patents, the risk of continuing harm remains. Magma should not be cut off from pursuing its remedies simply because Synopsys has filed a request for reexamination. *See In re Columbia Univ. Patent Lit.*, 330 F.Supp.2d 12, 15 (D. Mass. 2004); *IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030, 1033 (C.D. Cal. 2005); *Enprotech*, 15 U.S.P.Q.2d at 1320 n.1 (N.D. Ill. 1990). Moreover, the process of reexamination can take years to complete, and during this time witness recollections can fade and other evidence can disappear or become harder to excavate. *NeoMagic*, 2001 WL 1064812, at *2.

Surrendering a portion of this case to the PTO is no small matter. Pending now before the Court are Magma's affirmative claims for the invalidity and unenforceability of the '733 and '501 patents. Magma has the right to advocate its positions and have the facts tested through the judicial process rather than through a one-sided administrative process in which it cannot participate. *Howard v. Walker*, 406 F.3d 114, 128 (2d Cir. 2005) ("Trials are by their nature adversarial processes, and it is this adversarial nature

that ensures the fulfillment of their truthfinding function."); *Lussier v. Runyon*, 50 F.3d 1103, 1114 (1st Cir. 1995) ("Ours is a system that seeks the discovery of truth by means of a managed adversarial relationship between the parties. If we were to allow judges to bypass this system, even in the interest of furthering efficiency or promoting judicial economy, we would subvert this ultimate purpose.").

Synopsys should not be allowed to "hit and run" by filing its false claims and then escape inquiry by engaging the PTO in an ex parte reexamination. Magma should be allowed to investigate and pursue its legitimate claims.

### D. Synopsys Has Not Met Its Burden Of Showing Hardship Absent a Stay

Synopsys makes no "showing of a clear case of hardship or inequity [that would be caused by going forward]." *See Jain v. Trimas Corp.*, No. Civ. S-04-0889, 2005 WL 2397041, at *3 (E.D. Cal. Sept. 27, 2005) (denying stay where movant "presented no evidence of hardship or inequity in being required to go forward with the suit"); *IMAX* 385 F.Supp.2d at 1032 (denying stay and noting that movant must "make out a clear case of hardship or inequity"); *Cognex*, 2001 WL 34368283, at *1-2 (denying stay where movant failed to demonstrate a "clear case of hardship or inequity"); *Gladish v. Tyco Toys, Inc.*, Civ. No. S-92-1666WBS/JFM, 1993 WL 625509, at *3 (E.D. Cal. Sept. 15, 1993) (denying stay where movant had not set out a case of hardship).[10]

Moreover, the facts as they appear from the record suggest that there would be no particular hardship to Synopsys in having to litigate the relevant issues while the reexamination proceeds in parallel. Synopsys presumably was prepared to defend its

[10] This burden must be carried as part of its affirmative showing when filing its motion. Synopsys should not be permitted to present new evidence or argument in reply. *See* D. Del. Local Rule 7.1.3(c)(2).

patent claims when it filed this case, and there can be no prejudice in fulfilling that expectation. *See Agar Corp. v. Multi-Fluid Inc.*, 983 F.Supp. 1126, 1127 (S.D. Tex. 1997).

## IV. BIFURCATION OF DISCOVERY WOULD PROVIDE NO EFFICIENCIES AND WOULD INTERFERE WITH PROSPECTS FOR SETTLEMENT

Synopsys grossly exaggerates the benefits of bifurcation. The issues for the claims Synopsys seeks to exclude overlap almost entirely with the claims it agrees should proceed, making practical boundaries for bifurcated discovery nearly impossible. Thus, any abstract hope for saved efforts would be overtaken by disagreements over whether particular discovery falls into a bifurcated category. And perhaps more significant for the ultimate outcome of the case, without all the parties' claims on the table in current litigation, settlement discussions cannot proceed on an informed basis and with the attention to risk that makes a negotiated resolution possible.

### A. Bifurcation Of Discovery Would Be Inefficient

#### 1. Discovery Overlaps Between the Scan-Chain Patents and the Remaining Two Patents

All three Synopsys patents are directed to the same products: software needed for the physical design of an integrated circuit, or IC. The physical design of an IC begins with a netlist, which is a collection of logic gates[11] and their interconnections. This phase ends with the exact physical location of each transistor within the chip, and the precise location of the wires that connect these transistors. The part of physical design that determines the physical location of logic gates is called placement, and the portion that

[11] A logic gate comprises of one or more transistors, which are the basic building blocks of an integrated circuit.

determines the location of the wires is called routing. Collectively, placement and routing are commonly referred to as layout.

