# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PHARMASTEM THERAPEUTICS, INC. ) | MDL Docket No. 05-md-1660 GMS |
| PATENT LITIGATION ) | JUDGE GREGORY M. SLEET |
| ) | |

## ORDER

1. This case arises from a February 17, 2005 Order from Judicial Panel on Multidistrict Litigation, which consolidated six actions pending in five district courts and transferred them to this court. Five of the actions are patent infringement actions brought by PharmaStem Therapeutics, Inc. ("PharmaStem") against medical providers and blood banks.[1] The sixth action is an antitrust and state law tort action brought by ViaCell, Inc. ("ViaCell"), CorCell, Inc. ("CorCell"), and Cryo-Cell International, Inc. ("Cryo-Cell").[2] These cases are related to patent infringement litigation that PharmaStem initiated in the District of Delaware in February 2002.

2. On February 22, 2002, PharmaStem filed a lawsuit against ViaCell, Cryo-Cell, CorCell, StemCyte, Inc. ("StemCyte"), CBR Systems, Inc. ("CBR"), Birthcells Technology, Inc.

---

[1] The five patent infringement actions are styled as follows: *PharmaStem Therapeutics, Inc. v. Cord Blood Registry, Inc., et al.*, C.A. No. C-04-3072-JSW (N.D. Cal.), *PharmaStem Therapeutics, Inc. v. CureSource, Inc., et al.*, C.A. No. SA-CV-04-921-GLT (C.D. Cal.), *PharmaStem Therapeutics, Inc. v. CorCell, Inc., et al.*, C.A No 2:04-CV-03561-RK (E.D. Pa.), *PharmaStem Therapeutics, Inc. v. CryoCell Int'l, Inc., et al.*, C.A. No. 8:04-CV-1740-T-30TGW (M.D. Fla.), and *PharmaStem Therapeutics, Inc., v. ViaCell, Inc., et al.*, C. A. No. 04-CV-11673-RWZ (D. Mass.).

[2] The antitrust action, *ViaCell, Inc. v. PharmaStem Therapeutics, Inc.*, C.A. No. 04-1335-GMS (D. Del.), was filed in the District of Delaware on October 5, 2004.

("Birthcells"), Nustem Technologies, Inc. ("Nustem"), and Bio-Cell, Inc. ("Bio-Cell"), alleging infringement of United States Patent Nos. B1 5,004,681 ("'681 Patent") and 5,192,553 ("'553 Patent").

3. On October 29, 2003, the jury returned a unanimous verdict on all claims in favor of Pharmastem. The parties then filed several post-trial motions. On September 15, 2004, the court issued a Memorandum Opinion and Order (the "Post-trial Order"), concluding that the defendants do not infringe the '553 patent and granting a partial new trial on the issue of infringement and damages with respect to the '681 patent.

4. On September 29, 2004, the defendants filed a motion for partial reconsideration of the court's Post-trial Order. The motion requested the court to enter judgment as a matter of law in the defendants' favor, regarding their alleged infringement of the '681 patent. On December 14, 2004, the court issued an Order granting the defendants' request, based on PharmaStem's failure to present sufficient evidence upon which the jury could find infringement of the '681 patent.

5. On January 6, 2005, PharmaStem appealed the court's September 15, 2004 and December 14, 2004 decisions to the Federal Circuit. PharmaStem filed its initial appellate brief on September 15, 2005, and the defendants' initial response brief is due October 31, 2005.

6. On July 19, 2005, the court issued a Practice and Procedure Order (D.I. 21), setting an initial pretrial conference in the transferred Multidistrict Litigation ("MDL") for October 6, 2005. The Order also directed the parties to submit briefing, as well as a proposed case management plan and agenda, in preparation for the conference.

7. On September 29, 2005, the parties submitted a Joint Proposed Case Management Plan and Agenda for Initial Pretrial Conference (D.I. 25) (the "Agenda"). The Agenda states that the parties were not able to agree on a proposed schedule and sets forth the parties' respective proposals.

8. PharmaStem proposes that discovery should begin immediately after the initial conference, but that claim construction briefing, if necessary, and dispositive motions should be filed after the Federal Circuit renders its decision in Case No. 05-1490 and cross-appeals Case No. 05-1551 (the "pending appeals"). PharmaStem wishes to move forward with the MDL because it has only a few more years of patent exclusivity, and is "gravely concerned about the lack of enforcement of its valid patents against actual and potential infringers participating in the cord blood industry." (D.I. 24, at 8.) According to PharmaStem, "[a]llowing the defendants . . . to use their dominant positions in the private cord blood banking market to continue to grow their infringing businesses before this MDL is adjudicated – or even delaying until time runs out on the patents altogether – will cause [it] irreparable harm and unjust hardship." (*Id.* at 9.)

9. Conversely, the defendants propose that staying all discovery is the most efficient and reasonable approach regarding the cases. The defendants base their assertion on the pending appeals, and the fact that the United States Patent and Trademark Office ("PTO") has granted reexamination of three of the four patents at issue in the MDL. According to the defendants, should they succeed on their cross-appeal regarding the validity of the '553 and '681 patents, it would be dispositive of the five new cases that PharmaStem has initiated. (D.I. 23, at 10). The defendants also assert that "any revisions that may be made to the

claims in reexamination would substantially impact the consolidated cases." (*Id.*)

10. After having considered the parties submissions on the issue (D.I. 23, 24, 25), the court concludes that staying all discovery pending a decision by the Federal Circuit, the PTO, or both best serves the interests of justice and is the most efficient approach to the MDL. The decision to stay a case is firmly within the discretion of the court. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). In determining whether a stay is appropriate, the court's discretion is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Comm Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (citing cases); *cf. United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (stating a similar test).

11. In the present case, PharmaStem asserts that a stay will prejudice it in that it will be unable to enforce its patents, which have only a few years of exclusivity remaining. The court disagrees. First, PharmaStem's position assumes that the Federal Circuit will decide the pending appeals in its favor, and that the PTO will leave the claims of its three patents unaltered after reexamination. Further, while PharmaStem may suffer some prejudice from a stay, the court is not persuaded that a stay would *unduly* prejudice PharmaStem or present a clear tactical disadvantage. On the other hand, granting the stay will simplify the issues and focus the litigation. For example, if the Federal Circuit determines that PharmaStem's patents are invalid, then many of the issues in the litigation would become moot. A stay, therefore, will conserve the resources of the parties and the court. Lastly, the parties have

not commenced with discovery and no trial date has been set. Thus, the court concludes that the balance of harms weighs in favor of granting the stay.

Therefore, IT IS HEREBY ORDERED that:

1. The defendants' request to stay all discovery pending decisions by the Federal Circuit and the PTO is GRANTED.

2. The parties shall notify the court when the Federal Circuit issues its ruling on the appeal.

3. The parties shall notify the court when the PTO issues its reexamination decision.

Dated: October 6, 2005

/s/ Gregory M. Sleet
UNITED STATES DISTRICT JUDGE