IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYNOPSYS, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-701 (GMS) |
| | ) | |
| MAGMA DESIGN AUTOMATION, | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF SYNOPSYS, INC.'S REPLY TO MAGMA DESIGN
AUTOMATION INC.'S SECOND AMENDED ANSWER TO
COMPLAINT AND COUNTERCLAIMS, AND SYNOPSYS' COUNTERCLAIM**

Plaintiff and Counter-Defendant, Synopsys, Inc., ("Synopsys") hereby files its Reply to

defendant Magma Design Automation, Inc. ("Magma") Second Amended Answer to Complaint

and Counterclaims ("Magma's Second Amended Answer and Counterclaims"), as follows:

**RESPONSES TO PRELIMINARY STATEMENT**

1.      The "Preliminary Statement" portion of Magma's Second Amended Answer and

Counterclaims is improper and should be stricken under Rule 12(f) of the Federal Rules of Civil

Procedure.  Out of an abundance of caution, Synopsys will respond to those paragraphs as if they

were a part of Magma's Counterclaims, or another proper pleading.

2.      Synopsys denies each and every allegation of Paragraph 1 of the Preliminary

Statement in Magma's Second Amended Answer and Counterclaims.

3.      Synopsys admits the allegations in Paragraph 2 of the Preliminary Statement in

Magma's Second Amended Answer and Counterclaims.

4.      With respect to Paragraph 3 of the Preliminary Statement in Magma's Second

Amended Answer and Counterclaims, Synopsys admits that it filed documents with the United

States Patent and Trademark Office ("PTO") in an attempt to assign U.S. Patent No. 6,453,446 ("the '446 Patent"), U.S. Patent No. 6,725,438 ("the '438 Patent") and a pending continuation of the '438 Patent to Synopsys, and transfer power of attorney over the patents and application to Synopsys. Synopsys admits that it received correspondence from the PTO on that subject, and states that the PTO's correspondence speaks for itself. Synopsys denies all remaining allegations of Paragraph 3 of the Preliminary Statement in Magma's Second Amended Answer and Counterclaims.

5.     With respect to Paragraph 4 of the Preliminary Statement in Magma's Second Amended Answer and Counterclaims, Synopsys admits that it filed an action against Magma in Germany seeking to obtain ownership of the European patent application corresponding to the '446 Patent. Synopsys lacks information sufficient to form a belief as to the truth of the remainder of Paragraph 4 of the Preliminary Statement in Magma's Second Amended Answer and Counterclaims. Synopsys therefore denies those allegations.

6.     With respect to Paragraph 5 of the Preliminary Statement in Magma's Second Amended Answer and Counterclaims, Synopsys admits that it filed an action in Japan to acquire ownership of the Japanese application corresponding to the '446 Patent. Synopsys lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 5 of the Magma Preliminary Statement in Magma's Second Amended Answer and Counterclaims. Synopsys therefore denies those allegations.

7.     With respect to Paragraph 6 of the Preliminary Statement in Magma's Second Amended Answer and Counterclaims, Synopsys admits that it filed a California State Court action against Magma on September 26, 2005 asserting a claim for unfair competition. Synopsys denies the remaining allegations from Paragraph 6.

8.      Paragraph 7 of the Magma Preliminary Statement contains only argument. Synopsys admits that it did not amend its complaint in the Northern District Action to add its patents-in-suit in this action.  Synopsys denies each and every remaining allegation of Paragraph 7 of the Preliminary Statement in Magma's Second Amended Answer and Counterclaims.

9.      Synopsys denies each and every allegation of Paragraph 8 of the Preliminary Statement in Magma's Second Amended Answer and Counterclaims.

## RESPONSES TO ALLEGATIONS IN MAGMA'S AFFIRMATIVE DEFENSES

10.     Synopsys denies each and every allegation in Paragraph 30 of Magma's Second Amended Answer and Counterclaims.

11.     Synopsys denies each and every allegation of Paragraph 31 of Magma's Second Amended Answer and Counterclaims.

12.     Synopsys denies each and every allegation of Paragraph 32 of Magma's Second Amended Answer and Counterclaims.

13.     Synopsys denies each and every allegation of Paragraph 33 of Magma's Second Amended Answer and Counterclaims.

14.     Synopsys is informed and believes, and based thereon admits, that Thomas W. Williams was the chairperson for a session at the 1996 IEEE European Test Workshop at which a paper by S. Barbagallo *et al.* entitled "Layout-Driven Scan Chain Partitioning and Reordering" was presented, and that Dr. Williams was a member of the program committee and a listed reviewer for the IEEE 14th Annual VLSI Test Symposium in 1996.  Synopsys denies each and every remaining allegation of Paragraph 34 of Magma's Second Amended Answer and Counterclaims.

15.    Synopsys admits that it did not file an Information Disclosure Statement with the PTO in connection with the prosecution of U.S. Patent No. 6,434,733 ("the '733 Patent"). Synopsys denies the remaining allegations from Paragraph 35 of Magma's Second Amended Answer and Counterclaims.

16.    Synopsys denies each and every allegation of Paragraph 36 of Magma's Second Amended Answer and Counterclaims.

17.    Synopsys denies each and every allegation of Paragraph 37 of Magma's Second Amended Answer and Counterclaims.

18.    Synopsys denies each and every allegation of Paragraph 38 of Magma's Second Amended Answer and Counterclaims.

19.    Synopsys denies each and every allegation of Paragraph 39 of Magma's Second Amended Answer and Counterclaims.

20.    Synopsys admits that U.S. Patent No. 6,766,501 ("the '501 Patent") is a continuation of the '733 Patent.  Synopsys further admits that it did not file an Information Disclosure Statement with the PTO in connection with the prosecution of the '501 Patent. Synopsys denies the remaining allegations of Paragraph 40 of Magma's Second Amended Answer and Counterclaims.

21.    Synopsys admits that it did not file an Information Disclosure Statement with the PTO during the prosecution of the '501 Patent.  Synopsys denies the remaining allegations of Paragraph 41 of Magma's Second Amended Answer and Counterclaims.

22.    Synopsys denies each and every allegation of Paragraph 42 of Magma's Second Amended Answer and Counterclaims.

23.    Synopsys denies each and every allegation of Paragraph 43 of Magma's Second Amended Answer and Counterclaims.

24.    Synopsys denies each and every allegation of Paragraph 44 of Magma's Second Amended Answer and Counterclaims.

25.    Synopsys denies each and every allegation of Paragraph 45 of Magma's Second Amended Answer and Counterclaims.

26.    Synopsys denies each and every allegation of Paragraph 46 of Magma's Second Amended Answer and Counterclaims.

27.    Synopsys denies each and every allegation of Paragraph 47 of Magma's Second Amended Answer and Counterclaims.

28.    Synopsys denies each and every allegation of Paragraph 48 of Magma's Second Amended Answer and Counterclaims.

<u>**RESPONSES TO MAGMA'S COUNTERCLAIMS AGAINST SYNOPSYS**</u>

<u>**JURISDICTION**</u>

29.    Synopsys admits that this Court has jurisdiction over Magma's Second Amended Counterclaims.  Synopsys denies the remaining allegations of Paragraph 49 of Magma's Second Amended Answer and Counterclaims.

30.    Synopsys admits that this Court has jurisdiction over Magma's Lanham Act Counterclaim.  Synopsys denies the remaining allegations of Paragraph 50 of Magma's Second Amended Answer and Counterclaims.

31.    Synopsys admits that this Court has supplemental jurisdiction over Magma's state law counterclaims.  Synopsys denies the remaining allegations in Paragraph 51 of Magma's Second Amended Answer and Counterclaims.

## PARTIES

32.     Synopsys lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of Magma's Second Amended Answer and Counterclaims. Synopsys therefore denies those allegations.

33.     Synopsys admits that it is a corporation organized and existing under the laws of the State of Delaware and that it has its principal place of business in Mountain View, California. Synopsys admits that it provides EDA software and related services.  Synopsys admits that it delivers copies of its software across state lines and international borders.  Synopsys lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 53 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

## VENUE

34.     Synopsys admits that venue is proper in this district for Magma's counterclaims and that there is personal jurisdiction over Synopsys in this district for purposes of Magma's counterclaims.  Synopsys denies the remaining allegations in Paragraph 54 of Magma's Second Amended Answer and Counterclaims.

## FACTS

35.     Synopsys admits the last sentence of Paragraph 55 of Magma's Second Amended Answer and Counterclaims.  Synopsys disagrees with Magma's characterization of the technology at issue in the remaining allegations of Paragraph 55 of Magma's Second Amended Answer and Counterclaims, and so Synopsys lacks information sufficient to form a belief as to the truth of these allegations and on that basis denies those remaining allegations.

36.    Synopsys admits that current generation integrated circuits can hold tens of millions of transistors and can have feature widths of 130 nanometers and below. Synopsys further admits that integrated circuits such as microprocessors can execute hundreds of millions of instructions in one second. Synopsys disagrees with Magma's characterization of the technology at issue in the remaining allegations of Paragraph 56 of Magma's Second Amended Answer and Counterclaims, and so Synopsys lacks information sufficient to form a belief as to the truth of the these allegations and on that basis denies those remaining allegations.

37.    Synopsys admits the allegations in Paragraph 57 of Magma's Second Amended Answer and Counterclaims.

38.    Synopsys admits the allegations in Paragraph 58 of Magma's Second Amended Answer and Counterclaims.

39.    Synopsys disagrees with Magma's characterization of the technology at issue in the allegations of Paragraph 59 of Magma's Second Amended Answer and Counterclaims, and so Synopsys lacks information sufficient to form a belief as to the truth of the these allegations and on that basis denies those allegations.

40.    Synopsys disagrees with Magma's characterization of the technology at issue in the allegations of Paragraph 60 of Magma's Second Amended Answer and Counterclaims, and so Synopsys lacks information sufficient to form a belief as to the truth of the these allegations and on that basis denies those allegations.

