# EXHIBIT B

1

MILBERG WEISS BERSHAD
2    & SCHULMAN LLP
JEFF S. WESTERMAN (SBN 94559)
3   ELIZABETH P. LIN (SBN 174663)
355 S. Grand Ave., Suite 4170
4   Los Angeles, CA 90071-3172
Telephone: (213) 617-1200
5   Facsimile: (213) 617-1975

6   Attorneys for Plaintiff

7   [Additional Counsel Appear on Signature Page]

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| THE CORNELIA I. CROWELL GST TRUST, On Behalf Of Itself and All Others Similarly Situated, | Case No. |
| | **CLASS ACTION** |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| vs. | |
| MAGMA DESIGN AUTOMATION, INC., RAJEEV MADHAVAN, GREGORY C. WALKER, ROY E. JEWELL, | **JURY TRIAL DEMANDED** |
| Defendants. | |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

DOCS\276248v1

1    Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which

2    included a review of regulatory filings and reports, securities analyst reports and advisories about

3    Magma Design Automation, Inc. ("Magma" or the "Company"), press releases and other public

4    statements issued by the Company, and media reports about the Company.

5    <u>**NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS**</u>

6        1.    This is a federal class action on behalf of persons who purchased the securities of

7    Magma between October 23, 2002 through April 12, 2005, inclusive (the "Class Period"), and who

8    were damaged by the subsequent decline in the Company's stock price, as particularized herein,

9    seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

10        2.    Magma is a Santa Clara-based provider of electronic design automation ("EDA").

11   EDA helps chip companies design and produce complex integrated circuits used in the

12   communications, computing, consumer electronics, networking and semiconductor industries.

13        3.    This action alleges that throughout the Class Period defendants failed to disclose that

14   it faced the serious risk of infringing on intellectual property rights of competitor Synopsys, Inc.

15   because inventions that were critical to Magma's business, and which were patented by Magma,

16   were designed by Magma's Chief Scientist, Lukas van Ginneken, while he was employed  by

17   Synopsys. This fact, and the significant risk it posed, was known to defendants or recklessly

18   disregarded by them, but was concealed from Magma investors. Instead of coming clean about the

19   seriousness of the Synopsis infringement action at the time it was filed, defendants aggressively

20   denounced the allegations, characterizing them as completely baseless. While Magma's stock price

21   was artificially inflated (because it did not reflect the concealed risk), Magma insiders, including

22   each of the Individual Defendants, sold 4,436,163 shares of Magma common stock at artificially

23   inflated prices reaping gross proceeds of $82,385,174.

24        4.    On April 13, 2005, the truth was disclosed when the market learned that Magma's

25   Chief Scientist, Lukas van Ginneken, admitted, in a sworn declaration filed in the Synopsys

26   infringement action, that inventions covered by two of Magma's patents (the "446" and "438"

27   patents) were conceived by him while he was employed by Synopsys and that his supervisor at

28   Magma, and likely others, knew that the inventions covered by the patents were conceived by him at

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 1 -

1   Synopsis and were encompassed by an agreement with Synopsis that established that it owned the

2   rights to those inventions. In short, Magma's Chief Scientist admitted that Magma knowingly

3   commercialized intellectual property that was designed by that Chief Scientist while he was

4   employed by another company.

5       5.      This disclosure caused Magma's stock to plummet by 40.7% in one day, from $9.42

6   per share on April 12, 2005 to $5.58 per share on April 13, 2005, on unusually high trading volume

7   exceeding 14.4 million shares.

8                          **JURISDICTION AND VENUE**

9       6.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the

10  Exchange Act (15 U.S.C. §§78j (b) and 78t (a)) and Rule 10b-5 promulgated thereunder by the SEC

11  (17 C.F.R. §240.10b-5).

12      7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

13  §§1331 and 1337, and Section 27 of the Exchange Act.

14      8.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28

15  U.S.C. §1391(b).  Many of the acts charged herein, occurred in substantial part in this District and

16  Magma conducts business in this District.

17      9.      In connection with the acts alleged in this complaint, defendants, directly or

18  indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to,

19  the mails, interstate telephone communications and the facilities of the national securities markets.

20                              **PARTIES**

21      10.     Plaintiff, The Cornelia I. Crowell GST Trust, as set forth in the accompanying

22  certification, incorporated by reference herein, purchased the common stock of Magma at

23  artificially-inflated prices during the Class Period and was injured as alleged herein.

24      11.     Defendant Magma is a Delaware corporation headquartered in this District at 5460

25  Bayfront Plaza, Santa Clara, CA 95054

26      12.     Defendant Rajeev Madhavan served as Magma's Chief Executive Officer and a

27  director.  Defendant  Madhavan sold *1,667,430* shares of Magma common stock during the Class

28  Period, for gross proceeds of *$30,698,489*.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 2 -

1        13.    Defendant Gregory C. Walker served as Magma's Chief Financial Officer during the

2  Class Period. Defendant Walker sold **242,174** shares of Magma common stock during the Class

3  Period, for gross proceeds of **$4,627,141**.

4        14.    Defendant Roy E. Jewell served as Magma's President, Chief Operating Officer and a

5  director during the Class Period. Defendant Jewell sold **547,181** shares of Magma common stock

6  during the Class Period, for gross proceeds of **$10,033,651**.

7        15.    Defendants Madhavan, Walker and Jewell are referred to herein as the "Individual

8  Defendants."

9        16.    During the Class Period, the Individual Defendants, as senior executive officers

10  and/or directors of Magma, were privy to confidential and proprietary information concerning

11  Magma, its operations, finances, financial condition, present and future business prospects. The

12  Individual Defendants also had access to material adverse non-public information concerning

13  Magma, as discussed in detail below. Because of their positions with Magma, the Individual

14  Defendants had access to non-public information about its business, finances, products, markets and

15  present and future business prospects *via* access to internal corporate documents, conversations and

16  connections with other corporate officers and employees, attendance at management and board of

17  directors meetings and committees thereof and *via* reports and other information provided to them in

18  connection therewith. Because of their possession of such information, the Individual Defendants

19  knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to,

20  and were being concealed from, the investing public.

