IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYNOPSYS, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 05-701 (GMS) |
| MAGMA DESIGN AUTOMATION, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) | |

PLAINTIFF SYNOPSYS, INC.'S REPLY
IN SUPPORT OF ITS RENEWED MOTION TO BIFURCATE
TRIAL OF THE INFRINGEMENT AND ANTITRUST CLAIMS
AND TO STAY DISCOVERY OF ANTITRUST CLAIMS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Plaintiff Synopsys, Inc.*

OF COUNSEL:
James J. Elacqua
Chris Scott Graham
Valerie M. Wagner
DECHERT LLP
1117 California Avenue
Palo Alto, CA 94304
(650) 813-4848

November 3, 2006

i.

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. MAGMA'S ANTITRUST COUNTERCLAIMS SHOULD NOT DRIVE THE SEQUENCING OF THIS LITIGATION ..... 2

    A. Magma is Not Suffering Any Harm ..... 2

    B. Magma's Allegations of Wrongdoing Lack Any Substance ..... 3

    C. Bifurcation Would Not Prejudice Magma's Counterclaims, But Would Risk Substantial Prejudice to Synopsys ..... 5

II. WITH THE CHANGED CLAIMS, BIFURCATION COULD PERMIT A SUBSTANTIAL REDUCTION IN TRIAL TIME ..... 6

    A. Magma Does Not Acknowledge, Much Less Address, the Changes in the Two Sets of Claims ..... 6

    B. If Magma is Found To Have Infringed the '508 Patent, the Antitrust Trial Will be Narrowed and May be Avoided Altogether ..... 9

CONCLUSION ..... 10

TABLE OF CITATIONS

Page(s)

Cases

*Applera Corp. v. MJ Research Inc.*,
 389 F. Supp. 2d 344 (D. Conn. 2005)   5

*Barr Labs., Inc. v. Abbott Labs.*,
 978 F.2d 98 (3d Cir. 1992)   5

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
 2006 WL 13058 (N.D. Cal.)   9

*Dentsply Int'l, Inc. v. New Tech. Co.*,
 1996 WL 756766 (D. Del. 1996)   8

*Donnelly Corp. v. Reitter & Schefenacker USA Ltd.*,
 2002 WL 31418042 (W.D. Mich. 2002)   9

*Ecrix Corp. v. Exabyte Corp.*,
 191 F.R.D. 611 (D. Colo. 2000)   6, 9, 10

*Intel Corp. v. Via Technologies, Inc.*,
 2001 WL 777085 (N.D. Cal. 2001)   9

*Lucent Techs., Inc. v. Extreme Networks*,
 231 F.R.D. 453 (D. Del. 2005)   7

*Nobelpharma AB v. Implant Innovations, Inc.*,
 141 F.3d 1059 (Fed. Cir. 1998)   3, 9

*Professional Real Estate Investors, Inc. v.*
 *Columbia Pictures Indus., Inc.*,
 508 U.S. 49 (1993)   9

*Teva Pharm. Co., Inc. v. Knoll Pharm. Co., Inc.*,
 2001 WL 1795592 (N.D. Ill.)   9

Statutes and Other Authorities

Fed. R. Civ. P. 42(b)   6

INTRODUCTION

The Opposition to Synopsys, Inc.'s ("Synopsys") Renewed Motion to Bifurcate by Magma Design Automation ("Magma") makes Magma's litigation strategy abundantly clear: distract attention from the real issues in the patent case – infringement and validity of the remaining patents – with dramatic but ultimately empty accusations of antitrust wrongdoing as to patents no longer at issue in the patent suit. If this Court does not bifurcate the antitrust claims for trial, Magma will use its antitrust allegations, however specious, to obscure determination of the unrelated patent issues.

In its Opposition, Magma strives to create a false sense of urgency about its antitrust claims. As recently as August, however, Magma was telling analysts and investors that the patent litigation with Synopsys, the principal basis of its antitrust claims, has had "absolutely no impact" on its business. Indeed, as explained below, there is nothing to Magma's antitrust claims – no harm to competition, no injury to Magma, and no actionable misconduct. Magma is hoping that inflammatory antitrust rhetoric – even when wholly unsupported – will distract attention from Synopsys' infringement claims and the weakness of Magma's other patent-related counterclaims.

