# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

KAREN JACOBS LOUDEN
(302) 351-9227
(302) 425-4681
klouden@mnat.com

December 12, 2006

**BY E-FILING AND HAND**

The Honorable Gregory M. Sleet   PUBLIC VERSION
United States District Court     ORIGINAL FILE DATE: 12/12/06
844 North King Street            REDACTED FILE DATE: 12/14/06
Wilmington, DE 19801

Re:   Synopsys, Inc. v. Magma Design Automation
      C.A. No. 05-701 (GMS)

Dear Judge Sleet:

Pursuant to the Court's Revised Scheduling Order, Plaintiff Synopsys, Inc. ("Synopsys") hereby submits this letter seeking leave to file four summary judgment motions.

### A.   Motion for Summary Judgment of Invalidity of the '328 Patent.

All of the claims of Magma's Patent No. 6,505,328 (the "'328 Patent") are anticipated by the Octtools 4.0 and 5.1 software distributions (the "Octtools software"), which were offered for sale and sold by the University of California, Berkeley ("Berkeley") more than one year prior to the filing date of the '328 Patent. Violation of the on-sale bar is a question of law, the resolution of which would remove all issues related to the '328 Patent from this litigation.

The Octtools software qualifies as prior art because it was "on sale in this country, more than one year prior to the date of the application. . . ." *See* 35 U.S.C. § 102(b). Hence, the '328 Patent is invalid because the inventions claimed therein were "on sale in this country, more than one year prior to the date of the application. . . ." *Id.* "The ultimate determination whether an invention was on sale within the meaning of § 102(b) is a question of law. . . ." *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1317 (Fed. Cir. 1999).

The Octtools software was offered for sale and sold at least as early as 1990, eight years before the critical date for the '328 Patent. *See, e.g.*, Exh. A (pages from a 1991 Berkeley

The Honorable Gregory M. Sleet
December 12, 2006
Page 2

Software Catalog). Berkeley's Software Distribution Coordinator from 1985 to 1992 testified that she filled numerous orders for Octtools software and that it was one of the more popular software packages Berkeley sold. Exh. B at 21:14-25; 33:17:25.

Magma has not raised any legally cognizable issue of fact to dispute that the Octtools software embodies all limitations of every claim of the '328 Patent. When asked to identify facts supporting its contention that the '328 Patent was not invalid over prior art, including Octtools software, Magma responded that,

This feature –              – is the only feature Magma identified in its attempt to distinguish the claims of the '328 Patent over Octttools software. However, this feature is not found in the plain language of any of the claims of the '328 Patent, and is also nowhere to be found in the parties' stipulated construction of any claim terms in the '328 Patent. *See* D.I. 159 (Exhibit A to the Second Amended Final Joint Claim Construction Charts filed Nov. 28, 2006). In fact, this feature did not even appear in Magma's *proposed* constructions for the '328 Patent. *See* D.I. 126 (Exhibit C to the Final Joint Claim Construction Charts filed Oct. 13, 2006).[1]

It is not surprising that Magma has made no attempt to amend its response to Interrogatory No. 14 because there is no way to distinguish any of the claims of the '328 Patent over the Octtools software. Synopsys' expert, Peter Moore, wrote portions of the Octtools source code and will attest that the Octtools software practiced every element of every claim in the '328 Patent. Magma has not raised – and cannot raise – any material issue of fact as to whether the Octtools software anticipates the '328 Patent. Only issues of law remain.

B. **Summary Judgment of Invalidity of the '116 and '093 Patents.**

Synopsys asks the Court's leave to file a summary judgment motion for invalidity of all of the "computer-readable medium" claims of the '116 and '093 Patents – claims 15-28 and 41-52 of the '116 Patent, and claims 11-20 and 31-40 of the '093 Patent. These claims are indefinite because each of these claims improperly attempts to claim both an apparatus and a method for using that apparatus.

