# FISH & RICHARDSON P.C.

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

ATLANTA
AUSTIN
BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

Suite 1100
919 N. Market Street
P.O. Box 1114
Wilmington, Delaware
19899-1114

Telephone
302 652-5070

Facsimile
302 652-0607

Web Site
www.fr.com



December 27, 2006

**VIA E-FILING AND HAND DELIVERY**
**PUBLIC VERSION – January 5, 2007**

The Honorable Gregory M. Sleet
United States District Court for the District of Delaware
844 King Street
Wilmington, DE 19801

Re:   *Synopsys v. Magma Design Automation*
      USDC-D. Del. - C.A. No. 05-701-GMS

Dear Judge Sleet:

This letter replies to Plaintiff Synopsys's letter of December 20, 2006. [D.I. 188]. In Magma's original letter to the Court dated December 12, 2006, Magma noted that its accused products do not perform the following claim limitations: 1) "performing an initial placement of integrated circuit elements within bins," and 2) "calculating congestion of the initial placement." [D.I. 176.]

### 1. Performing Initial Placement Within Bins

Synopsys attempts to create an issue of fact by pointing to a 1997 Magma document describing the use of "buckets" into which integrated circuit components were placed by the "run place coarse" command. [D.I. 188 at 2-4.] Magma does not dispute that some of its software used "buckets" for initial placement in 1997, but this is irrelevant because the '508 patent issued in 2001. Approximately two years before the '508 patent issued, in 1999, Magma abandoned the use of "buckets" for the initial placement (and successive placement modifications) and switched to using the force directed technique for the initial placement (and successive placement modifications).[1] The "run place coarse" command was used in certain of the accused products until 2003 for a "clean-up" type of placement (*e.g.*, for adjustments to move cells into their final locations), but not for the <u>initial</u> placement, and Synopsys does not suggest otherwise.

### 2. Calculating Congestion Of The Initial Placement

Synopsys argues that issues of material fact exist regarding the operation of Magma's accused products and in particular, the nature of the force directed placement algorithm. [*Id.* at 2.] However, Synopsys has failed to raise any genuine issues of fact regarding the accused products and its argument regarding the "nature" of the

---

[1] Magma continued to ship the "run place coarse" routine after 1999, but the automated "flow" that orchestrates when routines are called, did not call the "run place course" to perform an initial placement.

FISH & RICHARDSON P.C.

The Honorable Gregory M. Sleet
December 27, 2006
Page 2

force directed placement algorithm is nothing more than a veiled attempt to renege on its agreed construction of "initial placement." As described above, Magma has used the force directed approach for initial placement since 1999, and Synopsys has not suggested otherwise.

Synopsys's argument regarding the "nature" of the force directed placement technique [*Id.* at 3-4] is merely an attempt to replace its agreed-upon construction of "initial placement" with a new and vague construction that supports its infringement contentions. The parties agreed that the term "initial placement" means "a first placement of the integrated circuit elements, which can then be modified." [D.I. 159, Exh. A at 1.] The first placement of integrated circuit elements in the accused products is done as the first part of the force-directed technique, which has been used in the accused products since 1999. This initial placement during the force-directed technique constitutes an "initial placement" according to the parties' agreed-upon construction. As explained in Magma's December 12 letter to the Court, Magma does not calculate the congestion of this initial placement. Instead, congestion is calculated much later, after many successive placement modifications.

Synopsys contends that no "placement" is achieved upon the first step of the force directed technique because it is not *useful* as an actual placement [D.I. 188 at 3-4], but the agreed-upon construction does not require that the initial placement be *useful*, and such a requirement would render the construction vague and subjective.

Synopsys next points to Magma's literature which uses the term "initial placement" and argues that "initial placement" is not performed until the *end* of the force directed technique. [*Id.* at 4.] Neither of the referenced documents, however, states that the "initial placement" is not completed until the *end* of the force directed algorithm.

**REDACTED**

Synopsys also argues that the context of the claim language converts the term "initial" from meaning "first," to meaning "prior to logic modifications." [*Id.* at 4.] Synopsys, however, agreed to the construction including a "first" placement and cannot now recast the meaning of the claim to suit its infringement contentions. The term "first" has a plain, commonly-understood meaning in the English language: preceding all others. Synopsys's attempt to read "prior to logic modifications" into



**REDACTED**

FISH & RICHARDSON P.C.

The Honorable Gregory M. Sleet
December 27, 2006
Page 3

the plain language of the agreed-upon construction in order to salvage its infringement case should be rejected.

Finally, Synopsys argues that summary judgment would be improper in view of the status of the source code production for Magma's accused Talus products. [*Id.* at 4.] As ordered by the Court during the conference call of December 12, the parties have met and conferred, and Magma is in the process of producing an additional module of Talus code; however, this remaining production does not raise any issues of fact that would be material to the motion.

### 3. Magma Requests Permission To File An Additional Motion In Light Of The Court's Claim Construction Order

In addition to the grounds for summary judgment set forth above and in Magma's December 12 letter, Magma requests leave to file a motion for summary judgment of invalidity based on a further ground that has arisen from the Court's construction of the term "means for performing an initial placement of integrated circuit elements within bins on the design layout" in claims 17-18 of the '508 patent. The Court construed this term under 35 U.S.C. Section 112, ¶ 6, and held the corresponding structure to be "an electronic design automation placement tool," and equivalents. [D.I. 186 at 3] As the Court noted in footnote 4 of its claim construction order, the corresponding structure for means-plus-function terms in computer-implemented inventions is restricted to the algorithm disclosed in the specification. *Harris Corp. v. Ericsson, Inc.* 417 F.3d 1241, 1253 (Fed. Cir. 2005). An electronic design automation placement tool is not an algorithm and Synopsys did not present any evidence of a specific algorithm for an electronic placement tool[3]; hence claims 17-18 of the '508 patent are indefinite under the Court's construction. As no genuine issues of material fact exist regarding this issue, Magma respectfully submits that summary judgment of invalidity is appropriate and requests leave to file a motion for summary judgment of invalidity of claims 17-18 of the '508 patent.

Respectfully,

/s/ *William J. Marsden, Jr.*

William J. Marsden, Jr.

WJM/dob

cc:   Karen Jacobs Louden, Esquire (via hand delivery)
      Valerie M. Wagner, Esquire (via first class mail)

---

[3] Synopsys referred to EDA placement tools, but did not provide any specific algorithms used by those tools. [D.I. 152, Harris Decl., ¶ 62.] As such, the term is indefinite and provides no guidance to the jury about specific algorithms.