# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

KAREN JACOBS LOUDEN
(302) 351-9227
(302) 425-4681
klouden@mnat.com

December 27, 2006 [Redacted Version Filed January 11, 2007]

**BY E-FILING**
The Honorable Gregory M. Sleet          **REDACTED – PUBLIC VERSION**
United States District Court
844 North King Street
Wilmington, DE 19801

     Re:    *Synopsys, Inc. v. Magma Design Automation*, C.A. No. 05-701 (GMS)

Dear Judge Sleet:

     Plaintiff Synopsys Inc. ("Synopsys") files this Reply Letter Brief in response to the Answering Letter Brief of defendant Magma Design Automation, Inc. ("Magma").

     A.     **Summary Judgment of Invalidity of the '328 Patent**

     There is no genuine issue of material fact regarding the public availability of Octtools well before the statutory bar date. Magma argues in its Response that "Synopsys has never deposed the original Octtools developers." D.I 187 at 1. But Synopsys deposed Cindy Manly-Fields, the software distribution coordinator for Octtools, and Magma did not refute all of the documents and testimony clearly establishing that Octtools was "on sale" under 35 U.S.C. § 102(b). Ms. Manly-Fields authenticated numerous Octtools order forms, including the one Magma attaches as an exhibit to its Response. *Id.* at Exh. G. As a matter of law, this document by itself establishes that Octtools was "on sale" under § 102(b).

     Magma questions the Octtools' storage of "objects including a netlist portion." D.I. 187 at 1. However, the Reference Guide cited by Magma explains exactly how Octtools stores objects representing cells, nets and terminals. *Id.*, Exh. A at 8-15. This is precisely the same netlist information Magma described as a preferred embodiment in the specification of the '328 Patent. Exh. A at 5:36-38.

     The parties stipulated that "common data model" means "a shared data model that does not require translation between the design tools." D.I. 159, Exh. A. Magma argues, however, that a "data model" is not "common" unless it is shared by all design tools in a given design flow. Not only is this inconsistent with the agreed-upon construction, but it would exclude the preferred embodiment, which clearly describes at least one design tool in the design flow that does not share the "common data model." *See* Exh. A at 3:46-3:11. The Octtools common data model is no different from the one described in the preferred embodiment, and is a "common data model" in accordance with the stipulated construction of this claim term.

The Honorable Gregory M. Sleet
December 27, 2006
Page 2

Finally, Magma suggests that Octtools does not satisfy the claim element requiring that certain objects must be "logically correlated." D.I. 187 at 2. Magma interprets this language to require that all objects in the entire data model be "logically correlated," and that all correlations between objects be *logical*. This interpretation is incorrect because the claim requires only that those "objects that together represent the circuit" be "logically correlated," and leaves open whether or not some objects may *also* be "correlated" in ways other than "logically."[1]

**B.    Summary Judgment of Invalidity of the '116 and '093 Patents**

Magma's arguments as to why the '116 and '093 Patents are not invalid under *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005), are unavailing for two reasons. First, Magma has cited only district court cases, which are not controlling. Second, most of these cases can be easily distinguished because the claims at issue were detailed apparatus claims with numerous structural limitations, and only a few of the limitations were in what the defendant called a method format.[2]

The disputed claims of the '116 and '093 Patents could hardly be more different. Each is in the form: "[a] computer-readable medium . . . for performing a method . . . , the method comprising:" from which follows pure method steps copied straight out of a previously recited method claim. These are clearly labeled method steps in a claimed method. Under *IPXL*, because these claims "recite[] both a system and the method for using that system, [they do] not apprise a person of ordinary skill in the art of its scope, and [are] invalid under section 112, ¶ 2." *IPXL*, 430 F.3d at 1384.

**C.    Summary Judgment of Non-Infringement of the '116 Patent**

Magma attempts to avoid summary judgment of non-infringement of the '116 patent by providing a new set of infringement contentions. These new contentions are as deficient as the old, however, and they provide further support for Synopsys' motion for summary judgment of non-infringement. For example, Magma has never expressly stated which Synopsys products it contends infringe the '116 patent, but cites manuals and source code from a haphazard mixture of Synopsys products to allege infringement of particular claims. For example, JupiterXT is the only product Magma has ever identified with respect to all the elements of claim 1, yet most of the source code it cites is from other products. This is contrary to the basic tenet that each element must be present in a single accused instrumentality.[3]

---

[1]



[2]    For example, in *Collaboration Prop., Inc. v. Tandberg*, 2006 WL 1542150 (N.D. Cal. June 23, 2006), cited by Magma (D.I. 187 at 2), the defendant characterized the limitation at issue as a method limitation, but the court held that it was instead a recitation of the functionality of the system. Likewise, in *Yodlee, Inc. v. CashEdge, Inc.*, No. C 05-01550, 2006 U.S. Dist. LEXIS 86699, *11-18 (N.D. Cal. Nov. 29, 2006), the court merely addressed whether it was improper to include in the body of a claim a step performed only in response to user input.

[3]    Contrary to what Magma contends in its Response (D.I. 187 at n.5), it has made no showing that the products that it mixes and matches to find infringement "work together" in a suite of tools.

The Honorable Gregory M. Sleet
December 27, 2006
Page 3

In addition, Magma cites to massive amounts of source code - the files Magma cites as meeting the steps of claim 1 alone contain over 600 separate functions and over 24,000 lines of computer code. Hence, it is impossible to tell what functions or portions of code contain the features Magma contends infringe.

**D.    Summary Judgment on Counterclaims 1 through 6**

Magma's admission that Synopsys' alleged conduct has impacted at most 11 customers is also a binding admission that competition for hundreds of other customers is unchanged. *See* Tr. of Dec. 12, 2006 Conf. at 33. This establishes that Synopsys' alleged conduct neither harmed competition overall nor contributed to alleged monopoly power.

Moreover, Magma cannot establish any harm with respect to these 11 customers. In an effort to overcome its own public admissions, Magma cites an interrogatory response, deposition testimony, and anticipated testimony from other executives. But neither that response nor the testimony provide evidence that Synopsys caused such harm or even that it occurred. *See* D.I. 187, Exhs. B at 197-98; I at 4, and J. Self-serving and vague allegations cannot create a disputed issue of fact in the face of contrary prior admissions. *See, e.g., Argus Inc. v. Eastman Kodak Co.*, 612 F. Supp. 904, 909 (S.D.N.Y. 1985), *aff'd*, 801 F.2d 38 (2d Cir. 1986).

Magma also argues that *Noerr-Pennington* does not apply because it alleges fraud under *Walker Process*. D.I. 187 at 4. Magma has no evidence, however, of the intent or materiality required for fraud, even in the deposition testimony of the inventor it condemns in its counterclaims. *See* Exh. C. The PTO's conclusion in the re-examination of the scan chain patents precludes Magma from showing "the patent[s] would not have issued but for the . . . omission." Magma cites inequitable conduct cases, but the standards for inequitable conduct are much lower. *See, e.g., Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070-72 (Fed. Cir. 1998).

Magma hints at other offenses, but even at this belated date, it cannot present any facts supporting these allegations. Beyond empty labels such as "predatory pricing," "differential pricing structures," "attempted exclusive dealing," and "bundling," Magma has not even alleged a single detail – let alone provided any actual evidence – regarding of such practices.

Respectfully,

*/s/ Karen Jacobs Louden*
klouden@mnat.com
Karen Jacobs Louden (#2881)

cc:    Clerk of Court (by hand)
       Valerie M. Wagner (by e-mail)
       William J. Marsden, Jr. (by hand and e-mail)
       James Pooley (by e-mail)