Synopsys's '508 Patent primarily relates to layout. Synopsys's '733 and '501 Patents, although relevant to scan chains, also relate to layout.[12] Therefore, layout software is likely to contain or at least be relevant to many of the inventions disclosed in the '508 Patent as well as in the '733 and '501 Patents. Because of this near-complete overlap, it makes no sense to split discovery for one patent from the other two. Synopsys's argument that staying discovery on two patents would yield a significant savings ignores the reality of the technology at issue.

**2. <u>The Incremental Additional Discovery For Magma's Antitrust And Unfair Competition Claims Will Be Minimal</u>**

Even if discovery were to proceed only for the '508 and '328 Patents, Magma would need a broad range of financial data, sales data, and marketing data for a variety of Synopsys products that rely on or are sold in conjunction with tools using the single data model claimed in the '328 Patent.[13] Any marginal "pure antitrust" discovery (such as the barriers to entry in the EDA market) is likely to be minimal, and will be extremely

---

[12] A scan chain is a long chain of logic gates that assist in testing the IC after fabrication. Synopsys's patents deal with problems that arise with scan-chains during the layout phase. The patents start by identifying which portions of a scan-chain need to be kept together. This information is then passed on to the layout tool. The placement tool determines the physical location of all the logic gates, including the logic gates that comprise scan chains. Based on the final physical location of the logic gates in a scan-chain, the scan-chain may be reordered during layout. Scan-chain technology, in short, is inextricably intertwined with layout.

[13] In conceding that discovery should commence for these two patents, Synopsys undoes its own argument. The bulk of what it terms "antitrust discovery" will be produced as damages-related discovery for infringement of Magma's '328 Patent. *See Agar Corp. v. Multi-Fluid Inc.*, 983 F.Supp. 1126, 1127 (S.D. Tex. 1997) (denying stay where PTO granted defendant's request for reexamination of only one of four asserted patents, because even if the reexamined patent were found invalid, the remaining infringement claims might be unaffected).

difficult in practice to distinguish from damages discovery in document requests and depositions.[14] *See Applied Biosystems, Inc. v. Cruachem, Inc.*, Civ.A. No. 89-579-JRR, 1990 WL 495458, at *3 (D. Del. 1990) ("a stay of antitrust discovery will merely serve to multiply discovery disputes inordinately. For example, the parties already disagree over what is 'antitrust-related' discovery. Such bickering will serve only to waste the Court's and the parties' time.") The "savings" Synopsys promises are illusory.

**B. Reexamination Would Not Simplify Any Issues Because At Least Some Claims Are Likely To Survive Reexamination**

Synopsys claims that there will be inefficiency if the litigation is not stayed, since the PTO may moot issues with respect to the '733 and '501 patents. But this alleged efficiency is entirely speculative.

Synopsys's prediction of benefits from reexamination is contrary to the statistical record collated by the PTO. According to the PTO, 91% of reexamination requests are granted. *See* Wade Decl., Exh. F, *PTO, Ex Parte Reexamination Filing Data – March 31, 2005*, ¶ 5. Out of these, in cases where the patent owner initiated the reexamination, all claims were cancelled in 7% of the cases; all claims were confirmed in 23% of the cases and in the remaining 70%, the claims were altered in some form. *Id.* Thus as a matter of statistics, there is a 77% chance that the parties will return to this Court to argue

[14] Synopsys's pretense of shock over the scope of Magma's discovery requests is of course exaggerated, and ignores Magma's repeated invitations to Synopsys to meet and confer over the parties' respective discovery requests. That ***every one of those invitations has been rebuffed*** is telling. Peters Decl., ¶¶ 4(a) – 4(d). Synopsys would rather make a straw man of broad requests than sit down and discuss how they might be handled. Interestingly, Synopsys requested from Magma such things as "All DOCUMENTS RELATING TO any patents issued to MAGMA" (Request No. 2), "All source code created by anyone at MAGMA" (Request No. 17), and "All publications and articles RELATING TO MAGMA, its technology, or its products" (Request No. 61). Litigants' document requests to one another are always very broad, but that says little to nothing about how the categories will ultimately be narrowed in meet and confer sessions.

the infringement issues. *Soverain Software, LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 663 (E.D. Tex. 2005) (denying defendant's motion for a stay and noting that, although some of the claims might change in the course of reexamination, "the interests of justice will be better served by dealing with that contingency when and if that occurs, rather than putting this case indefinitely on hold").