41.    Synopsys disagrees with Magma's characterization of the technology at issue in the allegations of Paragraph 61 of Magma's Second Amended Answer and Counterclaims, and so Synopsys lacks information sufficient to form a belief as to the truth of the these allegations and on that basis denies those allegations.

42.     Synopsys disagrees with Magma's characterization of the technology at issue in the allegations of Paragraph 62 of Magma's Second Amended Answer and Counterclaims, and so Synopsys lacks information sufficient to form a belief as to the truth of the these allegations and on that basis denies those allegations.

### THE TECHNOLOGY OF THE '733 AND '501 PATENTS

43.     Synopsys disagrees with Magma's characterization of the technology at issue in the allegations of Paragraph 63 of Magma's Second Amended Answer and Counterclaims, and so Synopsys lacks information sufficient to form a belief as to the truth of the these allegations and on that basis denies those allegations.

44.     Synopsys disagrees with Magma's characterization of the technology at issue in the allegations of Paragraph 64 of Magma's Second Amended Answer and Counterclaims, and so Synopsys lacks information sufficient to form a belief as to the truth of the these allegations and on that basis denies those allegations.

45.     Synopsys disagrees with Magma's characterization of the technology at issue in the allegations of Paragraph 65 of Magma's Second Amended Answer and Counterclaims, and so Synopsys lacks information sufficient to form a belief as to the truth of the these allegations and on that basis denies those allegations.

46.     Synopsys admits that the '733 and '501 Patents relate to the concept of scan-chain partitioning.  Synopsys disagrees with Magma's characterization of the technology at issue in the allegations of Paragraph 66 of Magma's Second Amended Answer and Counterclaims, and so Synopsys lacks information sufficient to form a belief as to the truth of the these allegations and on that basis denies those allegations.

## PROSECUTION OF THE '733 AND '501 PATENTS

47.     Synopsys admits that Thomas W. Williams declared that he was an original and first inventor to the '733 and '501 Patents.  Synopsys denies each and every remaining allegation of Paragraph 67 of Magma's Second Amended Answer and Counterclaims.

48.     Synopsys admits that on or about March 24, 1999, through its patent counsel at Wagner Murabito & Hao LLP, Synopsys filed with the PTO the patent application that would later issue as the '733 patent (the "'733 Application"), that this application listed Suryanarayana Duggirala, Rohit Kapur and Thomas W. Williams as inventors, and that this application did not submit prior art.  Synopsys denies each and every remaining allegation in Paragraph 68 of Magma's Second Amended Answer and Counterclaims.

49.     Synopsys admits that on or about March 31, 1999, through its patent counsel at Wagner Murabito & Hao LLP, Synopsys filed a continuation in part of the '733 Application with the PTO that would later issue as the '355 patent (the "'355 Application"), that this application listed Suryanarayana Duggirala, Rohit Kapur and Thomas W. Williams as inventors, that this application did not submit prior art, and that the application was assigned to patent examiner N. Le..  Synopsys denies each and every remaining allegation in Paragraph 69 of Magma's Second Amended Answer and Counterclaims.

## THE BARBAGALLO PAPERS

50.     Synopsys lacks sufficient information to determine the truth of the allegations contained in Paragraph 70 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

51.     Synopsys denies each and every allegation of Paragraph 71 of Magma's Second Amended Answer and Counterclaims.

52.    Synopsys admits on information and belief the allegations in Paragraph 72 of Magma's Second Amended Answer and Counterclaims.

53.    Synopsys lacks information sufficient to form a belief as to the truth of the first two sentences of Paragraph 73 of Magma's Second Amended Answer and Counterclaims. Synopsys therefore denies those allegations.  Synopsys denies the remaining allegations of Paragraph 73 of Magma's Second Amended Answer and Counterclaims.

54.    Synopsys denies each and every allegation of Paragraph 74 of Magma's Second Amended Answer and Counterclaims.

55.    Synopsys is informed and believes, and based thereon admits, that Thomas W. Williams was the chairperson for a session at the 1996 IEEE European Test Workshop at which a paper by S. Barbagallo *et al.* entitled "Layout-Driven Scan Chain Partitioning and Reordering" was presented.  Synopsys denies each and every remaining allegation of Paragraph 75 of Magma's Second Amended Answer and Counterclaims.

## THE PROSECUTION OF THE '733 AND '355 PATENTS

56.    Synopsys admits that the '733 and '355 Applications were prosecuted at least in part by M.D. Mathews.  Synopsys lacks sufficient information to determine the truth of the remaining allegations in Paragraph 76 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

57.    Synopsys admits that on or about March 29, 2001, the PTO issued a first office action with respect to the '733 Application, and that Examiner Siek cited Crouch, *et al.*, Beausang, *et al.*, and other references therein.  Synopsys denies the remaining allegations in Paragraph 77 of Magma's Second Amended Answer and Counterclaims.

58.    Synopsys admits that on or about April 19, 2001, the PTO issued a first office action with respect to the '355 Application rejecting all claims, and that Examiner Le cited references, including the Barbagallo *et al.* paper from the 1996 VLSI Test Symposium. Synopsys denies the remaining allegations in Paragraph 78 of Magma's Second Amended Answer and Counterclaims.

59.    Synopsys admits the allegations in the first sentence of Paragraph 79 of Magma's Second Amended Answer and Counterclaims.  Synopsys denies the remaining allegations in Paragraph 79 of Magma's Second Amended Answer and Counterclaims.

60.    Synopsys admits the allegations in Paragraph 80 of Magma's Second Amended Answer and Counterclaims.

61.    Synopsys admits the allegations in Paragraph 81 of Magma's Second Amended Answer and Counterclaims.

62.    Synopsys admits that on or about October 1, 2001, the PTO issued a final office action on the '355 Application.  Synopsys further admits that on or about December 5, 2001, Synopsys' patent counsel responded to the PTO office action in the '355 application, arguing the claims were not unpatentable.  Synopsys denies the remaining allegations in Paragraph 82 of Magma's Second Amended Answer and Counterclaims.

63.    Synopsys admits that on or about December 26, 2001, its patent counsel responded to a final office action on the '733 Application, arguing that the claims were patentable.  Synopsys denies the remaining allegations in Paragraph 83 of Magma's Second Amended Answer and Counterclaims.

64.    Synopsys admits the allegations in Paragraph 84 of Magma's Second Amended Answer and Counterclaims.

65.    Synopsys admits that on or about March 2, 2002, Examiner Siek issued a Notice of Allowance for the '733 Applications.  Synopsys lacks information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 85 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

66.    Synopsys admits the allegations in Paragraph 86 of Magma's Second Amended Answer and Counterclaims.

67.    Synopsys admits the allegations in Paragraph 87 of Magma's  Second Amended Answer and Counterclaims.

## THE PROSECUTION OF THE '501 PATENT

68.    Synopsys admits that it filed the application that would issue as the '501 Patent on August 12, 2002.  Synopsys further admits that the three inventors on the '501 Application – S. Duggirala, R. Kapur, T.W. Williams – are the same named inventors as for the '733 and the '355 Applications.  Synopsys further admits that the '501 application was filed by the same attorney who prosecuted the '733 and the '355 Applications.  Synopsys denies the remaining allegations in Paragraph 88 of Magma's Second Amended Answer and Counterclaims.

69.    Synopsys admits that the '501 Application was assigned to the same patent examiner as the '733 Application.  Synopsys further admits that on or about November 24, 2003, the PTO issued a first office action for the '501 Application.  Synopsys denies the remaining allegations of Paragraph 89 of Magma's Second Amended Answer and Counterclaims.

70.    Synopsys admits the allegations in the first sentence of Paragraph 90 of Magma's Second Amended Answer and Counterclaims, and admits that an Information Disclosure Statement was not submitted for the '501 Application.  Synopsys denies the remaining allegations of Paragraph 90 of Magma's Second Amended Answer and Counterclaims.

71.    Synopsys admits the allegations in Paragraph 91 of Magma's Second Amended Answer and Counterclaims.

## ALLEGED FRAUDULENT PROCUREMENT

72.    Synopsys denies the allegations of Paragraph 92 of Magma's Second Amended Answer and Counterclaims.

73.    Synopsys is informed and believes, and based thereon admits, that Thomas W. Williams was the chairperson for a session at the 1996 IEEE European Test Workshop at which a paper by S. Barbagallo *et al.* entitled "Layout-Driven Scan Chain Partitioning and Reordering" was presented, and that Dr. Williams was a member of the program committee and a listed reviewer for the IEEE 14th Annual VLSI Test Symposium in 1996.  Synopsys denies each and every remaining allegation of Paragraph 93 of Magma's Second Amended Answer and Counterclaims.