21        17.    The Individual Defendants are liable as direct participants in, and as co-conspirators,

22  with respect to the wrongs complained of herein. In addition, the Individual Defendants, by reason

23  of their status as senior executive officers and/or directors were "controlling persons" within the

24  meaning of Section 20 of the Exchange Act and had the power and influence to cause the Company

25  to engage in the unlawful conduct complained of herein. Because of their positions of control, the

26  Individual Defendants were able to and did, directly or indirectly, control the conduct of Magma's

27  business.

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

DOCS\276248v1

18.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

19.     As senior executive officers and/or directors and as controlling persons of a publicly-traded company whose common stock was, and is, registered with the Securities and Exchange Commission (the "SEC") pursuant to the Exchange Act, and was traded on the NASDAQ National Market ("NASDAQ") and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Magma's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Magma's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

20.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Magma common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding Magma's business, operations and management and the intrinsic value of Magma common stock and (ii) caused plaintiff and members of the Class to purchase Magma common stock at artificially-inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of Magma between October 23, 2002 through April 12, 2005, inclusive, and who were damaged

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 4 -

1   thereby. Excluded from the Class are defendants, the officers and/or directors of the Company, at all

2   relevant times, members of their immediate families and their legal representatives, heirs, successors

3   or assigns and any entity in which defendants have or had a controlling interest.

4         22.    The members of the Class are so numerous that joinder of all members is

5   impracticable. Throughout the Class Period, Magma had more than 35 million shares of common

6   stock outstanding that were actively traded on the NASDAQ National Market. While the exact

7   number of Class members is unknown to plaintiff at this time and can only be ascertained through

8   appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the

9   proposed Class. Record owners and other members of the Class may be identified from records

10   maintained by Magma or its transfer agent and may be notified of the pendency of this action by

11   mail, using the form of notice similar to that customarily used in securities class actions.

12         23.    Plaintiff's claims are typical of the claims of the members of the Class as all members

13   of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is

14   complained of herein.

15         24.    Plaintiff will fairly and adequately protect the interests of the members of the Class

16   and has retained counsel competent and experienced in class and securities litigation.

17         25.    Common questions of law and fact exist as to all members of the Class and

18   predominate over any questions solely affecting individual members of the Class. Among the

19   questions of law and fact common to the Class are:

20         (a)    whether the federal securities laws were violated by defendants' acts as

21   alleged herein;

22         (b)    whether statements made by defendants to the investing public during the

23   Class Period misrepresented material facts about the business and operations of Magma; and

24         (c)    to what extent the members of the Class have sustained damages and the

25   proper measure of damages.

26         26.    A class action is superior to all other available methods for the fair and efficient

27   adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

28   damages suffered by individual Class members may be relatively small, the expense and burden of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 5 -

DOCS\276248v1

1 | individual litigation make it impossible for members of the Class to individually redress the wrongs

2 | done to them.  There will be no difficulty in the management of this action as a class action.

3 | ## SUBSTANTIVE ALLEGATIONS

4 | ### Materially False And Misleading Statements Issued During The Class Period

5 | #### *Fiscal 2003 Statements*

6 | 27.    The Class Period commences on October 23, 2002, which marks the Company's first

7 | earnings release following the issuance of the 446 patent. In relevant part, defendants reported the

8 | following results for the second fiscal quarter of 2003:

> For the second quarter, Magma reported revenue of $17.8 million, compared to $9.6 million for the year-ago second quarter ended September 30, 2001, an increase of 85 percent. Magma reported pro forma net income for the quarter, excluding certain non-cash charges, of $1.4 million, or $0.04 per share on a diluted basis. This compares to a pro forma net loss of $3.2 million, or $0.31 per share, for the year-earlier second quarter of fiscal 2002, ended September 30, 2001. Pro forma net income (loss) reflects reported net income (loss) excluding stock-based compensation, non-cash interest expense, and non-cash preferred stock dividend.

> In accordance with generally accepted accounting principles (GAAP), Magma reported net income attributed to common shareholders (basic) of $0.7 million, or $0.02 per share, for the quarter, compared to a net loss attributed to common shareholders (basic) of $10.8 million, which included a $5.8 million non-cash preferred stock dividend, or $1.03 per share, for the year-ago second quarter ended September 30, 2001.

Commenting on the results, defendant Madhavan highlighted the Company's order backlog and its

supposed "technology advantages":

> "In the second quarter we continued to make progress engaging new customers, our software continued to enable our users to complete challenging designs and our profitability improved over the prior quarter," said Rajeev Madhavan, chairman and CEO of Magma. "We continued to make progress in expanding our market presence and market share. Our bookings and pipeline remain strong. The best indicators of our business performance are bookings results and the growth in backlog. We had a record quarter for bookings -- in terms of magnitude, the number of transactions and the proportion of license vs. non-license revenue. Thanks to our technology advantages we are gaining more engagements, more wins and record bookings. We have more installed seats than ever before. In terms of overall business traction, this was our best quarter to date."

28.    On June 20, 2003, Magma filed its fiscal 2003 annual report with the SEC on Form

10-K. The report was signed by defendants Madhavan, Walker and Jewell.  Defendants reported the

following results for the year, which reflected strong year-over-year revenue growth and increased

net income:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

| ($millions) | FY 2003 | FY 2002 |
|---|---|---|
| Sales | 75.09 | 46.36 |
| Cost of Goods Sold | 11.58 | 8.31 |
| SG&A / Oth Op / Dep Op & Maint | 59.80 | 53.99 |
| Operating Income (Losses) | 3.72 | (15.94) |
| Interest Expense | 0.00 | 14.79 |
| Net Non-Oper Losses(Gains) | (0.54) | (1.04) |
| Income Tax Expenses (Credits) | 1.18 | 0.29 |
| Net Income/Net Profit (Losses) | 3.07 | (29.99) |
| Earnings Per Share | 0.10 | (2.07) |
| Fully Diluted EPS | 0.10 | (2.07) |

29.     In the Form 10-K, defendants highlighted the Company's reliance on the viability of its intellectual property and warned, in general, about potential harm to its business that could result from patent infringement actions:

> *We rely on trademark, copyright and trade secret laws and contractual restrictions to protect our proprietary rights, and if these rights are not sufficiently protected, it could harm our ability to compete and generate income.*
>
> To establish and protect our proprietary rights, we rely on a combination of trademark, copyright and trade secret laws, and contractual restrictions, such as confidentiality agreements and licenses. Our ability to compete and grow our business could suffer if these rights are not adequately protected. We seek to protect our source code for our software, documentation and other written materials under trade secret and copyright laws. We license our software pursuant to agreements, which impose certain restrictions on the licensee's ability to utilize the software. We also seek to avoid disclosure of our intellectual property by requiring employees and consultants with access to our proprietary information to execute confidentiality agreements.
>
> ***
>
> *We may face intellectual property infringement or other claims against us or our customers that could be costly to defend and result in our loss of significant rights.*
>
> Many of our contracts contain provisions in which we agree to indemnify our customers from third-party intellectual property infringement claims. Other parties may assert intellectual property infringement claims against us or our customers, and our products may infringe the intellectual property rights of third parties. We have also acquired or may hereafter acquire software as a result of our past or future

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 7 -

1       acquisitions, and we may be subject to claims that such software infringes the intellectual property rights of third parties. If we become involved in litigation, we could lose our proprietary rights and incur substantial unexpected operating costs. Intellectual property litigation is expensive and time-consuming and could divert management's attention from our business. If there is a successful claim of infringement, we may be required to develop non-infringing technology or enter into royalty or license agreements, which may not be available on acceptable terms, if at all.

Our failure to develop non-infringing technologies or license the proprietary rights on a timely basis would harm our business. Our products may infringe third-party patents that may relate to our products. Also, we may be unaware of filed patent applications that relate to our software products. We believe the patent portfolios of our competitors are far larger than ours, and this may increase the risk that they may sue us for patent infringement and may limit our ability to counterclaim for patent infringement or settle through patent cross-licenses.

Emphasis in original.

30.     The annual report contained certifications, filed pursuant to Section 302 of the Sarbanes Oxley Act of 2002, signed by defendants Madhavan and Walker stating, in relevant part, that:

Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report.

31.     Defendants' representations in ¶¶ 27-30 were materially false and misleading when made because they failed to disclose the following facts:

(a)     Inventions claimed by Magma in patents 446 and 438 were conceived by Lukas Van Ginneken while he was employed by Synopsis;

(b)     That, because of the foregoing, Magma's patents 446 and 438 were under a cloud such that Magma's use of the technology ran the serious, but undisclosed, risk of infringing Synopsis' intellectual property rights;

(c)     That Magma's incorporation of the technology encompassed by patents 446 and 438, which was material to its business, could be halted, thereby jeopardizing the Company's business;

(d)     That Magma could be subject to a material monetary judgment in an infringement action brought by Synopsis; and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 8 -

1        (e)     That the certifications signed by defendants Madhavan and Walker, included

2 in the Company's annual report were false because the annual report failed to disclose the above

3 information, *i.e.*, the Form 10-K was materially false and misleading because it failed to disclose that

4 technology incorporated in the Company's products was developed by the Company's Chief

5 Scientist while he was employed by another company, thereby jeopardizing Magma's business and

6 subjecting Magma to potentially ruinous patent infringement litigation.

7 **Fiscal 2004 Statements**

8        32.     On June 8, 2004, the Company filed its fiscal 2004 annual report with the SEC on

9 Form 10-K. The report was signed by defendants Madhavan, Walker and Jewell.  Defendants

10 reported the following results for the year, which reflected strong year-over-year revenue growth and

11 increased net income:

| ($millions) | FY 2004 | FY 2003 |
|---|---|---|
| Sales | 113.73 | 75.09 |
| Cost of Goods Sold | 16.65 | 11.58 |
| SG&A / Oth Op / Dep Op & Maint | 83.45 | 59.80 |
| Operating Income (Losses) | 13.63 | 3.72 |
| Interest Expense | 1.07 | 0.00 |
| Net Non-Oper Losses(Gains) | (2.48) | (0.54) |
| Income Tax Expenses (Credits) | 3.58 | 1.18 |
| Net Income/Net Profit (Losses) | 11.48 | 3.07 |
| Earnings Per Share | 0.36 | 0.10 |
| Fully Diluted EPS | 0.29 | 0.10 |

24        33.     In the Form 10-K, defendants highlighted the Company's reliance on the viability of

25 its intellectual property and warned, in general, about potential harm to its business from patent

26 infringement actions:

> *We rely on trademark, copyright and trade secret laws and contractual restrictions*
> *to protect our proprietary rights, and if these rights are not sufficiently protected, it*
> *could harm our ability to compete and generate income.*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

DOCS\276248v1

To establish and protect our proprietary rights, we rely on a combination of trademark, copyright and trade secret laws, and contractual restrictions, such as confidentiality agreements and licenses. Our ability to compete and grow our business could suffer if these rights are not adequately protected. We seek to protect our source code for our software, documentation and other written materials under trade secret and copyright laws. We license our software pursuant to agreements, which impose certain restrictions on the licensee's ability to utilize the software. We also seek to avoid disclosure of our intellectual property by requiring employees and consultants with access to our proprietary information to execute confidentiality agreements.

\*\*\*

**_We may face intellectual property infringement or other claims against us or our customers that could be costly to defend and result in our loss of significant rights._**

Many of our contracts contain provisions in which we agree to indemnify our customers from third-party intellectual property infringement claims. Other parties may assert intellectual property infringement claims against us or our customers, and our products may infringe the intellectual property rights of third parties. We have also acquired or may hereafter acquire software as a result of our past or future acquisitions, and we may be subject to claims that such software infringes the intellectual property rights of third parties. If we become involved in litigation, we could lose our proprietary rights and incur substantial unexpected operating costs. Intellectual property litigation is expensive and time-consuming and could divert management's attention from our business. If there is a successful claim of infringement, we may be required to develop non-infringing technology or enter into royalty or license agreements, which may not be available on acceptable terms, if at all.

Our failure to develop non-infringing technologies or license the proprietary rights on a timely basis would harm our business. Our products may infringe third-party patents that may relate to our products. Also, we may be unaware of filed patent applications that relate to our software products. We believe the patent portfolios of our competitors are far larger than ours, and this may increase the risk that they may sue us for patent infringement and may limit our ability to counterclaim for patent infringement or settle through patent cross-licenses.