Bifurcation will avoid this distortion of the legal process. In addition, now that the patents involved in the antitrust and infringement claims are entirely different, bifurcation is an efficient and economical way to manage discovery and trial in these actions. In fact, bifurcation offers the possibility of substantially narrowing the scope of, and even avoiding the need for, the antitrust trial.

## ARGUMENT

I. **MAGMA'S ANTITRUST COUNTERCLAIMS SHOULD NOT DRIVE THE SEQUENCING OF THIS LITIGATION**

    A. <u>Magma is Not Suffering Any Harm</u>

Magma's argument that it needs an immediate remedy for supposedly extensive antitrust harm – the premise for much of its Opposition – is nothing short of specious. Contrary to the representations in its Opposition, Magma's executives have repeatedly and unequivocally emphasized to its shareholders and stock analysts that: (a) Magma continues to compete *vigorously and successfully* in the marketplace; and (b) its ability to do so is undiminished because the Synopsys litigation has not affected its customers' buying decisions. For example, Roy Jewell, Magma's President and COO, explained in Magma's August 2006, conference call with stock analysts that the Synopsys patent litigation was "having *absolutely no impact* on [Magma's] business," citing a recent market report that **"none"** of about thirty Magma customers surveyed had altered their purchasing choices as a result of the litigation. Exh. A at SYN1723459 (Transcript of Magma's August 3, 2006, Earnings Conference Call). Similarly, in the same conference call, Magma's Chairman and CEO, Rajeev Madhavan, emphasized that Magma's success continues unabated, its market share growing at the same strong historical pace as prior to the commencement of Synopsys' patent litigation:

> We think we will take another 10% [in market share] every other year. Every 2 years we've been taking 10%. . . . We continue to see increase in market share. . . . Every 2 years we do 10%. And that we think will continue.

3.

*Id.* at SYN1723459-3460. In short, Magma's unsupported claims of harm in its Opposition fly in the face of claims of success by its most senior executives to stock analysts and its own shareholders. *See* Exh. B.

Not only has Magma suffered no harm to date, but any potential for future harm has been eliminated. Magma's antitrust claims are based principally on U.S. Patent No. 6,766,501 ("the '501 Patent") and U.S. Patent No. 6,434,733 ("the '733 Patent"), both of which Synopsys has now dedicated to the public. Thus, even had Magma suffered any antitrust injury from Synopsys' infringement claims regarding these patents – which Magma clearly has not – those claims are no longer in the case and so no more harm is possible.

      B.    Magma's Allegations of Wrongdoing Lack Any Substance

Magma's principal antitrust claim is that Synopsys fraudulently obtained the '501 and '733 Patents by intentionally failing to disclose to the Patent and Trademark Office ("PTO") two articles published by S. Barbagallo. D.I. 76, Magma's Second Amended Answer and Counterclaims ¶¶ 67-104 ("Counterclaims"); D.I. 130, Magma's Opp. at 5. To prevail on such a claim, Magma must show, among other things, that the patents would not have issued if the Barbagallo papers had been disclosed, and that Synopsys intentionally withheld reference to them. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1071 (Fed. Cir. 1998) ("fraud must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance, *i.e.*, that the patent would not have issued but for the misrepresentation or omission"). Synopsys, however, submitted the Barbagallo papers to the PTO during the re-examination proceedings that Synopsys initiated for the '501 and '733 Patents. After

4.

reviewing the Barbagallo papers, the PTO examiner concluded that the '501 Patent would have issued had these papers been considered with the initial application:

> The closest prior art, Barbagallo et al. ("Scan Insertion Criteria for Low Design Impact", Proc IEEE VLSI Test Symposium 1996) and Barbagallo et al. ("Layout-driven Scan Chain Partitioning and Reordering", IEEE European Test Workshop, 1996) disclose conventional scan chain reordering, either singularly or in combination, fail to anticipate or render the above features obvious.