The Federal Circuit has ruled that it is improper for a single claim to recite both an apparatus and a method for using that apparatus on the grounds that such a claim does not "apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (affirming summary judgment of invalidity of claim under 35 U.S.C. § 112, ¶6). The '116 and

---

[1]   Even were Magma to argue that the                is included in the stipulated construction, that would be a question of law appropriate for the Court to resolve now. *See Markman v. Westview Instr., Inc.*, 517 U.S. 370 (1996).

The Honorable Gregory M. Sleet
December 12, 2006
Page 3

'093 Patents both have two types of claims: (1) a set of method claims and (2) a set of claims that mirror each method claim but precede each claim with the phrase, "[a] computer-readable medium." As an example of the former group, claim 1 of the '116 Patent recites "[a] method of improving a physical design of a current integrated circuit," which is followed by three method steps. As an example of the latter group, claim 15 recites "[a] *computer readable medium . . . for performing a method* of improving a physical design of a current integrated circuit, said method comprising," followed by the same three method steps recited in claim 1. The remaining disputed claims have language very similar in form to claim 15 of the '116 Patent.

The "computer-readable medium" claims of the '116 and '093 Patents claim an apparatus – "[a] computer readable medium" – and then claim a method for using that apparatus – the "medium" is "for performing a method . . . , said method comprising . . . ," from which follows a recitation of several method steps. These are precisely the types of combination apparatus/method claims that are indefinite under 35 U.S.C. § 112, ¶ 2 and the *IPXL* case.

C.   **Summary Judgment of Non-Infringement of the '116 Patent.**

Because Magma has failed to identify any evidence that Synopsys infringes any claims of the '116 Patent, Synopsys seeks leave to file a motion for summary judgment of non-infringement. *See Celotex v. Catrett*, 477 U.S. 317 (1986). Magma has asserted that Synopsys infringes 48 of the 52 claims. Claim 1, however, is the broadest claim and all other claims contain the same or very similar limitations. As Magma has no evidence of infringement of claim 1, it cannot show infringement of the other 47 asserted claims.

On August 25, 2006, Magma served its Preliminary Infringement Contentions for the '116 Patent. Magma has provided no further infringement contentions since that date. Magma contends that Synopsys' JupiterXT product infringes claim 1, but cites to only a few lines of text from four pages of a JupiterXT manual, none of which show that JupiterXT meets the limitations of the claim. Although Magma has had Synopsys' source code since June 2006, Magma does not cite to any Jupiter code.

For example, the second element of claim 1 is "receiving physical design information from a prior integrated circuit." Exh. D at SYN0950714.

Magma provides even less information regarding the third element, "generating said physical design based on said netlist and said physical design information."

This provides no evidence that JupiterXT generates a physical design, or that such a design if generated is based on "said physical design information" – i.e., the "physical design information" referred to in the previous element. In fact, in its contentions, Magma admits that JupiterXT does *not* generate a physical design: "The Jupiter package . . . ***in conjunction with other Synopsys products***, generates all physical design information." In other words, Magma is saying that JupiterXT does not by itself meet this limitation of the claim, but

The Honorable Gregory M. Sleet
December 12, 2006
Page 4

that other, unnamed Synopsys products are also allegedly required. Magma's contentions do not, however, identify these products or explain how they allegedly perform the limitation.

Magma's contentions regarding other claims, including dependent claims 3, 4, 5, and 6, cite to a different Synopsys product, IC Compiler. Because these claims are dependent on claim 1, Magma is contending that JupiterXT allegedly meets some limitations of those claims, while IC Compiler allegedly meets the other limitations. This is defective as a matter of law and does not show infringement of these claims. Moreover, Magma cites to entire directories of IC Compiler, each of which contains many files, each containing thousands of lines of software. In fact, for claims 3, 4, 5, and 6, Magma's source code citations cover 120 files containing over 60,000 lines of software – all without identifying a single specific file, subroutine, or line of software. Magma cannot evade summary judgment by obscuring the fact that it has no real evidence.