### C. Synopsys Admits That Discovery Regarding All Claims Can Be Completed On the Current Schedule

Under the current schedule, the parties will have one round of discovery, there will be one *Markman* hearing, and the Court and the jury will have to learn this technology and law only once, not twice. During the December 19, 2005 conference, Synopsys conceded that ***all*** discovery in this litigation can be completed by September 29, 2006:

> MR. GRAHAM: The schedule that we put forth in the proposal, we are not suggesting that that be changed because patents may or may not be in the case stayed or bifurcated. ***When I put together our version of the schedule, it would be the same regardless of what the Court may do on a motion to stay or bifurcate.***

Tr. of December 19, 2005 Conference at 8:21-9:1. (emphasis added)

That Synopsys now seeks to backtrack on this representation speaks volumes about its motive in moving for a stay.

### D. A Stay of Discovery Would Eliminate the Court's Option To Call a Single Jury

It is axiomatic that one jury provides more trial efficiency than two juries. This is why the Court should carefully preserve its options for trial. Synopsys's request that discovery be bifurcated would make it impossible to have the same jury hear the infringement and antitrust claims. Given that both sets of claims will necessarily involve

a detailed understanding of the IC design tools industry, and how tools such as scan-chains and layouts integrate into the industry as a whole, educating two sets of jurors would be a significant burden on judicial resources. By allowing all discovery to go forward at this time in the normal manner, the Court will be able to preserve its option of a single jury, and to consider the prospect of trial bifurcation later in the case, when it can be informed by actual discovery, rather than by speculation concerning how the facts ultimately will emerge.

### E. A Stay Of Discovery Would Make Settlement Virtually Impossible

It is not difficult to see why Synopsys wants the antitrust issues to be set aside: these claims represent significant exposure, and in this multi-front litigation Synopsys would prefer to face little or no downside. Without discovery, although the antitrust claims would remain in the case in theory, the parties will have no way to evaluate the merits. Without a full exchange of relevant information, the parties are likely to take radically divergent settlement positions—making it all the more likely that they will then return to the Court for two separate trials with two separate juries.

## V. A DECISION ON BIFURCATION OF TRIAL AT THIS STAGE IS PREMATURE

Synopsys's suggestion that the trial of this action be bifurcated seems grounded more in delay than in logic. Discovery has barely commenced; neither the parties nor the Court have any idea how the scope of the case will change six or nine months from now. Magma acknowledges that in some infringement and antitrust cases, courts bifurcate trials; in others, courts find no efficiency in bifurcating the trial. In this case, there is no reason to—and no useful information on which—to make that decision at this early stage. Magma respectfully requests that the Court set a status conference following the close of

fact discovery to address trial bifurcation, when the Court will be able to make a decision on a full record.

**CONCLUSION**

The reexamination filed by Synopsys is a pose, falsely claiming recent knowledge of the Barbagallo papers and pretending to hold them up for analysis. It would be extremely unjust, inefficient and ironic to allow Synopsys to use this tactic to deflect and delay any discovery into its improper behavior.

The parties – and the Court – agreed in December to a schedule that permits all the patents, antitrust claims, and unfair competition charges to be tried in early 2007. It is respectfully submitted that the schedule ordered by the Court should be maintained, so that Magma may clear the cloud Synopsys has cast over its business.

William J. Wade (#704)
wade@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Defendant and Counterclaimant, Magma Design Automation, Inc.

OF COUNSEL:

James Pooley
L. Scott Oliver
Marc D. Peters
Pooley & Oliver LLP
Five Palo Alto Square, 7th Floor
Palo Alto, CA 94306-2121
(650) 739-7000

DATED: February 6, 2006

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 6, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and which has also been served as noted:

**BY HAND**

Karen Jacobs Louden, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19899

William J. Wade (#704)

DATED: February 6, 2006