74.    Synopsys denies the allegations of Paragraph 94 of Magma's Second Amended Answer and Counterclaims.

75.    Synopsys denies the allegations of Paragraph 95 of Magma's Second Amended Answer and Counterclaims.

76.    Synopsys denies the allegations of Paragraph 96 of Magma's Second Amended Answer and Counterclaims.

77.    Synopsys denies the allegations of Paragraph 97 of Magma's Second Amended Answer and Counterclaims.

78.    Synopsys denies the allegations of Paragraph 98 of Magma's Second Amended Answer and Counterclaims.

79.    Synopsys denies the allegations of Paragraph 99 of Magma's Second Amended Answer and Counterclaims.

80.    Synopsys denies the allegations of Paragraph 100 of Magma's Second Amended Answer and Counterclaims.

81.    Synopsys denies the allegations of Paragraph 101 of Magma's Second Amended Answer and Counterclaims.

82.    Synopsys denies the allegations of Paragraph 102 of Magma's Second Amended Answer and Counterclaims.

83.    Synopsys denies the allegations in the first sentence of Paragraph 103 of Magma's Second Amended Answer and Counterclaims.  Synopsys lacks sufficient information to determine the truth of the remaining allegations contained in Paragraph 103 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

84.    Synopsys denies the allegations of Paragraph 104 of Magma's Second Amended Answer and Counterclaims.

## ALLEGED MONOPOLIZATION OF THE CERTAIN MARKETS

85.    Synopsys denies the allegations of Paragraph 105 of Magma's Second Amended Answer and Counterclaims.

86.    Synopsys denies the allegations of Paragraph 106 of Magma's Second Amended Answer and Counterclaims.

87.    Synopsys denies the allegations of Paragraph 107 of Magma's Second Amended Answer and Counterclaims.

88.    Synopsys denies the allegations of Paragraph 108 of Magma's Second Amended Answer and Counterclaims.

89.     Synopsys denies the allegations of Paragraph 109 of Magma's Second Amended Answer and Counterclaims.

90.     Synopsys denies the allegations of Paragraph 110 of Magma's Second Amended Answer and Counterclaims.

## SYNOPSYS' ALLEGED MARKET POWER

91.     Synopsys denies the allegations of Paragraph 111 of Magma's Second Amended Answer and Counterclaims.

92.     Synopsys denies the allegations of Paragraph 112 of Magma's Second Amended Answer and Counterclaims.

93.     Synopsys denies the allegations of Paragraph 113 of Magma's Second Amended Answer and Counterclaims.

## ALLEGED ANTICOMPETITIVE CONDUCT

94.     Synopsys denies the allegations of Paragraph 114 of Magma's Second Amended Answer and Counterclaims.

95.     Synopsys denies the allegations of Paragraph 115 of Magma's Second Amended Answer and Counterclaims.

96.     Synopsys denies the allegations of Paragraph 116 of Magma's Second Amended Answer and Counterclaims.

97.     Synopsys denies the allegations of Paragraph 117 of Magma's Second Amended Answer and Counterclaims.

98.     Synopsys denies the allegations of Paragraph 118 of Magma's Second Amended Answer and Counterclaims.

99.    Synopsys denies the allegations of Paragraph 119 of Magma's Second Amended Answer and Counterclaims.

## MAGMA'S UNIFIED DATA MODEL

100.    Synopsys denies the allegations of Paragraph 120 of Magma's Second Amended Answer and Counterclaims.

101.    Synopsys lacks sufficient information to determine the truth of the allegations of Paragraph 121 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

102.    Synopsys lacks sufficient information to determine the truth of the allegations of the first two sentences of Paragraph 122 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.  Synopsys further denies the remaining allegations of Paragraph 122 of Magma's Second Amended Answer and Counterclaims.

103.    Synopsys lacks sufficient information to determine the truth of the allegations of Paragraph 123 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

104.    Synopsys denies the allegations of Paragraph 124 of Magma's Second Amended Answer and Counterclaims.

105.    Synopsys lacks sufficient information to determine the truth of the allegations of Paragraph 125 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

**MAGMA'S '328 PATENT**

106.    Synopsys admits that United States Patent No. 6,505,328 (the "'328 Patent") issued on January 7, 2003. Synopsys lacks sufficient information to determine the truth of the remaining allegations of Paragraph 126 of Magma's Second Amended Answer and Counterclaims. Synopsys therefore denies those allegations.

107.    Synopsys denies the allegations in Paragraph 127 of Magma's Second Amended Answer and Counterclaims.

108.    Synopsys denies the allegations of Paragraph 128 of Magma's Second Amended Answer and Counterclaims.

109.    Synopsys denies the allegations of Paragraph 129 of Magma's Second Amended Answer and Counterclaims.

110.    Synopsys denies the allegations of Paragraph 130 of Magma's Second Amended Answer and Counterclaims.

111.    Synopsys admits that its Physical Compiler product offers tools for the back-end portion of the integrated circuit design flow. Synopsys denies the remaining allegations in Paragraph 131 of Magma's Second Amended Answer and Counterclaims.

112.    Synopsys denies the allegations of Paragraph 132 of Magma's Second Amended Answer and Counterclaims.

**MAGMA'S '745 PATENT**

113.    Synopsys admits that United States Patent No. 6,519,745 (the "'745 Patent") issued on May 26, 2000. Synopsys lacks sufficient information to determine the truth of the remaining allegations of Paragraph 133 of Magma's Second Amended Answer and Counterclaims. Synopsys therefore denies those allegations.

114.    Synopsys denies the allegations of Paragraph 134 of Magma's Second Amended Answer and Counterclaims.

## MAGMA'S '610 PATENT

115.    Synopsys admits that United States Patent No. 6,931,610 (the "'610 Patent") issued on May 12, 2000.  Synopsys lacks sufficient information to determine the truth of the remaining allegations of Paragraph 135 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

116.    Synopsys denies the allegations of Paragraph 136 of Magma's Second Amended Answer and Counterclaims.

## MAGMA'S '116 PATENT

117.    Synopsys admits that United States Patent No. 6,857,116 (the "'116 Patent") issued on February 15, 2005.  Synopsys lacks sufficient information to determine the truth of the remaining allegations of Paragraph 137 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

118.    Synopsys denies the allegations of Paragraph 138 of Magma's Second Amended Answer and Counterclaims.

## MAGMA'S '093 PATENT

119.    Synopsys admits that United States Patent No. 6,6,854,093 (the "'093 Patent") issued on February 8, 2005.  Synopsys lacks sufficient information to determine the truth of the remaining allegations of Paragraph 139 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.

120.    Synopsys denies the allegations of Paragraph 140 of Magma's Second Amended Answer and Counterclaims.

## MAGMA'S CLAIMS FOR RELIEF

### CLAIM 1 –MONOPOLIZATION

121.    Synopsys repeats its replies to Magma's allegations as set forth in Paragraphs 1-140 of Magma's Second Amended Answer and Counterclaims as if set forth herein.

122.    Synopsys denies the allegations of Paragraph 142 of Magma's Second Amended Answer and Counterclaims.

123.    Synopsys denies the allegations of Paragraph 143 of Magma's Second Amended Answer and Counterclaims.

124.    Synopsys denies the allegations of Paragraph 144 of Magma's Second Amended Answer and Counterclaims.

125.    Synopsys denies the allegations of Paragraph 145 of Magma's Second Amended Answer and Counterclaims.

### CLAIM 2 – ATTEMPTED MONOPOLIZATION

126.    Synopsys repeats its replies to each allegation set forth in Paragraph 1-140.

127.    Synopsys denies the allegations of Paragraph 147 of Magma's Second Amended Answer and Counterclaims.

128.    Synopsys denies the allegations of Paragraph 148 of Magma's Second Amended Answer and Counterclaims.

129.    Synopsys denies the allegations of Paragraph 149 of Magma's Second Amended Answer and Counterclaims.

130.    Synopsys denies the allegations of Paragraph 150 of Magma's Second Amended Answer and Counterclaims.

131.    Synopsys denies the allegations of Paragraph 151 of Magma's Second Amended Answer and Counterclaims.

## CLAIM 3 – PRODUCT DISPARAGEMENT AND TRADE LABEL

132.    Synopsys repeats its replies to each and every allegation contained in Paragraphs 1-140 of Magma's Second Amended Answer and Counterclaims as if set forth herein.

133.    Synopsys denies the allegations of Paragraph 153 of Magma's Second Amended Answer and Counterclaims.

134.    Synopsys denies the allegations of Paragraph 154 of Magma's Second Amended Answer and Counterclaims.

135.    Synopsys denies the allegations of Paragraph 155 of Magma's Second Amended Answer and Counterclaims.

## CLAIM 4 – STATUTORY UNFAIR COMPETITION

136.    Synopsys repeats its reply to each and every allegation contained in Paragraphs 1-140 as is set forth herein.

137.    Synopsys denies the allegations of Paragraph 157 of Magma's Second Amended Answer and Counterclaims.

138.    Synopsys denies the allegations of Paragraph 158 of Magma's Second Amended Answer and Counterclaims.

## CLAIM 5 – COMMON LAW UNFAIR COMPETITION

139.    Synopsys repeats its replies to each and every allegation contained in Paragraphs 1-140 Magma's Second Amended Answer and Counterclaims as if set forth herein.

140.    Synopsys denies the allegations of Paragraph 160 of Magma's Second Amended Answer and Counterclaims.

141.    Synopsys denies the allegations of Paragraph 161 of Magma's Second Amended Answer and Counterclaims.

## CLAIM 6 – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

142.    Synopsys repeats its replies in response to each and every allegation contained in Paragraphs 1-133 Magma's Second Amended Answer and Counterclaims as if set forth herein.

143.    Synopsys lacks sufficient information to determine the truth of the allegations contained in the first sentence of Paragraph 163 of Magma's Second Amended Answer and Counterclaims.  Synopsys therefore denies those allegations.  Synopsys denies the remaining allegations of Paragraph 163 of Magma's Second Amended Answer and Counterclaims.

## CLAIM 7 – INFRINGEMENT OF MAGMA'S '328 PATENT

144.    Synopsys repeats its replies to each and every allegation contained in Paragraphs 1-140 Magma's Second Amended Answer and Counterclaims as if set forth herein.

145.    Synopsys denies the allegations of Paragraph 165 of Magma's Second Amended Answer and Counterclaims.

146.    Synopsys denies the allegations of Paragraph 166 of Magma's Second Amended Answer and Counterclaims.

147.    Synopsys denies the allegations of Paragraph 167 of Magma's Second Amended Answer and Counterclaims.

## CLAIM 8 – INFRINGEMENT OF MAGMA'S '745 PATENT

148.    Synopsys repeats its replies to each and every allegation contained in Paragraphs 1-140 Magma's Second Amended Answer and Counterclaims as if set forth herein.