Emphasis in original.

34.     The annual report contained certifications, filed pursuant to Section 302 of the Sarbanes Oxley Act of 2002, signed by defendants Madhavan and Walker stating, in relevant part, that:

Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report.

35.     Defendants' representations in ¶¶ 32-34 were materially false and misleading when made because they failed to disclose the following facts:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 10 -

1            (a)      Inventions claimed by Magma in patents 446 and 438 were conceived by

2    Lukas Van Ginneken while he was employed by Synopsis;

3            (b)      That, because of the foregoing, Magma's patents 446 and 438 were under a

4    cloud such that Magma's use of the technology ran the serious, but undisclosed, risk of infringing

5    Synopsis' intellectual property rights;

6            (c)      That Magma's incorporation of the technology encompassed by patents 446

7    and 438, which was material to its business, could be halted, thereby jeopardizing the Company's

8    business;

9            (d)      That Magma could be subject to a material monetary judgment in an

10   infringement action brought by Synopsis; and

11           (e)      That the certifications signed by defendants Madhavan and Walker, included

12   in the Company's annual report were false because the annual report failed to disclose the above

13   information, *i.e.*, the Form 10-K was materially false and misleading because it failed to disclose that

14   technology incorporated in the Company's products was developed by the Company's Chief

15   Scientist while he was employed by another company, thereby jeopardizing Magma's business and

16   subjecting Magma to potentially ruinous patent infringement litigation.

17       36.     On September 17, 2004, Synopsis issued a press release announcing the filing of its

18   infringement action against Magma.

19       37.     Almost immediately following Synopsis' announcement, defendants issued a press

20   release strongly denouncing the allegations in the complaint. Defendant Madhavan characterized the

21   claims as "completely baseless," stating that "The U.S. Patent office granted Magma patents for

22   technology that our engineers have spent years developing at Magma." In relevant part, defendants

23   stated as follows:

24         SANTA CLARA, Calif., September 17, 2004 -- Magma® Design Automation Inc.
           (Nasdaq: LAVA) today announced that a lawsuit and accompanying public

25         statements by Synopsys (Nasdaq: SNPS) alleging that Magma has violated
           Synopsys' patent rights are without merit. Magma also affirmed that its intellectual

26         property rights are protected in several patents issued to Magma by the United States
           Patent & Trademark Office. Magma further affirmed that it will not only vigorously

27         defend itself in this matter but will also take the offensive and fully enforce its patent
           and other rights against Synopsys.

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

DOCS\276248v1

"The actions and statements by Synopsys today are completely baseless," said Rajeev Madhavan, chairman and chief executive officer of Magma. "The U.S. Patent office granted Magma patents for technology that our engineers have spent years developing at Magma. For Synopsys to assert that these rights don't belong to us is absurd. We can't help but notice the timing of these actions, given Synopsys' recent statement that Magma has increased market share." During Synopsys' quarterly earnings call on Aug. 18, Synopsys CEO Aart de Geus, in response to a financial analyst's questions about the competition Synopsys faces from other EDA (electronic design automation) companies, acknowledged, "I think Magma has gained some market share."

In July, Magma expressed concern to Synopsys that Synopsys had implemented a new "gain-based delay model" in an enhanced version of its Design Compiler product. The specific concern was that an optimization technique in Synopsys' software may "read on" (be covered by) one or more of Magma's patents, specifically U.S. patents No. 6,253,361, No. 6,453,446 and No. 6,725,438. In a July 1 letter, Magma requested that Synopsys advise Magma as to whether one or more of the patents were applicable to Synopsys' gain-based delay model or any other Synopsys design solution. No response was received from Synopsys.

"Magma notified Synopsys that public statements indicated that Synopsys products may infringe on our patent rights," Madhavan said. "We sought to open a dialogue with Synopsys on the matter but never received any response before their actions and statements today. Apparently Synopsys decided that its best defense would be this meritless claim."

"It is Magma that is the potentially injured party here - we long ago received the patents in question," said Greg Walker, Magma chief financial officer. "Magma has world-class engineers who were successful in developing exceptional technology, and for Synopsys to now attempt to claim it as its own is both insulting to them and indicative of a time that I thought we in EDA had put behind us. Our industry has seen more than its share of litigation in recent years, and Magma certainly would have preferred to avoid it in this matter."

38.    Defendants' unequivocal and aggressive denunciation of the infringement suit had the intended effect of preventing a drop in Magma's stock price.

39.    Defendants' representations in ¶ 37 were materially false and misleading when made because, in fact, the allegations in the Synopsis action were not "completely baseless." As defendants knew, Lukas van Ginneken developed certain inventions encompassed by patents 446 and 438 while employed by Synopsis, such that the statement that "[t]he U.S. Patent office granted Magma patents for technology that our engineers have spent years developing at Magma," along with the other statements relating to the action's supposed lack of merit, was materially false and misleading and deceived the market as to the true risks posed by the action.

**Fiscal 2005 Statements**

40.     On October 28, 2004, Magma issued a press release announcing results for its second fiscal quarter of 2005, ended September 30, 2004. Revenue was reportedly up 43% year-over-year while pro forma net income also rose:

> Magma reported record revenue of $36.9 million for the quarter, compared to $25.8 million for the quarter ended Sept. 30, 2003, an increase of 43 percent.
>
> Magma also reported pro forma net income of $7.7 million, or $0.18 per share (diluted), for the second quarter of fiscal 2005, compared to pro forma net income of $6.0 million, or $0.15 per share (diluted), for the second quarter of fiscal 2004. In accordance with generally accepted accounting principles (GAAP), Magma reported net income for the quarter of $0.3 million, or $0.01 per share (diluted), compared to net income of $3.4 million, or $0.09 per share (diluted), for the quarter ended Sept. 30, 2003. Pro forma net income for the quarter excludes amortization of developed technology, miscellaneous restructuring and marketing expenses, amortization of intangibles, amortization of deferred stock compensation, and tax effects of pro forma adjustments.
>
> For the six-month period ended Sept. 30, 2004, Magma reported revenue of $73.0 million, compared to $48.6 million for the six-month period ended Sept. 30, 2003, an increase of 50 percent. Magma reported pro forma net income of $15.3 million, or $0.36 per share (diluted), for the six-month period ended Sept. 30, 2004. This compares to pro forma net income of $10.9 million, or $0.28 per share (diluted), for the six-month period ended Sept. 30, 2003.
>
> Pro forma net income for the six-month period reflects the adjustments referred to above, and eliminates the effects of a loss on equity investments and in-process research and development expenses. In accordance with GAAP, Magma reported net loss attributed to common shareholders for the recently completed six-month period of $2.2 million, or ($0.07) per share (basic), compared to net income attributed to common shareholders of $3.5 million, or $0.09 per share (diluted), for the six-month period ended Sept. 30, 2003.