Exh. C (Notice of Intent to Issue Ex Parte Reexamination Certificate at 4, Control No. 90/007,869 (faxed Oct. 18, 2006)).[1]  The Barbagallo references, therefore, cannot as a matter of law be material for antitrust purposes.

Magma's other non-patent counterclaims are also wilting on the vine. Magma alleges that Synopsys disparaged Magma to customers. D.I. 76. Counterclaims ¶¶ 115-16. In its Initial Disclosure, Magma listed, aside from its own executives, three anonymous customers whom it represented had knowledge about this claim. It has refused to disclose any particulars – where, when, by whom, or to whom the statements were allegedly made. Exh. D (Magma's Initial Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1) at 5, Nos. 46-52). The three anonymous customers mysteriously disappeared, however, from Magma's Supplemental Disclosure Statement, which identified only the Magma executives as having knowledge regarding the alleged disparagement. Exh. E,

---

[1] The PTO has since notified Synopsys that it will retract this notice because the '501 Patent has been dedicated to the public, but this does not change the examiner's original conclusion that the Barbagallo papers on which Magma bases its antitrust claims are not material to the patentability of the inventions in the '501 Patent. Because of the PTO's determination not to proceed with the re-examinations, there will be no parallel notice regarding the '733 Patent. The '733 Patent is, however, a continuation of the '501 Patent. The claims of the '733 Patent include the same limitations as those of the '501 Patent, plus additional limitations. Therefore, prior art that is immaterial to the patentability of the '501 Patent is also immaterial with respect to the '733 Patent.

5.

Magma's Supplemental Initial Disclosure Pursuant to Fed. R. Civ. P. 26(a)(1) at 6, Nos. 67-70).

Given the lack of substance in its current counterclaims, Magma candidly concedes that it is left with a hope that something more will turn up in discovery. D.I. 130, Magma's Opp. at 5. That hope, however, should not be the driver for how the trial of this matter is sequenced.[2]

### C. Bifurcation Would Not Prejudice Magma's Counterclaims, But Would Risk Substantial Prejudice to Synopsys

The bifurcation sought by Synopsys would not prejudice Magma's defense against Synopsys' infringement claims or Magma's litigation of its own patent-related counterclaims. Magma's antitrust allegations have nothing to do with the remaining patents giving rise to the parties' respective infringement claims. Moreover, bifurcation is merely a sequencing procedure and would not prevent Magma from introducing all relevant evidence at a trial on its antitrust counterclaims, if one proves necessary. *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 115 (3d Cir. 1992); *Applera Corp. v. MJ Research Inc.*, 389 F. Supp. 2d 344, 347 (D. Conn. 2005).

---

[2] Likewise, Magma's unspecified complaints about Synopsys' document production ignore its own refusal to produce even the most basic information in support of its antitrust and common-law counterclaims. For example, while Magma alleges that Synopsys' pursuit of this patent litigation has caused it harm, it has steadfastly refused to produce any documents regarding its discussions (either internally or with third-party customers) about the effects of this lawsuit on its business, or documents and/or information reflecting which if any customers or business opportunities it has lost as a result of Synopsys' alleged conduct. Magma has also failed to produce even the most basic information about the two relevant markets that Magma has alleged. Rather, Magma has characterized as "irrelevant" nearly every request for information asking for any information that supports its claims. *See* Exhs. F, G, and H.

On the other hand, Magma's brief illustrates exactly how a failure to bifurcate will prejudice Synopsys. Absent bifurcation, Magma's inflammatory accusations regarding its baseless antitrust claims will necessarily distract attention from Synopsys' claims that Magma infringed Synopsys' '508 Patent, about which Magma has made no antitrust or unfair competition claims.[3] The risk of such prejudice is an appropriate basis for bifurcation. Fed. R. Civ. P. 42(b) ("to avoid prejudice," the court may order a "separate trial"); *see Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611, 613 (D. Colo. 2000).