D.      **Motion for Summary Judgment on Counterclaims 1 through 6.**

As alleged by Magma in its Second Amended Answer and Counterclaims, Counterclaims 1 through 6 (the "antitrust counterclaims") focus principally on enforcement of patents allegedly obtained by fraud and alleged statements regarding the litigation between the parties. To prevail, Magma must show that this alleged misconduct – as opposed to other marketplace factors – has caused it antitrust injury. *See, e.g., Greater Rockford Energy and Tech. Corp. v. Shell Oil Co.*, 998 F.2d 392 (7th Cir. 1993). Magma must also prove harm to competition in the marketplace overall. *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1355 (Fed. Cir. 1999). The undisputed evidence, however, shows that no purported misconduct by Synopsys has had any effect on Magma's business, its ability to compete or competition in the marketplace generally.

Magma's COO, Roy Jewell, told stock analysts in the company's August 2006 quarterly earnings call that the litigation with Synopsys has had "absolutely no impact" on Magma's business. Exh. E at SYN1723459. Similarly, Magma's Chairman and CEO, Rajeev Madhavan, has also touted Magma's performance, making no mention of any harm caused by Synopsys, but rather emphasizing Magma's success, such as increasing market share and new products. *Id.* at SYN1723459-60. These and other statements by Magma's most senior executives are admissions establishing that neither Magma nor marketplace competition has suffered any harm. Synopsys is entitled to summary judgment on Counterclaims 1 through 6 on this ground alone.

The Court should also grant summary judgment on Counterclaims 1 through 6 because the filing of patent litigation is protected from antitrust and tort liability under the *Noerr-Pennington* doctrine, absent proof that the litigation is: (1) a sham, or (2) a knowing attempt to enforce a patent obtained by fraud. *See, e.g., C.R. Bard v. M3 Systems, Inc.*, 157 F.3d 1340, 1368-69 (Fed. Cir. 1998. This protection extends to statements regarding litigation. *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 343 F.Supp.2d 272, 326 (D. Del. 2004) ("The law only requires a reasonable belief on the part of the patentee. Universal has not shown . . . that Honeywell publicized this lawsuit to the marketplace in bad faith."). In its ongoing shareholder

The Honorable Gregory M. Sleet
December 14, 2006
Page 5

securities litigation arising from the issues in the California action, Magma itself has argued that the Noerr-Pennington doctrine extends to "press releases," "public relations campaign[s]," and "statements involving [a party's] prospects in" a lawsuit. See Exh. F (*In re Magma Design Automation, Inc. Securities Litig.*, Motion to Dismiss at 17-18).

Magma also alleges that Synopsys obtained Patents Nos. 6,434,733 (the "'733 Patent") and 6,766,501 (the "'501 Patent) (collectively, "the scan chain patents") by fraud under the principles of *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965). However, there is no evidence of the deceptive intent necessary to prove a claim under *Walker Process*. In addition, the prior art that Magma alleges Synopsys withheld from the PTO was not material, *i.e.*, the scan chain patents would have issued even if Synopsys had submitted it to the PTO. Synopsys later submitted this very prior art to the PTO in the re-examination proceeding on these patents and the PTO indicated that the claims of the '501 Patent would issue from re-examination. See Exh. G (Notice of Intent to Issue Ex Parte Reexamination Certificate (stating that the two references cited in Magma's Counterclaims fail to anticipate or render the above features obvious.)).[2]

Respectfully,

*/s/ Karen Jacobs Louden*
klouden@mnat.com
Karen Jacobs Louden

/cbh

cc: Valerie M. Wagner (by electronic mail)
William J. Marsden, Jr. (by hand and electronic mail)
James Pooley (by electronic mail)
549150

---

[2] The Court should take judicial notice of the Notice of Intent as it indicates the PTO's view of the patentability of the '501 and '733 Patents over the prior art cited by Magma in its antitrust counterclaims. Likewise, Synopsys' expert would testify that he agrees with the PTO's assessment of patentability over these references.