149.    Synopsys denies the allegations of Paragraph 169 of Magma's Second Amended Answer and Counterclaims.

150.    Synopsys denies the allegations of Paragraph 170 of Magma's Second Amended Answer and Counterclaims.

151.    Synopsys denies the allegations of Paragraph 171 of Magma's Second Amended Answer and Counterclaims.

## CLAIM 9 – INFRINGEMENT OF MAGMA'S '610 PATENT

152.    Synopsys repeats its replies to each and every allegation contained in Paragraphs 1-140 Magma's Second Amended Answer and Counterclaims as if set forth herein.

153.    Synopsys denies the allegations of Paragraph 173 of Magma's Second Amended Answer and Counterclaims.

154.    Synopsys denies the allegations of Paragraph 174 of Magma's Second Amended Answer and Counterclaims.

155.    Synopsys denies the allegations of Paragraph 175 of Magma's Second Amended Answer and Counterclaims.

## CLAIM 10 – INFRINGEMENT OF MAGMA'S '116 PATENT

156.    Synopsys repeats its replies to each and every allegation contained in Paragraphs 1-140 Magma's Second Amended Answer and Counterclaims as if set forth herein.

157.    Synopsys denies the allegations of Paragraph 177 of Magma's Second Amended Answer and Counterclaims.

158.    Synopsys denies the allegations of Paragraph 178 of Magma's Second Amended Answer and Counterclaims.

159.    Synopsys denies the allegations of Paragraph 179 of Magma's Second Amended Answer and Counterclaims.

## CLAIM 11 – INFRINGEMENT OF MAGMA'S '093 PATENT

160.    Synopsys repeats its replies to each and every allegation contained in Paragraphs 1-140 Magma's Second Amended Answer and Counterclaims as if set forth herein.

161.    Synopsys denies the allegations of Paragraph 181 of Magma's Second Amended Answer and Counterclaims.

162.    Synopsys denies the allegations of Paragraph 182 of Magma's Second Amended Answer and Counterclaims.

163.    Synopsys denies the allegations of Paragraph 183 of Magma's Second Amended Answer and Counterclaims.

## <u>SYNOPSYS' AFFIRMATIVE DEFENSES</u>

164.    Synopsys incorporates by reference into each of the affirmative responses below, as if fully set forth therein, the allegations set forth in the previous paragraphs.

165.    Although Magma complains in this action of purported anti-competitive conduct by Synopsys, it is Magma that was literally founded on technology stolen from Synopsys, and Magma that built itself into a public company through a scheme of deceit.  Not only did Magma literally steal and copy its core technology from inventions conceived at Synopsys, but it actually tried to use Synopsys' own inventions to keep Synopsys out of the marketplace.  Furthermore, after the truth came out, Magma not only continued to lie to Synopsys, but also to its own investors, shareholders and the public.

166.    From Magma's very inception, it knew that the inventions upon which it built its business were stolen from Synopsys.  It is beyond dispute that the fixed timing methodology that is the technical foundation for Magma's products was originally conceived at Synopsys.  As a result, Magma products and technology infringe Synopsys' intellectual property and contractual

rights.  Synopsys has sought relief for Magma's malfeasance in *Synopsys, Inc. v. Magma Design Automation, Inc.*, N.D. Cal. Civil Case No. C-04-03923 (the "Northern District Action").  A copy of the Third Amended Complaint in the Northern District Action is attached hereto as Exhibit A.

167.    In order to bury the truth of its wrongful conduct as alleged herein, Magma has spent the past several years making a series of false representations to its investors, its shareholders, the press, and Synopsys.  Rather than simply admit the illicit origin of its products and technology, Magma engaged in a public relations campaign designed to portray its fixed timing methodology as an invention that was conceived by employees of Magma "from scratch" through the use of public domain materials.  These representations were made despite Magma's clear knowledge that these inventions had been taken from information contained in confidential Synopsys documents.

168.    Magma's misrepresentations have not harmed only Synopsys, and have led to more litigation than simply the cases against Synopsys.  In June 2005, Magma shareholders brought a class action alleging misrepresentations regarding Magma's infringement of Synopsys intellectual property.  A copy of the Complaint from *The Cornelia I. Crowell GST Trust v. Magma Design Automation, Inc.*, N.D. Cal. Civ. Case No. C-05-02394, is attached hereto as Exhibit B.  Another Magma shareholder also brought a derivative complaint in June 2005 alleging breach of fiduciary duty and insider trading by Magma officers.  A copy of the complaint in *Willis v. Magma Design Automation, Inc.*, Santa Clara County Superior Court Case No. 1-05-CV-045834, is attached hereto as Exhibit C.

169.    All of this came to light when Magma actually tried to assert the patents stolen from Synopsys against Synopsys.  Once Magma brought the patents to Synopsys' attention by

demanding to know if Synopsys was infringing them, Synopsys discovered that: (1) the relevant inventions had been conceived by Magma founder Lukas van Ginneken ("van Ginneken") while he was a Synopsys employee; (2) Synopsys' confidential materials had been copied and used by Magma in its later filed patent applications; (3) Magma had known about the misappropriation of these materials since at least 1997, and; (4) Magma had willfully engaged in a course of conduct to hide the facts of its wrongful conduct. Once the truth was revealed, Synopsys sought via judicial process in the Northern District Action to obtain the relief to which it is clearly entitled under law.

**van Ginneken's Employment at Synopsys**

170.    In 1995, Synopsys hired van Ginneken to play a significant role in leading the development of Synopsys' logic synthesis and related technologies. van Ginneken was given the responsibility to work on research pertaining to logic synthesis, and was asked to make important contributions to the technical vision for Synopsys' logic synthesis team. Given van Ginneken's prior experience in the field, Synopsys heavily relied upon van Ginneken to provide leadership and vision to the development of Synopsys' products and technology.

171.    On or about May 17, 1995, van Ginneken signed a Proprietary Information and Inventions Agreement (the "Agreement") as a condition to his employment by Synopsys. This Agreement provides, among other things, that all Proprietary Information shall be the "sole property" of Synopsys. For instance, the Agreement provides that Proprietary Information includes "trade secrets, processes, data and know-how, computer software, improvements, inventions, works of authorship, techniques, marketing plans, strategies, forecasts and copyrightable material and customer lists." The Agreement further provides that all inventions by van Ginneken while employed by Synopsys, "to the maximum extent permitted by Section

25

2870 of the California Labor Code," were the property of Synopsys. The Agreement assigns to Synopsys any rights that van Ginneken may have or acquire in any Inventions.

172. The Agreement further requires van Ginneken to provide a complete list of all "inventions or improvements" which he had contributed to before his employment at Synopsys. van Ginneken in fact attached such a list to the signed Agreement, and covenanted that this list was complete.

173. None of the inventions listed by van Ginneken in the Agreement disclose the inventions ultimately claimed in U.S. Patent No. 6,453,446 (the "'446 Patent") or U.S. Patent No. 6,725,438 (the "'438 Patent"). Accordingly, by van Ginneken's own representations, none of the inventions disclosed in the Patents had been conceived by him before he joined Synopsys.

174. After signing the Agreement, van Ginneken commenced employment at Synopsys on June 26, 1995. At no time during his employment at Synopsys, or anytime thereafter, did van Ginneken object to the scope or terms of the Agreement, or ask Synopsys for any waiver from the enforcement of its provisions.

**van Ginneken Conceives the Fixed Timing Inventions at Synopsys**

175. In or about late 1995 or early 1996, as part of his job to research and explore new product ideas for Synopsys, van Ginneken developed the idea of creating an EDA product that would perform particular inventions using the concept of fixed timing. Under the concept of fixed timing, the timing delays of a chip design are held constant and "fixed," in contrast to determining timing delay at a later point in the design flow. Because fixed timing involves holding the timing delay constant, it can also be referred to as "constant delay." The inventions developed by van Ginneken while employed by Synopsys were designed to implement this concept of fixed timing/constant delay into an EDA tool that performed logic synthesis,

placement, and/or related tasks.

176. In addition, by early 1996, van Ginneken developed inventions while employed by Synopsys pertaining to the use of "gain-based synthesis," which is one of the ways in which the fixed timing concept can be implemented in a logic synthesis and/or placement tool.

177. On or about January 30, 1996, van Ginneken participated in a meeting with other Synopsys personnel to discuss ideas for Synopsys' next-generation synthesis product. During this meeting, van Ginneken set out the basic concept of his fixed timing inventions. van Ginneken was directed to research the issue further and report his findings at a later meeting.

178. During a subsequent meeting in or about February of 1996, van Ginneken gave a further presentation to Synopsys personnel concerning the fixed timing and gain-based synthesis inventions he developed while employed at Synopsys. van Ginneken specifically discussed how Synopsys could implement the inventions relating to fixed timing and gain-based synthesis in its tools. During the course of this meeting, van Ginneken was successful in convincing others at Synopsys that the company should consider redirecting its efforts towards implementing these inventions.

179. The conception of the inventions developed by van Ginneken while a Synopsys employee is thoroughly documented in Synopsys' records. In early 1996, van Ginneken filled out an invention disclosure form attesting that his fixed timing inventions were conceived by him alone. In this disclosure, van Ginneken represents that he was the sole inventor of the fixed timing inventions, and that the inventions reflected therein were being considered as the "cornerstone" of the NGSS project at Synopsys.

180. van Ginneken's development of these inventions while employed at Synopsys is further documented in the performance reviews he received at Synopsys. For instance, in his

performance review for the period March 1, 1996 to April 1, 1997, Synopsys stated that "[o]ver the past year within the Advanced Technology Group, you have had basically one objective: driving through the next generation synthesis effort based on constant delay."  The review further stated:

> Your primary objective over the past year has been driving the technical direction of the Synzilla project, bringing to fruition your ideas on applying constant delay to Synopsys next generation synthesis effort.  This project represents a major milestone and direction for Synopsys, and your efforts have been instrumental in effecting the project.  One year ago, Synzilla was an idea in your head; it is currently a staffed project that has met aggressive milestones and schedules and that has strong support from outside partners.