Commenting on the results, defendant Madhavan stressed the strong revenue growth and that new products would be introduced over the next several quarters:

> "Our second quarter continued Magma's growth in revenue, which has increased for eight consecutive quarters," said Rajeev Madhavan, chairman and CEO of Magma. "But as we said during our conference call to discuss our revised outlook, we are disappointed in the quarter from the perspective of new orders. We intend to resume our previous level of business success, and over the next several quarters expect to introduce new products, several of which represent the fruition of our recent acquisitions. Some will offer improved capabilities where our technology is already well established, and some will enable us to enter new market segments where we think existing solutions are inadequate. We expect these new offerings to further differentiate Magma from our competitors.

41.     On January 27, 2005, Magma issued a press release reporting "Record Revenue and EPS for Third Quarter" fiscal quarter of 2005, stating as follows in relevant part:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 13 -

DOCS\276248v1

Magma reported record revenue of $37.3 million for the quarter, compared to $31.1 million for the quarter ended Dec. 31, 2003, an increase of 20 percent.

In accordance with generally accepted accounting principles (GAAP), Magma reported a net loss for the quarter of $(0.7) million, or $(0.02) per share (basic and diluted), compared to net income of $3.8 million, or $0.09 per share (diluted), for the quarter ended Dec. 31, 2003. Magma also reported record pro forma net income of $8.4 million and record pro forma earnings per share (EPS) of $0.20 (diluted) for the third quarter of fiscal 2005, compared to pro forma net income of $6.9 million and pro forma EPS of $0.16 (diluted) for the third quarter of fiscal 2004, an increase of 22 percent. Pro forma net income excludes amortization of developed technology, miscellaneous restructuring and marketing expenses, amortization of intangibles, amortization of deferred stock compensation, impairment of investment, in-process research and development charges and tax effects of pro forma adjustments.

For the nine-month period ended Dec. 31, 2004, Magma reported revenue of $110.3 million, compared to $79.7 million for the nine-month period ended Dec. 31, 2003, an increase of 38 percent. In accordance with GAAP, Magma reported net loss for the recently completed nine-month period of $(3.0) million, or $(0.09) per share (basic and diluted), compared to net income of $7.2 million, or $0.18 per share (diluted), for the nine-month period ended Dec. 31, 2003. Magma reported pro forma net income of $23.7 million, or $0.56 per share (diluted), for the nine-month period ended Dec. 31, 2004. This compares to pro forma net income of $18.1 million, or $0.44 per share (diluted), for the nine-month period ended Dec. 31, 2003, an increase of 31 percent.

Defendant Madhavan was quoted as follows in the release:

"Our third quarter continued Magma's growth in revenue for the ninth consecutive quarter," said Rajeev Madhavan, chairman and CEO of Magma. "During the next several quarters we expect to announce new products that will further enhance our leadership over our competitors and enable us to continue that growth."

42.     On April 7, 2005, Magma issued a press release announcing preliminary fourth fiscal quarter of 2005 results and revising its outlook for 2006, stating as follows:

Magma estimates total revenue for the fourth quarter is in the range of $34.5 million to $35.5 million, about 10 percent below the target revenue range the company announced during its Jan. 27 earnings call. The fourth-quarter 2005 revenue shortfall resulted from delays in the processing of a number of completed sales orders; these delays prevented the orders from being recognizable in the fourth quarter in accordance with Magma's revenue recognition policies. These orders were recorded as bookings in the fourth quarter and will be recognized as revenue during Magma's fiscal 2006 first quarter, ending July 3, 2005. With this expected fourth-quarter revenue, total revenue for fiscal 2005 will increase 28 percent over fiscal 2004.

Magma estimates that pro-forma EPS for the fourth quarter is in the range of $0.06 to $0.10, below the target range of $0.18 to $0.20 announced during the Jan. 27 earnings call. Magma estimates that loss per share calculated on a basis consistent with accounting principles generally accepted in the United States (GAAP) is in the range of $(0.14) to $(0.10), below the previously expected range of $0.00 to $0.04 earnings per share. A table providing a quantitative reconciliation of our preliminary pro-forma results to our preliminary GAAP results is attached to this press release.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 14 -

In addition, Magma lowered its expectations for 2006, stating as follows in relevant part:

For fiscal year 2006 Magma expects total orders booked to increase between 15 percent and 20 percent over orders booked in fiscal 2005. This is unchanged from orders guidance provided during Magma's Jan. 27 earnings call. "Although we are making no change to the level of new orders we expect to book in fiscal 2006, we are reducing the revenue we expect those orders to contribute in the quarter they are booked -- what is typically referred to as 'turns' revenue," Walker said. "The result of this change is that by mid-year fiscal 2006, the company expects 90 percent of revenue within the quarter to come from backlog and 10 percent from turns revenue. We believe this is consistent with current trends within the industry, which we consider a healthy practice.

"This revised revenue assumption will result in a revision to fiscal 2006 guidance that more realistically addresses the risks in our revenue model -- the resulting changes are not a reassessment of our market prospects. We are reducing our pro-forma operating margin and pro-forma EPS targets to incorporate, among other factors, approximately $0.25 per share of expenses principally associated with litigation and Sarbanes-Oxley compliance anticipated in fiscal 2006," Walker said.