II. **WITH THE CHANGED CLAIMS, BIFURCATION COULD PERMIT A SUBSTANTIAL REDUCTION IN TRIAL TIME**

   A. Magma Does Not Acknowledge, Much Less Address, the Changes in the Two Sets of Claims

The nature of the infringement and antitrust claims in this case has changed substantially since Synopsys' prior motion for bifurcation. There is no longer any overlap in the patents that are the subject of infringement claims and the patents that are the subject of antitrust and unfair competition claims. This is why the instant motion is not, as Magma asserts, a motion for reconsideration of Synopsys' original motion.

---

[3] Magma's Opposition twice suggests that it has made antitrust and unfair competition claims respecting Synopsys''508 patent, but this is incorrect. D.I. 130, Magma's Opp. at 3 ("Synopsys' acts of unfair competition and tortuous interference . . . involved all three of the [Synopsys] patents), and at 12 (claiming there is substantial overlap between the surviving "infringement and validity issues" and the "antitrust and unfair competition issues"). The counterclaims contain no allegation of antitrust violations or unfair competition involving the '508 patent. *See* D.I. 76, Counterclaims ¶¶ 67-104, 114-16, 141-163.

D.I. 130, Magma's Opp. at 15.[4]  Magma's discussion of efficiency in the sequencing of this litigation is utterly irrelevant because it ignores this significant development.

Magma's antitrust-related counterclaims involve different patents than the parties' infringement claims (unlike before),[5] different technologies (unlike before), and different inventors (unlike before).  The earlier overlap with respect to these factual issues provided much of the basis for the court's initial decision.  *See* D.I. 75, May 25, 2006, Memorandum Order at 7.  The two sets of claims also involve different legal regimes and different elements of proof.  Market definition, market power, the nature of competition in the marketplace, Synopsys' intent, and antitrust harm will have no role in resolution of the infringement claims.  Patent validity, patent enforceability, and the comparison of technical similarities in each parties' products will have no role in determination of the antitrust claims.

Magma lists a number of issues that it claims would be relevant to both stages of a bifurcated proceeding, but its list actually demonstrates how cleanly the two parts of the case can be divided.  D.I. 130, Magma's Opp. at 12-13.  For example, Magma points first to intent and validity as common to both sets of claims.  Magma, however, has not alleged that Synopsys committed any fraud or inequitable conduct with respect to the '508 Patent, the only Synopsys patent at issue in the infringement case.  Thus,

---

[4]  Even if this were a motion for reconsideration, it would be permissible because it is based on "new evidence" of materially changed circumstances, and does not reprise arguments that the Court has already decided.  *Lucent Techs., Inc. v. Extreme Networks*, 231 F.R.D. 453, 455 (D. Del. 2005).

[5]  As noted above, n.3, although Magma states that it has made antitrust claims respecting the '508 patent, this is wrong.  Magma is trying to manufacture an overlap between the two sets of claims where there is none.

8.

Synopsys' intent will be relevant only in the antitrust proceeding relating to the '501 and '733 Patents, and not in the infringement action related to the '508 Patent. Similarly, although the validity of the '508 Patent will be resolved in the initial, infringement proceeding – and that resolution will determine the scope of any later antitrust proceeding – there is no longer an issue about the validity of the '501 and '733 Patents in either set of claims, since both have been dedicated to the public.

Second, Magma lists "general technology" as relevant to both the infringement and antitrust claims. This is true only if a wide variety of different "technology" issues are crudely grouped together. The infringement claims will require explanation and evidence regarding complex technical issues relating to the two parties' respective products. A subsequent antitrust proceeding, by contrast, would instead focus on different issues regarding competition among those products and others based on their functionality and features.

Third, Magma mentions competing products and Synopsys' market share as potentially common issues. These topics, however, have no relevance to the patent infringement claims.

Finally, Magma lists damages as involving some topics relevant to both sets of claims, but in doing so ignores the fact that the two proceedings would determine damages relating to different patents. Moreover, some possible overlap on evidence relating to damages does not outweigh the potential for significant other savings in judicial resources through bifurcation. *Dentsply Int'l, Inc. v. New Tech. Co.*, 1996 WL 756766 at *5 (D. Del. 1996).