181.    Similarly, another performance review of van Ginneken discussed the presentation of the fixed timing inventions in one of the internal Synopsys meetings in early 1996:

> Lukas, you demonstrated true vision and original thinking in one of the NGSS meetings when you presented your 'constant delay' ideas.  I think that in the process of one hour, you presented a change in the synthesis paradigm to the best technical minds at Synopsys, they accepted that the idea has a lot of merit, and the team initiated a project to investigate this further.  This is really exciting!

**Confidential Synopsys Documents Describe van Ginneken's Inventions**

182.    In order to obtain patent protection for the fixed timing and gain-based synthesis inventions developed by van Ginneken while employed at Synopsys, van Ginneken proceeded to work with Synopsys' former outside patent counsel, Laura Majerus of Graham & James, in order to draft a patent application.   Although the content of the communications between van Ginneken and Ms. Majerus is protected by the attorney-client privilege, a patent application was ultimately drafted containing the very same inventions that were later disclosed in the '446 and '438 Patents.

183. The first draft of the patent application was entitled "System and Method for Constant Delay Synthesis," and contained disclosure of van Ginneken's inventions for fixed timing, including use of fixed timing in relation to logic synthesis and placement, equal slack sizing, area estimation, buffering, bipartitioning, iterative placement, and net weights. Synopsys never disclosed this draft patent application to the public, but instead Synopsys maintained it at all times relevant hereto as proprietary and confidential.

184. After the creation of this initial patent application, work on the application continued, and eventually a subsequent draft was created. This draft was entitled "Method for Achieving Timing Closure of Digital Networks and Method for Area Optimization of Digital Networks Under Timing Closure." This draft more thoroughly described the inventions that van Ginneken conceived while employed at Synopsys, and included detailed descriptions of the use of fixed timing in relation to network slack, library independent optimization, mapping for delay, post mapping optimization, pin swapping, boundary moves, area estimation, net weights, buffering, stretching, placement, and final or discrete sizing. The copies of this draft contained the clear and explicit notation "Synopsys Confidential." Synopsys never disclosed this draft patent application to the public, but Synopsys instead maintained it at all times relevant hereto as proprietary and confidential.

185. In addition to the preparation of the draft patent applications, van Ginneken also prepared a "white paper" on the fixed timing inventions. The initial draft of the paper was titled "The Constant Delay Methodology," and set forth several aspects of the inventions contained in the Patents. This paper contained, for instance, a description of the use of fixed timing as it related to logical effort and gain, sizing and placement, buffering, transition time effects, area

optimization, and area estimation. The end of the paper recommended that Synopsys adopt the fixed timing methodology for its tools.

186.    After this initial draft was created, van Ginneken created a revised version of the paper with the new title "Driving on the Left-Hand Side of the Performance Speedway." Once again, this paper provided a description of numerous aspects of the inventions that van Ginneken conceived that are contained in the Patents.

187.    As the above indicates, by the middle of 1996, Synopsys had extensive confidential documentation describing, in great detail, the fixed timing and gain-based synthesis inventions that van Ginneken developed while employed at Synopsys. At no point did Synopsys ever give permission for van Ginneken to take or use this documentation, or any of the inventions described therein, for the benefit of another company. To the contrary, under the Agreement these inventions were and are the exclusive property of Synopsys, and were assigned to Synopsys the instant that they were conceived.

**Magma Steals Synopsys' Inventions**

188.    At some point in 1996, van Ginneken decided to resign from Synopsys to pursue other opportunities. Instead, of pursuing ideas at another company that were unrelated to Synopsys' confidential information, however, van Ginneken sought to take another position where he could continue utilizing the fixed timing and gain-based synthesis inventions developed at Synopsys.

189.    In May of 1997, van Ginneken formally resigned from Synopsys in order to join Magma, which had been incorporated on April 1, 1997. In his resignation letter, van Ginneken stated that he was resigning to join a "newly formed startup company," and stated that his

departure "should not be construed as a lack of faith in the technical approaches which I have been advocating."

190.    Unbeknownst to Synopsys, there was far more to van Ginneken's resignation than appeared on the surface.  In reality, van Ginneken had only resigned from Synopsys after forming a conspiracy with Rajeev Madhavan, and other founders of Magma, to develop products for Magma using the fixed timing and gain-based synthesis inventions that had been developed at Synopsys.  This product development was one of the overt acts in furtherance of the main goal of the conspiracy, which was to use the inventions stolen from Synopsys in order to file for patents with the United States Patent and Trademark Office, and thereafter to use the patents in order to inflate the value of Magma's business to investors and shareholders and obtain a patent-based monopoly to assert against Magma's competitors.

191.    In furtherance of this conspiracy, on or before his resignation from Synopsys, van Ginneken misappropriated for the use and benefit of Magma the information contained in the detailed draft patent application, labeled "Synopsys Confidential."  The information from this application was ultimately copied into patent applications for Magma.  van Ginneken also misappropriated for Magma the information contained in at least one of the white papers that he had created for Synopsys.  Magma and van Ginneken misappropriated this information from Synopsys for the purpose of using van Ginneken's inventions as the core technical foundation for Magma products, so that Magma could achieve the main goal of its conspiracy as described herein.

192.    At no time did Magma or van Ginneken inform Synopsys that these documents and related information were being taken, nor did Synopsys ever give van Ginneken permission to take them.  Rather, this misappropriation occurred entirely in secret.

31

193.    After these materials were misappropriated from Synopsys, Magma proceeded to extensively copy the information contained in the documents in order to create the patent applications that would ultimately result in the issuance of the '446 and '438 Patents.  This copying was blatant and egregious.  Indeed, the inventive concepts contained in these patents were copied from the Synopsys patent application or other documents.  In dozens of instances, this copying was word-for-word.  In addition, the two patents also contain numerous passages that were copied, word-for-word, from one of the white papers van Ginneken had drafted for Synopsys.

194.    In addition to copying the confidential information misappropriated from Synopsys, Magma used the inventions that were misappropriated from Synopsys and labeled them as Magma's "FixedTiming" methodology.    Magma then incorporated these misappropriated inventions into its product line, and proceeded to use these inventions as a core technical foundation for its products.  By so doing, Magma was able to claim to the Securities and Exchange Commission and the public that its products featured "patented" technology, thereby inflating the value of its business to investors and shareholders and enabling it to assert the patents as a bar against any competitor's use of the inventions claimed in the patents.

**Magma and van Ginneken Lie to Synopsys**

195.    After van Ginneken resigned from Synopsys, Synopsys learned that he had joined Magma.  In light of the inventions developed by van Ginneken at Synopsys and the Synopsys confidential information to which he had been privy, Synopsys sought assurances from Magma that Synopsys' confidential and proprietary information would not be misused or compromised.

196.    On July 23, 1997, Synopsys forwarded the signed Agreement to Magma, and communicated its expectation that van Ginneken would honor his obligations under the

Agreement.  Synopsys further asked Magma to confirm that it would not use any confidential or proprietary information of Synopsys.

197.    At the time Magma received the July 23, 1997 letter from Synopsys, it was already in possession of the information set forth in the confidential patent application drafted for Synopsys, and knew that it was in the process of creating and developing products that would incorporate the very inventions misappropriated from Synopsys.  Rather than reveal the misappropriation to Synopsys, however, Magma chose to hide it.  To this end, Magma instructed its counsel at the law firm of Pillsbury, Madison & Sutro LLP ("Pillsbury") to respond by assuring Synopsys that Magma would <u>not</u> use or obtain any confidential or proprietary information of Synopsys.

198.    In particular, in a letter from Pillsbury dated August 18, 1997, Magma and van Ginneken made the following misrepresentations to Synopsys:  (1) "Dr. van Ginneken intends to honor his obligations under his Proprietary Information Agreement with Synopsys," (2) "Magma is in the practice of taking appropriate steps to protect . . . the trade secrets of its employees' former employers," (3) "Dr. van Ginneken will protect Synopsys' proprietary information during his employment at Magma," (4) "Magma is confident that Dr. van Ginneken has and will continue to abide by the terms of the Magma Agreement in the performance of his duties for Magma," and (5) "Magma will reiterate to Dr. van Ginneken his duty to abide by his Synopsys Agreement."

199.    Magma and van Ginneken knew that all of the foregoing statements from the August 18, 1997 letter were false.  At the time these statements were made, Magma had <u>already</u> misappropriated the information contained in the confidential patent application drafted for Synopsys (and the information contained in at least one confidential Synopsys white paper), and

had <u>already</u> begun to use the information to develop its products and draft patent applications.  In an active effort to hide the truth, however, Magma and van Ginneken provided a series of false misrepresentations to Synopsys.

200.     Through the August 18, 1997 letter, Magma and van Ginneken falsely represented that the use of any "constant delay ideas" by Magma would not implicate Synopsys' confidential information, because the ideas van Ginneken would be using were already known in the public domain.  Magma and van Ginneken also knew that this was false.  In truth, Magma was not relying on ideas that were already known in the public domain, but instead had willfully misappropriated the precise fixed timing inventions that van Ginneken had developed while employed at Synopsys.

201.     The fraudulent nature of the representations were enhanced by the decision to only quote in the August 18, 1997 letter a portion of Magma's employment agreement with van Ginneken, and to omit information of other facts known to Magma and van Ginneken.  Magma instead selectively quoted from the employment agreement and <u>omitted</u> the exhibits to the agreement created by van Ginneken.  These exhibits revealed that, contrary to the assertions in the August 18, 1997 letter, van Ginneken did <u>not</u> believe that his constant delay ideas were in the public domain and available for use by Magma.  Rather, as reflected in these exhibits, van Ginneken explicitly informed Magma that the white paper discussing these inventions was outside the scope of his agreement with Magma because it had been developed at Synopsys before he joined Magma.  By intentionally omitting such critical information from the August 18 letter, Magma provided information of other facts which were likely to, and did, mislead Synopsys.  Through and as a result of the fraudulent representations concerning the

"public domain" nature of the inventions Magma was pursuing, Magma was thus able to pursue its scheme without further question or investigation by Synopsys.