43.     Defendants' representations in ¶¶ 40-42 were materially false and misleading when made because they failed to disclose the following facts:

(a)     Inventions claimed by Magma in patents 446 and 438 were conceived by Lukas Van Ginneken while he was employed by Synopsis;

(b)     That, because of the foregoing, Magma's patents 446 and 438 were under a cloud such that Magma's use of the technology ran the serious, but undisclosed, risk of infringing Synopsis' intellectual property rights;

(c)     That Magma's incorporation of the technology encompassed by patents 446 and 438, which was material to its business, could be halted, thereby jeopardizing the Company's business;

(d)     That Magma could be subject to a material monetary judgment in an infringement action brought by Synopsis.

### THE TRUTH EMERGES

44.     On April 13, 2005, Needham & Co. issued a research note revealing that Lukas van Ginneken had filed a declaration in the Synopsis infringement action stating, among other things, that "the 446 Patent discloses inventions which I conceived while employed at Synopsis". The declaration includes an identical statement regarding the 438 patent. The declaration further stated that van Ginneken had reason to believe that his supervisor at Magma, and likely others, knew that

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 15 -

the fixed timing inventions (covered by the 446 and 438 patents) were covered by his agreement with Synopsis:

> "I have reason to believe that, at a minimum, my supervisor at Magma knew that the fixed timing inventions Magma was intending to use were conceived by myself at Synopsis, and were encompassed by my Agreement with Synopsis"[1]

The research report further noted that the declaration "appear[s] to meaningfully strengthen Synopsys' claim to being the rightful owners of Magma's 446 and 438 patents."

45.    News of this was circulated to the market at large on April 13, 2005, after the story was picked up and disseminated by numerous media outlets.

46.    This disclosure caused Magma's stock to plummet, thereby injuring plaintiff and members of the class. The price of Magma's common stock plummeted by 40.7% in one day, from $9.42 per share on April 12, 2005 to $5.58 per share on April 13, 2005, on unusually high trading volume exceeding 14.4 million shares.

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

47.    At all relevant times, the market for Magma's securities was an efficient market for the following reasons, among others:

(a)    Magma's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Magma filed periodic public reports with the SEC and the NASDAQ;

(c)    Magma regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

---

[1] This statement was not quoted in the Needham research note.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

1        (d)     Magma was followed by several securities analysts employed by major

2 brokerage firms who wrote reports, which were distributed to the sales force and certain customers

3 of their respective brokerage firms. Each of these reports was publicly available and entered the

4 public marketplace.

5        48.    As a result of the foregoing, the market for Magma's securities promptly digested

6 current information regarding Magma from all publicly available sources and reflected such

7 information in Magma's stock price. Under these circumstances, all purchasers of Magma's

8 securities during the Class Period suffered similar injury through their purchase of Magma's

9 securities at artificially inflated prices and a presumption of reliance applies.

10                               **ADDITIONAL SCIENTER ALLEGATIONS**

11       49.    As alleged herein, defendants acted with scienter in that defendants knew that the

12 public documents and statements issued or disseminated in the name of the Company were

13 materially false and misleading; knew that such statements or documents would be issued or

14 disseminated to the investing public; and knowingly and substantially participated or acquiesced in

15 the issuance or dissemination of such statements or documents as primary violations of the federal

16 securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of

17 information reflecting the true facts regarding Magma, their control over, and/or receipt and/or

18 modification of Magma's allegedly materially misleading misstatements and/or their associations

19 with the Company which made them privy to confidential proprietary information concerning

20 Magma, participated in the fraudulent scheme alleged herein.

21       50.    Defendants were motivated to engage in the wrongdoing alleged herein in order to

22 profit by selling their personally held Magma common stock at artificially inflated prices. As is

23 evidenced by the 40% drop that resulted when the truth was disclosed, the price of Magma common

24 stock would not have traded as high if defendants' had been truthful. A chart detailing each

25 transaction is attached hereto as Exhibit A.

26                                      **LOSS CAUSATION**

27       51.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the

28 damages suffered by plaintiff and the Class.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 17 -

52.     During the Class Period, plaintiff and the Class purchased securities of the Company at artificially inflated prices and were damaged thereby. The price of the Company's common stock declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## NO SAFE HARBOR

53.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Magma who knew that those statements were false when made.

### FIRST CLAIM
### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     During the Class Period, Magma and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public, including plaintiff and other Class members, as alleged herein; (b) artificially inflate and maintain the market price of Magma's securities; and (c) cause plaintiff and other members of the Class to purchase Magma's securities at artificially inflated

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 18 -

1   prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of

2   them, took the actions set forth herein.

3        56.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue

4   statements of material fact and/or omitted to state material facts necessary to make the statements not

5   misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud

6   and deceit upon the purchasers of the Company's securities in an effort to maintain artificially-high

7   market prices for Magma's securities in violation of Section 10(b) of the Exchange Act and Rule

8   10b-5.  All defendants are sued either as primary participants in the wrongful and illegal conduct

9   charged herein or as controlling persons as alleged below.

10       57.    In addition to the duties of full disclosure imposed on defendants as a result of their

11  making of affirmative statements and reports, or participation in the making of affirmative

12  statements and reports to the investing public, defendants had a duty to promptly disseminate truthful

13  information that would be material to investors in compliance with the integrated disclosure

14  provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. Sections 210.01 *et seq.*) and

15  Regulation S-K (17 C.F.R. Sections 229.10 *et seq.*) and other SEC regulations, including accurate

16  and truthful information with respect to the Company's operations, financial condition and earnings

17  so that the market price of the Company's securities would be based on truthful, complete and

18  accurate information.

19       58.    Magma and the Individual Defendants, individually and in concert, directly and

20  indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged

21  and participated in a continuous course of conduct to conceal adverse material information about the

22  business, operations and future prospects of Magma as specified herein.

23       59.    These defendants employed devices, schemes and artifices to defraud, while in

24  possession of material adverse non-public information and engaged in acts, practices, and a course of

25  conduct as alleged herein in an effort to assure investors of Magma's value and performance and

26  continued substantial growth, which included the making of, or the participation in the making of,

27  untrue statements of material facts and omitting to state material facts necessary in order to make the

28  statements made about Magma and its business operations and future prospects in the light of the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

- 19 -

DOCS\276248v1

1  circumstances under which they were made, not misleading, as set forth more particularly herein,

2  and engaged in transactions, practices and a course of business which operated as a fraud and deceit

3  upon the purchasers of Magma's securities during the Class Period.