> B.  If Magma is Found To Have Infringed the '508 Patent, the Antitrust Trial Will Be Narrowed And May Be Avoided Altogether

Magma misstates the potential impact of Synopsys' '508 Patent infringement claim on its antitrust claims. Magma cannot legally sell any products that infringe a valid Synopsys '508 Patent. If Synopsys' '508 Patent is found to be valid and infringed, few if any Magma products would be left in the antitrust case. Antitrust discovery and trial would be narrowed significantly, and they might be avoided entirely. *See Donnelly Corp. v. Reitter & Schefenacker USA Ltd.*, 2002 WL 31418042 at *6 (W.D. Mich. 2002). As Synopsys explained in its Opening Brief, Magma's antitrust claims will be obviated as to all of the products covered by the valid '508 Patent. *Ecrix*, 191 F.R.D. at 613-14. Magma does not, and cannot, really dispute this fact. Similarly, a finding of infringement of the '508 Patent would establish that Synopsys' filing of this lawsuit was neither fraudulent nor objectively baseless and thus was not an antitrust violation. *Nobelpharma*, 141 F.3d at 1071; *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993).[6]

In many of the cases in which courts grant bifurcation, the patent and antitrust claims involve the same patents. *See, e.g.*, *Chip-Mender, Inc. v. Sherwin-Williams Co.,* 2006 WL 13058 (N.D. Cal.); *Donnelly*, 2002 WL 31418042; *Teva Pharm. Co., Inc. v. Knoll Pharm. Co., Inc.*, 2001 WL 1795592 (N.D. Ill.). In those cases, there is

---

[6] Magma rests a portion of its argument on a misleading description of *Intel Corp. v. Via Technologies, Inc.*, 2001 WL 777085 (N.D. Cal. 2001). In this case, a California court summarizes conflicting arguments about the effect of dismissed patent claims in a case of allegedly fraudulent patent enforcement. It finds the state of the law too uncertain to support ***dismissal*** of the antitrust claims, an issue that is not before the Court here. The California court also faced a motion for bifurcation. It denied that motion without prejudice, stating that it would "decide later" about the sequencing of issues for trial. *Id.* at 7.

necessarily more overlap in evidence than here, where the two sets of claims involve different patents, yet these courts nevertheless granted bifurcation in the interests of judicial economy. Bifurcation of infringement and antitrust claims is especially appropriate where, as is now the case here, the two sets of claims involve different patents and thus there is inherently little factual or legal overlap. *Ecrix*, 191 F.R.D. at 614.

## CONCLUSION

Bifurcation of trial of the issues, and a related stay of discovery of the antitrust claims pending the outcome of the infringement litigation, would ensure fair proceedings and could result in substantial savings to the Court and the parties. Therefore, Synopsys respectfully requests that the Court grant its motion to bifurcate trial of the infringement and antitrust claims, and stay antitrust discovery until resolution of the infringement issues clarifies the scope of the antitrust claims to be litigated.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
lpolizoti@mnat.com
Attorneys for Plaintiff Synopsys, Inc.

OF COUNSEL:
James J. Elacqua
Chris Scott Graham
Valerie M. Wagner
DECHERT LLP
1117 California Avenue
Palo Alto, CA  94304
(650) 813-4848

November 3, 2006

544332

CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to William J. Marsden, Jr.

I further certify that on November 3, 2006 I caused that copies of the foregoing be served on the following counsel in the manner indicated:

| **By Email and by Hand** | **By Email and by Federal Express** |
|---|---|
| William J. Marsden<br>Fish & Richardson P.C.<br>919 N. Market St.<br>P.O. Box 1114<br>Wilmington, DE 19899<br>marsden@fr.com | James Pooley<br>Pooley & Oliver LLP<br>Five Palo Alto Square<br>3000 El Camino Real<br>Palo Alto, CA 94306<br>jpooley@pooleyoliver.com |

*/s/ Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
lpolizoti@mnat.com