202.    After representing that Synopsys' confidential and proprietary information would be "protected," Magma then used the Pillsbury firm to submit secretly a series of patent applications to the PTO containing the very same inventions that van Ginneken developed while he was employed at Synopsys.  These applications described the inventions in language that was copied from the same information set forth in Synopsys' own confidential patent application. Although Magma knew that its applications had been copied from confidential Synopsys information, Magma continued to prosecute the applications for years before the PTO.

**Magma Deceives Its Own Investors**

203.    In 1998, while its plagiarized patent applications were pending, Magma retained the law firm of Orrick, Herrington & Sutcliffe LLP ("Orrick").  The goal of this retention was purportedly to perform intellectual property due diligence at Magma.  In reality, the main purpose of this retention was to use counsel to "whitewash" the misappropriation of Synopsys' confidential inventions and documentation, and thereby to further the main goal of the conspiracy against Synopsys as described herein.

204.    As part of the "due diligence" process, Orrick engaged a professor from the University of Michigan, Marios Papaefthymiou, who conducted a series of interviews at Magma for the purpose of assessing whether Magma had used proprietary or confidential information belonging to previous employers of Magma employees.  In truth, this entire process was a sham, because Magma already knew that its patent applications had been copied from confidential information misappropriated from Synopsys, but had carefully avoided telling Papaefthymiou that fact.

205.    Magma rigged the due diligence process by falsely informing Papaefthymiou that van Ginneken had not used any confidential or proprietary information of Synopsys in his position at Magma, and by failing to disclose to Papaefthymiou the fact that significant portions of Magma's patent applications had been plagiarized from Synopsys confidential information.

206.    Papaefthymiou interviewed van Ginneken as part of the due diligence process, and yet neither Magma nor van Ginneken informed him of the critical fact that significant portions of Magma's patent applications had been plagiarized from Synopsys confidential information.

207.    Although unknown to Synopsys until after the initiation of the Northern District Action, Papaefthymiou's notes from his interviews expressly noted the "similarities" between van Ginneken's work at Synopsys and Magma's work, and indicated that some of the Synopsys technology that was similar to Magma's may have been confidential or patented.  As Magma did not disclose to Papaefthymiou the fact that it had misappropriated Synopsys information and used it to draft Magma's patent applications, however, Papaefthymiou was unable to reach any conclusion on the matter.  Afterward, Magma omitted significant portions of Papaefthymiou's observations in the due diligence report given to Magma's potential investors.  Based on its omissions and misrepresentations, Magma represented that it had received a "clean bill of health" from the Orrick firm.

**Magma and van Ginneken Continue Their Deception**

208.    Magma continued to take steps in 1998 and succeeding years in order to mislead Synopsys.  For instance, in or about February of 1998, Magma invited Synopsys to attend a meeting at Magma's offices to discuss the possibility of a business arrangement between the two companies.  The meeting was attended by at least Rajeev Madhavan and Robert Smith on behalf of Magma, and at least Aart de Geus, Raul Camposano, and Robert Dahlberg on behalf of

Synopsys. Unbeknownst to Synopsys, Magma had arranged this meeting as part of a secret effort to "set up" Synopsys against future intellectual property claims.

209. At the February 1998 meeting, Magma did not tell Synopsys about the origin of Magma's technology, the misappropriation of Synopsys' information, the theft of the inventions created by van Ginneken at Synopsys, or the concerns raised by Papaefthymiou during the "due diligence" process. Rather, in furtherance of its continued course of conduct, Magma deliberately and falsely represented (consistent with Magma's fraudulent representations to Synopsys in 1997) that Magma had come up with a technology that would be able to guarantee timing closure and that Magma had developed this technology itself. As set forth above, this representation was knowingly false, because in fact Synopsys conceived the fixed timing methodology being used at Magma, and Synopsys owned the inventions underlying that methodology.

210. At no point in 1998 or thereafter did Magma or van Ginneken ever disclose the true facts to Synopsys or anyone else about the misappropriation of Synopsys' confidential information and inventions. Rather, Magma continued to repeat the misrepresentation that its fixed timing methodology had been entirely developed from scratch at Magma using public domain sources. Magma repeated these misrepresentations even though it knew that the entire foundation for its products was the fixed timing and gain-based synthesis inventions that van Ginneken had developed while he was employed at Synopsys. Magma's false representations constituted an enormous fraud upon Synopsys and the general public.

211. For instance, in a November 1999 article appearing in the Electronic Engineering Times, Magma represented that its engineers had "developed" the fixed timing methodology by using "back of the envelope" design techniques and techniques that "can be found in popular

VLSI design text books." Magma further described at length how its engineers had used this information to independently develop its "breakthrough" technology. These representations were knowingly false. In fact, van Ginneken had already conceived the fixed timing methodology while he was employed at Synopsys, and Magma's "development" of this invention consisted of misappropriating and copying the information contained in Synopsys' confidential draft patent application.

212.    Similarly, in a 1999 article published in SiliconIndia, Madhavan gave an interview in which he provided numerous false representations about the origin of the technology used by Magma. Rather than admit that Magma products actually are based on the inventions developed at Synopsys and misappropriated by Magma, Madhavan represented that he came up with the idea for Magma's products by reading a book by a Sun Microsystems researcher while on a flight back to the United States from India. Madhavan further stated that implementing "his" idea meant "re-doing the entire EDA history from scratch." This story was another elaborate hoax, which concealed the fact that -- as Madhavan had known for years by this time -- the core inventions for Magma's products had been literally copied from information contained in Synopsys' confidential documents.

213.    In an article published on September 1, 2001, Magma employee Karen Vahtra, another former employee of Synopsys, also perpetuated the false representation that Magma itself had conceived of the inventions for its technology. This article represented that Magma's gain-based synthesis invention was based on a "patent-pending technique," derived from ideas put forward in a public domain textbook. Carefully omitted from the article, however, was the fact that van Ginneken had developed these inventions while he was employed at Synopsys, and that Magma had only learned of the inventions by misappropriating information contained in

confidential Synopsys documentation. By representing that Magma had independently derived the ideas from the public domain, Magma continued to perpetuate the same false story that Magma originally presented in its 1997 letter to Synopsys. Magma's references to public domain materials in its articles gave the impression that any work that Magma had done, or would do in the future, concerning fixed timing would be based only on information in the public domain, and not on any confidential information developed at Synopsys.

214. Magma's misrepresentations were also repeated in its public filings with the Securities and Exchange Commission. For instance, in its S-1 Registration Statement filed in conjunction with Magma's initial public offering, Magma represented that it possessed "proprietary" fixed timing methodology that served as the "technical foundation" for its products. Similarly, in its Annual Reports filed with the SEC, Magma expounded at length on its "patented" fixed timing methodology, and represented that this technology is an "important technical foundation" for its software products. At no point in any of its SEC filings did Magma ever suggest or acknowledge that its fixed timing methodology had been misappropriated from Synopsys, or that its core patents had been copied from information contained in confidential Synopsys documentation.

215. Until 2004, Magma's campaign of disinformation was successful. Through false representations concerning the origin of the inventions and technology in its products, Magma was able to mislead Synopsys and others into believing that those inventions and technology had been independently developed by Magma exclusively from public domain sources. As a result, Magma fraudulently induced Synopsys to avoid asserting legal claims against Magma or van Ginneken and to avoid pursuing its legal rights.

216.    Magma was also successful in using its false representations to mislead its own investors and the EDA community in general.  As stated in a November 13, 2000 Electronic News article, "Several industry executives expressed amazement at Rajeev Madhavan, Magma president and chief executive officer, and his continued ability to entrance venture capitalists and drive leading-edge EDA R& D."  In truth, unbeknownst to either Synopsys or Magma investors, Madhavan was "entrancing" them with inventions that his company had misappropriated from Synopsys.

## Magma Obtains Patents Based On Synopsys' Inventions & Confidential Information

217.    From 1997 on, Magma prosecuted patent applications containing inventions misappropriated from Synopsys and language copied from Synopsys confidential documents.  At no time did Magma ever inform Synopsys that it was prosecuting patent applications before the PTO that contained language copied from confidential documents created for Synopsys.

218.    In 2002, the PTO issued the '446 Patent, which was the first issued patent that contained language and inventions plagiarized and misappropriated by Magma from Synopsys' confidential documentation.  In 2004, the PTO issued the '438 Patent, which also contained plagiarized language and misappropriated inventions.  Further, Magma continued to prosecute at least one continuation of these patents in the PTO which also contains plagiarized and misappropriated language and inventions from Synopsys.

219.    When these patents began to issue, Magma touted the patents to the public, and emphasized that the inventions in these patents encompassed the core technology in Magma's products.  While discussing these patents, however, Magma continued to avoid providing any facts that would reveal the true origin of the patented inventions.

40

**Synopsys Discovers the Truth In Response to Magma's Threats**

220.    Through the time the '438 Patent issued in 2004, Magma had been successful in hiding the truth concerning the origins of its patents, technology, and products.  Magma then decided to use the Patents offensively against Synopsys.  In other words, Magma attempted to "enforce" patents against Synopsys which claimed the very same inventions Magma had secretly stolen from Synopsys.

221.    On July 1, 2004, Magma wrote Synopsys to "express certain concerns" with respect to Synopsys' purported implementation of a gain-based delay model in its Design Compiler product.  Magma's letter attached copies of the '446 and '438 Patents, along with another patent issued to Magma.  The letter requested that Synopsys confirm its position on whether Synopsys was infringing the patents.  Magma's letter did not reveal, however, that the '446 and '438 Patents contained plagiarized language and inventions stolen from Synopsys.