4        60.    The Individual Defendants' primary liability, and controlling person liability, arises

5  from the following facts: (a) the Individual Defendants were high-level executives and/or directors at

6  the Company during the Class Period; (b) the Individual Defendants were privy to and participated

7  in the creation, development and reporting of the Company's internal budgets, plans, projections

8  and/or reports; and (c) the Individual Defendants were aware of the Company's dissemination of

9  information to the investing public which they knew or recklessly disregarded was materially false

10  and misleading.

11        61.    The defendants had actual knowledge of the misrepresentations and omissions of

12  material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

13  ascertain and to disclose such facts, even though such facts were available to them.  Such

14  defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for

15  the purpose and effect of concealing Magma's operating condition and future business prospects

16  from the investing public and supporting the artificially inflated price of its securities.  As

17  demonstrated by defendants' overstatements and misstatements of the Company's business,

18  operations and earnings throughout the Class Period, defendants, if they did not have actual

19  knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such

20  knowledge by deliberately refraining from taking those steps necessary to discover whether those

21  statements were false or misleading.

22        62.    As a result of the dissemination of the materially false and misleading information

23  and failure to disclose material facts, as set forth above, the market price of Magma's securities was

24  artificially-inflated during the Class Period.  In ignorance of the fact that market prices of Magma's

25  publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and

26  misleading statements made by defendants, or upon the integrity of the market in which the

27  securities trade, and/or on the absence of material adverse information that was known to or

28  recklessly disregarded by defendants but not disclosed in public statements by defendants during the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

1 Class Period, plaintiff and the other members of the Class acquired Magma securities during the

2 Class Period at artificially-high prices and were damaged thereby.

3      63.    At the time of said misrepresentations and omissions, plaintiff and other members of

4 the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other

5 members of the Class and the marketplace known of the true financial condition and business

6 prospects of Magma, which were not disclosed by defendants, plaintiff and other members of the

7 Class would not have purchased or otherwise acquired their Magma securities, or, if they had

8 acquired such securities during the Class Period, they would not have done so at the artificially-

9 inflated prices which they paid.

10      64.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange

11 Act, and Rule 10b-5 promulgated thereunder.

12      65.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and the

13 other members of the Class suffered damages in connection with their respective purchases and sales

14 of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation Of Section 20(a) Of**
**The Exchange Act Against the Individual Defendants**

17      66.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

18 forth herein.

19      67.    The Individual Defendants acted as controlling persons of Magma within the meaning

20 of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and

21 their ownership and contractual rights, participation in and/or awareness of the Company's

22 operations and/or intimate knowledge of the statements filed by the Company with the SEC and

23 disseminated to the investing public, the Individual Defendants had the power to influence and

24 control and did influence and control, directly or indirectly, the decision-making of the Company,

25 including the content and dissemination of the various statements which plaintiff contends are false

26 and misleading.  The Individual Defendants were provided with or had unlimited access to copies of

27 the Company's reports, press releases, public filings and other statements alleged by plaintiff to be

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

DOCS\276248v1

- 21 -

1  misleading prior to and/or shortly after these statements were issued and had the ability to prevent

2  the issuance of the statements or cause the statements to be corrected.

3       68.     In particular, the Individual Defendants had direct and supervisory involvement in the

4  day-to-day operations of the Company and, therefore, are presumed to have had the power to control

5  or influence the particular transactions giving rise to the securities violations as alleged herein, and

6  exercised the same.

7       69.     As set forth above, Magma and the Individual Defendants each violated Section 10(b)

8  and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions

9  each as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the

10  Exchange Act. As a direct and proximate result of Magma's and the Individual Defendants'

11  wrongful conduct, plaintiff and other members of the Class suffered damages in connection with

12  their purchases of the Company's securities during the Class Period.

13  **PRAYER FOR RELIEF**

14  WHEREFORE, Plaintiff prays for relief and judgment, as follows:

15       A.     Determining that this action is a proper class action, designating plaintiff as lead

16  plaintiff and certifying plaintiff as class representatives under Rule 23 of the Federal Rules of Civil

17  Procedure and plaintiff's counsel as lead counsel;

18       B.     Awarding compensatory damages in favor of plaintiff and the other Class members

19  against all defendants, jointly and severally, for all damages sustained as a result of defendants'

20  wrongdoing, in an amount to be proven at trial, including interest thereon;

21       C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this

22  action, including counsel fees and expert fees; and

23       D.     Such other and further relief as the Court may deem just and proper.

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

DOCS\276248v1

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: June 13, 2005

MILBERG WEISS BERSHAD
   & SCHULMAN LLP
JEFF S. WESTERMAN
ELIZABETH P. LIN

_____
ELIZABETH P. LIN

355 South Grand Avenue, Suite 4170
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975

--and—

STEVEN G. SCHULMAN
PETER E. SEIDMAN
ANDREI V. RADO
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

MURRAY, FRANK & SAILER LLP
Eric J. Belfi
275 Madison Avenue
New York, New York 10016
Telephone: (212) 682-1818
Fax: (212) 682-1892