222.    After receiving Magma's letter, Synopsys discovered that the inventions in these patents had been misappropriated from Synopsys, and that Magma had repeatedly misled Synopsys in order to hide the evidence of its wrongful conduct.  Synopsys was only able to uncover this wrongdoing by Magma because -- unlike the situation that existed beforehand -- it was now able to compare the language of both of the issued Patents to the confidential documentation prepared by van Ginneken at Synopsys.

223.    On September 17, 2004, Synopsys responded to the July 1, 2004 letter by informing Magma that, pursuant to the Agreement signed by van Ginneken, Synopsys is the rightful owner of the inventions in the '446 and '438 Patents.  Synopsys asked Magma (and, by copy of the letter, van Ginneken) to take whatever actions were necessary to ensure that the PTO

records accurately reflected the true ownership of these patents.  Concurrently, Synopsys filed the Northern District Action for patent infringement.

**Magma Continues to Make Fraudulent Statements to Synopsys and the Public**

224.   Rather than responding to Synopsys' September 17, 2004 letter by simply admitting the truth, Magma engaged in yet another public relations campaign designed to continue misleading its investors and the public.  Despite the devastating and conclusive evidence of misappropriation, Magma publicly labeled Synopsys' ownership assertions "insulting," and repeated the misrepresentation that Magma's inventions had been conceived from scratch by Magma.

225.   In addition, in response to Synopsys' claims, Magma filed an Answer that contained numerous statements Magma knew were untrue.  Apparently assuming that Synopsys no longer had possession of the documents which conclusively proved Magma's wrongful conduct, Magma continued its course of deceitful conduct by alleging that van Ginneken had never used or taken <u>any</u> proprietary or confidential information of Synopsys in developing the fixed timing inventions.  Magma made this assertion even though it knew that Magma's patents had been copied from information contained in the confidential draft application created at Synopsys.

226.   In January of 2005, Synopsys produced its draft patent applications which conclusively established that Magma had plagiarized the language in the '446 and '438 Patents.  Synopsys thereafter produced a chart, a copy of which is attached hereto as Exhibit D, which sets out dozens of instances in which Synopsys confidential draft patent applications had been blatantly copied to create the specification for Magma's patents.  Yet, even after Synopsys provided this chart, Magma continued to make false statements about its purported inventions,

and refused to acknowledge the obvious truth that the inventions in the '446 and '438 Patents had been misappropriated from Synopsys.

## Van Ginneken Confesses to His Illegal Activities Under Oath

227.   On March 10, 2005, van Ginneken signed a declaration confessing to Magma's misconduct.  A true and correct copy of this declaration as filed in the Northern District Action is attached hereto as Exhibit E.   In his declaration, van Ginneken admits under oath that the inventions in the '446 and '438 Patents were conceived at Synopsys, and admits that he misappropriated those inventions in violation of his obligations to Synopsys.   van Ginneken further admits that the inventions misappropriated by Magma were utilized as a technical foundation for Magma's products.

228.   Soon after van Ginneken's declaration became a part of the public record in the Northern District Action, Magma's share price immediately dropped, causing Magma's market capitalization to plunge.  van Ginneken himself lost over $250,000 in value of his own Magma stock.  Upset over the loss in value of Magma stock caused by public revelation of his illegal conduct, van Ginneken decided to continue his conspiracy with Magma by aiding Magma in attempting to discredit the very declaration that he had signed under oath.

229.   Despite careful coaching by Magma, van Ginneken admitted under oath in his deposition that all of the statements contained in his declaration were true.  van Ginneken further testified that Magma's products utilize the inventions misappropriated from Synopsys.  Rather, however, than direct attention to this information, Magma instead made statements to the public which continued to state or imply that van Ginneken's deposition testimony discredited his declaration.  Once again, Synopsys and Magma's innocent shareholders were the victims.

230.   Rather than simply concede the obvious truth that it had stolen inventions from Synopsys, Magma continued to engage in a public relations campaign designed to mislead its

investors and shareholders.  For instance, Madhavan informed analysts on a Magma conference call that Magma was "not conceding anything," even though Magma had already served discovery responses in the Northern District Action explicitly conceding that almost all of the inventions in the '446 and '438 Patents were conceived before van Ginneken left Synopsys. Ultimately, millions of Magma shares traded hands without any public acknowledgement by Magma about the admissions it had made during this litigation.

231.    Magma made further public efforts to discredit van Ginneken's declaration to its investors and shareholders, in an attempt to leave the impression that the fundamental truths of what van Ginneken had to say were still in dispute in the case.  Magma had already admitted these truths itself in the Northern District Action, however, and the documents that Synopsys produced ultimately left Magma no choice but to admit that the technology upon which Magma had been founded had been stolen from others.  By pretending that there was a legitimate dispute over the veracity of van Ginneken's testimony, Magma continued its effort to perpetrate an enormous fraud on its customers, investors and shareholders.

232.    Although Magma refused to tell the truth to its customers, shareholders or the public, Magma then recognized in the Northern District Action that it could only hope to avoid a permanent injunction against sale of its product line by attempting to invalidate the very same patents that it had threatened to assert against Synopsys and had vigorously argued were valid before the PTO.  Furthermore, Magma resorted to contending that its products do not perform the inventions in the '446 and '438 Patents, even though Magma has repeatedly stated in SEC filings over the last several years -- and has represented in dozens of press releases, public statements, and marketing materials -- that these inventions are performed by the Magma products.

**Magma Also Infringes Synopsys' '114 Patent**

233.    On April 23, 2002, United States Patent No. 6,378,114 ("the '114 Patent"), entitled "Method for the Physical Placement of an Integrated Circuit Adaptive to Netlist Changes," was issued to Synopsys.  van Ginneken is a named inventor on the '114 Patent.  At least since the issuance of the '114 Patent, Magma has manufactured, tested, and licensed products that infringe the claims of the '114 Patent.  This infringement occurred despite the fact that van Ginneken, who was ultimately promoted to Chief Scientist at Magma, was one of the named inventors of the '114 Patents and therefore knew what the claims of those patents encompassed.  Synopsys has also sought relief for this infringement in the Northern California Action.

**Magma Refuses to Withdraw Infringement Claim Even After Clear Evidence of Invalidity**

234.    Undeterred by its last experience in asserting problematic patents against Synopsys, Magma amended its counterclaims in the present action on October 25, 2005 to allege that Synopsys infringes the '328 Patent.  Upon investigation, however, it became clear that the '328 Patent is invalid as it has been anticipated and/or rendered obvious by long-standing prior art.  Synopsys brought the invalidating prior art to Magma's attention early in the litigation process in this action.

235.    Synopsys' counsel sent a letter to Magma's counsel on March 7, 2006, a copy of which is attached hereto as Exhibit F, requesting that Magma dismiss the '328 infringement counterclaim in light of the following prior art: (1) the OCTTools Program, a tool available on the internet since at least the early 1990's; (2) the CHDStd System, a common data model developed by Sematech and its member companies several years before Magma filed the application that later issued as the '328 Patent; (3) the IBM Integrated Data Model, a common

data model shared by different EDA tools that IBM developed when van Ginneken was at IBM, long before the application for the '328 Patent was filed; and (4) other prior art pertaining to the performance of an area query based on a KD tree in EDA applications since the 1980's. Synopsys attached documents detailing all of this invalidating prior art to the March 7 letter.

236.    On March 15, counsel for Synopsys forwarded additional documentation of prior art on the '328 Patent to Magma's counsel.  Magma did not respond to either letter, or otherwise attempt to explain how the '328 Patent could possibly be valid in the face of this prior art.

237.    On April 24, 2006, counsel for Synopsys sent another letter to Magma's counsel, attached hereto as Exhibit G, explaining that further investigation had revealed the existence of additional prior art invalidating the '328 Patent, explaining the art in detail and again attaching copies of documentation.

238.    Magma finally responded to Synopsys' request that Magma dismiss the '328 Patent infringement claim in light of the plethora of invalidating prior art in a perfunctory, one-page letter on April 26, 2006, stating that prior art analysis would have to await the "expert discovery process."  To date, Magma has not given Synopsys any substantive response regarding the prior art that Synopsys provided.

## FIRST AFFIRMATIVE DEFENSE
### Failure To State A Claim

239.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

240.    Magma's counterclaims each fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### Non-Infringement

241.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

242.    Synopsys has not infringed and is not infringing directly, either literally or under the doctrine of equivalents, or by inducing or contributing to the infringement by others of any valid claim in any of the patents Magma asserts in this action.

## THIRD AFFIRMATIVE DEFENSE
### Invalidity

243.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

244.        Magma's claims of patent infringement are barred because each of Magma's asserted patents are invalid under 35 U.S.C. §§ 102, 103 and/or 112.

## FOURTH AFFIRMATIVE DEFENSE
### Equitable Estoppel

245.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

246.    Magma is barred from obtaining any relief by the equitable doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE
### Unclean Hands

247.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

248.    Magma is barred from obtaining any relief by virtue of its own unclean hands.

## SIXTH AFFIRMATIVE DEFENSE
### Preemption

249.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

250.    Magma is barred from obtaining relief because its claims are preempted by federal patent law.  Statements made by Synopsys as alleged by Magma, if any, would have been made in furtherance of Synopsys' rights to enforce its patents in the marketplace.  As a result, Magma's claims are preempted by federal patent law.

## SEVENTH AFFIRMATIVE DEFENSE
### Noerr-Pennington Doctrine

251.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

252.    Magma is barred from obtaining any relief for its claims under the Noerr-Pennington doctrine.

## EIGHTH AFFIRMATIVE DEFENSE
### Privilege

253.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

254.    Magma is barred from obtaining any relief under the litigation and competitor privileges.

255.    Magma is barred from obtaining any relief because Synopsys' conduct and statements as alleged in the Second Amended Answer and Counterclaims, if any, were privileged and justified as good faith acts to protect its own existing legal, contractual and/or economic interests.