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile:   (310) 201-9160

**Attorneys for Plaintiff**

# EXHIBIT A

**Venktesh Shukla: Senior VP**

| Transaction Date | Shares | Price | $ Value |
|---|---|---|---|
| | | | |
| 8/21/2003 | 33,333 | 21.14 | 704,536.29 |
| 8/21/2003 | 31,786 | 21.14 | 671,838.43 |
| 8/21/2003 | 18,214 | 21.14 | 384,976.57 |
| 8/21/2003 | 4,167 | 21.14 | 88,074.96 |
| 8/21/2003 | 4,166 | 21.14 | 88,053.83 |
| 11/4/2003 | 50,000 | 24.28 | 1,213,865.00 |
| 11/4/2003 | 35,250 | 24.28 | 855,774.83 |
| 11/4/2003 | 8,500 | 24.28 | 206,357.05 |
| 11/4/2003 | 8,333 | 24.28 | 202,302.74 |
| 11/4/2003 | 3,125 | 24.28 | 75,866.56 |
| 2/27/2004 | 7,250 | 23.81 | 172,647.88 |
| 2/27/2004 | 4,167 | 23.81 | 99,230.85 |
| 2/27/2004 | 3,125 | 23.81 | 74,417.19 |
| 2/27/2004 | 2,124 | 23.81 | 50,579.87 |
| 5/14/2004 | 2,100 | 18.61 | 39,081.00 |
| 5/14/2004 | 1,904 | 18.27 | 34,786.08 |
| 5/14/2004 | 1,332 | 18.71 | 24,921.72 |
| 5/14/2004 | 1,000 | 18.54 | 18,540.00 |
| 5/14/2004 | 700 | 18.71 | 13,097.00 |
| 5/14/2004 | 600 | 18.55 | 11,130.00 |
| 5/14/2004 | 600 | 18.56 | 11,136.00 |
| 5/14/2004 | 500 | 18.65 | 9,325.00 |
| 5/14/2004 | 500 | 18.69 | 9,345.00 |
| 5/14/2004 | 400 | 18.88 | 7,552.00 |
| 5/14/2004 | 396 | 18.66 | 7,389.36 |
| 5/14/2004 | 300 | 18.29 | 5,487.00 |
| 5/14/2004 | 300 | 18.31 | 5,493.00 |
| 5/14/2004 | 300 | 18.35 | 5,505.00 |
| 5/14/2004 | 300 | 18.57 | 5,571.00 |
| 5/14/2004 | 200 | 18.51 | 3,702.00 |
| 5/14/2004 | 200 | 18.53 | 3,706.00 |
| 5/14/2004 | 200 | 18.62 | 3,724.00 |
| 5/14/2004 | 200 | 18.70 | 3,740.00 |
| 5/14/2004 | 200 | 18.76 | 3,752.00 |
| 5/14/2004 | 200 | 18.81 | 3,762.00 |
| 5/14/2004 | 200 | 18.86 | 3,772.00 |
| 5/14/2004 | 200 | 18.90 | 3,780.00 |
| 5/14/2004 | 200 | 19.00 | 3,800.00 |
| 5/14/2004 | 200 | 18.66 | 3,732.00 |
| 5/14/2004 | 200 | 18.67 | 3,734.00 |
| 5/14/2004 | 100 | 18.34 | 1,834.00 |
| 5/14/2004 | 100 | 18.50 | 1,850.00 |
| 5/14/2004 | 100 | 18.58 | 1,858.00 |
| 5/14/2004 | 100 | 18.64 | 1,864.00 |

| | 5/14/2004 | 100 | 18.69 | 1,869.00 |
|---|---|---|---|---|
| | 5/14/2004 | 100 | 18.80 | 1,880.00 |
| | 5/14/2004 | 100 | 18.83 | 1,883.00 |
| | 5/14/2004 | 100 | 18.84 | 1,884.00 |
| | 5/14/2004 | 100 | 18.85 | 1,885.00 |
| | 5/14/2004 | 100 | 18.91 | 1,891.00 |
| | 5/14/2004 | 100 | 19.05 | 1,905.00 |
| | 5/14/2004 | 100 | 18.61 | 1,861.00 |
| | 5/14/2004 | 100 | 18.63 | 1,863.00 |
| | 5/14/2004 | 100 | 18.68 | 1,868.00 |
| | 5/14/2004 | 98 | 18.68 | 1,830.64 |
| | 5/14/2004 | 73 | 18.30 | 1,335.90 |
| | 5/14/2004 | 49 | 18.64 | 913.36 |
| | 5/14/2004 | 27 | 18.30 | 494.10 |
| | 5/14/2004 | 2 | 18.68 | 37.36 |
| | | | | |
| | | 228,621 | | 5,168,891.57 |

**Saiyed Raza: former Director**

| Transaction Date | Shares | Price | $ Value |
|---|---|---|---|
| | | | |
| 11/21/2002 | 132,075 | 10.88 | 1,436,368.46 |
| 11/21/2002 | 42,857 | 10.88 | 466,087.02 |
| 11/21/2002 | 25,068 | 10.88 | 272,624.53 |
| 11/21/2002 | 25,000 | 11.20 | 280,000.00 |
| 11/21/2002 | 15,000 | 11.20 | 168,000.00 |
| 11/21/2002 | 12,500 | 11.56 | 144,500.00 |
| 11/21/2002 | 10,000 | 11.25 | 112,500.00 |
| 11/21/2002 | 10,000 | 11.50 | 115,000.00 |
| 11/21/2002 | 5,000 | 11.25 | 56,250.00 |
| 11/21/2002 | 5,000 | 11.34 | 56,700.00 |
| 11/21/2002 | 5,000 | 11.44 | 57,200.00 |
| 11/21/2002 | 5,000 | 11.62 | 58,100.00 |
| 11/21/2002 | 2,500 | 11.53 | 28,825.00 |
| 11/21/2002 | 2,500 | 11.60 | 29,000.00 |
| 11/21/2002 | 2,350 | 11.57 | 27,189.50 |
| 11/21/2002 | 150 | 11.57 | 1,735.50 |
| 11/22/2002 | 30,000 | 11.17 | 335,100.00 |
| 11/22/2002 | 20,000 | 11.05 | 221,000.00 |
| 11/22/2002 | 15,000 | 11.07 | 166,050.00 |
| 11/22/2002 | 10,000 | 11.00 | 110,000.00 |
| 11/22/2002 | 10,000 | 11.02 | 110,200.00 |
| 11/22/2002 | 10,000 | 11.10 | 111,000.00 |
| 11/22/2002 | 5,000 | 11.20 | 56,000.00 |
| 11/22/2002 | 5,000 | 11.25 | 56,250.00 |
| 11/26/2002 | 6,563 | 11.40 | 74,818.20 |
| 10/30/2003 | 100,000 | 22.88 | 2,288,120.00 |
| 10/31/2003 | 96,572 | 24.12 | 2,329,509.78 |
| 10/31/2003 | 51,428 | 24.12 | 1,240,546.22 |
| 10/31/2003 | 6,819 | 24.29 | 165,652.60 |
| | | | |
| | **666,382** | | **10,574,326.81** |