## NINTH AFFIRMATIVE DEFENSE
### Truth

256.     Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

257.     Magma is barred from obtaining relief because the alleged statements by Synopsys, to the extent actually made by Synopsys as opposed to how Magma attempts to characterize any such statements, are true.

## TENTH AFFIRMATIVE DEFENSE
### Failure to Mitigate

258.     Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

259.     Magma is barred from obtaining any relief by virtue of its failure to mitigate its alleged damages.  Rather than truthfully acknowledge its wrongful conduct and infringement of the Synopsys patents-in-suit, Magma instead continued to use the inventions and engaged in a public relations campaign designed to distort the true facts to the general public and Magma's shareholders.  Magma continued its egregious conduct by publicly disparaging Synopsys' claims.  This conduct will only serve to increase Magma's damages, rather than mitigate them.

## ELEVENTH AFFIRMATIVE DEFENSE
### Comparative Fault

260.     Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

261.     If Magma incurred any loss, injury, damage or detriment as alleged in its Second Amended Answer and Counterclaims, the loss, injury, damage or detriment was caused by or contributed to by the action of Magma itself, and as Magma did not exercise ordinary care on its own behalf, its own acts and omissions proximately caused and contributed to the loss, injury,

damages or detriment alleged in Magma's Second Amended Answer and Counterclaims, and Magma's recovery from Synopsys, if any, should be reduced by the percentage of Magma's negligence or fault.

## TWELFTH AFFIRMATIVE DEFENSE
### Intervening Cause

262.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

263.    Magma is barred from obtaining any relief on each and every alleged claim in the Second Amended Answer and Counterclaims because the damages alleged therein, which Synopsys denies, were proximately caused or contributed to by the acts of Magma and/or others.

## THIRTEENTH AFFIRMATIVE DEFENSE
### Waiver

264.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

265.    Magma by its conduct has waived any and all claims that it may have against Synopsys.

## FOURTEENTH AFFIRMATIVE DEFENSE
### Set-Off

266.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

267.    Magma's alleged damages, if any, are offset in whole or in part based on amounts due to Synopsys from Synopsys' Complaint in this action, as set forth in more detail in said Complaint.

## FIFTEENTH AFFIRMATIVE DEFENSE
### Ratification and Consent

268.     Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

269.     Magma ratified or consented to the actions of Synopsys as alleged in Magma's Second Amended Answer and Counterclaims, thereby waiving any and all claims against Synopsys, if any, and Magma therefore cannot recover on its Counterclaims or any claim alleged therein.

## SIXTEENTH AFFIRMATIVE DEFENSE
### No Antitrust Injury

270.     Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

271.     Magma is barred from obtaining any relief on its non-patent infringement counterclaims because it has failed to suffer any antitrust injury.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### Standing

272.     Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

273.     Magma is barred from obtaining any relief on its non-patent infringement counterclaims because it does not have standing under the antitrust laws to pursue these counterclaims.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### Laches

274.     Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

275.    Magma is barred from asserting each of the claims alleged in its Second Amended Answer and Counterclaims because it unreasonably delayed in asserting such claims, resulting in prejudice to Synopsys.

**NINETEENTH AFFIRMATIVE DEFENSE**
**No Entitlement to Damages**

276.    Synopsys repeats and realleges each and every allegation contained in Paragraphs 164-238 above as if set forth herein.

277.    The Second Amended Answer and Counterclaims, and each claim contained therein, fail to state facts sufficient to entitle Magma to an award of damages, interest, costs and/or attorney's fees because such damages, if any, were not the result of acts or omissions by Synopsys

**SYNOPSYS' COUNTERCLAIM AGAINST MAGMA**

Plaintiff Synopsys, Inc., ("Synopsys") alleges:

**PARTIES**

278.    Synopsys is a Delaware corporation with its principal place of business in Mountain View, California.

279.    Synopsys is informed and believes, and based thereon alleges, that defendant Magma Design Automation, Inc. ("Magma") is a Delaware corporation with its principal place of business in Santa Clara County, California.

**JURISDICTION**

280.    This is an action for, *inter alia*, declaratory relief under the Patent Act.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202 (declaratory judgments), 35 U.S.C. §§ 1, et seq. (patents), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (patents).

281.    This Court has personal jurisdiction over Magma because it is a corporation organized and existing under the laws of the State of Delaware.

## VENUE

282.    Venue in the District of Delaware is proper under 28 U.S.C. § 1391(b)-(c) because Magma is a Delaware corporation, a substantial part of the events giving rise to the claims occurred in this district, and because Magma has asserted counterclaims in this district.

## FACTUAL BACKGROUND

283.    Synopsys is informed and believes, and based thereon alleges, that on January 7, 2003, United States Patent No. 6,505,328 (the "'328 Patent") issued to Magma.

284.    On or about October 25, 2005, Magma filed its Amended Answer and Counterclaims.  Magma asserted a willful infringement counterclaim against Synopsys regarding the '328 Patent.

285.    Synopsys is informed and believes, and based thereon alleges, that on February 11, 2003, United States Patent No. 6,519,745 (the "'745 Patent") issued to Magma.

286.    Synopsys is informed and believes, and based thereon alleges, that on August 25, 2005, United States Patent No. 6,931,610 (the "'610 Patent") issued to Magma.

287.    Synopsys is informed and believes, and based thereon alleges, that on February 15, 2005, United States Patent No. 6,857,116 (the "'116 Patent") issued.  On information and belief, the '116 Patent has been assigned to Magma.

288.    Synopsys is informed and believes, and based thereon alleges, that on February 8, 2005, United States Patent No. 6,854,093 (the "'093 Patent") issued.  On information and belief, the '093 Patent has been assigned to Magma.

289.    On or about May 31, 2006, Magma filed its Second Amended Answer and Counterclaims. Magma asserted willful infringement counterclaims against Synopsys regarding the '328, '745, '610, '116, and '093 Patents.

## COUNT ONE

### (Declaration of Patent Invalidity and Non-Infringement)

290.    Synopsys incorporates by reference paragraphs 278-289 of its Counterclaim as though set forth fully herein.

291.    Magma has brought counterclaims in this action against Synopsys for alleged infringement of the '328, '745, '610, '116 and '093 Patents.

292.    An immediate, real and justiciable controversy within the meaning of 28 U.S.C. §§ 2201 and 2202 has arisen and now exists between Synopsys on the one hand, and Magma on the other hand, concerning their respective rights and obligations under the '328, '745, '610, '116 and '093 Patents.

293.    Synopsys seeks a declaratory judgment that the '328, '745, '610, '116 and '093 Patents, and each claim thereof, are invalid for failing to comply with the provisions of the Patent Laws, including, 35 U.S.C. §§102, 103 and/or 112.

294.    To the extent that the '328, '745, '610, '116 and '093 Patents, or any of them, could possibly be considered valid, Synopsys seeks a declaratory judgment that as the claims of the '328, '745, '610, '116, and '093 Patents are properly construed, Synopsys does not infringe those claims.

295.    A judicial declaration is necessary and appropriate at this time under the circumstances so that Synopsys can ascertain its rights.

## SUPPLEMENTAL PRAYER FOR RELIEF

Wherefore, Synopsys further prays that this Court:

A.     Award to Synopsys the relief sought in its Complaint;

B.     Adjudge and decree that Magma's counterclaims are dismissed with prejudice, that judgment be entered in Synopsys' favor and against Magma, and that Magma be denied all relief requested in its counterclaims;

C.     Adjudge and decree that Magma is not entitled to any damages from Synopsys or any injunctive relief under its counterclaims;

D.     Award Synopsys its fees and costs in defending against Magma's counterclaims, including its reasonable attorneys' fees and interest;

E.     Adjudge and decree that Synopsys has not infringed and is not infringing the '328 Patent;

F.     Adjudge and decree that Synopsys has not infringed and is not infringing the '745 Patent;

G.     Adjudge and decree that Synopsys has not infringed and is not infringing the '610 Patent;

H.     Adjudge and decree that Synopsys has not infringed and is not infringing the '116 Patent;

I.     Adjudge and decree that Synopsys has not infringed and is not infringing the '093 Patent; and

J.     Adjudge and decree that the '328 Patent is invalid;

K.     Adjudge and decree that the '745 Patent is invalid;

L.     Adjudge and decree that the '610 Patent is invalid;

M.    Adjudge and decree that the '116 Patent is invalid;

N.    Adjudge and decree that the '093 Patent is invalid; and

O.    Award Synopsys such further necessary and proper relief as this court may deem

just and reasonable.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
|  | */s/ Karen Jacobs Louden (#2881)* |
|  | _____ |
|  | Jack B. Blumenfeld (#1014) |
|  | Karen Jacobs Louden (#2881) |
|  | 1201 N. Market St. |
|  | P.O. Box 1347 |
|  | Wilmington, DE  19899 |
|  | (302) 658-9200 |
|  | klouden@mnat.com |
|  | Attorneys for plaintiff Synopsys, Inc. |
| OF COUNSEL: |  |
|  |  |
| James J. Elacqua |  |
| Chris Scott Graham |  |
| Valerie M. Wagner |  |
| DECHERT LLP |  |
| 1117 California Ave. |  |
| Palo Alto, CA  94304 |  |
| (650) 813-4848 |  |

June 14, 2006

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 14, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to William J. Marsden, Jr.

I further certify that on June 14, 2006 I caused that copies of the foregoing be served on the following counsel in the manner indicated:

### By Hand

William J. Marsden, Jr.
Fish & Richardson P.C.
919 N. Market St.
P.O. Box 1114
Wilmington, DE 19899

*/s/ Karen Jacobs Louden (#2881)*
Karen Jacobs Louden